**Miscellaneous Docket No. _____**

# United States Court of Appeals for the Federal Circuit

IN RE: MICRON TECHNOLOGY, INC. *et al.*,

*Petitioners.*

*On Petition for Writ of Mandamus to the United States District Court for the Eastern District of Texas*
*No. 2:23-cv-00028-JRG-RSP, Hon. Rodney Gilstrap*

## MICRON TECHNOLOGY INC.'S PETITION FOR WRIT OF MANDAMUS PURSUANT TO FRAP 21

JOHN C. KAPPOS
FRANCES MACKAY
O'MELVENY & MYERS LLP
2801 North Harvard Street, Suite 1600
Dallas, Texas 75201
(972) 360-1900
jkappos@omm.com
fmackay@omm.com

XIN-YI ZHOU
JASON M. ZARROW
O'MELVENY & MYERS LLP
400 South Hope Street, 18th Floor
Los Angeles, California 90071
(213) 430-6000
vzhou@omm.com
jzarrow@omm.com

CODY KAHOE
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC 20006
(202) 383-5300
ckahoe@omm.com

*Counsel for Petitioner Micron Technology Inc.*

JUNE 27, 2025

 COUNSEL PRESS    (800) 4-APPEAL • (714834)

FORM 9. Certificate of Interest

Form 9 (p. 1)
March 2023

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF INTEREST</u>

**Case Number** | 25-

**Short Case Caption** | In re Micron Technology, Inc.

**Filing Party/Entity** | Micron Technology, Inc., Micron Semiconductor Products, Inc.

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes.  Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 06/27/2025

Signature: /s/ John Kappos

Name: John Kappos

FORM 9. Certificate of Interest

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.  ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.  ☐ None/Not Applicable |
| Micron Technology, Inc. | | None/Not Applicable |
| Micron Semiconductor Products, Inc. | | Micron Technology, Inc. |
| Micron Technology Texas, LLC (Dissolved October 25, 2023.) | | None/Not Applicable |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐     Additional pages attached

**FORM 9. Certificate of Interest**

Form 9 (p. 3)
March 2023

**4. Legal Representatives.**  List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities.  Do not include those who have already entered an appearance in this court.  Fed. Cir. R. 47.4(a)(4).

☐   None/Not Applicable          ☑   Additional pages attached

| O'Melveny & Myers LLP | John Kappos | Xin-Yi Zhou |
|---|---|---|
|  | Jason M. Zarrow | Frances Mackay |
|  | Cason Garrett Cole | Patric Reinbold |

**5. Related Cases.**  Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☑   Yes (file separate notice; see below)     ☐   No     ☐   N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b).  **Please do not duplicate information.**  This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal.  Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**.  Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees).  Fed. Cir. R. 47.4(a)(6).

☑   None/Not Applicable          ☐   Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |

**Form 9 (continuation)**

4. Legal Representatives.

O'MELVENY & MYERS LLP
Timothy S. Durst
William M. Fink
Cody Kahoe

GILLIAM & SMITH, LLP
James Travis Underwood
Melissa Richards Smith

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................... 1

RELIEF SOUGHT .............................................................. 3

ISSUE PRESENTED ............................................................ 3

FACTUAL BACKGROUND AND PROCEDURAL HISTORY .............. 3

    A.    BeSang Files Suit in the Eastern District of Texas,
Despite the Lack of Any Meaningful Connection. ................. 3

    B.    Micron Seeks Transfer, but the District Court Takes
No Action While Pressing Ahead on the Merits. .................. 5

REASONS FOR ISSUING THE WRIT ...................................... 9

I.    Micron Has a Clear and Indisputable Right to the Writ. ........... 11

    A.    Mandamus is available to require a district court to
rule on a § 1404(a) transfer motion. ................................ 11

    B.    The district court's ten-month delay in ruling on
Micron's transfer motion warrants mandamus relief. ........ 13

II.    Micron Has No Other Adequate Means to Attain Relief. ........... 16

III.    Mandamus Is Appropriate. ............................................. 19

CONCLUSION .................................................................. 23

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Cheney v. U.S. Dist. Ct.*,
  542 U.S. 367 (2004) ................................................................ 10

*Cont'l Grain Co. v. Barge FBL-585*,
  364 U.S. 19 (1960) .............................................................. 11, 12

*Ex Parte Sawyer*,
  88 U.S. 235 (1874) ................................................................ 10

*In re Apple Inc. (Apple II)*,
  52 F.4th 1360 (Fed. Cir. 2022) .................................... passim

*In re Apple Inc.*,
  456 F. App'x 907 (Fed. Cir. 2012) ...................................... 16

*In re Apple, Inc. (Apple I)*,
  979 F.3d 1332 (Fed. Cir. 2020)............................... 12, 13, 16

*In re EMC Corp.*,
  501 F. App'x 973 (Fed. Cir. 2013) ................................ 11, 16

*In re Google Inc.*,
  No. 2015-138, 2015 WL 5294800 (Fed. Cir. July 16, 2015)......... passim

*In re Horseshoe Ent.*,
  337 F.3d 429 (5th Cir. 2003) .............................................. 12

*In re HTC Corp.*,
  889 F.3d 1349 (Fed. Cir. 2018)............................................ 18

*In re Netflix, Inc.*,
  No. 2021-190, 2021 WL 4944826 (Fed. Cir. Oct. 25, 2021) ................ 10

*In re Nintendo Co., Ltd.*,
  544 F. App'x 934 (Fed. Cir. 2013) ...................................... 12

*In re Nintendo Co., Ltd.*,
  589 F.3d 1194 (Fed. Cir. 2009)............................................ 22

*In re SK hynix, Inc.*,
  835 F. App'x 600 (Fed. Cir. 2021) ........................... 13, 15, 21

*In re TikTok, Inc.*,
  85 F.4th 352 (5th Cir. 2023)................................................ 12

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*In re TracFone Wireless, Inc.*,
  848 F. App'x 899 (Fed. Cir. 2021) ................................................ passim

*In re TS Tech USA Corp.*,
  551 F.3d 1315 (Fed. Cir. 2008) ............................................................. 10

*In re Volkswagen of Am., Inc.*,
  545 F.3d 304 (5th Cir. 2008) ............................................. 10, 19, 20, 21

*McDonnell Douglas Corp. v. Polin*,
  429 F.2d 30 (3d Cir. 1970) ..................................................................... 16

*Van Dusen v. Barrack*,
  376 U.S. 612 (1964) ................................................................................ 19

**Statutes**

28 U.S.C. § 1404(a) ........................................................................ passim

28 U.S.C. § 1400(b) ................................................................................ 20

## INTRODUCTION

Micron Technology Inc. and Micron Semiconductor Products, Inc. (collectively, "Micron") respectfully request that this Court issue a writ of mandamus directing the district court to rule on Micron's motion to transfer its litigation with BeSang Inc. ("BeSang") to the District of Idaho, and to stay discovery and imminent hearings and deadlines on merits issues until it does so.[1]

Micron originally filed its transfer motion *over two years ago*. Despite clear directives from this Court and the Fifth Circuit that transfer motions under 28 U.S.C. § 1404(a) should take priority over substantive and procedural matters related to the merits of the case, the court below did not rule on the motion before entering a stay pending outcome of IPR proceedings on December 20, 2023. After the IPR stay was lifted on December 11, 2024, the district court issued a scheduling order, set a *Markman* hearing (for July 22, 2025), and appointed a technical advisor, all while Micron has continuously reminded the district court of its pending transfer motion in subsequent filings.

---

[1] BeSang also named Micron Technology Texas, LLC as a defendant in this litigation. Appx20. That entity dissolved as of October 25, 2023 and thus no longer exists. Appx144-150.

Moreover, Micron's motion to stay this case pending a decision on transfer and its request for hearing have not been acknowledged. In short, Micron has exhausted its options to obtain a decision from the district court. With the *Markman* hearing fast approaching, and substantive litigation continuing at a quick pace, Micron has no choice but to petition this Court for relief.

This Court repeatedly has held that a district court's refusal to prioritize transfer motions ahead of substantive issues warrants mandamus relief. Mandamus is especially appropriate here because transfer is clearly warranted. BeSang, an Oregon corporation, has sued Micron, an Idaho corporation, alleging that certain Micron semiconductor chips infringe a BeSang patent. The relevant witnesses and documents are almost all located in Idaho, only a few are in Texas, and none are in the Eastern District. And Idaho has by far the greater local interest in this case, which implicates Micron employees who work and live there.

This Court has not hesitated to issue writs in similar cases, and if the district court denied Micron's motion, Micron would likely have a strong case for mandamus from this Court. Because the district court is pressing ahead with merits issues without deciding Micron's motion,

Micron is not only required to litigate and expend substantial resources in an inconvenient forum, but will also be denied an effective remedy on appeal if assessment of venue is delayed until the ultimate appeal. This Court should direct the district court to stay the case and promptly address Micron's transfer motion.

## RELIEF SOUGHT

Micron respectfully requests that the Court grant its petition for a writ of mandamus and order the district court to promptly rule on Micron's pending motion to transfer, and to stay all proceedings in the litigation until that motion is resolved.

## ISSUE PRESENTED

Whether Micron is entitled to a writ of mandamus to compel the district court to rule on its motion to transfer the underlying litigation to the District of Idaho, filed over two years ago, and to hold all other matters until that motion is resolved.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A. BeSang Files Suit in the Eastern District of Texas, Despite the Lack of Any Meaningful Connection.

BeSang is an Oregon corporation headquartered in Hillsboro, Oregon. Appx019. In January 2023, BeSang brought this lawsuit in the

Eastern District of Texas, accusing Micron of infringing U.S. Patent No. 7,378,702 ("the '702 Patent"). Appx022-023. BeSang alleges that Micron has infringed the '702 Patent by making, using, selling, offering to sell, or importing certain products that include "3D NAND Flash products incorporating CMOS under Array." Appx028. BeSang's infringement allegations are based entirely on the 3D NAND chips included within various solid state drives ("SSDs")—no other components of the accused SSDs are implicated by BeSang's allegations. Appx031-049, Appx064.

There is no connection between this dispute and the Eastern District of Texas. Appx065-074. BeSang is an Oregon company, and it has no employees, sales, facilities, or documents in Texas. Appx065, Appx071. Micron is headquartered in Idaho, with its principal place of business in Boise. Appx064. Micron conducts 3D NAND-related research, development, and testing in its Boise headquarters, so the Micron employees with relevant technical knowledge about the accused 3D NAND products are primarily located in Idaho. Appx064. Additional Micron employees with relevant technical knowledge may also be located in California and Singapore, where Micron conducts 3D NAND-related design and product engineering and where it manufactures the accused

products. Appx064. Thus, to the extent any relevant documents are not located in Idaho, they are located in California and Singapore, not Texas. Appx065.

While Micron had (when this case was filed) two Texas facilities—one in the Eastern District, in Allen, and another in the Western District, in Austin—Micron's Texas sites employed only approximately 3% of its U.S. employees, and less than 1% of Micron employees worldwide. Appx064. The Allen site has since moved to Richardson, Texas, outside the Eastern District. Appx175. Critically, *none* of Micron's NAND-related research, design, development, or manufacturing occurs in Texas, and Micron has no Texas employees with relevant knowledge of the 3D NAND chips, or any relevant sources of proof located in-district. Appx064-065. While some testing of the accused SSDs (containing 3D NAND chips) occurs at Micron's Austin site (in the Western District), that testing is not germane to this litigation. Appx065.

## B.    Micron Seeks Transfer, but the District Court Takes No Action While Pressing Ahead on the Merits.

Micron moved under 28 U.S.C. § 1404(a) to transfer the case to the District of Idaho on May 31, 2023, just weeks after initial pleadings closed and just after BeSang served its infringement contentions.

Appx052-057, Appx058-079, Appx099.    As Micron explained in its motion, the § 1404(a) factors weigh strongly in favor of transfer.

BeSang's Complaint identified no potential witnesses residing in the Eastern District of Texas, while Micron's engineers who are primarily responsible for the research, design, and development of the accused products are located in Boise, Idaho.  Appx064-065, Appx067-068.  Even for witnesses not located in Idaho—such as those in California and Oregon—attending trial in Boise would be more convenient.  Boise is significantly closer to those locations than Marshall, Texas, and the Boise airport is just five miles from the federal courthouse, while the nearest commercial airport to Marshall is nearly 40 miles away.  Appx068-069. While Micron's facilities in Idaho house a vast number of relevant design, development, and marketing documents relating to the accused products, no relevant sources of proof are located in the Eastern District of Texas. Appx71-72.  Given these significant connections to Idaho, moreover, the District of Idaho has by far the greater local interest in this case. Appx074-076.

After limited venue discovery, the parties completed briefing on the transfer motion on September 6, 2023—nearly two years ago.  Appx123-

130.[2]  Micron filed an unopposed motion for a hearing on the motion to transfer on November 3, 2023, explaining that the motion was "fully briefed and ripe for consideration" and asking the court to "enter an order setting the Motion to Transfer for hearing at the Court's earliest convenience."  Appx151-152.

Although Micron's motion has been pending for nearly two years, the district court cannot be faulted for the entirety of the delay.  Around the time the parties were briefing the motion, Micron filed a petition with the Patent Trial and Appeal Board ("PTAB") requesting *inter partes* review ("IPR") of all asserted claims in BeSang's suit.  Appx084-085.  On June 1, 2023, Micron filed a motion to stay the district court proceedings pending resolution of that IPR petition.  Appx080-094.  After the PTAB instituted Micron's requested IPR, the district court granted Micron's motion to stay on December 20, 2023, with the stay set to "automatically expire" if "any Asserted Claims of the Asserted Patent are not found invalid by the PTAB."  Appx158.  About a year later, the PTAB resolved the pending IPR proceedings, and on December 11, 2024, Micron filed a

---

[2] The parties filed limited supplemental briefing on September 13, October 27, and November 14, 2024.  Appx013-015, Appx131-138, Appx140-142, Appx155-157.

notice with the district court informing it that the PTAB proceedings were concluded, automatically lifting the court's December 2023 stay. Appx159-160.  Even excluding the stay period, however, the § 1404(a) motion has been fully briefed before the district court for approximately ten months, a significant delay for a simple transfer motion.

In those months, Micron has not sat idly by and waited for the district court to rule.  A week after the district court's stay lifted, the parties filed a joint status report, in which Micron reiterated its request that, "[c]onsistent with Fifth Circuit and the Federal Circuit precedents," the court proceed with "hearing and adjudication of its pending Motion to Transfer . . . before the Court addresses any substantive issues, including *Markman*."  Appx164-165.  For the next several months, Micron continued to request that the district court resolve the pending transfer motion, including at a status conference held on February 20, 2025, and in a notice of supplemental facts relating to the transfer filed on March 17, 2025.  Appx016, Appx175.  Nevertheless, the court neither resolved the motion nor set a hearing date.  Instead, in a March 10 Order, the court set a *Markman* hearing for July 22, 2025.  Appx171.  With no resolution on Micron's pending transfer motion, and with the *Markman*

hearing fast approaching, on June 5, 2025, Micron filed a motion to stay all case activity pending resolution of the transfer motion. Appx181-188; *see also* Appx242-251, Appx252-254. That motion, too, remains pending.

The district court still has not set a hearing on Micron's transfer motion. Yet since the filing of Micron's motion, the district court has issued a scheduling order, pressed ahead with claim construction briefing, and appointed a technical advisor. Appx168-174, Appx203, Appx204-241, Appx256-291. The *Markman* hearing is now just weeks away, and the parties are already in the midst of substantive fact discovery—the most costly phase of the case—all without a ruling on whether this case is even in the proper court.

## REASONS FOR ISSUING THE WRIT

A petitioner seeking mandamus relief must: (1) show a "clear and indisputable" right to the writ; (2) have "no other adequate means to attain the relief he desires"; and (3) demonstrate that "the writ is appropriate under the circumstances." *In re Volkswagen of Am., Inc.*, 545

F.3d 304, 311 (5th Cir. 2008) (en banc) (quoting *Cheney v. U.S. Dist. Ct.*, 542 U.S. 367, 380-81 (2004)).[3]

Mandamus is available not only to undo a district court's clearly erroneous exercise of its discretion, but also to compel the district court to exercise that discretion in the first place. When, as here, a district court unjustifiably delays in ruling on a motion, "[a] superior court may by mandamus set the machinery of an inferior court in motion." *Ex Parte Sawyer*, 88 U.S. 235, 238 (1874); *see In re Apple Inc. (Apple II)*, 52 F.4th 1360, 1361 (Fed. Cir. 2022).

This Court has recognized that "lengthy delays in resolving transfer motions can frustrate the intent of § 1404(a)" and "amount[] to an arbitrary refusal to consider the merits of the transfer motion." *In re TracFone Wireless*, Inc., 848 F. App'x 899, 900 (Fed. Cir. 2021) (citing *In re Google Inc.*, No. 2015-138, 2015 WL 5294800, at *1-2 (Fed. Cir. July 16, 2015)); *accord In re Netflix, Inc.*, No. 2021-190, 2021 WL 4944826, at *1 (Fed. Cir. Oct. 25, 2021). A writ of mandamus in these circumstances

---

[3] In reviewing issues related to a § 1404(a) transfer, "this court applies the laws of the regional circuit in which the district court sits, in this case the Fifth Circuit." *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008).

thus protects the intent behind § 1404(a) and prevents defendants, like Micron, from being forced "to expend resources litigating substantive matters in an inconvenient venue while a motion to transfer lingers unnecessarily on the docket." *In re TracFone Wireless, Inc.*, 848 F. App'x at 900. The Court should grant Micron's petition to ensure that the transfer issue is resolved before the case proceeds further on the merits.

## I.    Micron Has a Clear and Indisputable Right to the Writ.

### A.    Mandamus is available to require a district court to rule on a § 1404(a) transfer motion.

A request for transfer under § 1404(a) is a threshold matter that must be addressed at the outset of litigation. The statute is designed "to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Cont'l Grain Co. v. Barge FBL-585*, 364 U.S. 19, 27 (1960); *accord Apple II*, 52 F.4th at 1361. Those goals are "thwarted" when defendants suffer an extended delay in resolving a transfer motion while the court considering the motion continues to preside over the litigation. *Apple II*, 52 F.4th at 1361; *see In re EMC Corp.*, 501 F. App'x 973, 975-76 (Fed. Cir. 2013) (stressing "the importance of addressing motions to transfer at the outset of litigation").

Such delay "leads to the waste[] of time, energy and money that § 1404(a) was designed to prevent." *Cont'l Grain*, 364 U.S. at 26.

For these reasons, both this Court and the Fifth Circuit repeatedly have held that a district court "must give promptly filed transfer motions 'top priority' before resolving the substantive issues in the case." *In re TracFone*, 848 F. App'x at 900 (quoting *In re Horseshoe Ent.*, 337 F.3d 429, 433 (5th Cir. 2003)); *see also Apple II*, 52 F.4th at 1361; *In re TikTok, Inc.*, 85 F.4th 352, 362-63 (5th Cir. 2023) ("[D]isposition of a [§ 1404(a)] motion should [take] a top priority in the handling of a case."); *In re Apple, Inc. (Apple I)*, 979 F.3d 1332, 1337 (Fed. Cir. 2020) ("[O]nce a party files a transfer motion, disposing of that motion should unquestionably take top priority."); *In re Google Inc.*, 2015 WL 5294800, at *1 (directing the district court to promptly resolve transfer motion); *In re Nintendo Co., Ltd.*, 544 F. App'x 934, 941 (Fed. Cir. 2013) ("[A] trial court must first address whether it is proper and convenient venue before addressing any substantive portion of the case.").

Mandamus is the appropriate mechanism for enforcing this clear rule, and this Court has repeatedly granted mandamus to compel district courts to consider § 1404(a) transfer motions before addressing

substantive issues, such as holding a *Markman* hearing. *See, e.g.*, *Apple II*, 52 F.4th at 1361-63 (granting mandamus before *Markman* hearing and holding that "decision of a transfer motion must proceed expeditiously as the first order of business"); *In re SK hynix, Inc.*, 835 F. App'x 600, 601 (Fed. Cir. 2021) (Ordering a stay of the district court case, including the *Markman* hearing, by explaining that "[p]recedent compels entitlement to [mandamus] relief and the district court's continued refusal to give priority to deciding the transfer issues demonstrates that SK hynix has no alternative means by which to obtain it."); *In re TracFone*, 848 F. App'x at 901 (granting mandamus and ordering the district court to stay all proceedings before transfer motion); *Google*, 2015 WL 5294800, at *2 (same); *Apple I*, 979 F.3d at 1343 (criticizing the district court for giving "undue priority to the merits of a case," including *Markman*, "over a party's transfer motion").

### B.    The district court's ten-month delay in ruling on Micron's transfer motion warrants mandamus relief.

Mandamus is fully warranted here. Micron filed its motion to transfer on May 31, 2023—just weeks after all initial pleadings were filed—and the motion has been ripe for decision since September 6, 2023. Appx052-057, Appx058-079, Appx099, Appx123-130. Even excluding the

roughly one-year period when the case was stayed pending resolution of Micron's IPR petition, Micron's transfer motion has been ripe for over *300 days*—approximately ten months. Yet the district court has not ruled on Micron's transfer motion or its motion to stay the proceedings while transfer is resolved. Instead, it is pressing forward with substantive issues in the case and exposing the parties to substantial and ongoing expenses in what Micron has shown to be an inconvenient venue. *See supra* 6. Indeed, the district court confirmed its intention to hold an imminent *Markman* hearing in its March 10 order, setting the hearing for July 22. Appx171.

Faced with similar delays, this Court has not hesitated to grant petitions for mandamus and direct district courts to rule on transfer motions and stay proceedings in the interim. In *Google*, for instance, the petitioner's transfer motion had been pending for approximately eight months. 2015 WL 5294800, at *1. "Yet, despite the obligation to 'promptly conduct'" transfer proceedings, there had "been no ruling, not even a hearing," all while the district court "pressed forward with the case." *Id.* "Given [that] passage of time" and the district court's "ordering of substantive development of the case," this Court had no trouble

14

ordering the district court to rule on the motion "within 30 days and to stay all proceedings pending completion of the transfer matter." *Id.* at *2; *see also SK hynix*, 835 F. App'x at 600-01 (after eight-month delay in ruling on transfer motion, district court's conduct "amounted to egregious delay and blatant disregard for precedent").

Similarly, in *TracFone*, this Court granted mandamus after the district court failed to rule on a fully briefed transfer motion for eight months. 848 F. App'x at 899–901. And in *Apple II*, this Court granted mandamus, vacating a district court's scheduling order that would have required the parties to complete over 30 additional weeks of fact discovery before deciding a pending transfer motion. 52 F.4th at 1362-63. The motion had been pending in the district court for seven months. *Id.* at 1361. As in *Google*, *TracFone*, and *SK hynix*, this Court emphasized that "precedent entitles parties to have their venue motions prioritized." *Id.* at 1362. These cases establish as a matter of law that the district court's ten-month delay in ruling on Micron's transfer motion here is an abuse of discretion, and mandamus is appropriate.

Granting mandamus here, moreover, serves important interests. As this Court has often said, "[j]udicial economy requires that another

district court should not burden itself with the merits of the action until it is decided that a transfer should be effected." *Apple I*, 979 F.3d at 1337 (citation omitted).  Indeed, it is essential to "address[] motions to transfer at the outset of litigation" in order to avoid any "waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *In re EMC Corp.*, 501 Fed. App'x at 975-76.  With the *Markman* hearing fast approaching, the district court has failed to give Micron's "promptly filed transfer motion[] 'top priority' before resolving substantive issues in the case." *TracFone*, 848 F. App'x at 900.

## II.    Micron Has No Other Adequate Means to Attain Relief.

As discussed in Part I, appellate courts recognize that mandamus is the only means of obtaining relief from a district court's failure to rule on a transfer motion.  Indeed, this Court has, on occasion, faulted a party for *failing* to petition for mandamus to end such delay.  *See In re Apple Inc.*, 456 F. App'x 907, 908 (Fed. Cir. 2012) ("Apple's delay militates against granting [mandamus].  Apple failed to employ any strategy to pressure the district court to act, such as seeking mandamus to direct the district court to rule on the motion.").  And if this Court denies mandamus

and permits the district court to proceed to a *Markman* hearing and further merits discovery, Micron's right to a transfer decision before substantive litigation will be irretrievably lost.

Here, Micron has diligently pursued every other route that might afford relief. It filed its transfer motion just weeks after receiving BeSang's infringement contentions, when no substantive proceedings had yet occurred. Appx058-079, Appx099. The district court acted quickly to schedule a *Markman* hearing, and after the stay pending Micron's IPR petition lifted, the district court acted quickly again to set a new *Markman* hearing date. Appx095-101, Appx168-174. Yet the district court has not scheduled a hearing date on Micron's motion to transfer.

Micron has on numerous occasions reminded the district court of the urgency of its transfer motion. For example, Micron filed an unopposed motion for a hearing on the transfer motion in November 2023. Appx151-153. In a joint status report filed just a week after the district court's stay pending Micron's IPR petition lifted, Micron again reminded the court of the pending transfer motion and "respectfully request[ed] a hearing and adjudication of" the motion, "which had been

17

fully briefed for over three months at the time of the stay." Appx164-165. And, after the district court instead opted to proceed with substantive litigation and set a *Markman* hearing date, Micron diligently moved to stay the case pending resolution of the transfer motion. Appx181-188.

Nevertheless, the district court has thus far remained silent. And while a delay in ruling on a motion might cause few problems in an otherwise slow-moving case, the district court's scheduling order requires the parties to press forward rapidly on the merits and on other procedural issues. *See supra* 9. For instance, the district court has not hesitated to manage merits discovery in this case, issuing an order to schedule a discovery hearing just a day after BeSang filed a motion to compel. Appx179-180.

Both this Court and other circuits have long stressed that this kind of delay is inappropriate and is properly remedied through mandamus relief. *See supra* 11-16. The same relief is warranted here. While the court delays, witnesses face "the inconvenience of traveling to a distant forum." *In re HTC Corp.*, 889 F.3d 1349, 1353 n.5 (Fed. Cir. 2018). The parties bear the same "unnecessary inconvenience and expense." *Id.* And everyone—including the courts—"waste[s] . . . time, energy, and money'

. . . litigating substantive matters in an inconvenient venue while a motion to transfer lingers unnecessarily on the docket." *Google*, 2015 WL 5294800, at *1 (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964)). Micron has no choice but to seek this Court's intervention.

## III.  Mandamus Is Appropriate.

As set forth above, Micron has both a right to mandamus (due to the district court's failure to give priority to Micron's transfer motion) and an inability to obtain relief through any other mechanism.  The remaining question is whether mandamus is "appropriate under the circumstances." *Volkswagen*, 545 F.3d at 311.  It is.  The very harms § 1404(a) is intended to prevent continue to mount as the district court proceeds with the merits of this case, and a writ of mandamus is the only remaining path available to abate them.  This Court should require the district court to decide promptly whether this case should instead be litigated in the District of Idaho.

To start, the strength of Micron's transfer motion should make it easy to grant expeditiously, as the 1404(a) factors clearly weigh in favor of transferring this case to the District of Idaho.

19

The first question under Section 1404(a) is whether a civil action "might have been brought" in the proposed transferee district. *Volkswagen*, 545 F.3d at 312. The two Micron entities have their principal place of business in Boise, Idaho, and both were incorporated under the laws of Idaho, Appx066-067, making venue proper there. *See* 28 U.S.C. § 1400(b).

Further, both the private- and public-interest factors favor transfer to Idaho. *See Volkswagen*, 545 F.3d at 315 (setting forth private- and public-interest factors). The Micron engineers primarily responsible for the research, design, and development of the accused products are based in Boise, Idaho. Appx067-068. For potential witnesses located outside of Idaho, travel to Boise is more convenient than travel to Marshall, Texas. Appx068-069. And as for the public interest, the "interest in having localized interests decided at home" weighs especially strongly in favor of transfer here. *Volkswagen*, 545 F.3d at 315 (citation omitted). The District of Idaho—which is home both to Micron and to the employees

whose work is at issue in this matter—has a compelling local interest in this case. Appx074-075. Texas has none.[4]

In light of these facts, it should be no great lift for the district court to rule on the transfer motion. The district court already has all the factual information it needs to decide whether transfer is appropriate. And the district court has identified no reason why it is incapable of resolving the transfer motion now, before addressing the merits.

The rapid timeline at which this case is proceeding, moreover, underscores the need for mandamus relief now. The *Markman* hearing is scheduled for July 22. Appx171. Claim construction briefing is already underway. Appx204-241, Appx256-291. Fact and expert discovery are set to close in August and October of this year, respectively. Appx171. And trial will begin in seven months. Appx168. This timing is on par with other cases warranting mandamus relief. *See SK hynix*, 835 F. App'x at 601; *TracFone*, 848 F. App'x at 901; *Google*, 2015 WL 5294800, at *1.

---

[4] The remaining public-interest factors, including court congestion, familiarity with the law that will govern the case, and the avoidance of conflict of laws problems, are neutral. *See Volkswagen*, 545 F.3d at 315; Appx076-077.

By delaying resolution of Micron's motion, the district court also delays Micron's ability to seek further appellate relief, if needed. Micron cannot seek appellate review of an adverse ruling until the district court rules. *See, e.g.*, *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1201 (Fed. Cir. 2009) (granting petition for writ of mandamus to transfer case to another district). And had the district court timely considered the transfer motion, Micron could have sought that relief months ago. As it stands, however, Micron has been forced to litigate this case in an inconvenient forum for over two years. And should the district court deny the motion and force Micron to seek further appellate relief, Micron will be forced to continue to litigate this case in Texas for months more—with trial fast approaching.

All told, the district court has not heeded this Court's guidance that transfer motions should be resolved before merits issues. Mandamus is therefore appropriate.

# CONCLUSION

For all of these reasons, this Court should direct the district court to rule promptly on Micron's transfer motion and to stay all other actions in the case until it does so.

Respectfully submitted,

*/s/ John Kappos*

John Kappos

*Counsel for Petitioners*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Federal Circuit by using the appellate CM/ECF system on June 27, 2025.

A copy of the foregoing was served upon the following counsel of record and district court judge via express carrier:

Bradley W. Caldwell
Jason D. Cassady
Austin Curry
R. Seth Reich Jr.
John F. Summers
Aisha Mahmood Haley
Bailey A. Blaies
Bjorn A. Blomquist
James F. Smith
Richard Cochrane
Paul Ashton Duke
Xu Zhou
CALDWELL CASSADY & CURRY
P.C.
2121 N. Pearl Street, Suite 1200
Dallas, TX 75201
Phone: (214) 888-4848

Hon. Rodney Gilstrap
Hon. Roy S. Payne
United States District Court for the
Eastern District of Texas
100 East Houston Street
Marshall, TX 75670
Telephone: (903) 935-3868

Warren J. McCarty, III
THE MCCARTY FIRM
100 Crescent Court, 7th Floor
Dallas, TX 75201
Phone: (214) 459-3195

Deron R. Dacus
THE DACUS FIRM, P.C.
821 ESE Loop 323, Suite 430
Tyler, TX 75701
Phone: (903) 705-1117

I declare under penalty of perjury under the law of the United States that the foregoing is true and correct.

Dated:  June 27, 2025          O'MELVENY & MYERS

                               */s/John Kappos*
                               John Kappos
                               *Counsel for Petitioners*

## CERTIFICATE OF COMPLIANCE

The petition complies with the type-volume limitation of Fed. R. App. P. 21(d)(1) because this petition contains 4,399 words.

This petition complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this petition has been prepared in a proportionally spaced typeface using Microsoft Word 365 in Century Schoolbook 14-point font.

Dated:  June 27, 2025          O'MELVENY & MYERS

/s/ John Kappos
John Kappos
*Counsel for Petitioners*

# APPENDIX

**Query**    **Reports**    **Utilities**    **Help**    **Log Out**

JRG4,JURY,PATENT/TRADEMARK,PROTECTIVE-ORDER

**U.S. District Court**
**Eastern District of TEXAS [LIVE] (Marshall)**
**CIVIL DOCKET FOR CASE #: 2:23-cv-00028-JRG-RSP**

BeSang Inc. v. Micron Technology Inc et al          Date Filed: 01/23/2023
Assigned to: District Judge Rodney Gilstrap        Jury Demand: Both
Referred to: Magistrate Judge Roy S. Payne         Nature of Suit: 830 Patent
Cause: 35:271 Patent Infringement                  Jurisdiction: Federal Question

**Technical Advisor**

**Michael Dean Paul**

**Plaintiff**

**BeSang Inc.**                    represented by  **Aisha Mahmood Haley**
                                                   Caldwell Cassady Curry PC
                                                   2121 N. Pearl St.
                                                   Suite 1200
                                                   Dallas, TX 75201
                                                   214-888-4847
                                                   Email: ahaley@caldwellcc.com
                                                   *ATTORNEY TO BE NOTICED*

                                                   **Austin Curry**
                                                   Caldwell Cassady & Curry, PC
                                                   2121 N. Pearl St.
                                                   Suite 1200
                                                   Dallas, TX 75201
                                                   214-888-4848
                                                   Fax: 214-888-4849
                                                   Email: acurry@caldwellcc.com
                                                   *ATTORNEY TO BE NOTICED*

                                                   **Bailey Alexandra Blaies**
                                                   Caldwell Cassady & Curry, PC
                                                   2121 N. Pearl St.
                                                   Suite 1200
                                                   Dallas, TX 75201
                                                   214.888.4855
                                                   Fax: 214.888.4849
                                                   Email: bblaies@caldwellcc.com
                                                   *ATTORNEY TO BE NOTICED*

                                                   **Bjorn A Blomquist**
                                                   Caldwell Cassady Curry PC
                                                   2121 N. Pearl St.
                                                   Ste. 1200
                                                   Dallas, TX 75201

214-888-4960
Fax: 214-888-4849
Email: bblomquist@caldwellcc.com
*ATTORNEY TO BE NOTICED*

**Bradley Wayne Caldwell**
Caldwell Cassady & Curry, PC
2121 N. Pearl St.
Suite 1200
Dallas, TX 75201
(214) 888-4848
Fax: 214-888-4849
Email: bcaldwell@caldwellcc.com
*ATTORNEY TO BE NOTICED*

**Deron R Dacus**
The Dacus Firm, PC
821 ESE Loop 323
Suite 430
Tyler, TX 75701
903/705-1117
Fax: 903/581-2543
Email: ddacus@dacusfirm.com
*ATTORNEY TO BE NOTICED*

**James F Smith**
Caldwell Cassady Curry PC
None
2121 N Pearl St.
Ste. 1200
Dallas, TX 75201
214-888-4856
Fax: 214-888-4849
Email: jsmith@caldwellcc.com
*ATTORNEY TO BE NOTICED*

**Jason Dodd Cassady**
Caldwell Cassady & Curry, PC
2121 N. Pearl St.
Suite 1200
Dallas, TX 75201
214-888-4848
Fax: 214-888-4849
Email: jcassady@caldwellcc.com
*ATTORNEY TO BE NOTICED*

**John Franklin Summers**
Caldwell Cassady Curry PC
2121 N. Pearl St.
Suite 1200
Dallas, TX 75201
214-888-4858
Fax: 214-888-4849
Email: jsummers@caldwellcc.com

Appx2

*ATTORNEY TO BE NOTICED*

**Paul Ashton Duke**
2121 N. Pearl Street
Ste 1200
Dallas, TX 75201
214-888-4857
Email: aduke@caldwellcc.com
*ATTORNEY TO BE NOTICED*

**Richard Anthony Cochrane**
Caldwell Cassady Curry PC
2121 N. Pearl St.
Ste. 1200
Dallas, TX 75201
214-888-4854
Fax: 214-888-4849
Email: rcochrane@caldwellcc.com
*ATTORNEY TO BE NOTICED*

**Robert Seth Reich , Jr**
Caldwell Cassady & Curry, PC
2121 N. Pearl St.
Suite 1200
Dallas, TX 75201
214-888-4844
Fax: 214-888-4849
Email: sreich@caldwellcc.com
*ATTORNEY TO BE NOTICED*

**Xu Zhou**
Caldwell Cassady & Curry, PC
2121 N. Pearl St.
Suite 1200
Dallas, TX 75201
214-888-4859
Email: xzhou@caldwellcc.com
*ATTORNEY TO BE NOTICED*

**Warren Joseph McCarty , III**
The McCarty Firm PC
100 Crescent Court
Ste Floor 7
Dallas, TX 75201
214-459-3196
Email: wmccarty@mccartyfirm.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Micron Technology Inc**                    represented by **John C Kappos**
                                             O'Melveny & Myers LLP

Appx3

2801 North Harwood Street
Suite 1600
Dallas, TX 75201-2692
972-360-1900
Email: jkappos@omm.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cason Garrett Cole**
O'Melveny & Myers LLP
TX
2801 North Harwood Street
Suite 1600
Dallas, TX 75201
972-360-1916
Email: ccole@omm.com
*ATTORNEY TO BE NOTICED*

**Frances Mackay**
O'Melveny & Myers LLP
2801 North Harwood Street
Suite 1600
Dallas, TX 75201
972-360-1900
Email: fmackay@omm.com
*ATTORNEY TO BE NOTICED*

**James Travis Underwood**
Gillam & Smith LLP
102 N College, Suite 800
Tyler, TX 75702
903-934-8450
Fax: 903-934-9257
Email: travis@gillamsmithlaw.com
*ATTORNEY TO BE NOTICED*

**Patric Reinbold**
O'Melveny & Myers LLP
1625 Eye Street, NW
DC 11042
Washington, DC 20006
202-383-5165
Email: preinbold@omm.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Timothy S Durst**
O'Melveny & Myers LLP
2801 North Harwood Street
Suite 1600
Dallas, TX 75201-2692
972-360-1900
Email: tdurst@omm.com
*ATTORNEY TO BE NOTICED*

**William M Fink**
O'Melveny & Myers LLP - DC
1625 Eye St NW
Washington, DC 20037
202-383-5300
Fax: 202-383-5414
Email: tfink@omm.com
*ATTORNEY TO BE NOTICED*

**Xin-Yi Zhou**
O'Melveny & Myers LLP - LA
400 South Hope Street
18th Floor
Los Angeles, Ca 90071
213-463-7576
Fax: 213-430-6407
Email: vzhou@omm.com
*ATTORNEY TO BE NOTICED*

**Melissa Richards Smith**
Gillam & Smith, LLP
303 South Washington Avenue
Marshall, TX 75670
903-934-8450
Fax: 903-934-9257
Email: melissa@gillamsmithlaw.com
*ATTORNEY TO BE NOTICED*

<u>**Defendant**</u>

**Micron Semiconductor Products, Inc**          represented by **John C Kappos**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cason Garrett Cole**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Frances Mackay**
(See above for address)
*ATTORNEY TO BE NOTICED*

**James Travis Underwood**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Patric Reinbold**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Timothy S Durst**
(See above for address)

*ATTORNEY TO BE NOTICED*

**William M Fink**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Xin-Yi Zhou**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Melissa Richards Smith**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**MICRON TECHNOLOGY TEXAS, LLC**    represented by    **John C Kappos**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cason Garrett Cole**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Frances Mackay**
(See above for address)
*ATTORNEY TO BE NOTICED*

**James Travis Underwood**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Patric Reinbold**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Timothy S Durst**
(See above for address)
*ATTORNEY TO BE NOTICED*

**William M Fink**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Xin-Yi Zhou**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Melissa Richards Smith**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**MICRON TECHNOLOGY TEXAS, LLC**    represented by   **Melissa Richards Smith**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Micron Semiconductor Products, Inc**    represented by   **Melissa Richards Smith**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Micron Technology Inc**    represented by   **Melissa Richards Smith**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Counter Defendant**

**BeSang Inc.**    represented by   **Aisha Mahmood Haley**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Austin Curry**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Bailey Alexandra Blaies**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Bjorn A Blomquist**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Bradley Wayne Caldwell**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Deron R Dacus**
(See above for address)
*ATTORNEY TO BE NOTICED*

**James F Smith**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jason Dodd Cassady**
(See above for address)
*ATTORNEY TO BE NOTICED*

**John Franklin Summers**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Paul Ashton Duke**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Robert Seth Reich , Jr**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Xu Zhou**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Warren Joseph McCarty , III**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 01/23/2023 | 1 | COMPLAINT against MICRON TECHNOLOGY TEXAS, LLC, Micron Semiconductor Products, Inc, Micron Technology Inc ( Filing fee $ 402 receipt number ATXEDC-9322841.), filed by BeSang Inc.. (Attachments: # 1 Exhibit A, # 2 Civil Cover Sheet) (McCarty, Warren) (Entered: 01/23/2023) |
| 01/23/2023 | 2 | CORPORATE DISCLOSURE STATEMENT filed by BeSang Inc. (McCarty, Warren) (Entered: 01/23/2023) |
| 01/23/2023 | 3 | DEMAND for Trial by Jury by BeSang Inc.. (McCarty, Warren) (Entered: 01/23/2023) |
| 01/23/2023 | 4 | Notice of Filing of Patent/Trademark Form (AO 120). AO 120 mailed to the Director of the U.S. Patent and Trademark Office. (McCarty, Warren) (Entered: 01/23/2023) |
| 01/23/2023 | 5 | NOTICE of Attorney Appearance by Bradley Wayne Caldwell on behalf of BeSang Inc. (Caldwell, Bradley) (Entered: 01/23/2023) |
| 01/23/2023 | 6 | NOTICE of Attorney Appearance by Jason Dodd Cassady on behalf of BeSang Inc. (Cassady, Jason) (Entered: 01/23/2023) |
| 01/23/2023 | 7 | NOTICE of Attorney Appearance by John Austin Curry on behalf of BeSang Inc. (Curry, John) (Entered: 01/23/2023) |
| 01/24/2023 | | Case assigned to District Judge Rodney Gilstrap and Magistrate Judge Roy S. Payne. (ch, ) (Entered: 01/24/2023) |
| 01/24/2023 | | In accordance with the provisions of 28 USC Section 636(c), you are hereby notified that a U.S. Magistrate Judge of this district court is available to conduct any or all proceedings in this case including a jury or non-jury trial and to order the entry of a final judgment. The form Consent to Proceed Before Magistrate Judge is available on our website. All signed consent forms, excluding pro se parties, should be filed electronically using the event *Notice Regarding Consent to Proceed Before Magistrate Judge*. (ch, ) (Entered: 01/24/2023) |
| 01/24/2023 | 8 | SUMMONS Issued as to MICRON TECHNOLOGY TEXAS, LLC, Micron Semiconductor Products, Inc, Micron Technology Inc. (Attachments: # 1 Summons(es), # 2 Summons(es))(ch, ) (Entered: 01/24/2023) |
| 01/24/2023 | 9 | NOTICE of Attorney Appearance by Robert Seth Reich, Jr on behalf of BeSang Inc. (Reich, Robert) (Entered: 01/24/2023) |

| 01/24/2023 | 10 | NOTICE of Attorney Appearance by Xu Zhou on behalf of BeSang Inc. (Zhou, Xu) (Entered: 01/24/2023) |
|---|---|---|
| 01/24/2023 | 11 | NOTICE of Attorney Appearance by Bjorn A Blomquist on behalf of BeSang Inc. (Blomquist, Bjorn) (Entered: 01/24/2023) |
| 01/24/2023 | 12 | NOTICE of Attorney Appearance by James F Smith on behalf of BeSang Inc. (Smith, James) (Entered: 01/24/2023) |
| 01/25/2023 | 13 | SUMMONS Returned Executed by BeSang Inc.. Micron Technology Inc served on 1/24/2023, answer due 2/14/2023. (McCarty, Warren) (Entered: 01/25/2023) |
| 01/25/2023 | 14 | SUMMONS Returned Executed by BeSang Inc.. Micron Semiconductor Products, Inc served on 1/24/2023, answer due 2/14/2023. (McCarty, Warren) (Entered: 01/25/2023) |
| 01/25/2023 | 15 | SUMMONS Returned Executed by BeSang Inc.. MICRON TECHNOLOGY TEXAS, LLC served on 1/24/2023, answer due 2/14/2023. (McCarty, Warren) (Entered: 01/25/2023) |
| 02/13/2023 | 16 | Defendant's Unopposed First Application for Extension of Time to Answer Complaint re MICRON TECHNOLOGY TEXAS, LLC, Micron Semiconductor Products, Inc, Micron Technology Inc.( Cole, Cason) (Entered: 02/13/2023) |
| 02/13/2023 | | Defendant's Unopposed First Application for Extension of Time to Answer Complaint is granted pursuant to Local Rule CV-12 for MICRON TECHNOLOGY TEXAS, LLC to 3/31/2023; Micron Semiconductor Products, Inc to 3/31/2023; Micron Technology Inc to 3/31/2023. 45 Days Granted for Deadline Extension.( nkl, ) (Entered: 02/13/2023) |
| 02/22/2023 | 17 | NOTICE of Attorney Appearance by Frances Mackay on behalf of MICRON TECHNOLOGY TEXAS, LLC, Micron Semiconductor Products, Inc, Micron Technology Inc (Mackay, Frances) (Entered: 02/22/2023) |
| 02/22/2023 | 18 | NOTICE of Attorney Appearance by Xin-Yi Zhou on behalf of MICRON TECHNOLOGY TEXAS, LLC, Micron Semiconductor Products, Inc, Micron Technology Inc (Zhou, Xin-Yi) (Entered: 02/22/2023) |
| 02/22/2023 | 19 | NOTICE of Attorney Appearance by Timothy S Durst on behalf of MICRON TECHNOLOGY TEXAS, LLC, Micron Semiconductor Products, Inc, Micron Technology Inc (Durst, Timothy) (Entered: 02/22/2023) |
| 02/22/2023 | 20 | NOTICE of Attorney Appearance by John C Kappos on behalf of MICRON TECHNOLOGY TEXAS, LLC, Micron Semiconductor Products, Inc, Micron Technology Inc (Kappos, John) (Entered: 02/22/2023) |
| 02/22/2023 | 21 | NOTICE of Attorney Appearance - Pro Hac Vice by William M Fink on behalf of MICRON TECHNOLOGY TEXAS, LLC, Micron Semiconductor Products, Inc, Micron Technology Inc. Filing fee $ 100, receipt number ATXEDC-9368151. (Fink, William) (Entered: 02/22/2023) |
| 02/23/2023 | 22 | NOTICE of Attorney Appearance - Pro Hac Vice by Patric Reinbold on behalf of MICRON TECHNOLOGY TEXAS, LLC, Micron Semiconductor Products, Inc, Micron Technology Inc. Filing fee $ 100, receipt number ATXEDC-9369682. (Reinbold, Patric) (Entered: 02/23/2023) |
| 03/31/2023 | 23 | ANSWER to 1 Complaint, *AFFIRMATIVE DEFENSES*, COUNTERCLAIM against BeSang Inc. by MICRON TECHNOLOGY TEXAS, LLC, Micron Semiconductor Products, Inc, Micron Technology Inc.(Smith, Melissa) (Entered: 03/31/2023) |
| 03/31/2023 | 24 | DEMAND for Trial by Jury by MICRON TECHNOLOGY TEXAS, LLC, Micron Semiconductor Products, Inc, Micron Technology Inc. (Smith, Melissa) (Entered: |

| | | |
|---|---|---|
| | | 03/31/2023) |
| 03/31/2023 | 25 | CORPORATE DISCLOSURE STATEMENT filed by MICRON TECHNOLOGY TEXAS, LLC, Micron Semiconductor Products, Inc, Micron Technology Inc (Smith, Melissa) (Entered: 03/31/2023) |
| 04/03/2023 | | In accordance with the provisions of 28 USC Section 636(c), you are hereby notified that a U.S. Magistrate Judge of this district court is available to conduct any or all proceedings in this case including a jury or non-jury trial and to order the entry of a final judgment. The form Consent to Proceed Before Magistrate Judge is available on our website. All signed consent forms, excluding pro se parties, should be filed electronically using the event *Notice Regarding Consent to Proceed Before Magistrate Judge*. (nkl, ) (Entered: 04/03/2023) |
| 04/03/2023 | 26 | NOTICE of Readiness for Scheduling Conference by BeSang Inc. (McCarty, Warren) (Entered: 04/03/2023) |
| 04/19/2023 | 27 | ORDER - Scheduling/Case Management Conference set for 5/30/2023 01:30 PM before District Judge Rodney Gilstrap. Signed by Magistrate Judge Roy S. Payne on 4/19/2023. (ch, ) (Entered: 04/19/2023) |
| 04/20/2023 | 28 | NOTICE of Attorney Appearance by Deron R Dacus on behalf of BeSang Inc. (Dacus, Deron) (Entered: 04/20/2023) |
| 04/24/2023 | 29 | ANSWER to 23 Answer to Complaint, Counterclaim by BeSang Inc..(McCarty, Warren) (Entered: 04/24/2023) |
| 05/30/2023 | | Minute Entry for proceedings held before District Judge Rodney Gilstrap: Scheduling Conference/Case Management Conference held on 5/30/2023. Counsel for the parties appeared. Court asked whether they consented to trial before the U.S. Magistrate Judge. Court then gave counsel Claim Construction and Jury Selection/Trial dates. (Court Reporter Shawn McRoberts) (aeb) (Entered: 05/31/2023) |
| 05/31/2023 | 30 | MOTION to Change Venue *TO THE DISTRICT OF IDAHO UNDER 28 U.S.C. § 1404(a)* by MICRON TECHNOLOGY TEXAS, LLC, Micron Semiconductor Products, Inc, Micron Technology Inc. (Attachments: # 1 Affidavit/Declaration F. Mackay, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12, # 13 Exhibit 13, # 14 Proposed Order)(Smith, Melissa) (Entered: 05/31/2023) |
| 05/31/2023 | 31 | Unopposed MOTION TO FILE UNDER SEAL by MICRON TECHNOLOGY TEXAS, LLC, Micron Semiconductor Products, Inc, Micron Technology Inc. (Attachments: # 1 Proposed Order)(Smith, Melissa) (Entered: 05/31/2023) |
| 05/31/2023 | 32 | SEALED ADDITIONAL ATTACHMENTS to Main Document: 30 MOTION to Change Venue *TO THE DISTRICT OF IDAHO UNDER 28 U.S.C. § 1404(a)*. (Attachments: # 1 Affidavit/Declaration M. Kiehlbauch, # 2 Exhibit 1)(Smith, Melissa) (Entered: 05/31/2023) |
| 05/31/2023 | 33 | NOTICE of Attorney Appearance by Richard Anthony Cochrane on behalf of BeSang Inc. (Cochrane, Richard) (Entered: 05/31/2023) |
| 06/01/2023 | 34 | MOTION to Stay *PENDING INTER PARTES REVIEW* by MICRON TECHNOLOGY TEXAS, LLC, Micron Semiconductor Products, Inc, Micron Technology Inc. (Attachments: # 1 Affidavit/Declaration F. Mackay, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Proposed Order)(Smith, Melissa) (Entered: 06/01/2023) |
| 06/01/2023 | 35 | Unopposed MOTION TO FILE UNDER SEAL by MICRON TECHNOLOGY TEXAS, LLC, Micron Semiconductor Products, Inc, Micron Technology Inc. (Attachments: # 1 |

| | | |
|---|---|---|
| | | Proposed Order)(Smith, Melissa) (Entered: 06/01/2023) |
| 06/01/2023 | 36 | SEALED ADDITIONAL ATTACHMENTS to Main Document: 34 MOTION to Stay *PENDING INTER PARTES REVIEW*. (Attachments: # 1 Exhibit 1)(Smith, Melissa) (Entered: 06/01/2023) |
| 06/02/2023 | 37 | ORDER granting 31 Motion to File Under Seal. Signed by Magistrate Judge Roy S. Payne on 6/2/2023. (nkl, ) (Entered: 06/02/2023) |
| 06/02/2023 | 38 | ORDER granting 35 Motion to File Under Seal. Signed by Magistrate Judge Roy S. Payne on 6/2/2023. (nkl, ) (Entered: 06/02/2023) |
| 06/06/2023 | 39 | Unopposed MOTION for Discovery *Plaintiff's Unopposed Motion for Leave to Conduct Expedited Venue Discovery* by BeSang Inc.. (Attachments: # 1 Proposed Order)(McCarty, Warren) (Entered: 06/06/2023) |
| 06/07/2023 | 40 | NOTICE of Attorney Appearance - Pro Hac Vice by Aisha Mahmood Haley on behalf of BeSang Inc.. Filing fee $ 100, receipt number ATXEDC-9538446. (Mahmood Haley, Aisha) (Entered: 06/07/2023) |
| 06/07/2023 | 41 | REDACTION to 32 Sealed Additional Attachments to Main Document *Notice of Sealed Additional Attachments* by MICRON TECHNOLOGY TEXAS, LLC, Micron Semiconductor Products, Inc, Micron Technology Inc. (Attachments: # 1 Affidavit/Declaration of Mark Kiehlbauch, # 2 Exhibit 1)(Smith, Melissa) (Entered: 06/07/2023) |
| 06/07/2023 | 42 | REDACTION to 30 MOTION to Change Venue *TO THE DISTRICT OF IDAHO UNDER 28 U.S.C. § 1404(a)* by MICRON TECHNOLOGY TEXAS, LLC, Micron Semiconductor Products, Inc, Micron Technology Inc. (Attachments: # 1 Exhibit 3) (Smith, Melissa) (Entered: 06/07/2023) |
| 06/07/2023 | 43 | REDACTION to 36 Sealed Additional Attachments to Main Document *Notice of Sealed Additional Attachment* by MICRON TECHNOLOGY TEXAS, LLC, Micron Semiconductor Products, Inc, Micron Technology Inc. (Attachments: # 1 Exhibit 1) (Smith, Melissa) (Entered: 06/07/2023) |
| 06/09/2023 | 44 | ORDER granting 39 Motion for Leave to Conduct Expedited Venue Discovery. Signed by Magistrate Judge Roy S. Payne on 6/8/2023. (nkl, ) (Entered: 06/09/2023) |
| 06/13/2023 | 45 | MOTION JOINT MOTION FOR ENTRY OF AGREED DOCKET CONTROL ORDER by BeSang Inc.. (Attachments: # 1 Exhibit A)(McCarty, Warren) (Entered: 06/13/2023) |
| 06/13/2023 | 46 | **DEFICIENT DOCUMENT**<br><br>Joint MOTION for Discovery *JOINT MOTION FOR ENTRY OF DISPUTED DISCOVERY ORDER* by BeSang Inc.. (Attachments: # 1 Exhibit A, # 2 Exhibit B) (McCarty, Warren) Modified on 6/14/2023 (nkl, ). (Entered: 06/14/2023) |
| 06/14/2023 | | NOTICE of Deficiency regarding the Joint MOTION for Discovery JOINT MOTION FOR ENTRY OF DISPUTED DISCOVERY ORDER submitted document 46 does not contain a Certificate of Conference. Correction should be made by one business day. (nkl, ) (Entered: 06/14/2023) |
| 06/14/2023 | 47 | MOTION Joint Motion for Entry of Disputed Discovery Order by BeSang Inc.. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(McCarty, Warren) (Entered: 06/14/2023) |
| 06/14/2023 | 48 | DOCKET CONTROL ORDER re 45 MOTION JOINT MOTION FOR ENTRY OF AGREED DOCKET CONTROL ORDER filed by BeSang Inc.., Pretrial Conference set for 10/15/2024 09:00 AM before Magistrate Judge Roy S. Payne., Amended Pleadings |

| | | |
|---|---|---|
| | | due by 2/22/2024., Jury Selection set for 11/18/2024 09:00AM before District Judge Rodney Gilstrap., Markman Hearing set for 5/9/2024 09:00 AM before Magistrate Judge Roy S. Payne., Motions in Limine due by 9/23/2024., Proposed Pretrial Order due by 10/7/2024. Signed by Magistrate Judge Roy S. Payne on 6/14/2023. (nkl, ) (Entered: 06/14/2023) |
| 06/14/2023 | 49 | DISCOVERY ORDER re 47 Motion for Entry of Disputed Discovery Order. Signed by Magistrate Judge Roy S. Payne on 6/14/2023. (nkl, ) (Entered: 06/14/2023) |
| 06/15/2023 | 50 | RESPONSE in Opposition re 34 MOTION to Stay *PENDING INTER PARTES REVIEW filed by BeSang Inc.*. (Attachments: # 1 Proposed Order)(McCarty, Warren) (Entered: 06/15/2023) |
| 06/20/2023 | 51 | Joint MOTION to Amend/Correct 48 Order,,, Terminate Motions,,, Scheduling Order,, *Joint Motion to Amend the Docket Control Order* by BeSang Inc.. (Attachments: # 1 Proposed Order)(McCarty, Warren) (Entered: 06/20/2023) |
| 06/20/2023 | 52 | NOTICE by BeSang Inc. *of Compliance Regarding Initial and Additional Disclosures* (McCarty, Warren) (Entered: 06/20/2023) |
| 06/21/2023 | 53 | NOTICE by MICRON TECHNOLOGY TEXAS, LLC, Micron Semiconductor Products, Inc, Micron Technology Inc *of Compliance Regarding Initial and Additional Disclosures* (Smith, Melissa) (Entered: 06/21/2023) |
| 06/21/2023 | 54 | FIRST AMENDED DOCKET CONTROL ORDER re 51 Motion to Amend/Correct the Docket Control Order. Signed by Magistrate Judge Roy S. Payne on 6/21/2023. (nkl, ) (Entered: 06/21/2023) |
| 06/21/2023 | 55 | NOTICE of Attorney Appearance by John Franklin Summers on behalf of BeSang Inc. (Summers, John) (Entered: 06/21/2023) |
| 06/23/2023 | 56 | REPLY to Response to Motion re 34 MOTION to Stay *PENDING INTER PARTES REVIEW filed by MICRON TECHNOLOGY TEXAS, LLC, Micron Semiconductor Products, Inc, Micron Technology Inc*. (Smith, Melissa) (Entered: 06/23/2023) |
| 06/27/2023 | 57 | Joint MOTION Joint Motion for Entry of Agreed E-Discovery Order by BeSang Inc.. (Attachments: # 1 Proposed Order)(McCarty, Warren) (Entered: 06/27/2023) |
| 06/27/2023 | 58 | Joint MOTION Joint Motion for Entry of Agreed Protective Order by BeSang Inc.. (Attachments: # 1 Proposed Order)(McCarty, Warren) (Entered: 06/27/2023) |
| 06/28/2023 | 59 | PROTECTIVE ORDER granting 58 Joint MOTION Joint Motion for Entry of Agreed Protective Order. Signed by Magistrate Judge Roy S. Payne on 6/28/2023. (ch, ) (Entered: 06/29/2023) |
| 06/28/2023 | 60 | E-DISCOVERY ORDER granting 57 Joint MOTION Joint Motion for Entry of Agreed E-Discovery Order. Signed by Magistrate Judge Roy S. Payne on 6/28/2023. (ch, ) (Entered: 06/29/2023) |
| 06/30/2023 | 61 | SUR-REPLY to Reply to Response to Motion re 34 MOTION to Stay *PENDING INTER PARTES REVIEW filed by BeSang Inc.*. (McCarty, Warren) (Entered: 06/30/2023) |
| 07/12/2023 | 62 | NOTICE by MICRON TECHNOLOGY TEXAS, LLC, Micron Semiconductor Products, Inc, Micron Technology Inc *of Compliance regarding P.R. 3-3 and 3-4* (Smith, Melissa) (Entered: 07/12/2023) |
| 08/18/2023 | 63 | Joint MOTION for Entry of Amended Protective Order by BeSang Inc.. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(McCarty, Warren) (Entered: 08/18/2023) |

| | | |
|---|---|---|
| 08/21/2023 | 64 | AMENDED PROTECTIVE ORDER. Signed by Magistrate Judge Roy S. Payne on 8/21/2023. (nkl, ) (Entered: 08/21/2023) |
| 08/22/2023 | 65 | SEALED RESPONSE to Motion re 30 MOTION to Change Venue TO THE DISTRICT OF IDAHO UNDER 28 U.S.C. § 1404(a) filed by BeSang Inc.. (Attachments: # 1 Affidavit/Declaration, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E, # 7 Exhibit F, # 8 Exhibit G, # 9 Exhibit H, # 10 Exhibit I, # 11 Exhibit J, # 12 Exhibit K, # 13 Exhibit L, # 14 Exhibit M, # 15 Exhibit N, # 16 Exhibit O, # 17 Exhibit P, # 18 Exhibit Q, # 19 Exhibit R, # 20 Exhibit S, # 21 Exhibit T, # 22 Exhibit U, # 23 Exhibit V, # 24 Exhibit W, # 25 Exhibit X, # 26 Exhibit Y, # 27 Exhibit Z, # 28 Exhibit AA, # 29 Exhibit BB, # 30 Exhibit CC, # 31 Exhibit DD, # 32 Exhibit EE, # 33 Exhibit FF, # 34 Exhibit GG, # 35 Exhibit HH, # 36 Exhibit II, # 37 Proposed Order)(McCarty, Warren) (Entered: 08/22/2023) |
| 08/29/2023 | 66 | REDACTION to 65 Sealed Response to Motion,,, by BeSang Inc.. (Attachments: # 1 Redacted Declaration, # 2 Redacted Exhibit A, # 3 Redacted Exhibit B, # 4 Redacted Exhibit C, # 5 Exhibit D, # 6 Redacted Exhibit E, # 7 Redacted Exhibit F, # 8 Exhibit G, # 9 Exhibit H, # 10 Redacted Exhibit I, # 11 Redacted Exhibit J, # 12 Redacted Exhibit K, # 13 Redacted Exhibit L, # 14 Redacted Exhibit M, # 15 Redacted Exhibit N, # 16 Redacted Exhibit O, # 17 Exhibit P, # 18 Exhibit Q, # 19 Exhibit R, # 20 Redacted Exhibit S, # 21 Redacted Exhibit U, # 22 Redacted Exhibit U, # 23 Exhibit V, # 24 Redacted Exhibit W, # 25 Redacted Exhibit X, # 26 Redacted Exhibit Y, # 27 Exhibit Z, # 28 Exhibit AA, # 29 Exhibit BB, # 30 Redacted Exhibit CC, # 31 Exhibit DD, # 32 Exhibit EE, # 33 Exhibit FF, # 34 Exhibit GG, # 35 Redacted Exhibit HH, # 36 Redacted Exhibit II, # 37 Proposed Order)(McCarty, Warren) (Entered: 08/29/2023) |
| 08/30/2023 | 67 | SEALED PATENT REPLY to Response to PATENT Motion re 30 MOTION to Change Venue TO THE DISTRICT OF IDAHO UNDER 28 U.S.C. § 1404(a) filed by MICRON TECHNOLOGY TEXAS, LLC, Micron Semiconductor Products, Inc, Micron Technology Inc. (Attachments: # 1 Declaration of Frances Mackay, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12, # 13 Exhibit 13, # 14 Exhibit 16, # 15 Exhibit 19, # 16 Exhibit 20)(Smith, Melissa) (Entered: 08/30/2023) |
| 08/30/2023 | 68 | **FILED IN ERROR**<br><br>Additional Attachments to Main Document: 67 Sealed PATENT Reply to Response to PATENT Motion,,. (Attachments: # 1 Exhibit 14, # 2 Exhibit 15, # 3 Exhibit 17, # 4 Exhibit 18)(Smith, Melissa) Modified on 8/31/2023 (nkl, ). (Entered: 08/30/2023) |
| 08/31/2023 | 69 | Additional Attachments to Main Document: 67 Sealed PATENT Reply to Response to PATENT Motion,,.. (Attachments: # 1 Exhibit 6, # 2 Exhibit 14, # 3 Exhibit 15, # 4 Exhibit 17, # 5 Exhibit 18)(Smith, Melissa) (Entered: 08/31/2023) |
| 08/31/2023 | | ***FILED IN ERROR -Please refile with cover page with case style heading and attorney signature. Document # 68, Additional Attachments to Main Document. PLEASE IGNORE.*** (nkl, ) (Entered: 08/31/2023) |
| 09/06/2023 | 70 | REDACTION to 67 Sealed PATENT Reply to Response to PATENT Motion,, by MICRON TECHNOLOGY TEXAS, LLC, Micron Semiconductor Products, Inc, Micron Technology Inc. (Attachments: # 1 Affidavit/Declaration F. Mackay, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12, # 13 Exhibit 13, # 14 Exhibit 16, # 15 Exhibit 19, # 16 Exhibit 20)(Smith, Melissa) (Entered: 09/06/2023) |
| 09/06/2023 | 71 | SEALED SUR-REPLY to Reply to Response to Motion re 30 MOTION to Change Venue TO THE DISTRICT OF IDAHO UNDER 28 U.S.C. § 1404(a) filed by BeSang Inc. |

Appx13

| | | |
|---|---|---|
| | | (Attachments: # <u>1</u> Sealed Declaration of Warren J. McCarty, III, # <u>2</u> Sealed Exhibit JJ, # <u>3</u> Sealed Exhibit KK, # <u>4</u> Sealed Exhibit LL, # <u>5</u> Exhibit MM)(McCarty, Warren) (Entered: 09/06/2023) |
| 09/13/2023 | <u>72</u> | REDACTION to <u>71</u> Sealed Sur-Reply to Reply to Response to Motion, by BeSang Inc.. (Attachments: # <u>1</u> Redacted Declaration, # <u>2</u> Redacted Exhibit JJ, # <u>3</u> Redacted Exhibit KK, # <u>4</u> Redacted Exhibit LL, # <u>5</u> Exhibit MM)(McCarty, Warren) (Entered: 09/13/2023) |
| 10/20/2023 | <u>73</u> | UNOPPOSED MOTION to Amend/Correct *Plaintiff BeSang, Inc.'s Unopposed Motion for Leave to Amend BeSang's Infringement Contentions* by BeSang Inc.. (Attachments: # <u>1</u> Proposed Order)(McCarty, Warren) (Entered: 10/20/2023) |
| 10/23/2023 | <u>74</u> | Sealed Document. Plaintiff BeSang, Inc.'s Notice of Supplemental Facts in Support of Its Opposition to Defendants' Motion to Transfer Venue (Dkt. 30) (Attachments: # <u>1</u> Exhibit A, # <u>2</u> Exhibit B)(McCarty, Warren) (Entered: 10/23/2023) |
| 10/24/2023 | <u>75</u> | ORDER granting <u>73</u> Motion to Amend/Correct Plaintiff BeSang, Inc.'s Unopposed Motion for Leave to Amend BeSang's Infringement Contentions. Signed by Magistrate Judge Roy S. Payne on 10/24/2023. (nkl, ) (Entered: 10/24/2023) |
| 10/25/2023 | <u>76</u> | Exhibit B to docket 74 has been received by Clerk's office and has been stored in server room. (nkl, ) (Entered: 10/25/2023) |
| 10/27/2023 | <u>77</u> | UNOPPOSED SEALED MOTION *FOR LEAVE TO FILE SUPPLEMENTAL BRIEF IN SUPPORT OF DEFENDANTS MOTION TO TRANSFER VENUE TO THE DISTRICT OF IDAHO UNDER 28 U.S.C. § 1404(a) (D.I. 30)* by MICRON TECHNOLOGY TEXAS, LLC, Micron Semiconductor Products, Inc, Micron Technology Inc. (Attachments: # <u>1</u> Proposed Order)(Smith, Melissa) (Entered: 10/27/2023) |
| 10/27/2023 | <u>78</u> | Sealed Document DEFENDANTS' SUPPLEMENTAL BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO TRANSFER VENUE TO DISTRICT OF IDAHO UNDER 28 U.S.C. § 1404(a) (D.I. 30) (Attachments: # <u>1</u> Exhibit 21, # <u>2</u> Exhibit 22) (Smith, Melissa) (Entered: 10/27/2023) |
| 10/30/2023 | <u>79</u> | ORDER granting <u>77</u> Sealed Motion for Leave to File Supplemental Brief in Support of Defendants Motion to Transfer Venue to the District of Idaho Under 28 U.S.C. § 1404(a). Signed by Magistrate Judge Roy S. Payne on 10/30/2023. (nkl, ) (Entered: 10/30/2023) |
| 11/02/2023 | <u>80</u> | REDACTION to <u>77</u> UNOPPOSED SEALED MOTION *FOR LEAVE TO FILE SUPPLEMENTAL BRIEF IN SUPPORT OF DEFENDANTS MOTION TO TRANSFER VENUE TO THE DISTRICT OF IDAHO UNDER 28 U.S.C. § 1404(a) (D.I. 30)* by MICRON TECHNOLOGY TEXAS, LLC, Micron Semiconductor Products, Inc, Micron Technology Inc. (Attachments: # <u>1</u> Proposed Order)(Smith, Melissa) (Entered: 11/02/2023) |
| 11/02/2023 | <u>81</u> | REDACTION to <u>78</u> Sealed Document by MICRON TECHNOLOGY TEXAS, LLC, Micron Semiconductor Products, Inc, Micron Technology Inc. (Attachments: # <u>1</u> Exhibit 21, # <u>2</u> Exhibit 22)(Smith, Melissa) (Entered: 11/02/2023) |
| 11/02/2023 | <u>82</u> | **FILED IN ERROR PER ATTORNEY** <br><br> NOTICE by Micron Technology Inc *OF DISSOLUTION OF MICRON TECHNOLOGY TEXAS, LLC* (Smith, Melissa) Modified on 11/3/2023 (nkl, ). (Entered: 11/02/2023) |
| 11/02/2023 | <u>83</u> | NOTICE by Micron Technology Inc *OF DISSOLUTION OF MICRON TECHNOLOGY TEXAS, LLC* (Attachments: # <u>1</u> Exhibit A)(Smith, Melissa) (Entered: 11/02/2023) |
| 11/03/2023 | | **\*\*\*FILED IN ERROR PER ATTORNEY. Document # 82, Notice. PLEASE IGNORE.\*\*\*** (nkl, ) (Entered: 11/03/2023) |

Appx14

| | | |
|---|---|---|
| 11/03/2023 | 84 | UNOPPOSED MOTION for Hearing *On Defendants' Motion to Transfer Venue to the District of Idaho Under 28 U.S.C. § 1404 (DKT. 30)* by Micron Semiconductor Products, Inc, Micron Technology Inc. (Attachments: # 1 Proposed Order)(Smith, Melissa) (Entered: 11/03/2023) |
| 11/14/2023 | 85 | NOTICE by MICRON TECHNOLOGY TEXAS, LLC, Micron Semiconductor Products, Inc, Micron Technology Inc re 30 MOTION to Change Venue *TO THE DISTRICT OF IDAHO UNDER 28 U.S.C. § 1404(a) (SUPPLEMENTAL AUTHORITY IN SUPPORT OF)* (Attachments: # 1 Exhibit 1)(Smith, Melissa) (Entered: 11/14/2023) |
| 11/20/2023 | 86 | NOTICE by Micron Semiconductor Products, Inc, Micron Technology Inc *OF INTER PARTES REVIEW IN SUPPORT OF MICRONS MOTION TO STAY PENDING INTER PARTES REVIEW* (Smith, Melissa) (Entered: 11/20/2023) |
| 11/21/2023 | 87 | NOTICE by BeSang Inc. re 86 Notice (Other) *Plaintiff BeSang Inc.'s Response to Defendants' Notice of Institution of Inter Partes Review in Support of Micron's Motion to Stay Pending Inter Partes Review (Dkt. 86)* (McCarty, Warren) (Entered: 11/21/2023) |
| 11/30/2023 | 88 | Additional Attachments to Main Document: 86 Notice (Other). . (Attachments: # 1 Exhibit 1)(Smith, Melissa) (Entered: 11/30/2023) |
| 12/01/2023 | 89 | UNOPPOSED MOTION FOR LEAVE TO FILE SUPPLEMENTAL BRIEFING IN SUPPORT OF ITS MOTION TO STAY PENDING INTER PARTES REVIEW by Micron Semiconductor Products, Inc, Micron Technology Inc. (Attachments: # 1 Proposed Order)(Smith, Melissa) (Entered: 12/01/2023) |
| 12/01/2023 | 90 | Sealed Document DEFENDANTS' SUPPLEMENTAL BRIEF IN SUPPORT OF ITS MOTION TO STAY PENDING INTER PARTES REVIEW (Attachments: # 1 Affidavit/Declaration F. Mackay, # 2 Exhibit 4, # 3 Exhibit 5, # 4 Exhibit 6, # 5 Exhibit 7, # 6 Exhibit 8, # 7 Exhibit 9, # 8 Exhibit 10, # 9 Exhibit 11)(Smith, Melissa) (Entered: 12/01/2023) |
| 12/05/2023 | 91 | ORDER granting 89 Motion for Leave to File Supplemental Briefing in Support of its Motion to Stay Pending Inter Partes Review. Signed by Magistrate Judge Roy S. Payne on 12/5/2023. (nkl, ) (Entered: 12/05/2023) |
| 12/08/2023 | 92 | REDACTION to 90 Sealed Document, by Micron Semiconductor Products, Inc, Micron Technology Inc. (Attachments: # 1 Affidavit/Declaration F. Mackay, # 2 Exhibit 4, # 3 Exhibit 5, # 4 Exhibit 6, # 5 Exhibit 7, # 6 Exhibit 8, # 7 Exhibit 9, # 8 Exhibit 10, # 9 Exhibit 11)(Smith, Melissa) (Entered: 12/08/2023) |
| 12/15/2023 | 93 | JOINT MOTION to Stay *Stipulation and Joint Motion to Stay Pending Resolution of Certain Petitions for Inter Partes Review* by BeSang Inc.. (Attachments: # 1 Proposed Order)(McCarty, Warren) (Entered: 12/15/2023) |
| 12/19/2023 | 94 | NOTICE of Change of Address by Melissa Richards Smith (Smith, Melissa) (Entered: 12/19/2023) |
| 12/20/2023 | 95 | ORDER granting 93 Motion to Stay. Signed by Magistrate Judge Roy S. Payne on 12/19/2023. (klc, ) (Entered: 12/20/2023) |
| 10/16/2024 | | Jury Selection set for 11/18/2024 09:00 AM before District Judge Rodney Gilstrap has been CANCELLED (refer to Dkt. No. 95). (aeb) (Entered: 10/16/2024) |
| 11/18/2024 | 96 | NOTICE *of Final Written Decision* by BeSang Inc. re 95 Order on Motion to Stay (Attachments: # 1 Exhibit A)(McCarty, Warren) (Entered: 11/18/2024) |
| 12/11/2024 | 97 | NOTICE *of Second Final Written Decision* by BeSang Inc. re 96 Notice (Other), 95 Order on Motion to Stay (Attachments: # 1 Exhibit A)(McCarty, Warren) (Entered: |

| | | 12/11/2024) |
|---|---|---|
| 12/18/2024 | 98 | JOINT STATUS REPORT *and Request for Status Conference* by BeSang Inc.. (McCarty, Warren) (Entered: 12/18/2024) |
| 12/20/2024 | 99 | NOTICE of Attorney Appearance by James Travis Underwood on behalf of Micron Technology Inc, Micron Semiconductor Products, Inc, MICRON TECHNOLOGY TEXAS, LLC (Underwood, James) (Entered: 12/20/2024) |
| 01/23/2025 | 100 | NOTICE of Attorney Appearance by Bailey Alexandra Blaies on behalf of BeSang Inc. (Blaies, Bailey) (Entered: 01/23/2025) |
| 02/06/2025 | | NOTICE of Hearing: Status/Scheduling Conference set for 2/20/2025 at 01:30 PM before Magistrate Judge Roy S. Payne. (bga) (Entered: 02/06/2025) |
| 02/20/2025 | | Minute Entry for proceedings held before Magistrate Judge Roy S. Payne: Status Conference held on 2/20/2025 from 01:30 - 01:45. Attorney Appearances: Plaintiff - Bjorn Blomquist, Warren McCarty and Deron Dacus; Defense - John Kappos and Melissa Smith. No exhibits. (Court Reporter - Not Recorded) (bga) (Entered: 02/21/2025) |
| 03/06/2025 | 101 | JOINT MOTION for Entry of Disputed Second Amended Docket Control Order by BeSang Inc.. (Attachments: # 1 Exhibit A)(McCarty, Warren) (Entered: 03/06/2025) |
| 03/10/2025 | 102 | SECOND AMENDED DOCKET CONTROL ORDER re 101 JOINT MOTION for Entry of Disputed Second Amended Docket Control Order filed by BeSang Inc.., Pretrial Conference set for 1/6/2026 at 01:30 PM before Magistrate Judge Roy S. Payne., Jury Selection set for 1/26/2026 at 09:00AM before District Judge Rodney Gilstrap., Markman Hearing set for 7/22/2025 at 09:00 AM before Magistrate Judge Roy S. Payne. (Motion(s) 101 terminated). Signed by Magistrate Judge Roy S. Payne on 3/7/2025. (NKL) (Entered: 03/10/2025) |
| 03/17/2025 | 103 | NOTICE *OF SUPPLEMENTAL FACTS IN SUPPORT OF THEIR MOTION TO TRANSFER VENUE TO THE DISTRICT OF IDAHO UNDER 28 U.S.C. § 1404(a) (DKT. 30)* by Micron Technology Inc, Micron Semiconductor Products, Inc (Smith, Melissa) (Entered: 03/17/2025) |
| 03/19/2025 | 104 | NOTICE OF COMPLIANCE by Micron Technology Inc, Micron Semiconductor Products, Inc *Regarding P.R. 4-1* (Smith, Melissa) (Entered: 03/19/2025) |
| 03/19/2025 | 105 | NOTICE of Attorney Appearance by Paul Ashton Duke on behalf of BeSang Inc. (Duke, Paul) (Entered: 03/19/2025) |
| 03/20/2025 | 106 | NOTICE *BeSang Inc.'s Response to Micron's Notice of Supplemental Facts* by BeSang Inc. re 103 Notice (Other) (McCarty, Warren) (Entered: 03/20/2025) |
| 03/20/2025 | 107 | NOTICE *BeSang, Inc.'s Notice of Supplemental Authority in Support of Its Opposition to Defendants' Motion to Transfer Venue (ECF No. 30)* by BeSang Inc. re 65 Sealed Response to Motion,,, (McCarty, Warren) (Entered: 03/20/2025) |
| 04/29/2025 | 108 | Claim Construction and Prehearing Statement by BeSang Inc. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(McCarty, Warren) (Entered: 04/29/2025) |
| 05/29/2025 | 109 | SEALED MOTION *to Compel Defendants' Responses to BeSang's Interrogatory Nos. 19, 20, 21, & 22* by BeSang Inc.. (Attachments: # 1 Affidavit/Declaration of Richard A. Cochrane, # 2 Sealed Exhibit A, # 3 Sealed Exhibit B, # 4 Sealed Exhibit C, # 5 Proposed Order)(McCarty, Warren) (Entered: 05/29/2025) |
| 05/30/2025 | | NOTICE of Hearing on Motion 109 SEALED MOTION *to Compel Defendants' Responses to BeSang's Interrogatory Nos. 19, 20, 21, & 22* : Motion Hearing set for |

| | | |
|---|---|---|
| | | 6/25/2025 at 01:00 PM before Magistrate Judge Roy S. Payne. (wea) (Entered: 05/30/2025) |
| 06/05/2025 | 110 | OPPOSED MOTION to Stay *PENDING RESOLUTION OF DEFENDANTS' MOTION TO TRANSFER VENUE TO THE DISTRICT OF IDAHO UNDER 28 U.S.C. § 1404(a) (DKT. NO. 30)* by MICRON TECHNOLOGY TEXAS, LLC, Micron Semiconductor Products, Inc, Micron Technology Inc. (Attachments: # 1 Proposed Order)(Smith, Melissa) (Entered: 06/05/2025) |
| 06/05/2025 | 111 | REDACTION to 109 SEALED MOTION *to Compel Defendants' Responses to BeSang's Interrogatory Nos. 19, 20, 21, & 22* by BeSang Inc.. (Attachments: # 1 Affidavit/Declaration of Richard A. Cochrane, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Proposed Order)(McCarty, Warren) (Entered: 06/05/2025) |
| 06/05/2025 | 112 | JOINT STATUS REPORT *Regarding Plaintiff BeSang Inc.'s Motion to Compel Defendants' Responses to BeSang's Interrogatory Nos. 19, 20, 21, & 22* by BeSang Inc.. (McCarty, Warren) (Entered: 06/05/2025) |
| 06/10/2025 | 113 | Sealed Document. BeSang Inc.'s Opening Claim Construction Brief (Attachments: # 1 Affidavit/Declaration of Bjorn A. Blomquist, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E, # 7 Exhibit F, # 8 Exhibit G, # 9 Exhibit H, # 10 Exhibit I, # 11 Exhibit J, # 12 Exhibit K, # 13 Exhibit L, # 14 Exhibit M, # 15 Exhibit N, # 16 Exhibit O, # 17 Exhibit P, # 18 Exhibit Q, # 19 Exhibit R, # 20 Exhibit S, # 21 Exhibit T, # 22 Exhibit U, # 23 Exhibit V, # 24 Exhibit W, # 25 Exhibit X, # 26 Exhibit Y)(Caldwell, Bradley) (Entered: 06/10/2025) |
| 06/10/2025 | 114 | NOTICE OF COMPLIANCE by BeSang Inc. *Plaintiff BeSang Inc.'s Notice of Compliance Regarding Technical Tutorial* (Caldwell, Bradley) (Entered: 06/10/2025) |
| 06/11/2025 | 115 | UNOPPOSED MOTION and Application for Issuance of Commission for Deposition to Be Taken at the United States Embassy at Tokyo, Japan by BeSang Inc.. (Attachments: # 1 Proposed Order)(Reich, Robert) (Entered: 06/11/2025) |
| 06/12/2025 | 116 | JOINT STATUS REPORT *Regarding Plaintiff BeSang Inc.'s Motion to Compel Defendants' Responses to BeSang's Interrogatory Nos. 19, 20, 21, & 22* by BeSang Inc.. (Caldwell, Bradley) (Entered: 06/12/2025) |
| 06/13/2025 | | NOTICE that the Hearing on Plaintiff's Motion 109 set for 6/25/2025 at 01:00 PM before Magistrate Judge Roy S. Payne is **CANCELED** per the Joint Status Report 116 . (wea) (Entered: 06/13/2025) |
| 06/13/2025 | 117 | ORDER APPOINTING Technical Advisor. Michael Dean Paul appointed. Signed by Magistrate Judge Roy S. Payne on 06/13/2025. (KLC) (Entered: 06/13/2025) |
| 06/16/2025 | 118 | ORDER granting 115 Motion and Application for Issuance of Commission for Deposition to Be Taken at the United States Embassy at Tokyo, Japan. Signed by Magistrate Judge Roy S. Payne on 6/15/2025. (NKL) (Entered: 06/16/2025) |
| 06/16/2025 | | Apostille Issued to BeSang Inc. re 118 (psm) (Entered: 06/20/2025) |
| 06/17/2025 | 119 | REDACTION to 113 Sealed Document,, *BeSang Inc.'s Opening Claim Construction Brief* by BeSang Inc.. (Attachments: # 1 Declaration of Bjorn A. Blomquist, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E, # 7 Exhibit F, # 8 Exhibit G, # 9 Exhibit H, # 10 Exhibit I, # 11 Exhibit J, # 12 Exhibit K, # 13 Exhibit L, # 14 Exhibit M, # 15 Exhibit N, # 16 Exhibit O, # 17 Exhibit P, # 18 Exhibit Q, # 19 Exhibit R, # 20 Exhibit S, # 21 Exhibit T, # 22 Exhibit U, # 23 Exhibit V, # 24 Exhibit W, # 25 Exhibit X, # 26 Exhibit Y)(Caldwell, Bradley) (Entered: 06/17/2025) |

| 06/20/2025 | 120 | RESPONSE in Opposition re 110 OPPOSED MOTION to Stay *PENDING RESOLUTION OF DEFENDANTS' MOTION TO TRANSFER VENUE TO THE DISTRICT OF IDAHO UNDER 28 U.S.C. § 1404(a) (DKT. NO. 30)* filed by BeSang Inc.. (Attachments: # 1 Proposed Order)(Reich, Robert) (Entered: 06/20/2025) |
|---|---|---|
| 06/24/2025 | 121 | NOTICE *of Ripeness for Ruling Regarding Micron's Opposed Motion to Stay Case Pending Resolution of Defendants' Motion to Transfer Venue to the District of Idaho Under 28 U.S.C. § 1404(a) (Dkt. No. 30) [Dkt. No. 110]* by MICRON TECHNOLOGY TEXAS, LLC, Micron Semiconductor Products, Inc, Micron Technology Inc re 110 OPPOSED MOTION to Stay *PENDING RESOLUTION OF DEFENDANTS' MOTION TO TRANSFER VENUE TO THE DISTRICT OF IDAHO UNDER 28 U.S.C. § 1404(a) (DKT. NO. 30)* (Smith, Melissa) (Entered: 06/24/2025) |
| 06/24/2025 | 122 | RESPONSIVE CLAIM CONSTRUCTION BRIEF filed by Micron Semiconductor Products, Inc, Micron Technology Inc. (Attachments: # 1 Affidavit/Declaration of Frances Mackay, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 6, # 8 Exhibit 7, # 9 Exhibit 8, # 10 Exhibit 9, # 11 Exhibit 10, # 12 Exhibit 11) (Kappos, John) (Entered: 06/24/2025) |

| **PACER Service Center** | | |
|---|---|---|
| **Transaction Receipt** | | |
| 06/25/2025 12:46:55 | | |
| **PACER Login:** | om002190 | **Client Code:** 13264/0600000-00010 |
| **Description:** | Docket Report | **Search Criteria:** 2:23-cv-00028-JRG-RSP |
| **Billable Pages:** | 17 | **Cost:** 1.70 |

Appx18

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | |
|---|---|
| **BESANG INC.,** | |
| Plaintiff, | |
| v. | CIVIL ACTION NO. 2:23-cv-00028 |
| **MICRON TECHNOLOGY, INC.,** **MICRON SEMICONDUCTOR** **PRODUCTS, INC., and** **MICRON TECHNOLOGY TEXAS, LLC** | JURY TRIAL DEMANDED |
| Defendants. | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff BeSang Inc. ("BeSang" or "Plaintiff") files this Original Complaint against Defendant Micron Technology, Inc. ("Micron Technology"), Micron Semiconductor Products, Inc. ("Micron Semiconductor"), and Micron Technology Texas, LLC ("Micron Texas") (collectively, "Micron" or "Defendants") for patent infringement under 35 U.S.C. § 271. Plaintiff alleges, based on its own personal knowledge with respect to its own actions and based upon information and belief with respect to all others' actions, as follows:

### THE PARTIES

1.     Plaintiff BeSang Inc. is a corporation organized and existing under the laws of the state of Oregon, having a principal place of business at 1915 NE Stucki Avenue, Suite 400, Hillsboro, Oregon 97006.

2.     Defendant Micron Technology is a corporation organized and existing under the laws of the State of Delaware. On information and belief, Micron Technology has a regular and established place of business at 950 W. Bethany Drive, Suite 120, Allen, Texas 75013. On information and belief, Micron Technology is registered to do business in the State of Texas, and

Appx19

can be served through its registered agent, Corporation Service Company, at 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218.

3.    Defendant Micron Semiconductor is a corporation organized and existing under the laws of Idaho.  On information and belief, Micron Semiconductor has a regular and established place of business at 950 W. Bethany Drive, Suite 120, Allen, Texas 75013.  On information and belief, Micron Semiconductor is registered to do business in the State of Texas, and can be served through its registered agent, Corporation Service Company, at 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218.

4.    Defendant Micron Texas is a corporation organized and existing under the laws of the State of Idaho.  On information and belief, Micron Texas has a regular and established place of business at 950 W. Bethany Drive, Suite 120, Allen, Texas 75013.  On information and belief, Micron Texas is registered to do business in the State of Texas, and can be served through its registered agent, Corporation Service Company, at 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218.

5.    On information and belief, Micron Semiconductor and Micron Texas are wholly owned subsidiaries of Micron Technology.  On information and belief, Micron Technology does not separately report revenue from Micron Semiconductor or Micron Texas in its filings to the Securities Exchange Commission, but rather reports combined revenue from its various products and subsidiaries.

6.    On information and belief, Defendants have semiconductor fabrication plants in the United States and other countries throughout the world and manufacture memory products such as NAND Flash at those plants.  On information and belief, Defendants also use, sell, and offer for sale in the United States, import into the United States and/or export from the United States

Micron's 3D NAND flash memory products, including 3D NAND chips and the memory devices in which they are incorporated such as solid-state drives, embedded multimedia cards, and Universal Flash Storage ("UFS") devices ("Accused Products").  On information and belief, Defendants have at least used, sold, or offered to sell products and services, including the Accused Products in this judicial district, for example, through sales and distribution channels managed by Defendants.

7.      On information and belief, Defendants place, have placed, and contributed to placing Accused Products into the stream of commerce via an established distribution channel knowing or understanding that such products would be sold and used in the United States, including in this judicial district.  On information and belief, Defendants have also derived substantial revenues from infringing acts in this District, including from the sale and use of the Accused Products.

## JURISDICTION AND VENUE

8.      This action includes a claim of patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1 *et seq.*  This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

9.      This Court has personal jurisdiction over Defendants.  On information and belief, Defendants conduct business, have committed acts of patent infringement directly or through subsidiaries, and have induced acts of patent infringement by others in this District and elsewhere in the United States.  On information and belief, Defendants place, have placed, and contribute to placing their products into the stream of commerce through established distribution channels knowing or understanding that such products would be sold and used in the United States, including in this District.

3

10.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1400(b), because Defendants have committed and continue to commit acts of patent infringement in this District, by, among other things, directly and/or indirectly making, using, selling, offering to sell, or importing products that infringe one or more claims of the Patent-in-Suit, and have a regular and established place of business in this District.

11.     On information and belief, Micron has a regular and established place of business at least at 950 W. Bethany Drive, Suite 120, Allen, Texas 75013.

12.     On information and belief, Micron uses its Allen Texas facility for the design of semiconductor memories.

13.     On information and belief, Micron's Allen Texas facility is a 200,000 square foot building, which houses between 112 and 200 employees.[1]

14.     On information and belief, Micron also employs persons with relevant knowledge of the accused technology in Allen, Texas.

## ASSERTED PATENT

15.     On May 27, 2008, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 7,378,702 ("the '702 Patent"), entitled "Vertical Memory Device Structures." A copy of the '702 Patent is attached as Exhibit A.

16.     The '702 Patent is valid and enforceable. *See* Ex. A.

17.     The '702 Patent is directed to patentable subject matter. Particularly, the '702 Patent is directed to a novel, tangible semiconductor memory structure. The inventive, tangible

---

[1] Kaizen Development Partners, *Micron Technology Signs Cᵢffice Lease at 2000,0000 SF One Bethany West in Allen, Texas*, http://www.onebethanyallen.com/onebethanyblog/micron-technology-signs-office-lease-at-200000-sf-one-bethany-west-in-allen-texas. (last visited January 19, 2023).

Appx22

claimed structures of the '702 Patent provides increased circuit density in integrated circuits, which reduces cost-per-bit and improves memory performance. The claimed inventions provide specific concrete solutions to the technical problem of increasing circuit density in semiconductor memory structures. *See generally* Ex. A.

18.    The claimed elements of the inventions of the '702 Patent individually and as an ordered combination are not well-understood, routine, or conventional. For example, the claimed, tangible, semiconductor structures of the '702 Patent provide increased circuit density in integrated circuits without necessarily requiring memory structures to be made smaller. *See generally* Ex. A.

19.    BeSang owns all rights, title, and interest in and to the '702 Patent and possesses all rights of recovery.

**FACTUAL ALLEGATIONS**

20.    Semiconductor memory in computers and other electronic devices is used for digital data storage. Semiconductor memory typically refers to devices in which data is stored within metal-oxide-semiconductor ("MOS") transistors in memory cells and can be categorized as volatile or nonvolatile memory.

21.    For example, a solid-state drive ("SSD") is a printed circuit board that contains, among other components, a plurality of individual memory chips, such as NAND flash memory chips. NAND flash memory is a type of nonvolatile memory that is able to retain data without power. One NAND chip may consist of billions of memory cells where data is stored.

22.    Traditionally, the memory cells in a NAND memory chip were laterally oriented, forming a horizontal array above and parallel to the substrate. This type of NAND memory is commonly known as "planar NAND" or "2D NAND."

23.    In 2D NAND, the array of memory cells can only extend in two dimensions, and it consumes a significant amount of area on the chip.  Therefore, the capacity of 2D NAND memory is constrained by the number of memory cells that can fit within finite width and length dimensions.  As the manufacturing equipment and technologies required to support such high density became increasingly expensive with each new generation of smaller devices, "[p]lanar NAND flash memory [was] nearing its practical scaling limits, posing significant challenges for the memory industry."[2]

24.    Dr. Sang-Yun Lee incorporated BeSang in 2003 to develop, in part, three-dimensional (3D) integrated circuit technologies to overcome the above-mentioned deficiencies of the 2D solutions.  Dr. Lee is the President and CEO of BeSang.

25.    In 2004, Dr. Lee filed the application that would become the '702 Patent to claim his inventions.  The '702 Patent teaches the use of vertical memory cells, which allows the memory array to expand in a third dimension, as well as putting logic circuitry underneath the memory array, which further increases density and helps achieve faster performance.  For example, the specification of the '702 Patent recites, "[i]n FIG. 1, a logic circuit 114 including sense amplifier and column/row selectors may be implemented in base semiconductor substrate 103 while nonvolatile memory devices are implemented in first FLD layer 101."  Ex. A at 38 ('702 Patent 5:60–63).  Figure 1 of the '702 Patent depicts the substrate 103 under the layer 101.  *See id.* at 2 ('702 Patent Fig. 1).

---

[2] Micron Investor Relations Press Release, *Micron and Intel Unveil New 3D NAND Flash Memory* (Mar. 26, 2015), https://investors.micron.com/news-releases/news-release-details/micron-and-intel-unveil-new-3d-nand-flash-memory (last visited Jan. 19, 2023).

26.    Dr. Lee assigned all right, title, and interest in the '702 Patent to BeSang on December 15, 2010.  This assignment was recorded at the United States Patent and Trademark Office.

27.    BeSang soon became a recognized pioneer in the semiconductor industry for its development of 3D memory technologies.  BeSang successfully created prototypes of 3D memory devices, utilizing facilities at the Stanford Nanofabrication Facility in California and the National NanoFab Center in Korea.

28.    By 2009, BeSang's 3D memory technology achieved critical acclaim.  For example, EE Times listed BeSang as one of the 60 emerging start-ups on its Silicon 60 List.[3]  In the same year, the well-known business consulting firm Frost & Sullivan described BeSang's 3D memory technology as having "clear-cut winning edges" compared to other technologies.[4]  The Global Semiconductor Alliance praised BeSang's technology as "anticipated to eventually change the semiconductor industry standard from two-dimensional (2D) device shrinking to 3D stacking."[5]

29.    BeSang's 3D memory technology also gained recognition from the academic world. Dr. Simon Sze, Member of the U.S. National Academy of Engineering and co-inventor of the floating-gate transistor for nonvolatile memory cells in 1967, stated in interviews that "[b]efore

---

[3] Peter Clarke, *EE Times Updates List of Emerging Startups to Version 8.0* (Feb. 2, 2009), https://www.edn.com/ee-times-updates-list-of-emerging-startups-to-version-8-0/ (last visited Jan. 18, 2023).
[4] Peter Clarke, *Frost & Sullivan Tips BeSang as 3-D IC Winner* (Mar. 20, 2009), https://www.eetimes.com/frost-sullivan-tips-besang-as-3-d-ic-winner/ (last visited Jan. 18, 2023).
[5] GSA Forum at 17, *Exploring the Potential of Emerging Semiconductor Technology: Private Showing* (June 2011), https://www.gsaglobal.org/wp-content/uploads/2019/04/201102_GSA_Forum.pdf (last visited Jan. 18, 2023).

Appx25

BeSang's design came, all other past attempts were pseudo 3D,"[6] and that "BeSang's 3D IC is a very attractive technology."[7]

30.    The '702 Patent has been cited by more than three hundred patents.  The family of the '702 Patent has been cited during prosecution of patents owned by dozens of companies.

31.    Before Micron released any 3D NAND products, Micron had knowledge of BeSang's inventions.  For example, the '702 Patent was cited during prosecution of over 45 Micron patents.  And at least nine of Micron's applications were rejected by the United States Patent and Trademark Office based on the '702 Patent during prosecution.[8]

32.    In addition to knowing of the '702 Patent, Micron has been aware of BeSang for at least fifteen years.  In July 2007, BeSang made a detailed presentation to Micron about the limitations of the conventional memory technologies and how BeSang's 3D technology made it possible to produce memory cells with higher density and lower costs.  The presentation emphasized vertical memory cells and placing logic circuits under the memory array, both of which are disclosed in the '702 Patent.

33.    In May 2012, BeSang's president and the named inventor on the '702 Patent, Dr. Sang-Yun Lee, made a presentation at the IEEE IMW Workshop on the topic of "Architecture of 3D Memory Cell Array on 3D IC."  Kirk Prall and Agostino Pirovano, both then working at Micron, attended the workshop.

---

[6] EET Asia, *World's First 3D Chip Technology Surfaces* (Aug. 13, 2008), https://archive.eetasia.com/www.eetasia.com/ART_8800539348_480100_NT_11f84e48.HTM (last visited Jan. 18, 2023).
[7] Ann Steffora Mutschler, *Stanford, Korean Nanofab Center, Oregon-Based Semi Startup Claim 3D IC Breakthrough*, https://www.edn.com/stanford-korean-nanofab-center-oregon-based-semi-startup-claim-3d-ic-breakthrough/ (last visited Jan. 18, 2023).
[8] *See, e.g.*, prosecution history of U.S. Patent Nos. 11,295,807; 10,854,611; 10,847,516; 10,790,008; 10,381,357; 10,079,235; 10,056,386; 7,504,298.

34.     In 2014 and 2015, Matt Freeman, then Senior Director of Corporate Development at Micron, engaged in discussions with BeSang about a potential acquisition of BeSang.

35.     On Monday March 23, 2015, Matt Freeman contacted Dr. Lee of BeSang and the parties arranged for a call to discuss a potential M&A transaction.

36.     On Thursday March 26, 2015, Micron announced it would be releasing its first 3D NAND flash memory technology.[9]  According to Micron, the 3D NAND structure "enables more storage in a smaller space, bringing significant cost savings, low power usage and high performance."[10]

37.     The next day on Friday March 27, 2015, Mr. Freeman contacted BeSang and discussed the possibility of Micron acquiring BeSang's patents in lieu of an M&A transaction. BeSang declined to sell its patents to Micron.

38.     Subsequent to Micron's announcement that it would be introducing 3D NAND products, Micron incorporated 3D NAND flash memory technology into its products at least as early as 2016, including the Micron 1100 SSD, which used a 32-layer NAND memory chip.[11] Micron continues to manufacture and sell 3D NAND products, including the Micron's Accused Products.

39.     According to Micron, one of the most critical breakthroughs of its 3D NAND Flash products was the "CMOS under array" technology, which means to "get the majority of logic under the array."[12]

---

[9] Micron Investor Relations Press Release, *Micron and Intel Unveil New 3D NAND Flash Memory* (Mar. 26, 2015), https://investors.micron.com/news-releases/news-release-details/micron-and-intel-unveil-new-3d-nand-flash-memory / (last visited Jan. 18, 2023).
[10] *Id.*
[11] Slobodan Simic, *Micron Announces Its First Client 1100 And 2100 SSDs*, https://www.fudzilla.com/news/memory-and-storage/40819-micron-announces-its-first-client-1100-and-2100-ssds.
[12] Mark Lapedus, What's Next For NAND?, https://semiengineering.com/whats-next-for-nand/.

40.    Micron's 3D NAND Flash products incorporating CMOS under Array are covered by the claims of BeSang's '702 Patent.

41.    On information and belief, Micron's Accused Products include its 3D NAND products with a 32-Layer 3D TLC NAND feature[13]; a 64-Layer 3D TLC NAND feature[14]; a 96-Layer 3D TLC NAND feature[15]; and a 176-Layer 3D TLC NAND feature[16], and its Crucial brand of SSDs.[17]  Micron's Accused Products also include Micron's 3D NAND memory parts[18] containing features identified as infringing herein, including future releases.  For example on information and belief, the Accused Products include Micron's 3D NAND products that include its 232-Layer NAND memory, announced in July 2022, which is expected to "feature[] the

---

[13] *See, e.g.*, Micron 1100 SSD series, Micron 5100 SSD series.

[14] *See, e.g.*, Micron 5200 SSD series, Micron 5210 SSD series, Micron 2100AI/AT SSD series, Micron 2200 SSD series, Micron 9300 NVMe SSD series, Micron's UFS 2.1.

[15] Micron 5300 SSD series, Micron 7300 SSD with NVMe series, Micron 2300 SSD series, Micron 7400 SSD with NVMe series products.

[16] *See, e.g.*, Micron 2450 SSD with NVMe series, Micron 3400 SSD with NVMe series, Micron 2400 SSD with NVMe series, Micron 5400 SSD series, Micron 7450 SSD with NVMe series.

[17] *See e.g.,* Crucial P3 NVMe SSD; Crucial P3 Plus NVMe SSD; Crucial P5 Plus SSD; Crucial BX500 SSD; Crucial MX500 SSD.

[18] *See, e.g.*, Micron Part Nos. MT29F128G08CBCEBJ4-37ITR, MT29F1T08EEHAFJ4-3R, MT29F1T08EEHAFJ4-3T, MT29F1T08EEHBFJ4-R, MT29F1T08EEHBFJ4-T, MT29F1T08EELCEJ4-R, MT29F1T08EELEEJ4-R, MT29F1T08EELEEJ4-T, MT29F1T08EMHAFJ4-3R, MT29F256G08CECEBJ4-37ITR, MT29F256G08EBCAGB16A3WC1, MT29F256G08EBHAFJ4-3R, MT29F2T08EMHAFJ4-3R, MT29F2T08EMHAFJ4-3T, MT29F2T08EMHBFJ4-R, MT29F2T08EMHBFJ4-T, MT29F2T08EMLCEJ4-R, MT29F2T08EMLEEJ4-R, MT29F2T08EMLEEJ4-T, MT29F4T08EUHAFM4-3R, MT29F4T08EUHAFM4-3T, MT29F4T08EUHBFM4-R, MT29F4T08EUHBFM4-T, MT29F4T08EULCEM4-R, MT29F4T08EULEEM4-R, MT29F4T08EULEEM4-T, MT29F512G08CMCEBJ4-37ITR, MT29F512G08EBHAFB17A3WC1, MT29F512G08EBHAFJ4-3R, MT29F512G08EBHAFJ4-3T, MT29F512G08EBHBFB27A3WC1-R, MT29F512G08EBHBFJ4-R, MT29F512G08EBHBFJ4-T, MT29F512G08EBLCEB27B3WC1-R, MT29F512G08EBLCEJ4-R, MT29F512G08EBLEEB47R3WC1-R, MT29F512G08EBLEEJ4-R, MT29F512G08EBLEEJ4-T, MT29F512G08EEHAFJ4-3R, MT29F8T08EWHAFJ6-3R, MT29F8T08EWHAFJ6-3T, MT29F8T08EWLEEM5-Rmm, MT29F8T08EWLEEM5-T.

industry's highest areal density" and "enable best-in-class support of the most data-intensive use cases."[19]

42.     Micron had actual knowledge of the '702 Patent prior to this lawsuit, as shown above, or subjectively believed there was a high probability that the '702 Patent existed and took deliberate actions to avoid learning of the '702 Patent.  Micron also has knowledge of the '702 Patent by the filing and service of this Complaint.

43.     Micron knew and continues to know that the acts complained of below constitute infringement of the '702 Patent, or at least subjectively believed that there was a high probability of infringement of the '702 Patent but took deliberate steps to avoid confirming the same.

44.     Micron does not have any rights to the '702 Patent.

45.     On information and belief, Micron's Accused Products all use a "CMOS under array" structure, which means to have CMOS control circuits underneath the memory array in order to lower costs, "reduce die sizes[,] and deliver improved performance when compared to competitive approaches."[20]

46.     In the interest of providing detailed averments of infringement, BeSang has identified below at least one claim of the '702 Patent to demonstrate infringement.  However, the selection of claims should not be considered limiting, and additional claims of the '702 Patent that are infringed by Micron will be disclosed in compliance with the Court's schedule.

---

[19] Micron, *Micron Ships World's First 232-Layer NAND, Extends Technology Leadership*, https://investors.micron.com/news-releases/news-release-details/micron-ships-worlds-first-232-layer-nand-and-extends-technology.
[20] Micron Investor Relations Press Releases, *Micron and Intel Extend Their Leadership in 3D NAND Flash Memory* (May 21, 2018), https://investors.micron.com/news-releases/news-release-details/micron-and-intel-extend-their-leadership-3d-nand-flash-memory

Appx29

## COUNT ONE: INFRINGEMENT OF THE '702 PATENT

47.    BeSang incorporates by reference the preceding paragraphs as if fully set forth herein.

48.    U.S. Patent No. 7,378,702 ("the '702 Patent"), entitled "Vertical Memory Device Structures," was legally and duly issued on May 27, 2008, naming Sang-Yun Lee as the inventor. *See* Exhibit A.

49.    BeSang owns all rights, title, and interest in the '702 Patent, and holds all substantial rights pertinent to this suit, including the right to sue and recover for all past, current, and future infringement.

50.    BeSang has complied with all statutory requirements, including the requirements of 35 U.S.C. § 287, to pursue and recover for any infringement of the '702 Patent.

51.    On information and belief, Micron directly infringed and is currently infringing, literally and/or under the doctrine of equivalents, at least one claim of the '702 Patent by, among other things, making, using, selling, offering to sell, and/or importing within this District and elsewhere in the United States, without authority, the Accused Products.  For example, as shown below, the Accused Products practice at least claim 13 of the '702 Patent.

52.    Claim 13 of the '702 Patent recites:

[preamble] A semiconductor memory structure, comprising:

[13a] a substrate having electrical devices formed therein, and

[13b] further having a dielectric layer disposed above the electrical devices;

[13c] a stackable add-on layer having a plurality of vertically oriented semiconductor memory cells; and

[13d] the stackable add-on layer being bonded to the dielectric layer; and

[13e] wherein the memory cells are nonvolatile memory cells having at least one transistor.

53.    For purposes of showing infringement of the '702 Patent, on information and belief, all the series and models of Micron's Accused Products share a similar structure and infringe in the same way.

54.    The Accused Products are all 3D NAND products designed by Micron and share a common structure.

55.    The Accused Products all include stacking layers of data storage cells vertically to create storage devices.

56.    The Accused Products all contain a "CMOS under Array" ("CuA") architecture, which places periphery circuitry under the memory array.[21]

57.    For example, Micron used its CuA design for its first generation 32-Layer 3D NAND Products, and Micron's marketing materials make it clear that its second generation 64-Layer 3D NAND products use its CuA architecture "for most efficient die size."[22]



---

[21] *See, e.g.*, Micron Investor Relations, *Micron and Intel Extend Their Leadership in 3D NAND Flash Memory* (May 21, 2018), https://investors.micron.com/static-files/3524ce13-cb1e-4def-a557-c569faa4f8e9.
[22] Micron, *Augment Your Imagination with Micron Mobile TLC 3D NAND*, https://www.youtube.com/watch?v=VheOBC5ZThg (1:09).

58.    Micron likewise uses its CuA design in its third and fourth generation 96-layer and 128-layer 3D NAND products and markets its fifth generation 176-Layer NAND products as having a CuA architecture.[23][24]



59.    Micron's newest 232-layer Product is also advertised as incorporating a CuA architecture.[25]



---

[23]    ProVideo Coalition, *New Crucial SSDs will be bigger, faster, and cheaper*, https://www.provideocoalition.com/new-crucial-ssds-will-be-bigger-faster-and-cheaper/ (image attributed to Micron) (last visited January 19, 2023).
[24]    Micron, *176-Layer NAND*, https://www.micron.com/products/nand-flash/176-layer-nand (last visited January 19, 2023).
[25]    Micron 232-Layer NAND Technology: Innovation and Leadership, https://www.youtube.com/watch?v=lp2p-bMH_-0&t=74s (1:00).

14

60.     On information and belief, Micron's 3400 SSD with NVMe product was designed and manufactured with the structures and architectures common to all Micron's 3D NAND products.

61.     Micron has continued to implement memory cells connected through vertically oriented channels.   For example on information and belief, Micron began implementing a replacement-gate technology in its 176-layer devices, but continued to use vertically oriented channels with its memory cells.[26]



62.     The Micron 3D NAND product generations all contain the same features and architectures described above.   For example, as shown in the below image from Micron, each generation of Micron Accused Products include CMOS under Array and vertically stacked memory cells.[27][28]

---

[26] Micron, *176-Layer NAND*, https://www.micron.com/products/nand-flash/176-layer-nand (last visited January 19, 2023).
[27] PC World, *SSDs are primed to get bigger and faster with Micron's new NAND memory Tech* https://www.pcworld.com/article/393710/ssds-are-primed-to-get-bigger-and-faster-with-micron-nand.html (image attributed to Micron)
[28] Micron, *232 Layer NAND*, https://www.micron.com/products/nand-flash/232-layer-nand (last visited January 19, 2023).





63.    Accordingly, Micron's 3400 SSD with NVMe product is representative of all Micron's Accused Products, and the infringing features present in Micron's 3400 SSD with NVMe Series product are common in all of Micron's Accused Products.

64.    To the extent the preamble is considered a limitation, Micron's Accused Products contain a semiconductor memory structure.  '702 Patent, claim 13, preamble.

65.    For example, the memory chips in Micron's 3400 SSD with NVMe Series product are semiconductor memory structures:



*Micron 3400 SSD with NVMe (Top)*



*Micron 3400 SSD with NVMe (Bottom)*



*3D NAND Chip Extracted from Micron 3400 SSD with NVMe*

17



*Cross Section of Micron's 3D NAND Chip*

66.     Micron's Accused Products contain a substrate having electrical devices formed therein. '702 Patent, claim 13, element [13a].

67.     For example, the Micron Accused Products contain CMOS circuits (annotated in red) formed in the substrate (annotated in yellow):



*Cross Section of Micron's 3D NAND Chip*

68.     Micron's Accused Products contain further having a dielectric layer disposed above the electrical devices. '702 Patent, claim 13, element [13b].

18

69.    For example, the Micron Accused Products contain a dielectric layer (annotated in green) disposed above the CMOS circuits (annotated in red):



*Cross Section of Micron's 3D NAND Chip*

70.    Marketing material from Micron's webpage on "Mobile TLC 3D NAND" confirms Micron's 3D NAND memory products have CuA architecture.[29]



---

[29]    Micron, *Mobile TLC 3D NAND*, https://www.micron.com/products/nand-flash/3d-nand/micron-mobile-tlc-3d-nand (video at 1:11).

71.    Micron's Accused Products contain a stackable add-on layer having a plurality of vertically oriented semiconductor memory cells.  '702 Patent, claim 13, element [13c].

72.    For example, Micron's Accused Products contain an array of memory cells (annotated in blue).



*Cross Section of Micron's 3D NAND Chip*

73.    The array of memory cells comprises a stackable add-on layer (annotated in blue). The memory array also has a plurality of vertically oriented semiconductor memory cells (examples annotated in purple):

Appx38



*Cross Section of Micron's 3D NAND Chip*

74.    Micron's marketing material describes its 3D NAND technology as having stack

storage tiers to provide the highest-capacity NAND die available.[30]

---

[30] Micron, Micron 3D NAND Flash Memory, https://media-www.micron.com/-/media/client/global/documents/products/product-flyer/3d_nand_flyer.pdf?la=en&rev=3cd61615c93c4cb9a6db81b0bd73fb65 (last visited January 19, 2023).

21

## Why Micron 3D NAND?

### 1. High Capacities
Get the performance you need with some of the highest-capacity NAND die available — thanks to our 32-stack storage tiers.

75.    Micron's Accused Products contain the stackable add-on layer being bonded to the dielectric layer.  '702 Patent, claim 13, element [13d].

76.    The memory array (annotated in blue) comprising the stackable add-on layer in the Micron Accused Products is bonded to the dielectric layer (annotated in orange).  The stackable add-on layer in the Micron Accused Products is bonded to the dielectric layer through a conductive plane (annotated in red):



*Cross Section of Micron's 3D NAND Chip*

77.    The Micron Accused Products contain memory cells wherein the memory cells are nonvolatile memory cells having at least one transistor.  '702 Patent, claim 13, element [13e].

78.    The memory cells in the Micron Accused Products are NAND cells, which are nonvolatile memory cells.

79.    The nonvolatile memory cells (examples annotated in purple) have at least one transistor, such as the select gate source transistor (annotated in light green):



*Cross Section of Micron's 3D NAND Chip*

80.    Accordingly, Micron's 3D NAND Chip from its Micron 3400 with NVMe SSD products contain each and every element in claim 13 of the '702 Patent.

81.    As further evidence that Micron's 3400 SSD with NVMe product is representative, Micron's 64-Layer products also practice claim 13 of the '702 Patent in a similar manner.  For example, Micron's B16A UFS contains every element of claim 13 of the '702 Patent.

82.    To the extent the preamble is considered a limitation, Micron's B16A UFS contains a semiconductor memory structure.  '702 Patent, claim 13, preamble.

83.    For example, the Micron B16A UFS contains a semiconductor memory structure:[31]



84.    Micron's Accused Products contain a substrate having electrical devices formed therein.  '702 Patent, claim 13, element [13a].

85.    For example, Micron's B16A UFS contains CMOS circuits (annotated in blue in the original) formed in the substrate (annotated in yellow):[32]

---

[31] Micron, *Introducing 2nd Generation Micron Mobile TLC 3D NAND*, https://media-www.micron.com/-/media/client/global/documents/products/presentation/micron-mobile-tlc-3d-nand-launch-deck.pdf?la=en&rev=e0069154fbd94f01a714780259ad78f1.
[32] *Id.*



86.    Micron's B16A UFS contains further having a dielectric layer disposed above the electrical devices.  '702 Patent, claim 13, element [13b].

87.    For example, Micron's B16A UFS contains a dielectric layer (annotated in green) disposed above the CMOS circuits (annotated in blue in the original): [33]

---

[33] *Id.*



88.    Micron's B16A UFS contains a stackable add-on layer having a plurality of vertically oriented semiconductor memory cells.  '702 Patent, claim 13, element [13c].

89.    For example, Micron's B16A contains an array of memory cells (annotated in red):



90.     The array of memory cells comprises a stackable add-on layer (annotated in red). The memory array also has a plurality of vertically oriented semiconductor memory cells (examples annotated in purple):[34]



91.     The Micron B16A UFS contains the stackable add-on layer being bonded to the dielectric layer.  '702 Patent, claim 13, element [13d].

92.     The memory array (annotated in red) comprising the stackable add-on layer in the Micron Accused Products is bonded to the dielectric layer (annotated in orange).  The stackable add-on layer in the Micron Accused Products is bonded to the dielectric layer through a conductive plane (annotated in green):[35]

---

[34] *Id.*
[35] *Id.*



93.     The Micron B16A UFS contains memory cells wherein the memory cells are nonvolatile memory cells having at least one transistor.  '702 Patent, claim 13, element [13e].

94.     The memory cells in the Micron B16A UFS are NAND cells, which are nonvolatile memory cells.

95.     The nonvolatile memory cells (examples annotated in purple) have at least one transistor, such as the select gate source transistor (annotated in light green): [36]

---

[36] *Id.*

28

Appx46



96. Accordingly, Micron's B16A UFS product contains each and every element in claim 13 of the '702 Patent in a similar way to Micron's 3400 SSD with NVMe product. Thus, Micron's 3400 SSD with NVMe product is representative of Micron's Accused Products and Micron's Accused Products contain each and every element in claim 13 of the '702 Patent.

97. Micron directly infringes alone or jointly, literally and/or under the doctrine of equivalents, because it makes, uses, offers for sale, sells, and/or imports the Micron's Accused Products in the United States without BeSang's permission in violation of 35 U.S.C. § 271(a).

98. Micron indirectly infringes the '702 Patent because it has induced third parties, including customers, end users, computer manufacturers, data center operators, distributors, and/or retailers, to have made, use, offer for sale, sell, and/or import Micron's Accused Products without BeSang's permission in violation of 35 U.S.C. § 271(b).

99. Based on information and belief, third parties, including customers, end users, computer manufacturers, data center operators, distributors, and/or retailers, have directly infringed the '702 Patent by having made, using, offering for sale, selling, and/or importing Micron's Accused Products, including, for example, by manufacturing, configuring, using, and operating a device incorporating Micron's Accused Products.

100.    Micron induced these third parties' direct infringement by advertising, encouraging, instructing, providing support for, and/or operating Micron's Accused Products for or on behalf of such third parties.  For example, on information and belief, Micron publishes specifications, datasheets, instruction manuals, support materials, developer materials, marketing materials, and user guide materials that explain, advertise, instruct on, or provide support for Micron's Accused Products.

101.    Micron took the above actions intending to cause infringing acts by these third parties.

102.    If Micron did not know that the actions it encouraged constituted infringement of the '702 Patent, Micron was willfully blind as to its inducing infringement of others.  Micron subjectively believed that there was a high probability that others would infringe the '702 Patent but took deliberate steps to avoid confirming that it was actively inducing infringement by others.

103.    Micron knew of the '702 Patent before 2016.

104.    Micron has notice of the '702 Patent before 2016.

105.    Additionally, Micron has been on notice of the '702 Patent no later than the filing and service of this Complaint.

106.    BeSang has sustained damages owing to Micron's infringement of the '702 Patent.

107.    Micron had knowledge of the '702 Patent before 2016 and knew its actions constituted infringement of the '702 Patent, or at least subjectively believed that there was a high probability that the '702 Patent existed and took deliberate actions to avoid learning of the '702 Patent.

108.    BeSang has sustained damages owed to Micron's infringement of the '702 Patent.

Appx48

109.     Micron's infringement of the '702 Patent is exceptional and BeSang is entitled to recover reasonable attorneys' fees incurred in prosecuting this action in accordance with 35 U.S.C. § 285.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff BeSang Inc. asks this Court for an order granting the following relief:

a.   a judgment in favor of Plaintiff that Defendants have infringed, either literally and/or under the doctrine of equivalents, the '702 Patent;

b.   all equitable relief the Court deems just and proper as a result of Micron's infringement, including an injunction;

c.   a judgment and order finding that Defendants' infringement has been willful;

d.   a judgment and order requiring Defendants to pay Plaintiff its damages, costs, expenses, and any enhanced damages to which Plaintiff is entitled for Defendant's infringement;

e.   a judgment and order requiring Defendants to provide an accounting and to pay supplemental damages to Plaintiff, including without limitation, pre-judgment and post-judgment interest;

f.   a judgment and order requiring Defendants to pay on-going royalties;

g.   a judgment and order finding that this is an exceptional case within the meaning of 35 U.S.C. § 285 and awarding Plaintiff its reasonable attorneys' fees against Defendant; and

Appx49

h. any and all other relief as the Court may deem appropriate and just under the circumstances.

DATED: January 23, 2023                                        Respectfully submitted,

                                                               /s/ Warren J. McCarty, III
                                                               Bradley W. Caldwell
                                                               Texas State Bar No. 24040630
                                                               Email: bcaldwell@caldwellcc.com
                                                               Jason D. Cassady
                                                               Texas State Bar No. 24045625
                                                               Email: jcassady@caldwellcc.com
                                                               John Austin Curry
                                                               Texas State Bar No. 24059636
                                                               acurry@caldwellcc.com
                                                               Warren J. McCarty, III
                                                               Texas State Bar No. 24107857
                                                               Email: wmccarty@caldwellcc.com
                                                               R. Seth Reich Jr.
                                                               Texas State Bar No. 24088283
                                                               Email: sreich@caldwellcc.com
                                                               Xu Zhou
                                                               Texas State Bar No. 24121219
                                                               xzhou@caldwellcc.com
                                                               Bjorn A. Blomquist
                                                               Texas State Bar No. 24125125
                                                               bblomquist@caldwellcc.com
                                                               James F. Smith
                                                               Texas State Bar No. 24129800
                                                               jsmith@caldwellcc.com
                                                               **CALDWELL CASSADY & CURRY P.C.**
                                                               2121 N Pearl Street, Suite 1200
                                                               Dallas, TX 75201
                                                               Telephone: (214) 888-4848
                                                               Facsimile: (214) 888-4849

Appx50

Deron R. Dacus
State Bar No. 00790553
**The Dacus Firm, P.C.**
821 ESE Loop 323, Suite 430
Tyler, TX 75701
Phone: (903) 705-1117
Fax: (903) 581-2543
ddacus@dacusfirm.com

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| **BESANG INC.,** | |
| Plaintiff, | |
| v. | C.A. No. 2:23-cv-00028-JRG-RSP |
| **MICRON TECHNOLOGY, INC., MICRON SEMICONDUCTOR PRODUCTS, INC., and MICRON TECHNOLOGY TEXAS, LLC** | JURY TRIAL DEMANDED |
| Defendants. | |

### PLAINTIFF BESANG INC.'S ANSWER TO DEFENDANTS MICRON TECHNOLOGY, INC., MICRON SEMICONDUCTOR PRODUCTS, INC., AND MICRON TECHNOLOGY TEXAS, LLC'S COUNTERCLAIMS

Plaintiff BeSang Inc. ("BeSang") hereby files this Answer to the Counterclaims ("Answer") contained in Defendants Micron Technology, Inc. ("Micron Technology"), Micron Semiconductor Products, Inc. ("Micron Semiconductor"), and Micron Technology Texas, LLC's ("Micron Texas") (collectively, "Micron" or "Defendants") Answer, Affirmative Defenses, and Counterclaims ("Counterclaims") to BeSang Inc.'s Complaint for Patent Infringement (Dkt. 23). The numbered paragraphs in this Answer correspond to the like-numbered paragraphs of the Counterclaims, to the extent applicable.  BeSang denies all allegations and characterizations except those expressly admitted.

1

Appx52

## COUNTERCLAIMS[1]

### THE PARTIES

1.      On information and belief, BeSang admits that Micron Technology is a Delaware corporation.  BeSang lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 1 of the Counterclaims, and therefore denies the same.

2.      On information and belief, BeSang admits that Micron Semiconductor is an Idaho corporation.  BeSang lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 2 of the Counterclaims, and therefore denies the same.

3.      On information and belief, BeSang admits that Micron Texas is an Idaho corporation.  BeSang lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 3 of the Counterclaims, and therefore denies the same.

4.      BeSang admits the allegations of Paragraph 4 of the Counterclaims.

### JURISDICTION AND VENUE

5.      BeSang admits that the Counterclaims purport to set forth claims arising under the patent laws of the United States, Title 35 of the United States Code.  BeSang denies that any action of BeSang gives rise to such claims.  BeSang denies the remaining allegations in Paragraph 5 of the Counterclaims.

6.      BeSang admits that this Court has subject matter jurisdiction over the Counterclaims.

7.      BeSang admits that this Court has personal jurisdiction over BeSang.

---

[1] BeSang uses the headings in Micron's Answer, as well as corresponding numbered paragraphs, for convenience.  BeSang does not admit any allegations contained in those headings.

2

Appx53

8.      BeSang admits that venue is proper in this District.  BeSang denies the remaining allegations in Paragraph 8 of the Counterclaims.

## FACTUAL BACKGROUND

9.      BeSang admits the allegations in Paragraph 9 of the Counterclaims.

10.     BeSang denies the allegations in Paragraph 10 of the Counterclaims.

11.     BeSang admits that a justiciable controversy exists between BeSang and Micron. BeSang denies the remaining allegations in Paragraph 11 of the Counterclaims.

## COUNT ONE

### (Declaratory Judgment of Non-Infringement of U.S. Patent No. 7,378,702)

12.     BeSang restates and incorporates Paragraphs 1 through 11 of its Answer as though fully set forth herein.

13.     BeSang admits that a justiciable controversy exists between BeSang and Micron. BeSang denies the remaining allegations in Paragraph 13 of the Counterclaims.

14.     BeSang denies the allegations in Paragraph 14 of the Counterclaims.

15.     BeSang denies the allegations in Paragraph 15 of the Counterclaims.

## COUNT TWO

### (Declaratory Judgment of Invalidity of U.S. Patent No. 7,378,702)

16.     BeSang restates and incorporates Paragraphs 1 through 15 of its Answer as though fully set forth herein.

17.     BeSang admits that a justiciable controversy exists between BeSang and Micron. BeSang denies the remaining allegations in Paragraph 17 of the Counterclaims.

18.     BeSang denies the allegations in Paragraph 18 of the Counterclaims.

19.     BeSang denies the allegations in Paragraph 19 of the Counterclaims.

## PRAYER FOR RELIEF

BeSang denies all allegations contained in the section entitled "Prayer for Relief" and further denies that any relief should be granted to Defendants whatsoever, either as requested in its Counterclaims or otherwise.

## DEMAND FOR JURY TRIAL

BeSang demands a jury trial for all issues so triable.

## RESERVATION OF AFFIRMATIVE DEFENSES

BeSang hereby reserves the right to assert affirmative defenses to any claims for relief by Defendants as discovery proceeds in this case.

## DENIAL OF ANY REMAINING ALLEGATIONS

Except as specifically admitted herein, BeSang denies any remaining allegations in Defendants' Counterclaims.

4

Appx55

DATED: April 24, 2023

Respectfully submitted,

/s/ Warren J. McCarty, III
Bradley W. Caldwell
Texas State Bar No. 24040630
Email: bcaldwell@caldwellcc.com
Jason D. Cassady
Texas State Bar No. 24045625
Email: jcassady@caldwellcc.com
John Austin Curry
Texas State Bar No. 24059636
acurry@caldwellcc.com
Warren J. McCarty, III
Texas State Bar No. 24107857
Email: wmccarty@caldwellcc.com
R. Seth Reich Jr.
Texas State Bar No. 24088283
Email: sreich@caldwellcc.com
Xu Zhou
Texas State Bar No. 24121219
xzhou@caldwellcc.com
Bjorn A. Blomquist
Texas State Bar No. 24125125
bblomquist@caldwellcc.com
James F. Smith
Texas State Bar No. 24129800
jsmith@caldwellcc.com
**Caldwell Cassady & Curry P.C.**
2121 N Pearl Street, Suite 1200
Dallas, TX 75201
Telephone: (214) 888-4848
Facsimile: (214) 888-4849

Deron R. Dacus
State Bar No. 00790553
**The Dacus Firm, P.C.**
821 ESE Loop 323, Suite 430
Tyler, TX 75701
Phone: (903) 705-1117
Fax: (903) 581-2543
ddacus@dacusfirm.com

*Attorneys for Plaintiff*

Appx56

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on April 24, 2023 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Rule CV-5(a)(3).

/s/ Warren J. McCarty, III
Warren J. McCarty, III

6

Appx57

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| BESANG, INC., | |
| *Plaintiff* | |
| v. | Case No. 2:23-cv-00028 |
| MICRON TECHNOLOGY, INC., MICRON SEMICONDUCTOR PRODUCTS, INC., and MICRON TECHNOLOGY TEXAS, LLC, | **Jury Trial Demanded** |
| *Defendants*. | |

**DEFENDANTS' MOTION TO TRANSFER VENUE TO THE DISTRICT OF IDAHO
UNDER 28 U.S.C. § 1404(a)**

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................ 1

II.     FACTUAL BACKGROUND ............................................................... 1

III.    LEGAL STANDARD........................................................................... 4

IV.     THE DISTRICT OF IDAHO IS CLEARLY MORE CONVENIENT ................. 4

    A.    This Case Could Have Been Brought in the District of Idaho ............................. 4

    B.    The Private Interest Factors Favor Transfer to the District of Idaho .................... 5

        1.    Cost of Attendance For Willing Witnesses Favors Transfer ............... 5

        2.    Relative Ease of Access to Sources of Proof Favors Transfer ............ 8

        3.    Availability of Compulsory Process Favors Transfer ........................ 11

        4.    All Other Practical Problems Associated With Trial are Neutral....... 11

    C.    The Public Interest Factors Favor Transfer to the District of Idaho .................... 12

        1.    The District of Idaho has a Strong Local Interest............................. 12

        2.    The Court Congestion Factor is Neutral ........................................... 14

        3.    Familiarity with Governing Law and Conflicts of Law are Neutral .. 15

    D.    The Balance of Factors Demonstrates that the District of Idaho is the Clearly More Convenient Forum ............................................................................ 15

V.      CONCLUSION.................................................................................. 15

Appx59

## TABLE OF AUTHORITIES

**Page**

**Cases**

*Action Indus., Inc. v. U.S. Fid. & Guar. Co.*,
    358 F.3d 337 (5th Cir. 2004) ............................................................ 4

*Cooktek Induction Sys., LLC v. I/O Controls Corp.*,
    2016 WL 4095547 (E.D. Tex. Aug. 2, 2016) ................................... 12

*Farmobile LLC v. Farmers Edge Inc.*,
    2022 WL 2653893 (E.D. Tex. July 2, 2022) .................................... 12

*In re Acer Am. Corp.*,
    626 F.3d 1252 (Fed. Cir. 2010) ...................................................... 12

*In re Amazon.com, Inc.*,
    2022 WL 17688072 (Fed. Cir. Dec. 15, 2022) .................................. 8

*In re Apple Inc.*,
    2021 WL 5291804 (Fed. Cir. Nov. 15, 2021) .................................. 12

*In re Apple Inc.*,
    2022 WL 1196768 (Fed. Cir. Apr. 22, 2022) ..................................... 9

*In re Apple Inc.*,
    2022 WL 1676400 (Fed. Cir. May 26, 2022) ................................... 14

*In re Apple*,
    979 F.3d 1332 (Fed. Cir. 2020) ...................................................... 12

*In re Apple, Inc.*,
    581 F. App'x 886 (Fed. Cir. 2014) ................................................. 11

*In re DISH Network LLC*,
    2021 WL 4911981 (Fed. Cir. Oct. 21, 2021) .................................. 13

*In re Genentech, Inc.*,
    566 F.3d 1338 (Fed. Cir. 2009) ................................................... 5, 8

*In re Google LLC*,
    58 F.4th 1379 (Fed. Cir. 2023) ...................................................... 14

*In re Google*,
    2021 WL 4592280 (Fed. Cir. Oct. 6, 2021) ...................................... 8

Appx60

# TABLE OF AUTHORITIES

**Page**

*In re Hoffman-La Roche Inc.*,
    587 F.3d 1333 (Fed. Cir. 2008) ................................................................ 13

*In re Hulu, LLC*,
    2021 WL 3278194 (Fed. Cir. Aug. 2, 2021) .......................................... 5

*In re Juniper Networks, Inc.*,
    14 F.4th 1313 (Fed. Cir. 2021) ........................................... 5, 9, 15

*In re Netflix, Inc.*,
    2022 WL 167470 (Fed. Cir. Jan. 19, 2022) .......................................... 8

*In re NetScout Sys., Inc.*,
    2021 WL 4771756 (Fed. Cir. 2021) ...................................................... 8

*In re Nintendo Co.*,
    589 F.3d 1194 (Fed. Cir. 2009) ............................................................ 14

*In re Radmax*,
    720 F.3d 285 (Fed. Cir. 2013) ................................................... 9, 11, 15

*In re Samsung Elecs. Co.*,
    2 F.4th 1371 (Fed. Cir. 2021) .............................................................. 12

*In re Toyota Motor Corp.*,
    747 F.3d 1338 (Fed. Cir. 2014) ..................................................... 8, 10

*In re TS Tech USA Corp*,
    551 F.3d 1315 (Fed. Cir. 2008) ..................................................... 4, 15

*In re Volkswagen AG*,
    371 F.3d 201 (5th Cir. 2004) ("*Volkswagen I*") .......................... 4, 5, 6, 12

*In re Volkswagen, Inc.*,
    545 F.3d 304 (5th Cir. 2008) ("*Volkswagen II*") ...................... 4, 6, 8, 11

*Innoband, Inc. v. Aso Corp.*,
    2011 WL 835934 (E.D. Tex. Mar. 4, 2011) ........................................ 14

*Jones v. Hartford Life & Accident Ins. Co.*,
    2009 WL 10677487 (E.D. Tex. Feb. 11, 2009) .................................... 7

*Realtime Data LLC v. Dropbox, Inc.*,
    2016 WL 153860 (E.D. Tex. Jan. 12, 2016) ....................................... 12

Appx61

## TABLE OF AUTHORITIES

**Page**

*TC Heartland LLC v. Kraft Foods Grp. Brands LLC,*
   137 S.Ct. 1514 (2017)..................................................................................... 5

**Statutes**

28 U.S.C. § 1400(b) ........................................................................................... 4

28 U.S.C. § 1404(a) ........................................................................................... 1

**Rules**

Fed. R. Civ. P. 45(c)(1)(A)-(B).......................................................................... 9

iv

Appx62

## I.      INTRODUCTION

Defendants Micron Technology, Inc., Micron Semiconductor Products, Inc., and Micron Technology Texas, LLC (collectively, "Micron") move the Court to transfer venue to the District of Idaho pursuant to 28 U.S.C. § 1404(a).

BeSang's claims against Micron have multiple ties to the District of Idaho, but none to this District.  Micron's likely witnesses include engineers based in Idaho.  Micron's sources of proof include documents and other evidence located in Idaho—research, development, and testing of the accused products took place at Micron's headquarters in Boise, Idaho.  Additionally, at least one non-party witness specifically identified by BeSang in the Complaint as having knowledge relevant to this dispute is located in Idaho.  By contrast, there are no relevant witnesses or sources of proof located in this District.  BeSang is an Oregon corporation with no connection to this District.  And while BeSang relies on the presence of one small Micron office in Allen, Texas for venue, none of Micron's small number of Allen, Texas employees have any knowledge relevant to this case, nor do Micron's limited business activities in Texas have any meaningful connection to the disputes at issue in this case.  These facts, coupled with the strong local interest Idaho has in the outcome of litigation involving one of its major employers, strongly support transfer to the clearly more convenient District of Idaho.

## II.     FACTUAL BACKGROUND

On January 23, 2023, BeSang filed its Complaint against Micron alleging infringement of U.S. Patent No. 7,378,702 ("the '702 Patent").   The asserted claims are directed to a "semiconductor memory structure."  ECF No. 1, ¶ 52.  BeSang alleges that Micron infringes the '702 Patent by making, using, selling, offering to sell, and/or importing certain products that include "3D NAND Flash products incorporating CMOS under Array." *Id.*, ¶¶ 40, 51.  While the

Appx63

accused products include various SSDs ("solid-state drives"), BeSang's infringement contentions are based entirely on the 3D NAND chips included within those SSDs—no other components of the accused SSDs are implicated by BeSang's contentions.  *Id*. ¶ 41; Mackay Decl., ¶ 1; Ex 1 (Exhibit 1 to Micron's Infringement Contentions).  In particular, BeSang bases its infringement contentions on the internal structure of Micron's 3D NAND chips, including, for example, the presence of "vertically oriented semiconductor memory cells."  ECF No. 1, ¶ 73.

Micron is headquartered in Idaho, with its principal place of business in Boise, Idaho.  *See* Kiehlbauch Decl. ¶ 4.  Micron is one of Idaho's largest private employers, with more than 5,400 employees in Idaho alone.  *Id*. ¶ 5.  While Micron has two Texas facilities—one in this District, in Allen, and another in Austin—Micron's Texas sites employ only approximately 3% of Micron's United States employees, and less than 1% of Micron's employees worldwide.  *Id*. ¶ 7.

Micron conducts 3D NAND-related research, development, and testing at its Boise headquarters.  *Id*. ¶ 9.  Accordingly, Micron employees with relevant technical knowledge about Micron's accused 3D NAND products are located in Idaho.  *Id*. ¶¶ 12-13.  These include Mark Kiehlbauch, Mallesh Rajashekharaiah; Lars Heineck; Richard Hill; Allen Mcteer; Kunal Shrotri; and Mike Bernhardt, all of whom are Micron engineers involved in the research, design, and development of the accused products.  *Id*. ¶ 13.  Because Micron's 3D NAND-related design and product engineering occurs at both Micron's Boise headquarters and in Micron's San Jose and Folsom, California facilities, additional Micron employees with relevant technical knowledge are also located in California.  *Id*. ¶¶ 9, 13.  Micron employees with relevant knowledge are also likely located in Singapore, where Micron manufactures all of the accused products.  *Id*.

Appx64

Former Micron employees, Kirk Prall and Matt Freeman, both of whom are named in the Complaint, were based at Micron's Boise, Idaho site.  *Id.* ¶ 18.  Mr. Prall is still in Idaho, based on public sources.  ECF No. 1, ¶¶ 33-35, 37; Mackay Decl. ¶ 2; Ex. 2.

Micron facilities in Idaho house a vast amount of relevant design and development documents for the accused products, as well as relevant marketing documents.  Kiehlbauch Decl. ¶ 10.  To the extent any relevant documents are not located in Idaho (including manufacturing and financial documents), they are located in California and Singapore, not Texas.  *Id.* ¶¶ 10-11.

None of Micron's NAND-related research, design, development, or manufacturing occurs in Texas, and Micron does not have any Texas employees with relevant knowledge of the 3D NAND chips included within the accused products, or any relevant sources of proof located in Texas.  *Id.* ¶¶ 11-12, 16-17.  While some testing of the accused SSDs occurs at Micron's Austin site (outside of this District), that testing primarily involves measuring read/write speeds and power consumption of the SSDs, and not any separate testing of the individual components included within those SSDs (such as any 3D NAND chips, the internal structure of which forms the basis for BeSang's infringement contentions).  *Id.* ¶¶ 9, 17; ECF No. 1, ¶ 40.  Furthermore, no employees at Micron's Austin site work on the research, design, development, or manufacturing of the accused products.  *Id.* ¶ 17; ECF No. 1, ¶¶ 40, 51.

BeSang is an Oregon corporation, with its principal place of business in Hillsboro, Oregon.  ECF No. 1, ¶ 1.  BeSang's President and CEO, Dr. Sang-Yun Lee, is the only listed inventor on the '702 Patent.  ECF No. 1, ¶ 25.  Based on public sources, Dr. Lee lives in Portland, Oregon.  Mackay Decl. ¶ 3; Ex. 3.  Dr. Lee allegedly conducted research relating to the '702 Patent "at the Stanford Nanofabrication Facility in California and the National NanoFab Center in Korea."  ECF No. 1, ¶ 27.

### III.    LEGAL STANDARD

In patent cases, motions to transfer under 28 U.S.C. § 1404(a) are governed by the law of the regional circuit, here the Fifth Circuit.  *In re TS Tech. USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008).  The first question under Section 1404(a) is whether a civil action "might have been brought" in the proposed transferee district.  *In re Volkswagen, Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) ("*Volkswagen II*").

If the destination venue would have been a proper venue, then "[t]he determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight."  *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004).  The private factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive."  *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*").  The public factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law."  *Id.*

Plaintiff's choice of forum is not a separate factor entitled to special weight.  Rather, respect for the plaintiff's choice of forum is encompassed in the movant's burden to demonstrate that the proposed transferee forum is "clearly more convenient."  *Volkswagen II*, 545 F.3d at 314-15.

### IV.    THE DISTRICT OF IDAHO IS CLEARLY MORE CONVENIENT

#### A.    This Case Could Have Been Brought in the District of Idaho

A patent infringement case may be brought in "the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and

4

established place of business." 28 U.S.C. § 1400(b); *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514, 1519 (2017). A domestic corporate defendant is deemed to reside (i) in its state of incorporation, and (ii) in the state where it has its principal place of business. *TC Heartland*, 137 S. Ct. at 1521.

All three of the Micron defendants have their principal place of business in Boise, Idaho. *See* Kiehlbauch Decl. ¶ 4. In addition, two of the three Micron defendants were incorporated under the laws of Idaho and are Idaho entities, with the third being a Delaware (and not Texas) company. ECF No. 1, ¶¶ 2-4; Kiehlbauch Decl., ¶ 6. As a result, all three Micron defendants reside in the District of Idaho, making venue proper there.

**B.    The Private Interest Factors Favor Transfer to the District of Idaho**

**1.    Cost of Attendance For Willing Witnesses Favors Transfer**

This private interest factor considering the convenience of witnesses "is probably the single most important factor in [the] transfer analysis." *In re Genentech, Inc.*, 566 F.3d 1338, 1343 (Fed. Cir. 2009). Where, as here, "the distance between an existing venue for trial of a matter and a proposed venue . . . is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen I*, 371 F.3d at 204-05. Additionally, under this factor, both the convenience of party and non-party witnesses must be considered. *See, e.g.*, *In re Juniper Networks, Inc.*, 14 F.4th 1313, 1319 (Fed. Cir. 2021) (rejecting an approach that discounted importance of this factor for party witnesses); *In re Hulu, LLC*, No. 2021-142, 2021 WL 3278194, at *5 (Fed. Cir. Aug. 2, 2021) (error for district court to not consider inconvenience for party witnesses).

Micron is not aware of—and the Complaint does not identify—any potential witnesses residing in the EDTX or for whom proceedings would be more convenient if a trial was held here. In contrast, at least seven relevant, willing witnesses for Micron are located in Idaho. Micron

5

Appx67

engineers who are primarily responsible for the research, design, and development of the accused products include Mark Kiehlbauch, Mallesh Rajashekharaiah; Lars Heineck; Richard Hill; Allen Mcteer; Kunal Shrotri; and Mike Bernhardt.  Kiehlbauch Decl., ¶ 13.  All are working and based in Boise, Idaho.

The convenience of these potential trial witnesses favors transfer to the District of Idaho, as it is well-established that "it is more convenient [] to testify at home." *Volkswagen II*, 545 F.3d at 317.  Traveling to Shreveport (the nearest airport to Marshall, Texas) would require over five hours of flight time, not including time spent traveling from the Shreveport airport to Marshall. Mackay Decl. ¶ 4; Ex. 4.  The long trips and overnight stays in Marshall would lead to lost productivity and disruption to the witnesses' lives while "being away from work, family, and community." *Volkswagen II*, 545 F.3d at 317.  By contrast, if this case is transferred to the District of Idaho, Micron's witnesses could readily travel back and forth between court and their homes, and the federal courthouse in Boise is only approximately eight miles from Micron's headquarters (well under a thirty-minute commute).  Mackay Decl. ¶ 5; Ex. 5; *see also Volkswagen I*, 371 F.3d at 205 ("[T]he task of scheduling fact witnesses so as to minimize the time when they are removed from their regular work or home responsibilities gets increasingly difficult and complicated when the travel time from their home or work site to the court facility is five or six hours one-way as opposed to 30 minutes or an hour.").

For witnesses not in Idaho, attending trial in Boise would still be more convenient than doing so in Marshall.  For example, for Micron witnesses in California, Boise is significantly closer (~1,100 miles closer) than Marshall.  Mackay Decl. ¶ 6; Ex. 6.  The same is true for BeSang's likely witness, Dr. Lee, whose location in Oregon is significantly closer (~1,400 miles closer) to Boise than to Marshall.  Mackay Decl. ¶ 7; Ex. 7.  Numerous prior art witnesses are also located

in the Silicon Valley area, which is ~1,100 miles closer to Boise than to Marshall.  Mackay Decl. ¶ 8; Ex. 8 (U.S. Patent No. 6,881,994, Ex-1007 to Micron's IPR Filing, listing named prior art witness-inventors in Cupertino, Redwood City, Palo Alto, Mountain View, Santa Clara, Los Altos, and Portola Valley, California).  At the same time, the Boise airport is only approximately five miles from the federal courthouse in Boise, while the nearest airport to Marshall, located in Shreveport, Louisiana, is significantly further (38 miles).  Mackay Decl. ¶ 9; Ex. 9; *see e.g.*, *Jones v. Har.ford L.fe & Accident Ins. Co.*, No. 2:08-CV-182, 2009 WL 10677487, at *3 (E.D. Tex. Feb. 11, 2009) (finding that "proximity of . . . a major airport . . . makes [transferee venue] more convenient for [witnesses] that must travel regardless of where the trial is held").  And, for any Micron witnesses not in Idaho (including potential witnesses in Singapore, for whom the distances to Boise and Marshall are both significant), Boise is more convenient because the airport is only approximately five miles from Micron's Boise headquarters.  Mackay Decl. ¶ 10; Ex. 10.  Those witnesses could use Micron's headquarters to minimize the inconvenience of being away from their home Micron offices, and may even be able to combine the trip with meetings at Micron's headquarters that might otherwise have been scheduled for a different time.

The Court should reject any attempt by BeSang to seize on Micron's small Allen and Austin, Texas offices.  The employees in these offices represent only approximately 3% of Micron's employees in the United States, and none are likely witnesses, as none have knowledge relevant to this case.  Kiehlbauch Decl. ¶¶ 7, 9, 12, 14-17.  In particular, no research, design, development, manufacturing, testing, or sales of the accused products occurs in Micron's Allen, Texas facility.  *Id.* ¶¶ 9, 15-16. While some testing of the accused SSDs occurs in Micron's Austin, Texas facility, that testing is primarily related to the read/write speeds and power consumption of those SSDs and does not involve any testing relevant to the subject matter of the asserted claims.

7

Appx69

*Id.* ¶¶ 9, 17.  And even if the Austin employees who perform such testing were relevant to the issues in this case—which Micron contends they are not—"any significance of those witnesses [would be] slight in the mix as a whole," given that Austin is located outside of this District, and "[t]he comparison between the transferor and transferee forums is *not altered* by the presence of other *witnesses* and documents in places *outside both forums*."  *In re Netflix, Inc.*, No. 2022-110, 2022 WL 167470, at *4 (Fed. Cir. Jan. 19, 2022) (emphasis added) (quoting *In re Toyota Motor Corp.*, 747 F.3d 1338, 1340 (Fed. Cir. 2014)).

Where, as here, Micron has "identified several potential party . . . witnesses residing in the [District of Idaho], and no potential witnesses appear to reside in the [Eastern District of Texas], the witness convenience factor weighs strongly in favor of transfer."  *In re Apple*, No. 2021-181, 2021 WL 5291804, at *3 (Fed. Cir. Nov. 15, 2021) (citing *In re Google*, No. 2021-171, 2021 WL 4592280, at *5 (Fed. Cir. Oct. 6, 2021)); *see also In re Amazon.com, Inc.*, No. 2022-157, 2022 WL 17688072, at *4 (Fed. Cir. Dec. 15, 2022) ("When, as here, there are numerous witnesses in the transferee venue and the only other witnesses are far outside the plaintiff's chosen forum, the witness-convenience factor favors transfer.").

### 2.    Relative Ease of Access to Sources of Proof Favors Transfer

As the Federal Circuit has explained, "[i]n patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer.  Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location."  *Genentech*, 566 F.3d at 1345 (internal quotation omitted).  "While electronic storage makes documents more widely accessible than was true in the past, the fact that documents can often be accessed remotely does not render the sources-of-proof factor irrelevant."  *In re NetScout Sys., Inc.*, No. 2121-173, 2021 WL 4771756, at *4 (Fed. Cir. 2021) (citing *Volkswagen II*, 545 F.3d at 316).  This is because the

8

Appx70

inquiry under this factor involves the *relative* ease of access between the two venues, and electronic sources of proof are *relatively* more easily accessed from where they were created and stored. *See, e.g.*, *In re Apple Inc.*, No. 2022-128, 2022 WL 1196768 at *4 (Fed. Cir. Apr. 22, 2022) (explaining that "[t]he district court . . . failed to ask the correct question [(*i.e.*, where is it *relatively* easier to access defendant's electronic documents)], and in doing so improperly discounted the relative convenience of the transferee venue").

Here, a vast amount of non-witness sources of proof (e.g., documents and physical evidence) are located in Idaho, California, and Singapore. Kiehlbauch Decl. ¶¶ 9-10. In particular, Micron facilities in Idaho house a vast amount of relevant design and development documents relating to the accused products, as well as relevant marketing documents. *Id*. ¶ 10. Micron also has physical samples of certain of the accused products in Boise. *Id*. On the other hand, no relevant sources of proof are located in this District, or even in Texas, more generally. *Id*. ¶¶ 9, 11, 14-17. And, BeSang has no presence in Texas, nor has it identified any sources of proof in Texas. ECF No. 1, ¶ 1. Because the relevant inquiry under this factor is the "*relative* ease of access, not *absolute* ease of access" to sources of proof, the complete absence of any evidence in the Eastern District of Texas, coupled with evidence of the research, design, and development of the accused products in Idaho, weighs heavily in favor of transfer to the District of Idaho. *In re Radmax, Ltd.*, 720 F.3d 285, 288 (Fed. Cir. 2013). This conclusion is true regardless of the fact that additional sources of proof are likely located at Micron's facilities in California and Singapore, outside of both districts. *See, e.g.*, *Juniper*, 14 F.4th at 1321 ("We have held that the fact that some evidence is stored in places other than either the transferor or the transferee forum does not weigh against transfer."); *In re Apple Inc.*, No. 2022-128, 2022 WL 1196768, at *4 (Fed. Cir. Apr. 22, 2022) (finding that the district court erred by "fault[ing] Apple for not clearly showing that the bulk of

9

Appx71

the documentary evidence was located or stored in the [proposed transferee venue]," because "[e]ven so, with nothing on the other side of the ledger in the [transferor venue], the [transferee venue] would still have a comparative advantage with regard to the ease of access to the sources of proof located within that district.").

That Micron does not have relevant sources of proof in Texas is not surprising because, as discussed above, none of Micron's Texas-based personnel worked on the research, design, development, or manufacturing of the accused products. Kiehlbauch Decl. ¶¶ 12, 14-17. To the extent that BeSang alleges that relevant sources of proof are located at Micron's Austin site, given that some testing of accused SSDs occurs there, such allegations are irrelevant to the transfer analysis because Austin is outside this District. *See, e.g.*, *In re Toyota Motor Corp.*, 747 F.3d 1338, 1340 (Fed. Cir. 2014) ("The comparison between the transferor and transferee forums is *not altered* by the presence of other witnesses and documents in places *outside both forums*." (emphasis added)).

To the extent BeSang has evidence relevant to this case, it would be easier to access that evidence from Boise than from this District. The named inventor of the '702 Patent, Dr. Lee, is located in Portland, Oregon, which is 340 miles from Boise and 1,750 miles from Marshall. Mackay Decl. ¶ 7; Ex. 7. In addition, the Complaint alleges that BeSang "created prototypes of 3D memory devices . . . at the Stanford Nanofabrication Facility in California." ECF No. 1, ¶ 27. Stanford, California is 530 miles from Boise and 1,600 miles from Marshall. Mackay Decl. ¶ 11; Ex. 11. Thus, it would be easier to take discovery of the records at the Stanford Nanofabrication Facility from Boise than from Marshall.

Because relevant sources of proof are either located in Idaho or more conveniently accessed from Idaho, and no proof is located in this District, this factor weighs heavily in favor of transfer.

10

Appx72

### 3. Availability of Compulsory Process Favors Transfer

The "availability of compulsory process" factor "weigh[s] heavily in favor of transfer when more third-party witnesses reside within the transferee venue than reside in the transferor venue." *In re Apple, Inc.*, 581 F. App'x 886, 889 (Fed. Cir. 2014).  This is because, under Federal Rule of Civil Procedure 45, a court may subpoena a person (a) within 100 miles of where the person works or resides, or (b) within the state when the witness is a party, an officer of the party, or would not incur substantial expense to attend trial.  Fed. R. Civ. P. 45(c)(1)(A)-(B).

At least one relevant third party is located in Idaho, whom BeSang specifically identified in the Complaint as allegedly relevant to damages issues, including BeSang's allegations of willfulness.  The Complaint identifies retired Micron employee Kirk Prall, who allegedly attended a workshop at which Dr. Lee made a presentation on the topic of "Architecture of 3D Memory Cell Array on 3D IC."  ECF No. 1, ¶¶ 33-34.  Based on publicly available information, Mr. Prall is currently located in Boise, Idaho.  Mackay Decl. ¶ 2; Ex. 2.  Micron is not aware of any relevant third-party witnesses in the Eastern District of Texas, or Texas more generally.  Accordingly, this factor favors transfer.

### 4. All Other Practical Problems Associated With Trial are Neutral

Under the final private interest factor, courts consider "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 314.  Moreover, "garden-variety delay associated with transfer is not to be taken into consideration when ruling on a § 1404(a) motion to transfer." *Radmax*, 720 F.3d at 289.

This case is in its early stages, so transfer would not prejudice BeSang.  Micron only recently filed its Answer on March 31, 2023, discovery has not opened, and the Case Management Conference only just occurred on May 30, 2023.  ECF Nos. 23, 27.  Accordingly, "no practical

11

Appx73

problems exist that would deter this Court from transferring this litigation." *Cooktek Induction Sys., LLC v. I/O Controls Corp.*, No. 4:15-CV-548, 2016 WL 4095547, at *6 (E.D. Tex. Aug. 2, 2016); *see also Farmobile LLC v. Farmers Edge Inc.*, No. 2:21-CV-00411, 2022 WL 2653893, at *5 (E.D. Tex. July 2, 2022). Because no practical problems weigh for or against transfer, this factor is neutral.

### C.    The Public Interest Factors Favor Transfer to the District of Idaho

#### 1.    The District of Idaho has a Strong Local Interest

The "local interest" factor considers not merely the parties' "connections to each forum writ large, but rather the 'significant connections between a particular venue and *the events that gave rise to a suit.*'" *In re Apple*, 979 F.3d 1332, 1344 (Fed. Cir. 2020) (quoting *In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010)). In this manner, it takes into consideration the Fifth Circuit's recognition that "jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Volkswagen I*, 371 F.3d at 206.

The District of Idaho has a strong local interest in this case. Not only is Micron headquartered in Idaho, but research, design, development, and testing of the accused products took place in Idaho. Kiehlbauch Decl., ¶¶ 4, 9, 12-13; *see In re Samsung Elecs. Co.*, 2 F.4th 1371, 1380 (Fed. Cir. 2021) (strong local interest in district where accused products were "researched, designed, and developed"); *In re Apple Inc.*, No. 2021-181, 2021 WL 5291804, at *4 (Fed. Cir. Nov. 15, 2021) (agreeing with district court that Apple's proposed venue had "a strong local interest in this matter because the research, development, and operation of the accused technology took place there, [and] Apple is headquartered there"). Accordingly, the work of several of the over 5,000 Idaho-based Micron employees relates to the accused technology, including at least seven potential witnesses. Kiehlbauch Decl., ¶¶ 4-5, 12-13; *see, e.g.*, *Realtime Data LLC v. Dropbox, Inc.*, No. 6:15-CV-00465-JDL, 2016 WL 153860, at *5 (E.D. Tex. Jan. 12, 2016)

("Ultimately, because [Defendant] has identified several individuals whose work relates to the accused technology and who are located in the [proposed transferee venue], the Court finds that [the proposed venue] has a greater local interest in the outcome of the litigation."). Further, BeSang's allegations of willful infringement appear to be based on prior interactions between Dr. Lee of BeSang and Kirk Prall and Matt Freeman (who were based in Micron's headquarters in Boise at the time of the alleged interactions and where Mr. Prall still resides), and therefore "call[] into question the work and reputation of [] individuals residing in or near that district," adding to the strong local interest the District of Idaho already has in this case. *In re Hcₒfman-La Roche Inc.*, 587 F.3d 1333, 1336 (Fed. Cir. 2009); ECF No. 1, ¶¶ 34-37; Mackay Decl. ¶ 2; Ex. 2.

By contrast, the Eastern District of Texas is not home to BeSang or Dr. Lee, and none of the accused products were developed or designed there. Although Micron has an office in Allen, Texas (in this District), Micron's Allen-based employees do not have any relevant knowledge or experience related to the accused products, and the Allen facility does not house relevant sources of proof. Kiehlbauch Decl., ¶¶ 9, 11-12, 14-17. And while employees in Micron's Austin office have some experience testing accused SSDs, not only is that office *not* located within this District, but those employees are not involved in the research, design, development, or manufacturing of the accused products, and therefore do not have knowledge relevant to the 3D NAND chips included within those products and upon which BeSang bases its infringement contentions. *Id.* ¶¶ 9, 17. Accordingly, "even if these Texas-based operations have some connection to the accused [products] here [which Micron contends they do not], that connection [would be] insubstantial compared to [Idaho]'s significant connection to the design and development of the accused features." *In re DISH Network LLC*, No. 2021-182, 2021 WL 4911981, at *3 (Fed. Cir. Oct. 21, 2021) (rejecting suggestion that limited facilities in the Western District of Texas created a local

13

interest there); *see also In re Apple Inc.*, No. 2022-137, 2022 WL 1676400, at *2 (Fed. Cir. May

26, 2022) (finding that district court committed "clear abuse of discretion" by weighing Apple's

"general presence" in the district against transfer, where "[n]othing in the court's opinion of the

record offers any indication that Apple's in-district offices had any involvement in the research,

design, or development of the accused technology").

And while Micron's accused products undoubtedly do end up in this District, "[t]he Fifth

Circuit has unequivocally rejected the argument that citizens of the venue chosen by the plaintiff

have a 'substantial interest' in adjudicating a case locally because some allegedly infringing

products found their way into the Texas market." *In re Nintendo Co.*, 589 F.3d 1194, 1198 (Fed.

Cir. 2009); *see also Innoband, Inc. v. Aso Corp.*, No. 2:10-CV-191-TJW-CE, 2011 WL 835934,

at *6 (E.D. Tex. Mar. 4, 2011) ("Interests that 'could apply virtually to any judicial district or

division in the United States,' such as the nationwide sale of infringing products, are disregarded

in favor of particularized local interests."). Accordingly, this factor strongly favors transfer.

### 2.    The Court Congestion Factor is Neutral

The Federal Circuit has explained that the court congestion factor is neutral where the

plaintiff "is not engaged in product competition in the marketplace." *In re Google LLC*, 58 F.4th

1379, 1383 (Fed. Cir. 2023). The Complaint does not allege that BeSang is actively selling its

products. ECF No. 1. Rather, it appears that BeSang was formed by Dr. Lee merely to license his

patented technologies. Mackay Decl. ¶ 12; Ex. 12. Thus, this factor is neutral.

Even if Besang could show that it is currently marketing products, this factor would still

not weigh against transfer. Court statistics show that the District of Idaho has a much smaller

caseload than this District. Mackay Decl. ¶ 13; Ex. 13 (showing that this District has 6,325 pending

cases and 791 pending cases per judge, whereas the District of Idaho has only 1,090 pending cases

Appx76

and 545 pending cases per judge).  And although this Court might hold a trial earlier than the District of Idaho, the Federal Circuit "do[es] not regard the relative speed with which [a] case might be brought to trial in the two districts to be of particular significance." *Juniper*, 14 F.4th at 1322.  Accordingly, even if this factor were not neutral because of BeSang's lack of product competition, then it would weigh in favor of transfer.

### 3.    Familiarity with Governing Law and Conflicts of Law are Neutral

The remaining two public interest factors are neutral.  All of the claims in this case arise under Federal Patent law, such that all federal courts are equally capable of applying the law in this case.  *See TS Tech USA*, 551 F.3d at 1320.  And, Micron has no reason to believe that this case will involve any conflict of law issues.  *See Radmax*, 720 F.3d at 289.

### D.    The Balance of Factors Demonstrates that the District of Idaho is the Clearly More Convenient Forum

All of the private and public interest factors either favor transfer or are neutral.  Likely party and non-party witnesses are located in Idaho.  None are located in this District.  Similarly, relevant sources of proof are either located in Idaho or more easily accessed from Idaho.  None are located in this District.  Further, because Micron researches, designs, and develops the accused products at its headquarters in Boise, Idaho and employs thousands of Idaho residents, Idaho has a strong local interest in this case.  Combined, these factors demonstrate that the District of Idaho is clearly more convenient than the Eastern District of Texas.

## V.    CONCLUSION

For the above reasons, and because the Eastern District of Texas has no connection to this case, Micron respectfully asks the Court to transfer this case to the District of Idaho.

Appx77

Dated: May 31, 2023

Respectfully submitted,

*/s/ Melissa R. Smith*

GILLAM & SMITH, LLP
Melissa R. Smith (TX #24001351)
melissa@gillamsmithlaw.com
303 South Washington Avenue
Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257

O'MELVENY & MYERS LLP
John Kappos (TX# 24130097)
jkappos@omm.com
Timothy S. Durst (TX #00786924)
tdurst@omm.com
Cason G. Cole (TX#24109741)
ccole@omm.com
Frances Mackay (TX#24109494)
fmackay@omm.com
2501 North Harwood Street, Suite 1700
Dallas, TX 75201
Telephone: (972) 360-1900
Facsimile: (972) 360-1901

Xin-Yi Zhou (TX# 24127916)
vzhou@omm.com
400 South Hope Street, 18th Floor
Los Angeles, CA 90071
Telephone: (213) 430-6000
Facsimile: (213) 430-6407

William M. Fink (admitted *pro hac vice*)\
tfink@omm.com
Patric Reinbold (admitted *pro hac vice*)
preinbold@omm.com
1625 Eye Street, NW
Washington, DC 20006
Telephone: (202) 383-5300
Facsimile: (202) 383-5414

*Attorneys for Defendants Micron Technology, Inc.,*
*Micron Semiconductor Products, Inc., and*
*Micron Technology Texas, LLC.*

16

Appx78

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on May 31, 2023.  Any other counsel of record will be served by facsimile transmission, e-mail and/or first class mail.

*/s/ Melissa R. Smith*

**CERTIFICATE OF CONFERENCE**

The undersigned hereby certifies that on May 25, 2023, pursuant to Local Rule CV-7(h), counsel for Micron met and conferred with counsel for BeSang regarding Micron's Motion to Transfer.  Counsel for BeSang indicated that BeSang is opposed to the relief sought by Micron's Motion.

*/s/ Melissa R. Smith*

Appx79

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

|  |  |
|---|---|
| BESANG, INC., | |
| *Plaintiff* | |
| v. | Case No. 2:23-cv-00028 |
| MICRON TECHNOLOGY, INC., MICRON SEMICONDUCTOR PRODUCTS, INC., and MICRON TECHNOLOGY TEXAS, LLC, | **Jury Trial Demanded** |
| *Defendants*. | |

**DEFENDANTS' MOTION TO STAY PENDING *INTER PARTES* REVIEW**

**TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ................................................................................................... 1

II.    FACTUAL BACKGROUND ................................................................................. 2

III.   LEGAL STANDARD ............................................................................................ 3

IV.    ALL FACTORS FAVOR STAYING THIS CASE PENDING RESOLUTION OF
       MICRON'S IPR ..................................................................................................... 3

       A.     BeSang Will Not Suffer Any Undue Prejudice ....................................... 3

       B.     This Case Is at an Early Stage and Is Well-Situated for a Stay .............. 6

       C.     A Stay Will Simplify the Issues ............................................................... 7

V.     CONCLUSION ...................................................................................................... 9

i

**TABLE OF AUTHORITIES**

**Page**

**Case**

*Arbor Global Strategies LLC v. Samsung Elecs. Co., Ltd.*,
    No. 2:19-cv-00333-JRG-RSP, 2021 WL 66531, (E.D. Tex. Jan. 7, 2021) ............................ 6

*Aylus Networks, Inc. v. Apple Inc.*,
    856 F.3d 1353 (Fed. Cir. 2017) ................................................................................. 8

*Capriola Corp. v. LaRose Indus., LLC*,
    No. 12-2346, 2013 WL 1868344 (M.D. Fla. Mar. 11, 2013) .................................... 7

*CyWee Grp. Ltd. v. Samsung Elecs. Co.*,
    No. 217CV00140WCBRSP, 2019 WL 11023976 (E.D. Tex. Feb. 14, 2019) ........................ 4

*Destination Maternity v. Target Corp.*,
    12 F. Supp. 3d 762 (E.D. Penn. 2014) ................................................................... 7

*Ericsson Inc. v. TCL Commc'n Tech. Holdings, Ltd.*,
    No. 2:15-CV-00011-RSP, 2016 WL 1162162 (E.D. Tex. Mar. 23, 2016) ........................... 3

*Ethicon, Inc. v. Quigg*,
    849 F.2d 1422 (Fed. Cir. 1988) ................................................................................. 3

*Fall Line Pats., LLC v. Zoe's Kitchen, Inc.*,
    No. 6:18-CV-00407-RWS, 2019 WL 11025871 (E.D. Tex. Aug. 9, 2019) ........................ 3

*Fresenius USA, Inc. v. Baxter Int'l, Inc.*,
    721 F.3d 1330 (Fed. Cir. 2013) ................................................................................. 8

*In re Etter*,
    756 F.2d 852 (Fed.Cir.1985) ..................................................................................... 9

*Interface, Inc. v. Tandus Flooring, Inc.*,
    No. 4:13-46, 2013 WL 5945177 (N.D. Ga. Nov. 5, 2013) ...................................... 7

*Krippelz v. Ford Motor Co.*,
    667 F.3d 1261 (Fed. Cir. 2012) ................................................................................. 8

*Landmark Tech., LLC v. iRobot Corp.*,
    No. 6:13-cv-411-JDL, 2014 WL 486836 (E.D. Tex. Jan. 24, 2014) ........................ 6

*MCM Portfolio LLC v. Hewlett-Packard Co.*,
    812 F.3d 1284 (Fed. Cir. 2015) ................................................................................. 5

*NFC Techs. LLC v. HTC Am., Inc.*,
    No. 2:13-cv-1058-WCB, 2015 WL 1069111 (E.D. Tex. Mar. 11, 2015) ....................... passim

Appx82

**TABLE OF AUTHORITIES**

**(continued)**

**Page**

*Norman IP Holdings, LLC v. TP-Link Techs.,*
    *Co.*, No. 6:13-cv-384-JDL, 2014 WL 5035718 (E.D. Tex. Oct. 8, 2014) ................................ 6

*Raytheon Co. v. Samsung Elecs. Co.*,
    No. 2:15-CV-341-JRG-RSP, 2016 WL 11639659 (E.D. Tex. Feb. 22, 2016) ........................ 5

*Stragent LLC v. BMW of N. Am., LLC*,
    No. 6:16-CV-446, 2017 WL 3709083 (E.D. Tex. July 11, 2017) ............................................ 5

*Uniloc USA, Inc. v. Samsung Elecs. Am., Inc.*,
    No. 2:16-CV-642-JGR, 2017 WL 9885168 (E.D. Tex. June 13, 2017) ................................... 8

*Vill. Green Techs., LLC v. Samsung Elecs. Co.*,
    No. 2:22-CV-00099-JRG, 2023 WL 416419 (E.D. Tex. Jan. 25, 2023) ......................... 4, 8, 9

*VirtualAgility Inc. v. Salesforce.com, Inc.*,
    759 F.3d 1307 (Fed. Cir. 2014) ................................................................................ 3, 4, 5, 6

**Statute**

35 U.S.C. § 314(a) ......................................................................................................................... 7

35 U.S.C. § 315(e)(2) .................................................................................................................... 9

**Other Authorities**

H.R. Rep. No. 112-98, 2011 U.S.C.C.A.N. 67, 69 ........................................................................ 5

iii

## I.    INTRODUCTION

Defendants Micron Technology, Inc., Micron Semiconductor Products, Inc., and Micron Technology Texas, LLC (collectively, "Micron") respectfully move the Court to stay this case until the Patent Trial and Appeal Board ("PTAB") concludes its *inter partes* review ("IPR") of the patent-in-suit, U.S. Patent No. 7,378,702 ("'702 Patent" or "Asserted Patent"), including the conclusion of any subsequent appeal.

Only three months after Plaintiff BeSang Inc. ("BeSang") initiated the present case, and before BeSang served its Infringement Contentions, Micron filed an IPR Petition challenging all asserted claims of the Asserted Patent. Each factor relevant to the stay analysis—potential undue prejudice to the non-moving party, the stage of the proceedings, and simplification of issues—favors a stay.

*First*, staying these proceedings will not prejudice BeSang. Money damages, in the unlikely event BeSang ultimately prevails, offer an entirely adequate compensatory remedy for any alleged infringement. But BeSang cannot demonstrate any actionable prejudice resulting from a stay for three additional reasons: (i) BeSang does not compete with Micron in the manufacture and sale of semiconductor products; (ii) the '702 Patent expires in June of next year, months before trial; and (iii) BeSang, itself, delayed its action against Micron by many years, to a point long after Micron began the manufacture and sale of the products BeSang now accuses of infringement.

*Second*, the early stage of this case favors a stay. Micron filed its Answer on March 31, 2023, discovery has not opened, and the initial Case Management Conference ("CMC") just occurred on May 30, 2023, scheduling trial for November 18, 2024. Now is an opportune time to stay proceedings before the parties and the Court expend resources that may go to waste if the PTAB ultimately invalidates the asserted claims.

1

Appx84

*Third*, a stay will simplify, if not wholly eliminate, the issues in this litigation.  Micron's IPR Petition challenges all of the claims asserted in this case.  Based on recent statistics, the PTAB will likely institute review, and the result will likely be the cancellation of all of the asserted claims.  Even if some of the asserted claims survive the IPR, the guidance that the PTAB will issue, coupled with the potential for prosecution disclaimer and statutory estoppel, will further inform and narrow numerous issues before this Court.  Under any outcome, the issues remaining for trial will be significantly simplified upon conclusion of the IPR proceeding.

Because all three factors weigh strongly in favor of a stay, Micron respectfully requests that the Court stay this action.  In the alternative, should the Court conclude that this case does not warrant a stay before the PTAB grants institution on Micron's pending IPR, Micron requests that any denial of this Motion be without prejudice and with leave to renew the Motion (with expedited briefing) upon the PTAB's issuance of its IPR institution decision.

## II.    FACTUAL BACKGROUND

On January 23, 2023, BeSang filed its Complaint in this action, accusing certain Micron products that incorporate 3D NAND of infringing the '702 Patent.  ECF No. 1, ¶¶ 40, 51.  Micron timely filed its Answer on March 31, 2023.  ECF. No. 23.  Discovery has not opened and the CMC just occurred on May 30, 2023, scheduling trial for November 18, 2024.  ECF No. 27.

On May 4, 2023, almost two weeks before receiving BeSang's Infringement Contentions, Micron filed an IPR Petition—IPR2023-00900—challenging claims 13-17 of the '702 Patent.  These challenged claims encompass all of the asserted claims (claims 13-16) later identified by BeSang in its Infringement Contentions.  Mackay Decl., ¶ 1; Ex. 1.  The applicant for patent presented no art to the PTO during prosecution of the '702 patent, and the PTO itself did not refer to any of the prior art references upon which Micron relies in its Petition.

2

## III.     LEGAL STANDARD

It is well-established that "[a] district court has the inherent power to control its own docket, including the power to stay proceedings." *Fall Line Pats., LLC v. Zoe's Kitchen, Inc.*, No. 6:18-CV-00407-RWS, 2019 WL 11025871, at *1 (E.D. Tex. Aug. 9, 2019) (citing *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988)).  "A stay is particularly justified when the outcome of a PTO proceeding is likely to assist the court in determining patent validity or eliminate the need to try infringement issues." *Ericsson Inc. v. TCL Commc'n Tech. Holdings, Ltd.*, No. 2:15-CV-00011-RSP, 2016 WL 1162162, at *1 (E.D. Tex. Mar. 23, 2016).

District courts typically consider three factors when determining whether to grant a stay pending IPR of a patent-in-suit:  "(1) whether the stay will unduly prejudice the non-moving party, (2) whether the proceedings before the court have reached an advanced state, including whether discovery is complete and a trial date has been set, and (3) whether the stay will likely result in simplifying the case before the court." *NFC Techs. LLC v. HTC Am., Inc.*, No. 2:13-cv-1058-WCB, 2015 WL 1069111, at *2 (E.D. Tex. Mar. 11, 2015).  "Based on th[ese] factors, courts determine whether the benefits of a stay outweigh the inherent costs of postponing resolution of the litigation." *Id.*

## IV.     ALL FACTORS FAVOR STAYING THIS CASE PENDING RESOLUTION OF MICRON'S IPR

### A.     BeSang Will Not Suffer Any Undue Prejudice

A stay in this case will not cause BeSang to suffer any undue prejudice.  "[W]hether the patentee will be unduly prejudiced by a stay in the district court proceedings . . . focuses on the patentee's need for an expeditious resolution of its claim." *VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1318 (Fed. Cir. 2014).  BeSang's own actions belie the need for expeditious resolution of this case.

3

Appx86

The Complaint alleges pre-suit contact between Micron and BeSang occurring from 2012-2015 and demonstrates BeSang's awareness of the accused products dating back to at least 2016. ECF No. 1, ¶¶ 33-38. At any point during this time, BeSang could have asserted the '702 Patent (which had issued years earlier, on May 27, 2008) against Micron. Yet BeSang waited at least *seven years* after first becoming aware of the accused products to do so. BeSang's own delay demonstrates the lack of any urgency. *See VirtualAgility*, 759 F.3d at 1319 (finding that a one-year delay between issuance of a patent and filing suit weighed against a finding of undue prejudice from a stay); *CyWee Grp. Ltd. V. Samsung Elecs. Co.*, No. 217CV00140WCBRSP, 2019 WL 11023976, at *4 (E.D. Tex. Feb. 14, 2019) ("Further undermining [plaintiff]'s suggestion as to the urgency of obtaining judicial relief is the fact that [plaintiff] delayed for more than three years after the issuance of the [asserted patents] before bringing suit.").

Additionally, the Complaint does not allege that BeSang is actively selling any products. ECF No. 1. Rather, it appears that the company was merely formed for licensing purposes. Mackay Decl., ¶ 2; Ex. 2. The lack of competition between Micron and BeSang likewise weighs against a finding of undue prejudice. *See, e.g.*, *NFC Tech.*, 2015 WL 1069111, at *2 (finding that plaintiff would not suffer prejudice from a stay when it "does not compete with" defendant).

Moreover, even if BeSang were a competitor of Micron's, the record demonstrates that it can be adequately compensated through monetary damages should it ultimately prevail. *First*, despite the fact that BeSang seeks relief in the form of an injunction (ECF No. 1, p. 31), BeSang also seeks money damages based on the same allegedly infringing conduct, and has failed to plead any irreparable harm that cannot be remedied by money damages alone. *See, e.g.*, *Vill. Green Techs., LLC v. Samsung Elecs. Co.*, No. 2:22-CV-00099-JRG, 2023 WL 416419, at *2 (E.D. Tex. Jan. 25, 2023) (where "Plaintiff's Complaint reflects that it seeks monetary damages for the same

4

Appx87

alleged conduct for which it also seeks [an] injunction[,] . . . Plaintiff's Complaint fails to establish that monetary damages are inadequate to remedy any harm caused by Defendants").  *Second*, the '702 Patent expires on June 21, 2024, five months before the scheduled trial date of November 18, 2024.  Hence, only past damages will be at issue at trial.  *See, e.g.*, *Raytheon Co. v. Samsung Elecs. Co.*, No. 2:15-CV-341-JRG-RSP, 2016 WL 11639659, at *1 (E.D. Tex. Feb. 22, 2016) (finding no undue prejudice where "[t]he asserted patent is expired" and thus "[plaintiff] can only recover damages for past infringement, so prejudgment interest can adequately redress any delay" caused by a stay).  Thus, monetary damages will be entirely adequate to address any alleged harm.

Well-established case law makes clear that "[a] stay will not diminish the monetary damages to which [a plaintiff] will be entitled if it succeeds in its infringement suit—it only delays realization of those damages." *VirtualAgility*, 759 F.3d at 1318.  And, the "mere delay in collecting those damages does not constitute undue prejudice." *Stragent LLC v. BMW of N. Am., LLC*, No. 6:16-CV-446, 2017 WL 3709083, at *2 (E.D. Tex. July 11, 2017).  Indeed, "that factor is present in every case in which a patentee resists a stay, and it is therefore not sufficient, standing alone, to defeat a stay motion." *NFC Tech.*, 2015 WL 1069111, at *2.

On the other hand, without a stay, this case will advance toward trial and the parties and the Court will continue to invest significant time and resources in preparing the case, including through participation in discovery and claim construction.  Rather than cause prejudice to BeSang, a stay will benefit all parties by allowing them to take advantage of the IPR system, which constitutes "a more efficient and streamlined patent system that will . . . limit unnecessary and counterproductive litigation costs." *MCM Portfolio LLC v. Hewlett-Packard Co.*, 812 F.3d 1284, 1290-91 (Fed. Cir. 2015) (quoting H.R. Rep. No. 112-98, 2011 U.S.C.C.A.N. 67, 69, at 39-40).

Appx88

**B.      This Case Is at an Early Stage and Is Well-Situated for a Stay**

This case has barely begun.  As of the filing of this motion, discovery has not yet opened, trial is well over a year away (set for November 18, 2024), and venue is still in dispute.  ECF. No. 27; *see also VirtualAgility*, 759 F.3d at 1316 (the time of the motion is the relevant time from which to measure the stage of litigation under this factor).

Because "the bulk of the expenses that the parties would incur . . . are still in the future," the stage-of-litigation factor favors a stay.  *NFC*, 2015 WL 1069111, at *3; *see also Norman IP Holdings, LLC v. TP-Link Techs., Co.*, No. 6:13-cv-384-JDL, 2014 WL 5035718, at *3 (E.D. Tex. Oct. 8, 2014) ("Courts often find the stage of litigation weighs in favor of a stay if there remains a significant amount of work ahead for the parties and the court.").  Indeed, a stay of the case now, while it is at its current, early stage, has the potential to conserve this Court's valuable judicial resources and avoid significant litigation costs that may otherwise go to waste if the PTAB ultimately invalidates the asserted claims.  *See, e.g., Landmark Tech., LLC v. iRobot Corp.*, No. 6:13-cv-411-JDL, 2014 WL 486836, at *3 (E.D. Tex. Jan. 24, 2014) ("Staying a case at an early juncture can advance judicial efficiency and maximize the likelihood that neither the court nor the parties expend their assets addressing invalid claims.").

That this case is still in the earliest stages reflects Micron's diligence.  Micron filed its IPR Petition only three months after being served with the Complaint and before even receiving BeSang's Infringement Contentions.  Micron now files this Motion to Stay less than one month thereafter.  Such diligence further weighs in favor of a stay.  *See, e.g., Arbor Global Strategies LLC v. Samsung Elecs. Co., Ltd.*, No. 2:19-cv-00333-JRG-RSP, 2021 WL 66531, at *3 (E.D. Tex. Jan. 7, 2021) (granting stay in part based on "diligence shown by [Defendant]," including fact that "Defendant did not delay in notifying the Court of its desire to seek a stay of the litigation while the IPR proceeds").

### C.    A Stay Will Simplify the Issues

Courts have identified several ways a stay pending IPR could simplify issues, including: (1) allowing the PTAB, with its particular expertise, to consider prior art and invalidity issues before they are presented to the Court; (2) alleviating discovery problems relating to invalidity issues; (3) encouraging settlement without further use of the Court; (4) limiting the issues, defenses, and evidence at pretrial conferences and at trial; (5) reducing costs and burdens for both parties and the Court; and (6) avoiding the possibility of inconsistent results on invalidity issues considered by the PTAB. *See, e.g.*, *NFC Tech.*, 2015 WL 1069111, at *4; *Interface, Inc. v. Tandus Flooring, Inc.*, No. 4:13-46, 2013 WL 5945177, at *4 (N.D. Ga. Nov. 5, 2013); *Capriola Corp. v. LaRose Indus., LLC*, No. 12-2346, 2013 WL 1868344, at *1 (M.D. Fla. Mar. 11, 2013); *Destination Maternity v. Target Corp.*, 12 F. Supp. 3d 762, 766 (E.D. Penn. 2014).  A stay in the present case would provide all of these benefits.

*First*, there is a high likelihood that Micron's IPR Petition will be instituted and ultimately result in all or at least some of the asserted claims being invalidated.  Notably, the threshold for institution is low, requiring only "a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition." 35 U.S.C. § 314(a).  Recent statistics from the PTAB show that a large majority of IPR petitions are instituted.  Mackay Decl., ¶ 3; Ex. 3 at 6 (illustrating that 67% of petitions were instituted during the 2022 fiscal year).  And, once instituted, there is a high probability that the PTAB will cancel some, if not all, of the asserted claims.  For example, from October 1, 2021 to September 30, 2022, of all final written decisions that the PTAB issued, 82% resulted in the cancellation of at least some of the challenged claims, and 66% resulted in the cancellation of all challenged claims.  Mackay Decl., ¶ 3; Ex. 3 at 11. Thus, it is more likely than not that Micron's IPR will be instituted and that some, if not all, of the challenged claims will be canceled.  Any claim canceled during an IPR is rendered void *ab initio*.

*See, e.g.*, *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 721 F.3d 1330, 1346 (Fed. Cir. 2013) (vacating district court's judgment based on PTO decision invalidating asserted claims). Micron's pending IPR, therefore, has the potential to be case dispositive, resolving this entire suit without consuming any more judicial resources. *See, e.g.*, *Vill. Green Techs.*, 2023 WL 416419, at *3 ("[S]hould the IPRs result in the cancelation of some or all of the asserted claims, 'either some portion of the litigation will fall away, or the litigation will come to an end altogether,'" quoting *NFC Tech.*, 2015 WL 1069111, at *4); *Uniloc USA, Inc. v. Samsung Elecs. Am., Inc.*, No. 2:16-CV-642-JGR, 2017 WL 9885168, at *1 (E.D. Tex. June 13, 2017) ("[E]ven if the PTAB does not invalidate every claim on which it has instituted IPR, there is a significant likelihood that the outcome of the IPR proceedings will streamline the scope of this case to an appreciable extent.")

   *Second*, even if some of the asserted claims survive the IPR, a stay pending completion of Micron's IPR is still likely to simplify this case. For instance, any arguments BeSang makes in opposition to the IPR Petition will add to the '702 Patent's file history and may affect claim construction and/or limit the scope of any claims that survive review. *See, e.g.*, *Aylus Networks, Inc. v. Apple Inc.*, 856 F.3d 1353, 1362 (Fed. Cir. 2017) ("[S]tatements made by a patent owner during an IPR proceeding, whether before or after an institution decision, can be considered for claim construction and relied upon to support a finding of prosecution disclaimer."); *Krippelz v. Ford Motor Co.*, 667 F.3d 1261, 1266 (Fed. Cir. 2012) ("[P]atentee's statements during reexamination can be considered during claim construction, in keeping with the doctrine of prosecution disclaimer."). The file history of the '702 Patent—and the scope of its claims—will remain in flux until completion of the IPR proceeding. Accordingly, it makes sense to stay this action until the IPR proceeding is complete, so that the entire intrinsic record for the '702 Patent will be available to the Court. At the same time, a stay will also ensure that this Court has the

benefit of the PTAB's expertise and guidance (provided through its institution decision and any final written decision) on issues of claim scope, prior art, and invalidity.  *See, e.g., In re Etter*, 756 F.2d 852, 857 (Fed.Cir.1985) ("When the patent is concurrently involved in litigation [one function of reexamination] is to free the court from any need to consider prior art without the benefit of the PTO's initial consideration.").

*Third*, if the PTAB issues a final written decision affirming the patentability of certain claims, Micron will be estopped from arguing to this Court that those claims are invalid based on any ground that Micron "raised or reasonably could have raised" during the IPR.  35 U.S.C. § 315(e)(2); *see also Vill. Green Techs.*, 2023 WL 416419, at *3 (finding that a stay would simplify the issues in part because of the potential for estoppel).  Because of the potential for invalidation of all of the asserted claims, the forthcoming guidance from the PTAB on claim scope, prior art, and invalidity issues (whether issued through an Institution Decision or a Final Written Decision), the admissions BeSang makes regarding claim scope during the IPR proceeding, and the potential for statutory estoppel, this factor weighs in favor of a stay.

## V.    CONCLUSION

For the foregoing reasons, Micron respectfully asks that the Court stay this litigation pending the resolution of Micron's pending IPR.  Alternatively, should the Court decide that the present circumstances do not justify a stay of this case before Micron's IPR Petition is instituted, Micron respectfully requests that any denial of this Motion be without prejudice and the Court order expedited briefing on Micron's anticipated post-institution motion to stay, which it would file promptly after the PTAB issues its institution decision.

Appx92

Dated:  June 1, 2023

Respectfully submitted,

*/s/ Melissa R. Smith*

GILLAM & SMITH, LLP
Melissa R. Smith (TX #24001351)
melissa@gillamsmithlaw.com
303 South Washington Avenue
Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257

O'MELVENY & MYERS LLP
John Kappos (TX# 24130097)
jkappos@omm.com
Timothy S. Durst (TX #00786924)
tdurst@omm.com
Cason G. Cole (TX#24109741)
ccole@omm.com
Frances Mackay (TX#24109494)
fmackay@omm.com
2501 North Harwood Street, Suite 1700
Dallas, TX 75201
Telephone: (972) 360-1900
Facsimile: (972) 360-1901

Xin-Yi Zhou (TX# 24127916)
vzhou@omm.com
400 South Hope Street, 18th Floor
Los Angeles, CA 90071
Telephone: (213) 430-6000
Facsimile: (213) 430-6407

William M. Fink (admitted *pro hac vice*)\
tfink@omm.com
Patric Reinbold (admitted *pro hac vice*)
preinbold@omm.com
1625 Eye Street, NW
Washington, DC 20006
Telephone: (202) 383-5300
Facsimile: (202) 383-5414

*Attorneys for Defendants Micron Technology, Inc.,*
*Micron Semiconductor Products, Inc., and*
*Micron Technology Texas, LLC.*

10

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on June 1, 2023.  Any other counsel of record will be served by facsimile transmission, e-mail and/or first class mail.

*/s/ Melissa R. Smith*

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that on May 25, 2023, pursuant to Local Rule CV-7(h), counsel for Micron met and conferred with counsel for BeSang regarding Micron's Motion to Stay Pending *Inter Partes* Review.  Counsel for BeSang indicated that BeSang is opposed to the relief sought by Micron's Motion.

*/s/ Melissa R. Smith*

11

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| BESANG, INC., | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO. 2:23-CV-00028-JRG-RSP |
| MICRON TECHNOLOGY, INC., MICRON | § | |
| SEMICONDUCTOR PRODUCTS, INC., and | § | |
| MICRON TECHNOLOGY TEXAS, LLC, | § | |
| | § | |
| *Defendants.* | § | |

## <u>DOCKET CONTROL ORDER</u>

In accordance with the scheduling conference, it is hereby **ORDERED** that the following

schedule of deadlines is in effect until further order of this Court:

| Date | Event |
|---|---|
| November 18, 2024 | *Jury Selection – 9:00 a.m. in **Marshall, Texas** |
| 7 days before Jury Selection | *Defendant to disclose final invalidity theories, final prior art references/combinations, and final equitable defenses.[1] |
| 10 days before Jury Selection | *Plaintiff to disclose final election of Asserted Claims.[2] |

---

[1] The proposed DCO shall include this specific deadline. The deadline shall read, "7 days before Jury Selection," and shall not include a specific date.

[2] Given the Court's past experiences with litigants dropping claims and defenses during or on the eve of trial, the Court is of the opinion that these additional deadlines are necessary. The proposed DCO shall include this specific deadline. The deadline shall read, "10 days before Jury Selection," and shall not include a specific date.

| October 21, 2024 | * If a juror questionnaire is to be used, an editable (in Microsoft Word format) questionnaire shall be jointly submitted to the Deputy Clerk in Charge by this date.[3] |
|---|---|
| October 15, 2024 | *Pretrial Conference – 9:00 a.m. in **Marshall, Texas**<br>before Judge Roy Payne |
| October 7, 2024 | *Notify Court of Agreements Reached During Meet and Confer<br><br>The parties are ordered to meet and confer on any outstanding objections or motions *in limine*. The parties shall advise the Court of any agreements reached no later than 1:00 p.m. three (3) business days before the pretrial conference. |
| October 7, 2024 | *File Joint Pretrial Order, Joint Proposed Jury Instructions, Joint Proposed Verdict Form, Responses to Motions *in Limine*, Updated Exhibit Lists, Updated Witness Lists, and Updated Deposition Designations |
| September 30, 2024 | *File Notice of Request for Daily Transcript or Real Time Reporting.<br><br>If a daily transcript or real time reporting of court proceedings is requested for trial, the party or parties making said request shall file a notice with the Court and e-mail the Court Reporter, Shawn McRoberts, at shawn_mcroberts@txed.uscourts.gov. |
| September 23, 2024 | File Motions *in Limine*<br><br>The parties shall limit their motions *in limine* to issues that if improperly introduced at trial would be so prejudicial that the Court could not alleviate the prejudice by giving appropriate instructions to the jury. |
| September 23, 2024 | Serve Objections to Rebuttal Pretrial Disclosures |
| September 16, 2024 | Serve Objections to Pretrial Disclosures; and Serve Rebuttal Pretrial Disclosures |

---

[3] The Parties are referred to the Court's Standing Order Regarding Use of Juror Questionnaires in Advance of *Voir Dire.*

Appx96

| September 3, 2024 | Serve Pretrial Disclosures (Witness List, Deposition Designations, and Exhibit List) by the Party with the Burden of Proof |
|---|---|
| August 26, 2024 | *Response to Dispositive Motions (including *Daubert* Motions). Responses to dispositive motions that were filed <u>prior</u> to the dispositive motion deadline, including *Daubert* Motions, shall be due in accordance with Local Rule CV-7(e), not to exceed the deadline as set forth in this Docket Control Order.[4] Motions for Summary Judgment shall comply with Local Rule CV-56. |
| August 12, 2024 | *File Motions to Strike Expert Testimony (including *Daubert* Motions)<br><br>No motion to strike expert testimony (including a *Daubert* motion) may be filed after this date without leave of the Court. |
| August 12, 2024 | *File Dispositive Motions<br><br>No dispositive motion may be filed after this date without leave of the Court.<br><br>Motions shall comply with Local Rule CV-56 and Local Rule CV-7. <u>Motions to extend page limits will only be granted in exceptional circumstances. Exceptional circumstances require more than agreement among the parties.</u> |
| August 5, 2024 | Deadline to Complete Expert Discovery |
| July 19, 2024 | Serve Disclosures for Rebuttal Expert Witnesses |
| June 12, 2024 | Deadline to Complete Fact Discovery and File Motions to Compel Discovery |
| June 24, 2024 | Serve Disclosures for Expert Witnesses by the Party with the Burden of Proof |

---

[4] The parties are directed to Local Rule CV-7(d), which provides in part that "[a] party's failure to oppose a motion in the manner prescribed herein creates a presumption that the party does not controvert the facts set out by movant and has no evidence to offer in opposition to the motion." If the deadline under Local Rule CV 7(e) exceeds the deadline for Response to Dispositive Motions, the deadline for Response to Dispositive Motions controls.

Appx97

| | |
|---|---|
| May 30, 2024 | Comply with P.R. 3-7 (Opinion of Counsel Defenses) |
| May 9, 2024 | *Claim Construction Hearing – 9:00 a.m. in **Marshall, Texas** before Judge Roy Payne |
| April 25, 2024 | *Comply with P.R. 4-5(d) (Joint Claim Construction Chart) |
| April 18, 2024 | *Comply with P.R. 4-5(c) (Reply Claim Construction Brief) |
| April 11, 2024 | Comply with P.R. 4-5(b) (Responsive Claim Construction Brief) |
| March 28, 2024 | Comply with P.R. 4-5(a) (Opening Claim Construction Brief) and Submit Technical Tutorials (if any)<br><br>Good cause must be shown to submit technical tutorials after the deadline to comply with P.R. 4-5(a). |
| March 28, 2024 | Deadline to Substantially Complete Document Production and Exchange Privilege Logs<br><br>Counsel are expected to make good faith efforts to produce all required documents as soon as they are available and not wait until the substantial completion deadline. |
| March 14, 2024 | Comply with P.R. 4-4 (Deadline to Complete Claim Construction Discovery) |
| March 7, 2024 | File Response to Amended Pleadings |
| February 22, 2024 | *File Amended Pleadings<br><br>It is not necessary to seek leave of Court to amend pleadings prior to this deadline unless the amendment seeks to assert additional patents. |
| February 15, 2024 | Comply with P.R. 4-3 (Joint Claim Construction Statement) |
| January 25, 2024 | Comply with P.R. 4-2 (Exchange Preliminary Claim Constructions) |
| January 4, 2024 | Comply with P.R. 4-1 (Exchange Proposed Claim Terms) |

Appx98

| July 11, 2023 | Comply with Standing Order Regarding Subject-Matter Eligibility Contentions[5] |
|---|---|
| July 11, 2023 | Comply with P.R. 3-3 & 3-4 (Invalidity Contentions) |
| June 27, 2023 | File Proposed E-Discovery Order

The Proposed Order will be filed as a motion with the caption indicating whether or not the proposed order is opposed in any part. |
| June 20, 2023 | *File Proposed Protective Order and Comply with Paragraphs 1 & 3 of the Discovery Order (Initial and Additional Disclosures)

The Proposed Protective Order shall be filed as a separate motion with the caption indicating whether or not the proposed order is opposed in any part. |
| June 13, 2023 | *File Proposed Docket Control Order and Proposed Discovery Order

The Proposed Docket Control Order and Proposed Discovery Order shall be filed as separate motions with the caption indicating whether or not the proposed order is opposed in any part. |
| June 6, 2023 | Join Additional Parties |
| May 16, 2023 | Comply with P.R. 3-1 & 3-2 (Infringement Contentions) |

**(\*) indicates a deadline that cannot be changed without an acceptable showing of good cause. Good cause is not shown merely by indicating that the parties agree that the deadline should be changed.**

## ADDITIONAL REQUIREMENTS

**Mediation:** While certain cases may benefit from mediation, such may not be appropriate for every case. The Court finds that the Parties are best suited to evaluate whether mediation will benefit the case after the issuance of the Court's claim construction order. Accordingly, the Court **ORDERS** the Parties to file a Joint Notice indicating whether the case should be referred for mediation **within fourteen days of the issuance of the Court's claim construction order**. As a part of such Joint Notice, the Parties should indicate whether they have a mutually agreeable

---

[5] http://www.txed.uscourts.gov/sites/default/files/judgeFiles/EDTX%20Standing%20Order%20Re%20Subject%20Matter%20Eligibility%20Contentions%20.pdf    [https://perma.cc/RQN2-YU5P]

Appx99

mediator for the Court to consider. If the Parties disagree about whether mediation is appropriate, the Parties should set forth a brief statement of their competing positions in the Joint Notice.

**Summary Judgment Motions, Motions to Strike Expert Testimony, and _Daubert_ Motions:** For each motion, the moving party shall provide the Court with two (2) hard copies of the completed briefing (opening motion, response, reply, and if applicable, sur-reply), excluding exhibits, in D-three-ring binders, appropriately tabbed. All documents shall be single-sided and must include the CM/ECF header. These copies shall be delivered to the Court within three (3) business days after briefing has completed. For expert-related motions, complete digital copies of the relevant expert report(s) and accompanying exhibits shall be submitted on a single flash drive to the Court.  Complete digital copies of the expert report(s) shall be delivered to the Court no later than the dispositive motion deadline.

**Indefiniteness:** In lieu of early motions for summary judgment, the parties are directed to include any arguments related to the issue of indefiniteness in their _Markman_ briefing, subject to the local rules' normal page limits.

**Lead Counsel:** The Parties are directed to Local Rule CV-11(a)(1), which provides that "[o]n the first appearance through counsel, each party shall designate a lead attorney on the pleadings or otherwise." Additionally, once designated, a party's lead attorney may only be changed by the filing of a Motion to Change Lead Counsel and thereafter obtaining from the Court an Order granting leave to designate different lead counsel. The true lead counsel should be designated early and should not expect to parachute in as lead once the case has been largely developed.

**Motions for Continuance:** The following will not warrant a continuance nor justify a failure to comply with the discovery deadline:

(a)    The fact that there are motions for summary judgment or motions to dismiss pending;

(b)    The fact that one or more of the attorneys is set for trial in another court on the same day, unless the other setting was made prior to the date of this order or was made as a special provision for the parties in the other case;

(c)    The failure to complete discovery prior to trial, unless the parties can demonstrate that it was impossible to complete discovery despite their good faith effort to do so.

**Amendments to the Docket Control Order ("DCO"):** Any motion to alter any date on the DCO shall take the form of a motion to amend the DCO. The motion to amend the DCO shall include a proposed order that lists all of the remaining dates in one column (as above) and the proposed changes to each date in an additional adjacent column (if there is no change for a date the proposed date column should remain blank or indicate that it is unchanged). In other words, the DCO in the proposed order should be complete such that one can clearly see all the remaining deadlines and the changes, if any, to those deadlines, rather than needing to also refer to an earlier version of the DCO.

- 6 -

**Proposed DCO:** The Parties' Proposed DCO should also follow the format described above under "Amendments to the Docket Control Order ('DCO')."

**Joint Pretrial Order:** In the contentions of the Parties included in the Joint Pretrial Order, the Plaintiff shall specify all allegedly infringed claims that will be asserted at trial. The Plaintiff shall also specify the nature of each theory of infringement, including under which subsections of 35 U.S.C. § 271 it alleges infringement, and whether the Plaintiff alleges divided infringement or infringement under the doctrine of equivalents. Each Defendant shall indicate the nature of each theory of invalidity, including invalidity for anticipation, obviousness, subject-matter eligibility, written description, enablement, or any other basis for invalidity. The Defendant shall also specify each prior art reference or combination of references upon which the Defendant shall rely at trial, with respect to each theory of invalidity. The contentions of the Parties may not be amended, supplemented, or dropped without leave of the Court based upon a showing of good cause. The Parties in a case which has been consolidated for pre-trial purposes and which is moving towards a separate trial on the merits (subsequent to pre-trial) shall file, as an exhibit to the parties' Joint Pretrial Order, a list identifying all docket entries from the lead case that relate to the applicable member case.

**Trial:** All parties must appear in person at trial. All non-individual (including but not limited to corporate) parties must appear at trial through the presence in person of a designated representative. Once they have appeared, any representative of a non-individual party shall not be replaced or substituted without express leave of Court.

**SIGNED this 14th day of June, 2023.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE

Appx101

XFILED UNDER SEAL PURSUANT TO PROTECTIVE ORDERX

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | |
|---|---|
| BESANG, INC., | |
| Plaintiff, | |
| v. | CIVIL ACTION NO. 2:23-cv-00028 |
| MICRON TECHNOLOGY, INC., MICRON SEMICONDUCTOR PRODUCTS, INC., AND MICRON TECHNOLOGY TEXAS, LLC, | JURY TRIAL DEMANDED |
| Defendants. | |

## BESANG, INC.'S OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER VENUE TO THE DISTRICT OF IDAHO UNDER 28 U.S.C. § 1404(a)

**PUBLIC VERSION**

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

### TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................ 1

II.  ARGUMENT..................................................................................................... 1

   A.  The Kiehlbauch Declaration Should Be Given No Evidentiary Weight........................... 1

   B.  Micron's Showing for the Private Interest Factors Does Not Clearly Demonstrate
       Good Cause for Transfer. ................................................................................ 3

      i.   The Cost of Attendance for Willing Witnesses Is Higher in Boise. ............................ 3

      ii.  The Relative Ease of Access to Sources of Proof Is at Best Neutral. ......................... 7

      iii. Compulsory Process is Available for the Vast Majority of Relevant Third
           Parties in this District. ............................................................................. 10

   C.  The Public Interest Factors Do Not Support Transferring This Case .............................. 12

      i.   Local Interest Is Neutral............................................................................. 12

      ii.  Court Congestion Weighs Against Transfer ....................................................... 13

   D.  The Court Should Not Reward Micron's Venue Gamesmanship. .................................. 13

III. CONCLUSION ................................................................................................. 15

i

Appx103

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

## TABLE OF AUTHORITIES

**Cases**

*Distributed v. Bruck*
  30 F.4th 414 (5th Cir. 2022) ................................................................................ 1, 3

*Enovsys LLC v. T-Mobile USA, Inc.*
  No. 2:21-cv-368-JRG, 2022 WL 2161028 (E.D. Tex. June 14, 2022) ....................... 9

*Hertz Corp. v. Friend*
  559 U.S. 77 (2010) .................................................................................................... 15

*In re Apple Inc.*
  No. 2022-128, 2022 WL 1196768 (Fed. Cir. Apr. 22, 2022) .................................... 15

*In re Apple*
  979 F.3d 1332 (Fed. Cir. 2020) ................................................................................. 12

*In re Google LLC*
  No. 2021-170, 2021 WL 4427899 (Fed. Cir. Sept. 27, 2021) ..................................... 7

*In re Google*
  58 F.4th 1379 (Fed. Cir. 2023) .................................................................................. 13

*In re Planned Parenthood Fed'n of Am., Inc.*
  52 F.4th 625 (5th Cir. 2022) ................................................................................ 1, 10

*In re Samsung Elecs. Co., Ltd.*
  2 F.4th 1371 (Fed. Cir. 2021) .................................................................................... 15

*In re Toyota Motor Corp.*
  747 F.3d 1338 (Fed. Cir. 2014) ............................................................................. 6, 9

*In re Volkswagen AG*
  371 F.3d 201 (5th Cir. 2004) ...................................................................................... 7

*In re Volkswagen of Am., Inc.*
  545 F.3d 304 (5th Cir. 2008) ...................................................................................... 3

*In re Zimmer Holdings, Inc.*
  609 F.3d 1378 (Fed. Cir. 2010) ................................................................................. 15

*SyncPoint Imaging, LLC v. Nintendo of Am. Inc.*
  No. 2:15-CV-00247-JRG-RSP, 2018 WL 6788033 (E.D. Tex. Dec. 26, 2018) ........ 15

ii

Appx104

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

**Statutes**

28 U.S.C. § 1404(a) ............................................................................................... 15

35 U.S.C. § 271(a) ............................................................................................... 10

iii

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

## I.    INTRODUCTION

Defendants Micron Technology, Inc., Micron Semiconductor Products, Inc. and Micron

Technology Texas LLC (collectively, "Micron") invite this Court to transfer this case based

entirely on a shoddy affidavit derived from an incomplete, results-oriented investigation.  Yet

Micron has a significant presence in this District—a presence which, contrary to Micron's

arguments, is highly relevant to this dispute.  Significant third-party witnesses—a large BeSang

licensee, former Micron employees with knowledge of and prior communications with BeSang,

Micron's many authorized distributors, BeSang's longtime advisory board member, key direct

competitors like Samsung, and more—are subject to the Court's subpoena power here.  As

detailed below, when this full scope of relevant evidence is considered, not a single factor weighs

in favor of transferring this case.  At a minimum, Micron has failed to carry its burden of clearly

establishing good cause to transfer.  The Court should deny Micron's motion.

## II.    ARGUMENT

In the Fifth Circuit, the convenience-transfer question requires analysis of private and

public factors (*Gilbert* factors) to evaluate whether the transferee venue is clearly more

convenient.[1]  *In re Planned Parenthood Fed'n of Am., Inc.*, 52 F.4th 625, 630 (5th Cir. 2022).

Micron "must adduce evidence and arguments that *clearly establish good cause* for transfer

based on convenience and justice."  *Def. Distributed v. Bruck*, 30 F.4th 414, 433 (5th Cir. 2022)

(emphasis added).  Micron has failed to do so.

### A.   The Kiehlbauch Declaration Should Be Given No Evidentiary Weight.

Micron's motion is based almost entirely on a four-and-a-half page declaration of Mark

Kiehlbauch.  The Court should give this declaration no weight.  While Dr. Kiehlbauch purports

---

[1] The parties dispute all but two of the factors here, agreeing that the fourth private interest factor
(practical problems) and fourth public interest factor (conflict of laws) are both neutral.

1

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

to describe the lack of *any* "relevant" documents and witnesses in Texas, he later admitted he does not know what is relevant to this case or not:

> Q. So you don't have an understanding of what is and what is not relevant to the varied issues in this litigation, correct?
> A. I do not.

Ex. A (Kiehlbauch Dep.) at 20:25–21:3.[2]  The sweeping statements in Dr. Kiehlbauch's declaration about the absence or presence of "relevant" witnesses and proof cannot be accepted as true where Dr. Kiehlbauch confessed complete ignorance about this case.

Further, the assertion that Dr. Kiehlbauch performed an "investigation of the relevant information" did not fare well under cross-examination.  *See* Dkt. 32-1 (Kiehlbauch Decl.) ¶ 1. For instance, Dr. Kiehlbauch purported to investigate and identify six witnesses "who are '***primarily responsible***' for the research, design, and development of the accused products," *id.* ¶ 13, only then to acknowledge he was actually asked to identify only a list of people *he* "***knew*** that were involved in 3D NAND development."  *See* Kiehlbauch Dep. at 147:6–9 (emphasis added).  Dr. Kiehlbauch claimed that "there are no documents relevant to this action at the Austin, Texas site." Kiehlbauch Decl. ¶ 17.  Yet Dr. Kiehlbauch then acknowledged he did not actually know what documents were kept at the site he was purportedly declaring about.  *See* Kiehlbauch Dep. at 116:25–117:5 ("I wouldn't possibly know all the documents they have in the Austin facility."); *id.* at 100:13–17 ("I don't know what data they keep and maintain.").  Worse, when someone who *does* know, the Austin site leader Mr. Larry Hart, offered to speak to Dr. Kiehlbauch over the phone to educate him, his offers went ignored.  Ex. B.  Dr. Kiehlbauch's investigation "of the relevant information" also, somehow, failed to uncover that the Accused

---

[2] *See also id.* at 116:13–15 ("I don't know if sales and marketing data are relevant to this case."); *id.* at 139:24–140:1 ("I can't speak to relevance [of financial information to this case]."); *id.* at 18:20–19:14 (testifying that he has not read any case documents).

Appx107

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

Products in this case contain Allen, Texas-based DRAM components.  *See* Ex. D (depicting the Micron 7450 NVMe SSD containing a component labeled "Micron DRAM"); Kiehlbauch Dep. at 54:17–20 ("Q. Would it surprise you that the majority of the accused products listed here include DRAM designed and manufactured by Micron? A. I did not know that.")*.*  In fact, prior to his deposition, Dr. Kiehlbauch was of the belief that no accused products contained DRAM.  *See* Kiehlbauch Dep. 50:13–51:1.  The statements in Dr. Kiehlbauch's declaration regarding the purported absence of people and proof in Allen appear to be the result of this error.  But it was an avoidable one: if he had not ignored Mr. Hart's offers to speak, Dr. Kiehlbauch may not have submitted inaccurate attestations.  *See* Ex. C (Hart Dep.) at 29:16–25, 52:10–24 (testifying about the DRAM in SSDs)  At a minimum, Dr. Kiehlbauch could have also simply reviewed BeSang's infringement contentions.  Mot. Ex. 1 at 7, 10, 13 (depicting Micron DRAM in accused products).

Given these flaws, the Court can and should disregard this evidence.  *See Def. Distributed*, 30 F.4th at 434 (holding that the district court "erred by uncritically accepting the NJAG's conclusory assertions" regarding sources of proof and that the assertions "lack that necessary proof, while the Plaintiffs identified proof, documents, and witnesses that are located in Texas and support maintaining Texas as the forum").  And given that Micron has the burden of proof and how Micron relied almost exclusively on this declaration to meet its burden, giving no weight to the declaration is, by itself, sufficient grounds to deny Micron's motion.  *See In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (concluding that plaintiff's venue choice should be respected when defendant fails to meet its burden).

    B.  **Micron's Showing for the Private Interest Factors Does Not Clearly Demonstrate Good Cause for Transfer.**

        i.  **The Cost of Attendance for Willing Witnesses Is Higher in Boise.**

Appx108

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

BeSang has identified 36 different Micron employees in the District with knowledge

relevant to this case.  This is a conservative estimate, as there are more than 160 total employees

at the Allen facility.  At least seven employees who work for Micron in this District have

information specifically related to 3D NAND, NAND, and SSD technologies based on current or

prior work experience at Micron.  McCarty Decl. ¶ 6.  Those witnesses include the company's

████████████████████████████████████████████████████████

████████, and the ████████████████████████████████████████

████. *See id.* ¶¶ 7, 13.  While Dr. Kiehlbauch averred that "no relevant witness having

knowledge of Micron's NAND-related activities resides in Texas," Decl. ¶ 12, he later

disavowed his declaration when confronted with these and other local witnesses.  *See* Kiehlbauch

Dep. at 84:15–86:7; *id.* at 90:17–93:20.  Additional witnesses with relevant NAND and SSD

information based on current or prior work include ██████████████████████████████

██████████████████████ *See* McCarty Decl. ¶ 6; Ex. E.  There are also more than 20

Allen-based witnesses who work with DRAM component (such as DDR4 and/or LPDDR)

aspects of the Accused Products.[3]  Dr. Kiehlbauch apparently discounted these witnesses because

he believed the accused products contained no DRAM.  *See* Kiehlbauch Dep. 50:13–54:20  As

explained above, this is incorrect.[4]

---

[3] These include: ████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

McCarty Decl. ¶ 14; Ex. F.

[4] The DRAM generally serves as a cache for writing data to the drive and for storing the mapping
tables.  Discovery related to how the 3D NAND interfaces with DRAM can provide meaningful
context to understand the technical role and the economic footprint that 3D NAND components
have in the accused SSD products.

4

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

Other witnesses in this District have knowledge of 3D XPoint (3DXP).  3DXP has already emerged as a potential noninfringing alternative.  3DXP SSDs, such as Micron's X100, were billed as alternatives to the accused products with faster read/write speeds.  *See* Exs. G, H. Micron eventually abandoned the alternative.  *See* Kiehlbauch Dep. 156:15–18.  Micron's Allen location focused on 3DXP before it was abandoned.  *See* Ex. I.  BeSang's investigation has already identified many 3DXP engineers in Micron's Allen site—███████████████████ ████████████████—with information relevant to 3DXP.  *See* McCarty Decl. ¶ 47.

Despite these easily identifiable witnesses, Micron insists that it is "not aware of . . . any potential witnesses residing in the EDTX for whom proceedings would be more convenient if a trial was held here."  Mot. at 5.  It seems that Micron was unaware purely because it did not look.

Further, the six Idaho-based witnesses that Micron touts are also of dubious relevance. As discussed, Dr. Kiehlbauch purported to identify Micron engineers "who are primarily responsible for the research, design, and development of the accused products."  Kiehlbauch Decl. ¶ 13.  But Dr. Kiehlbauch later clarified that he did nothing to investigate who was "primarily responsible" for reaching, designing, and developing the accused products; rather, he provided a list of people he already knew "in 3D NAND development." *See* Kiehlbauch Dep. at 147:6–9 ("I was asked to *provide a list of people I knew* that were involved in 3D NAND development."(emphasis added)).  Since Dr. Kiehlbauch's role at Micron involves process and manufacturing equipment for both NAND and DRAM chips, not circuitry design, *see id*. at 31:21–32:1, it is not surprising he identified individuals with similar roles.[5]  The patent-in-suit,

---

[5] *See, e.g.*, *id*. at 148:16–149:15 (explaining ███████████████████████ ███████); *id*. at 151:18–155:8 (explaining █████████ ███); *id.* at 155:9–156:9 (explaining █████████ ███); *id*. at 157:2–20 (explaining ██████████████████████).

5

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

however, is not about process methods for manufacturing the DRAM and NAND memory. Rather, the patent discloses circuitry designs and claims those structures in the context of the transition from 2D to 3D NAND, DRAM, and SRAM.  *See* Dkt. 1-1, U.S. Patent No. 7,378,702 (the "'702 Patent") (titled "Vertical memory device structures"); *id.* at 10:47–12:52.  Dr. Kiehlbauch acknowledged "***none*** of [the witnesses he identified] worked on the circuit design during the transition from 2D to 3D NAND."  Kiehlbauch Dep. at 183:15–17 (emphasis added).

To the extent the Court evaluates Austin-based information in its analysis,[6] Micron's evidence and arguments are also suspect.  Once again, despite having sworn that "no relevant witness having knowledge of Micron's NAND-related activities resides in Texas," Decl. ¶ 12, Dr. Kiehlbauch was forced to concede otherwise when confronted with evidence of the many relevant Austin-based Micron witnesses, such as the ████████████████████████████ ████████████████████.  *See* Kiehlbauch Dep. at 117:10–25; McCarty Decl. ¶ 54.  Just as there are many willing witnesses in Allen, there are dozens of willing witnesses with relevant information about Micron's accused NAND products in Austin, too.[7]

---

[6] The Federal Circuit has commented that "[t]he comparison between the transferor and transferee forums is not altered by the presence of other witnesses and documents in places outside both forums," *see In re Toyota Motor Corp.*, 747 F.3d 1338, 1340 (Fed. Cir. 2014). To the extent Micron argues this statement means that sources of proof outside the transferor and transferee district are irrelevant, Micron's arguments concerning the distance from California or Oregon to Boise are likewise irrelevant.  *See* Mot. at 6, 10.  To the extent Micron believes that distance for sources of proof close but not actually in the forum are relevant, these Austin-based Micron contacts are relevant sources of proof far closer to this District than Idaho.

[7] McCarty Decl. ¶ 52. For example,



*Id.* ¶ 53; Ex. CC.

McCarty Decl. ¶ 53.  The list goes on:

are all Austin-based Micron employees with knowledge relevant to this case and the accused

Appx111

~~FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER~~

And, for those witnesses, attending trial in Marshall is clearly more cost-effective. Austin is less than 300 miles from Marshall—a distance that can easily be traversed by car. *See* Ex. AA. Meanwhile, there are no direct flights between Austin and Boise apart from one seasonal flight that was recently discontinued, Ex. BB, and this adds complexity to the task of traveling the over 1,600 miles between the cities. Additional distance (here, ~1300 extra miles) "means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment." *In re Volkswagen AG*, 371 F.3d 201, 204–05 (5th Cir. 2004). The Federal Circuit has focused on time over distance. *In re Google LLC*, No. 2021-170, 2021 WL 4427899, at *4 (Fed. Cir. Sept. 27, 2021). The travel time imposed on Austin witnesses forced to queue at multiple airports, navigate uncertain flight schedules, and stay at hotels far exceeds the time it would take to drive to Marshall. It might even be possible for some witnesses to make it back from Marshall same-day to sleep in their Austin-area homes.

### ii. The Relative Ease of Access to Sources of Proof Is at Best Neutral.

Micron's Allen campus in the District has volumes of relevant evidence, including technical documentation regarding the accused products, ██████████████████ ████████████ and it is a likely source for critical pre-suit knowledge evidence.

As to technical documentation, ████████████████████████ ████, that are included in the accused products and creates documents regarding that memory work. *See* Ex. X (Chen Dep.) at 15:3–16:8; *id.* at 24:11–25:2. Many of these employees currently work, or previously worked, on the NAND aspects of the accused products as well and

---

products, with knowledge about the design, development, marketing, testing, optimization, and value of the accused products. *Id.* ¶¶ 55–79; *see also* Ex. K.

7

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

almost certainly have documents related to the accused products.  Even Dr. Kiehlbauch recognized that employees "presumably" have documents on their computer about their work. Kiehlbauch Dep. 82:2–11.  Besides employee computers, there is also robust ███

███████████████████████████████████████.  *See* Ex. L.

███████████████████████████████████████████

███████████████████████.  By virtue of its employees working on these technologies, *supra* § II.B.1, ██████████████████████████████████

███████████████████████████████████████████

██████  *See* Hart Dep. at 61:19–23 (testifying how accused product performance is impacted by "the work of the DRAM").

Further, BeSang's pre-suit interactions with Micron concerned Micron's DRAM memory, *see* Ex. M at 9.  Pre-suit correspondence involving individuals from BeSang and Micron's Allen facility evidence this.  *See* Exs. N, O ("████████████████████████████████

██████████████")  The Allen facility's DRAM groups are believed to possess unique evidence such as communications, presentations, designs, and other evidence concerning BeSang, BeSang's patents, and communications involving BeSang representatives.  Even recent public presentations from Micron regarding its DRAM memory cite BeSang.  *See* Ex. P at 5. This information specific to the DRAM aspect of the accused products is relevant for many reasons, including to show Micron's pre-suit knowledge of BeSang and its patents, as well as the parties' pre-suit conduct and commercial interactions.

Despite this volume of District-based evidence, Micron asserts "no relevant sources of proof are located in this District, or even in Texas" and that "none of Micron's Texas-based personnel worked on the research, design, development, or manufacturing of the accused

8

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

products." Mot. at 9, 10. But once again, Micron points to Dr. Kiehlbauch as support for this statement—a witness who admitted to having no concept of relevance and who made virtually no effort to learn anything about this case or the Texas facilities. *See supra* § II.A.[8] And in evaluating the relative weight between sources of proof in this District and those in Boise, Micron's investigation was half-hearted: Micron's 30(b)(6) witness could not identify the location for much of the company's documents.[9] At best, ███████████████████████

███████████████████████████████████████████

█████████████████████████████████████ *See* Kiehlbauch Depo. at 135:4–139:17 ("I don't know where they're kept."); *Envosys LLC v. T-Mobile USA, Inc.*, No. 2:21-cv-368-JRG, 2022 WL 2161028, at *3 n.4 (E.D. Tex. June 14, 2022) (finding the sources of proof factor does not support transfer where electronic documents are not all electronically stored in Bellevue but are on "cloud server located at an unknown location").

Micron also seeks to credit evidence outside of the District (but closer in proximity) to Idaho in its favor. But, as noted above, "[t]he comparison between the transferor and transferee forums is not altered by the presence of other witnesses and *documents* in places outside both forums." *Toyota*, 747 F.3d at 1340 (emphasis added). If the Court discredits the significant Austin-based evidence, it must do the same for the California and Oregon-based evidence as well. If the Court credits material out of either forum, the Austin-based sources of proof surrounding its testing, marketing, pricing, and sale of the accused products are at least as

---

[8] Dr. Kiehlbauch could also not identify the types of documents created by individuals in Allen involving the DRAM in the accused products, whether there are any physical samples in Allen, or whether the Allen facility has test documents, product specifications, or verification documentation for the accused products. *See* Kiehlbauch Dep. at 96:9–12, 96:13–17, 98:16–22.

[9] For instance, ████████████████████████████████████████████████████ ███████████████████████████████████████████████████████. *See* Kiehlbauch Dep. at 135:4–139:17.

9

XXFILEDXXUNDERXXSEALXXPURSUANTXXTOXXPROTECTIVEXXORDERXX

compelling.[10]  Focusing on just the "SSD Lab" testing there, despite Micron's contrary claims, this testing is highly relevant; ██████████████████████████████████

██████████████████████████████████████████████████████

███████████████████████████████[11]  This testing would also constitute an infringing use in violation of 35 U.S.C. § 271(a).

At bottom, there are documents in both districts here, and this factor is at best neutral. And in any event, since most material will be electronic, this factor is accorded less weight.[12]

*Planned Parenthood*, 52 F.4th at 630.

### iii.    Compulsory Process is Available for the Vast Majority of Relevant Third Parties in this District.

Compulsory process weighs against transfer.  Numerous corporate entities are subject to subpoena power in this District as opposed to the proposed transferee venue.  In 2013, BeSang

---

[10] *See, e.g.*, Hart Dep. at 18:18–22 ████████████████████████████████████████ ███████████████████████████████████); *id.* at 33:2– 3 ("[R]esponsible for helping negotiate pricing with customers"); *id.* at 39:22–23 ████████████████████); *id.* at 51:10–12 ("Generally the testing that I'm involved in is related to the SSDs for the storage side of that."); *id.* at 51:17–52:3 (████████████ ████████████████████); *id.* at 69:1–7 (██████████████████████████ ████████).

[11] *See* Ex. Q; *see also* Kiehlbauch Dep. at 133:3–8 (Q. So in this document, Micron is explaining that the solid state drive product has an improved write speed due to the physical architecture of the 3D NAND chip, correct? A. Yes, that is one factor in the SSD rate speeds. . . ."). Products containing "Micron's 232-layer NAND" are accused products in this case. *See* Dkt. 1 ¶ 41.  This benefit—which Micron advertises as flowing from its use of (BeSang's) vertical memory technology—is directly relevant to this case.

[12] To bolster the importance of this factor, ███████████████████████████████████ ████—having Dr. Kiehlbauch warrant with no detail whatsoever that samples for "certain of the accused products" are located there.  Kiehlbauch Decl. ¶ 10.  Of course, Dr. Kiehlbauch has never been to the Allen facility and declined to educate himself about any physical samples that are located there.  Kiehlbauch Dep. at 82:21–22, 96:13–97:6.  Regardless, Micron has failed to explain how these "samples" differ from the accused products themselves, which *are* available in the Eastern District just as they are in Idaho.

Appx115

███████████████████████████████████████████████████

entered into technology license with SK hynix, *see* Ex. N, but SK hynix has locations here, not Boise.  Ex. R.  That agreement is certain to be analyzed by the parties with respect to damages. Also located within the district is Samsung Electronics, which has information regarding its noninfringing alternative and BeSang product development efforts.  McCarty Decl. ¶¶ 101–02.

Micron also has twelve authorized distributors, Ex. DD, that it induces to commit direct infringement.  ████████████████████████████████████ ████████████████████████████  Ex. S at 1, and the distributors have relevant information about direct infringement, inducement, and damages.  At least five of these distributors have facilities in Texas.  For example, AvNet is located in the District, and Mouser is headquartered in Mansfield.  Exs. S, EE.  Not one appears to be in Idaho. Transfer there would limit BeSang's ability to bring distributors to trial.  Testimony from these distributors may be needed to meet BeSang's inducement burden of proof.

A host of relevant witnesses can also be compelled to attend trial here but not in Boise. For example, third-parties ███████████████, both former Micron employees, reside in the District.  Exs. T, U. ████████████████████, Ex. T, ████████ ████████████████████████████████████ ████████████████████  *See* Exs. N, O.  Within the state, former Micron employees ██████████████████████████████ each have information regarding Micron's flash technologies at issue in this case, including 3D NAND. McCarty Decl. ¶ 103.  Additionally, a member of BeSang's advisory board, Dr. Sanjay Banerjee, is currently a Professor of Electrical and Computer Engineering at the University of Texas at Austin and has relevant information about BeSang's technology.  Ex. Z.

Each of the above witnesses are subject to subpoena power for trial in this District but not

11

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

in Boise.[13]  Meanwhile, Micron claims that there is just one third-party in Idaho, ███████

subject to subpoena power in Boise.  *See* Mot. at 11.  Given the number of relevant witnesses

that are subject to the subpoena power of this Court and would be outside of the subpoena power

of the District of Idaho, this factor weighs strongly against transfer.

### C.  The Public Interest Factors Do Not Support Transferring This Case

The public interest factors also do not support Micron's transfer request.

### i.  Local Interest Is Neutral

Micron contends that its Boise-based U.S. headquarters means this factor weighs in favor

of transfer.  But Micron's U.S.-headquarters is far from dispositive.  The local interest factor is to

account for the connections between a venue and "the events that gave rise to a suit."  *In re*

*Apple*, 979 F.3d 1332, 1344 (Fed. Cir. 2020).  The events that gave rise to this suit are Micron's

unauthorized selling of infringing products.  And this is not a case where "some allegedly

infringing products found their way into the Texas market."  Mot. at 14.  Instead, Micron is using

this District in distribution: its authorized distributors, like AvNet, which it requires to

███████████████████, is located in this District.  Further, while Micron does have a

substantial presence in Boise, it cannot show that Boise is exclusively where "research, design,

development, and testing of the accused products took place."  Not one of the six witnesses

identified by Micron worked on the circuit design at issue.  The record also shows that there are

Allen employees who have worked on various portions of the accused products, along with

substantial NAND flash research, design, and development activities in California and Asia.

Because Micron has not carried its burden to establish that Boise is connected to its

---

[13] Attending trial would not present substantial expense for these witnesses.  *See supra* at 7.  In any event, BeSang would be willing to reimburse expenses for such witnesses, alleviating this concern.  *See* Committee Notes on Rules – 2013 Amendment (when travel over 100 miles "could impose substantial expense," "the party that served the subpoena may pay that expense").

12

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

decision to implement BeSang's technology into Micron's circuit design, this factor is neutral.

### ii.   Court Congestion Weighs Against Transfer

Court congestion weighs against transfer.  The parties are likely to suffer lengthy delays in Idaho: The median time-to-trial from filing of civil cases in the District of Idaho is 35.7 months but only 16.7 months in this District.  Ex. V.

Micron argues that the court-congestion factor is neutral because BeSang is not engaged in product competition.  Mot. at 14.  Micron is wrong.  To be sure, some recent Federal Circuit authority indicates that this factor should not be given weight where it is "*undisputed* that [the Plaintiff] . . . is not engaged in product competition in the marketplace and is not threatened in the market in a way that, in other patent cases, might add urgency . . . ."  *In re Google*, 58 F.4th 1379, 1383 (Fed. Cir. 2023).  But here, BeSang is engaged in the market and there is urgency to this case.  BeSang is a product design company, actively participating in the market—it markets its memory design services, actively seeking clients and product partnerships.  *See, e.g.*, Ex. II ( ▮▮▮▮▮▮▮▮▮▮ ).  Most recently, BeSang has been developing related 3D NOR design and products.  *See* Ex. GG ("We are preparing for our own 3D NOR design and products.").

### D.   **The Court Should Not Reward Micron's Venue Gamesmanship.**

As is hopefully clear from review of the evidence in this opposition, Micron's motion does not appear to be based on a diligent, good-faith investigation of facts.  Instead, it appears that Micron is attempting to have its motion to transfer granted based on an inaccurate record.  Specifically, Micron put Dr. Kiehlbauch's broad attestations to use as its keystone evidence for its motion, but this declaration is not credible.  In fact, it is not even clear who wrote it.  Kiehlbauch Dep. at 114:16–18 ("Q. Who wrote it? . . . A. I don't know specifically who wrote it.").  The author, whoever that is, had Dr. Kiehlbauch sign sweeping statements that hinged on

13

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

"relevance" —*e.g.*, there is allegedly "no relevant witness having knowledge of Micron's NAND-related activities resides in Texas" (Kiehlbauch Decl. ¶ 12)—that crumbled under basic scrutiny. As Dr. Kiehlbauch confirmed that he has no concept of what is relevant to this case, he could not substantiate or defend the statements in the declaration bearing his name.

Moreover, counsel for Micron had Dr. Kiehlbauch sign these sweeping statements when even a cursory investigation disproved them. As noted above, Dr. Kiehlbauch was unaware of DRAM's relevance to the accused products. Dr. Kiehlbauch first learned *in his deposition* that DRAM memory was in the accused products. This ignorance of basic components of the technology also casts doubt on Micron's characterization of Dr. Kiehlbauch as someone "primarily responsible for the research, design, and development of the accused products." *See* Mot. at 6. The fact that he could not even say where the accused products are manufactured only raises further doubt. *See* Kiehlbauch Dep. at 33:18–21 (Q: You do not know where the accused products are manufactured, correct? A. Correct.").

Nor did Dr. Kiehlbauch consider the many Allen-based employees with 3D NAND information and experience at the company, or look into the relevance of Austin-based sources of proof. Rather, he attested to "know[ing]" facts that are simply not true, such as his unsupported claim that Micron does not "sell the accused 3D NAND products" in Austin. Kiehlbauch Decl. ¶ 14. The Micron Austin site leader testified that the opposite was true.[14]

And hoping to seize on recent case law suggesting that restricted-access provisions unique to the transferee district could support transfer, *e.g.*, *In re Apple Inc.*, No. 2022-128, 2022

---

[14] *See, e.g.*, Hart Dep. at 18:18–22 ███████████████████████████████████; *id*. at 69:19–24 (███████████████████████████████████); *id*. at 69:1-7 ( "███████████████████████").

X̶F̶I̶L̶E̶D̶ ̶U̶N̶D̶E̶R̶ ̶S̶E̶A̶L̶ ̶P̶U̶R̶S̶U̶A̶N̶T̶ ̶T̶O̶ ̶P̶R̶O̶T̶E̶C̶T̶I̶V̶E̶ ̶O̶R̶D̶E̶R̶X̶

WL 1196768, at *4 (Fed. Cir. Apr. 22, 2022), Micron even misrepresented that a similar

restriction existed in this case for its "Design Files," only to retreat when Micron's employees

failed to back up that expedient litigation position.  Micron went so far as to have this Court

enter an initial Protective Order based on this misrepresentation.[15]  After BeSang secured

testimony proving it to be untrue, it promptly sought and received relief from the Court.  Dkt. 64.

The Court should not reward such conduct by granting Micron's requested transfer.

*Hertz Corp. v. Friend*, 559 U.S. 77 (2010) (urging courts to ensure that the purposes of

jurisdictional laws are not frustrated by a party's attempts at manipulation); *In re Zimmer*

*Holdings, Inc.*, 609 F.3d 1378, 1381 (Fed. Cir. 2010) (extending *Hertz* to venue manipulation); *In*

*re Samsung Elecs. Co., Ltd.*, 2 F.4th 1371, 1377–78 (Fed. Cir. 2021) ("We have similarly rejected

parties' attempts to manipulate venue."); *see also SyncPoint Imaging, LLC v. Nintendo of Am.*

*Inc.*, No. 2:15-CV-00247-JRG-RSP, 2018 WL 6788033, at *5 (E.D. Tex. Dec. 26, 2018) (holding

submission of false declaration in 1404(a) practice sanctionable).  In any event, given the lack of

adequate investigation into the case, Micron cannot meet and has not met its burden of ***clearly***

establishing good cause for transfer—particularly given all the contradictory evidence Micron

simply ignored.  The Court should deny Micron's motion.

## III.    CONCLUSION

Not a single factor weighs in favor of transferring this case.  Micron has failed to

establish that the District of Idaho is clearly more convenient, and its motion should be denied.

---

[15] Micron represented to BeSang that ████████████████████████████████████
████████████████ Ex. W at 16. ████████████████████████████████████. Chen Dep. at 58:4–16.  BeSang was
forced to address this contradiction by letter.  Ex. Y. ████████████████████
████████████████████████████████████████████ Dkt. 64.  Had ████████ not been deposed, this
may never have come to light.

Appx120

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

DATED: August 22, 2023

Respectfully submitted,

/s/ Warren J. McCarty, III
Bradley W. Caldwell
Texas State Bar No. 24040630
Email: bcaldwell@caldwellcc.com
Jason D. Cassady
Texas State Bar No. 24045625
Email: jcassady@caldwellcc.com
John Austin Curry
Texas State Bar No. 24059636
acurry@caldwellcc.com
Warren J. McCarty, III
Texas State Bar No. 24107857
Email: wmccarty@caldwellcc.com
R. Seth Reich Jr.
Texas State Bar No. 24088283
Email: sreich@caldwellcc.com
Xu Zhou
Texas State Bar No. 24121219
xzhou@caldwellcc.com
Bjorn A. Blomquist
Texas State Bar No. 24125125
bblomquist@caldwellcc.com
James F. Smith
Texas State Bar No. 24129800
jsmith@caldwellcc.com
Richard Cochrane
Texas State Bar No. 24116209
rcochrane@caldwellcc.com
Aisha Mahmood Haley (admitted *pro hac vice*)
District of Columbia Bar No. 1034110
ahaley@caldwellcc.com
John F. Summers
Texas State Bar No. 24079417
jsummers@caldwellcc.com
**Caldwell Cassady & Curry P.C.**
2121 N Pearl Street, Suite 1200
Dallas, TX 75201
Telephone: (214) 888-4848
Facsimile: (214) 888-4849

Deron R. Dacus
State Bar No. 00790553
**The Dacus Firm, P.C.**
821 ESE Loop 323, Suite 430
Tyler, TX 75701
Phone: (903) 705-1117
Fax: (903) 581-2543
ddacus@dacusfirm.com

*Attorneys for Plaintiff*

16

Appx121

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served on all counsel of

record via electronic mail on August 22, 2023.

*/s/ Warren J. McCarty, III*
Warren J. McCarty, III

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

The undersigned certifies that the foregoing document is authorized to be filed under seal

pursuant to the Protective Order submitted in this case.

*/s/ Warren J. McCarty, III*
Warren J. McCarty, III

Appx122

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

|  |  |
|---|---|
| BESANG, INC.,<br><br>       *Plaintiff*<br><br>    v.<br><br>MICRON TECHNOLOGY, INC.,<br>MICRON SEMICONDUCTOR<br>PRODUCTS, INC., and<br>MICRON TECHNOLOGY TEXAS, LLC,<br><br>      *Defendants*. | Case No. 2:23-cv-00028<br><br>**JURY TRIAL DEMANDED**<br><br>███████████<br><br>**PUBLIC VERSION** |

**DEFENDANTS' REPLY IN SUPPORT OF DEFENDANTS' MOTION TO TRANSFER
VENUE TO THE DISTRICT OF IDAHO UNDER 28 U.S.C. § 1404(a)**

Appx123

This case should be transferred to Idaho because witness convenience, the single most important factor, plainly favors transfer. Oregon-based BeSang ███████████████ ████████████████ and it does not argue that Marshall is more convenient *for BeSang*. D.I. 1 at 1. Instead, it argues that trial in Marshall will somehow be more convenient *for Micron*, desperately ignoring the indisputable fact that Micron's corporate headquarters are in Boise, Idaho, where Micron employs over 5,000 people, D.I. 30 at 2, ███████████████████████ █████████ Ex. 1 at 179:4-17,[1] including those Micron identified as likely technical witnesses. Decl. ¶4. BeSang's Opposition, on the other hand, relying on misdirection and inuendo, attempts to shift focus to DRAM—a non-accused component in only a subset of accused products, and highlights unverified, and in many cases inaccurate LinkedIn profiles to identify Texas employees with no knowledge relevant to the design or development of 3D NAND. BeSang, not Micron, is attempting to manipulate venue.

**I.        BeSang Cannot Manufacture Venue Ties Through Non-Accused DRAM**

DRAM is plainly irrelevant to this case. *See* D.I. 1 at ¶ 54 ("The Accused Products are all 3D NAND products …."). Facing evidence that ██████████████████████████████, D.I. 32-01 at ¶16, BeSang misrepresents its infringement allegations, suggesting that they encompass DRAM. *See* Opp. at 2-9, 14. But BeSang only asserts claims limited to 3D NAND memory. *See* D.I. 1-1 at Claims 13-16 (reciting "wherein the memory cells are nonvolatile memory cells"); 10:3-6 (describing NAND as nonvolatile memory). A different set of *non-asserted* claims covers "DRAM," a type of volatile memory. *Id.* at Claims 1-7, 9:28-29, 10:15-17.

BeSang's 81-page contentions claim chart never mentions DRAM, and every claim element allegedly maps to "3D NAND memory devices." *See generally*, D.I. 32-2. BeSang

---

[1] All references to "Decl. __" refer to the Declaration of Frances Mackay filed concurrently herewith and all references to "Ex. __" refer to the exhibits of that Declaration.

misleadingly points to three pages of its chart that "depict[]" DRAM. Opp. at 3 (citing D.I. 32-2 at 7, 10, 13). But what those pages actually show are images of circuit boards with *accused* 3D NAND chips as well as several *non-accused* components, including DRAM chips, capacitors, and resistors. *See id.* Tellingly, the cited pages neither label the DRAM nor map it to any claim element.

BeSang's only relevance argument for DRAM—buried in a footnote (Opp. at 4 n.4)—cites no evidence and is untethered to the technology of the '702 Patent. This case is about 3D NAND technology, not DRAM. *See* D.I. 1 at ¶¶ 6, 21-23, 31, 36-41, 54-95; Decl. ¶38, 39; Ex. 15.

## II.    Trial in EDTX Would Be Much Less Convenient for Relevant Party Witnesses

███████████████████████████████████ and thus do not have material knowledge. Micron's Austin employees also lack material knowledge and are located outside this district. Micron's technical witnesses—whether design, process, or fabrication—are among the ██████████████████████. Decl. ¶4, 42. For them, Idaho is more convenient.

Micron identified numerous Idaho-based engineers as potential witnesses, both in its motion and in Initial Disclosures. D.I. 30 at 5-6; Ex. 2. It strains credulity that these witnesses are "of dubious relevance." Opp. at 5. "The predominant use of witness testimony in a case such as this concerns the technical issues regarding infringement and validity." *VisionX Techs. v. Sony*, 2023 WL 3572898, at *4 (E.D. Tex. May 19, 2023). Here, many of the identified engineers work on ████████████████████, which Dr. Kiehlbauch explained ██████████████████████ the specific technical issue at the heart of BeSang's claims. Ex. 1, 157:12-158:4; *see also* D.I. 32-2 (BeSang's claim chart maps all claim elements to cross-sections of structural components of the claimed memory, not circuit design). And while the other identified engineers may not have worked on circuit design "during the transition from 2D to 3D NAND" (Opp. at 6), no asserted claim covers 2D memory or any alleged "transition."

BeSang cannot overcome these facts by engaging in the highly speculative practice of

trying to identify Texas-based Micron employees through unverified LinkedIn profiles. *In re Google LLC*, 2021 WL 4427899, at *7 (Fed. Cir. Sept. 27, 2021) (finding "highly speculative" reliance on LinkedIn as support for potential relevance of witness's testimony). Micron has confirmed that over 30% of the LinkedIn profiles BeSang proffers state inaccurate employment statuses, job titles, or locations. Ex. 3; Decl. at ¶¶16-37, 40. For example, BeSang identifies seven alleged in-district Micron employees with alleged knowledge of the accused products/features (Opp. at 4), but four have confirmed they do not work on design or development of the accused 3D NAND. Ex. 4. Moreover, ███████████ confirmed she never worked at Micron. Decl. at ¶36. ██████████████████████, not an employee. Ex. 3. And ███████████ limited prior experience with 3D NAND is irrelevant: He worked on a non-memory portion of a "test chip" that was never commercialized. Ex. 1, 94:3-7; Ex. 11, 61:10-25, 104:20-105:1; Decl. ¶14.

### III. Dr. Kiehlbauch Properly Investigated and Confirmed That Micron Does Not Design, Develop, or Manufacture 3D NAND in Texas

Dr. Kiehlbauch, Micron's vice president in charge of 3D NAND development, properly relied on his personal knowledge and investigation to determine locations of employees primarily responsible for designing the accused products. *Id*. at 10:7-10, 40:25-41:9, 147:6-9; D.I. 32-1 at ¶13. He is not an attorney, Ex. 1 at 20:15-16, and so cannot be expected to understand all of "the varied issues in this litigation." Opp. at 2. Because the "predominant use of witness testimony in a [patent] case … concerns the technical issues regarding infringement and validity," *VisionX* at *4, Dr. Kiehlbauch investigated whether ████████████ have relevant employees who design or develop Micron's 3D NAND. Ex. 1 at 15:5-12; 81:8-16. ████████████████ ███████████ *Id*.; D.I. 65-3; *see also* Decl. ¶14.

No evidence suggests ███████████████ design or development documents. ████████████████████████████████████████████

██████████████████████████████. Decl. ¶7, Ex. 6. That Dr. Kiehlbauch stated

he █████████████████████████████████████ only acknowledges

that ███████████████████████ unrelated to his expertise—3D NAND.

Dr. Kiehlbauch contacted Micron's ██████████████ to confirm these sites do

not design or develop 3D NAND. D.I. 32-1 ¶¶14-17. There was no need for a phone call after ███

████████████████████. Ex. 5 at 71:16-74:24. ███████████████████████

█████████████████████████████████████████████. Dr.

Kiehlbauch acknowledged that Micron ██████████████████ D.I. 32-1 ¶17. To

the extent he was unaware of what products ███████████, that "partial gap in [his]

knowledge" provides no basis for discounting the imbalanced nature of Micron witness locations.

*In re Google*, 58 F.4th 1379, 1384 at n.2 (Fed. Cir. 2023). BeSang's other unwarranted credibility

attacks are based on incomplete citations to, and misstatements of, testimony. Decl. ¶¶12-15.

## IV.    BeSang Does Not Identify Any Material Third-Party Witness In Texas

BeSang's speculation about third-party witnesses cannot withstand even cursory scrutiny.

Opp. at 10-12. First, BeSang identifies four international corporations but cannot identify specific

witnesses from any of them. *See Novelpoint v. Leapfrog*, 2010 WL 5068146, at *6 (E.D.Tex Dec.

6, 2010) (rejecting "conclusions [based] on unidentified witnesses"). Samsung and Hynix are

based in Korea and are unlikely to have Texas employees with material knowledge. Decl. ¶8.

AvNet and Mouser are two among a dozen distributors of Micron's products. BeSang fails to

identify material evidence they have that it cannot obtain through third-party discovery. Decl. ¶44.

Second, while BeSang identifies six individuals as potential third-party witnesses, it listed

only one—████████—in its original initial disclosures. Opp. at 11; Ex.8. Those disclosures also

listed Idaho-based third-party ███████, who BeSang now conveniently ignores. Decl. ¶43.

████████ is not a material witness: His interactions with BeSang concerned DRAM, not 3D

4

NAND. D.I. 65-16. BeSang also identifies its own ███████████████████ as a third party (Opp. at 11), but compulsory process is not needed to obtain testimony of a party witness. The remaining four are former Micron employees with no relevant ties to this case.[2]

BeSang does not dispute that Micron's third-party witness—█████████████—is material, even identifying him in its Complaint. D.I. 1 at ¶33. ███████ far outweighs BeSang's speculative witnesses. *See In re FedEx*, 2022 U.S. App. LEXIS 28988, *8 (Fed. Cir. Oct. 19, 2022).

## V.    Post-Filing Litigation Review In Allen Is Irrelevant To Venue Analysis

BeSang's reliance on the parties' agreed location for design file review (Opp. at 14-15) is misplaced. To accommodate BeSang's recent request, █████████████████████████████ ██████████████████████████████████████. Ex. 10; Decl. ¶10. ███████ ████████████████. *Id*. And transferring evidence for discovery has no bearing on the venue analysis. *Intell. Ventures v. T-Mobile*, 2018 WL 4175934, at *3 (E.D. Tex. June 29, 2018).

## VI.    The Public Interest Factors Support Transfer

This case will have no impact on Micron's Allen employees—███████████████— but has big stakes for █████████████ employees working on 3D NAND. Decl. ¶¶42-43. Acknowledging that "Micron does have a substantial presence in Boise," BeSang counters with two Micron distributors in Texas. Opp. at 12. But in-district sales by non-parties cannot create local interest. *See AGIS v. HTC*, 2018 WL 4680558, at *10 (E.D. Tex. Sept. 28, 2018).

In addressing court congestion, BeSang ignores that trial is set months after the '702 Patent expires. D.I. 48. Delay in a trial that could only bring damages is not entitled to any weight, irrespective of BeSang's ███████████████ (D.I. 56 at 2). *In re Google*, 58 F.4th at 1383.

---

[2] BeSang's own exhibits (unverified LinkedIn profiles) confirm that these individuals are irrelevant: ███████████ profile never mentions the accused 3D NAND technology (D.I. 65-21); ████████████████████ profiles do not mention NAND work for Micron (D.I. 65-35 at 2-7, 13-15); and ████████ worked at Micron's █████████ fab for less than two years (*id*. at 8-9).

5

Dated:  August 30, 2023                    Respectfully submitted,

                                           */s/ Melissa R. Smith*
                                           _____

                                           GILLAM & SMITH, LLP
                                           Melissa R. Smith (TX #24001351)
                                           melissa@gillamsmithlaw.com
                                           303 South Washington Avenue
                                           Marshall, Texas 75670
                                           Telephone: (903) 934-8450
                                           Facsimile: (903) 934-9257

                                           O'MELVENY & MYERS LLP
                                           John Kappos (TX# 24130097)
                                           jkappos@omm.com
                                           Timothy S. Durst (TX #00786924)
                                           tdurst@omm.com
                                           Cason G. Cole (TX#24109741)
                                           ccole@omm.com
                                           Frances Mackay (TX#24109494)
                                           fmackay@omm.com
                                           2501 North Harwood Street, Suite 1700
                                           Dallas, TX 75201
                                           Telephone: (972) 360-1900
                                           Facsimile: (972) 360-1901

                                           Xin-Yi Zhou (TX# 24127916)
                                           vzhou@omm.com
                                           400 South Hope Street, 18th Floor
                                           Los Angeles, CA 90071
                                           Telephone: (213) 430-6000
                                           Facsimile: (213) 430-6407

                                           William M. Fink (admitted *pro hac vice*)\
                                           tfink@omm.com
                                           Patric Reinbold (admitted *pro hac vice*)
                                           preinbold@omm.com
                                           1625 Eye Street, NW
                                           Washington, DC 20006
                                           Telephone: (202) 383-5300
                                           Facsimile: (202) 383-5414

                                           *Attorneys for Defendants Micron Technology, Inc.,*
                                           *Micron Semiconductor Products, Inc., and*
                                           *Micron Technology Texas, LLC.*

6

Appx129

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on August 30, 2023. Any other counsel of record will be served by facsimile transmission, e-mail and/or first class mail.

*/s/ Melissa R. Smith*
Melissa R. Smith



7

Appx130

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | |
|---|---|
| BESANG, INC., | |
|        Plaintiff, | |
|    v. | CIVIL ACTION NO. 2:23-cv-00028 |
| MICRON TECHNOLOGY, INC., MICRON SEMICONDUCTOR PRODUCTS, INC., AND MICRON TECHNOLOGY TEXAS, LLC, | JURY TRIAL DEMANDED |
|        Defendants. | |

**BESANG, INC.'S SURREPLY IN OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER VENUE TO THE DISTRICT OF IDAHO UNDER 28 U.S.C. § 1404(a)**

~~FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER~~

## I.    ARGUMENT

### A.  <u>Micron Did Not Meet Its Burden.</u>

Micron's Motion was premised on the false claims that "there are *no* relevant witnesses or sources of proof in this District[,]" and that *none* of Micron's Allen employees "have *any* knowledge relevant to this case[.]"  Dkt. 30 at 1 (emphasis added).  After conducting venue discovery and deposing Micron's declarant, Dr. Kiehlbauch—who did not write his declaration, had no knowledge of what is relevant to this case, and disavowed his own sworn statements during his deposition—BeSang established that Micron's claims are false and that this district has a strong connection to this case.  *See generally* Dkt. 65 ("Resp.").  In Reply, Micron submits a new eleven-page attorney declaration to quibble with BeSang's evidence showing that the transfer factors disfavor transfer.[1]  But it is *Micron's* burden to establish good cause *for* transfer.  Because Micron has failed to meet its burden, the Court should deny Micron's Motion.

### B.  <u>DRAM Is Relevant and Material to this Case.</u>

Discovery revealed that Micron premised its motion on the mistaken belief that Allen, Texas-based DRAM memory components were *not* in the Accused Products.  Now Micron has to downplay DRAM's relevance—arguing that only NAND-specific documents and witnesses can be used here.  But this is at odds with the actual circumstances of this case.  Here, Micron conducts its infringing sales by placing NAND and other memory components like DRAM into the Accused Products (such as SSDs) and selling those products to its distributors and end-customers.  While true that the 3D NAND component's circuitry and memory cells are what map onto the asserted claims, that circuitry and those cells are not sold separately.  ██████████████████
███████████████████████████████████████████████████

---

[1] Micron offers pages of argument buried in an attorney declaration.  *See* Dkt. 67-1 (Mackay Decl.).  These arguments should be disregarded both because they were offered for the first time in Reply and because they are inconsistent with the page limits imposed by the Local Rules.

1

~~FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER~~

████████████████████ *See* Ex. JJ; McCarty Decl. ¶¶ 2–4.  Micron ignores this

individualized circumstance, and in doing so ignores that it may argue later that DRAM must be

addressed in any damages analysis of the SSD sales.  Micron further ignores the circumstances

showing that its Allen-based DRAM facility and people are critical sources of proof due to their

discussions with BeSang regarding licensing, BeSang's patents, and the parties' pre-suit

relationship.  Resp. at 8.  Micron ignores that its DRAM future appears to rely on BeSang's

technology directly related to this action—more key willfulness evidence.  Resp. Ex. P at 5.  And

Micron ignores that many of these Allen-based witnesses have overlapping 2D NAND and 3D

NAND experience (as well as with 3DXP, an abandoned alternative to the Accused Products).  In

short, Micron fails to consider the circumstances showing that the company's operations in this

district, *especially* its DRAM people and proof, are highly relevant.  *See In re Hulu, LLC*, No.

2021-142, 2021 WL 3278194, at *3 (Fed. Cir. Aug. 2, 2021) ("[A] bare and generalized analysis"

does not provide the "'individualized, case-by-case consideration' of the relevant factors, as is

required for the analysis of a § 1404(a) motion.").

### C.  The Cost of Attendance For Willing Witnesses Weighs Against Transfer.

Micron's simplistic view of this factor has never been endorsed by the Federal Circuit.

*See In re Genentech, Inc.*, 566 F.3d 1338, 1343 (Fed. Cir. 2009).  In fact, that court has already

rejected elevating "key witnesses" (here, Micron's 3D NAND witnesses) at the expense of others

(here, other 3D NAND, SSD, 3DXP, DRAM, or willfulness witnesses).  *Compare* Reply at 2

(arguing "many" of *its* identified witnesses work on the "issue at the heart of BeSang's claims"),

*with Genentech*, 566 F.3d at 1343 (rejecting "key witness" test).[2]

---

[2] Micron also cites *VisionX Techs. v. Sony*, No. 2:22-CV-00178, 2023 WL 3572898, at *4 (E.D. Tex. May 19, 2023), apparently suggesting that infringement and validity witnesses are more likely to testify at trial.  The *VisionX* court never made that suggestion, and the Federal Circuit has found

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

Even so, Micron's attempt at identifying seven "key" witnesses was flawed; each witness worked on manufacturing *processes* like etching, not the circuit design at issue here.  Resp. at 5–6.  To compensate for this flaw, Micron first attempts to backfill by arguing that there are actually ███—not seven—witnesses that it could call to trial.  Reply at 2.  This is not relevant.  *See Sofoco, Inc. v. KLX Energy Servs., LLC*, 2:22-cv-0437-JRG-RSP, 2023 WL 4281243, at *2–*3 (E.D. Tex. June 10, 2023) ("[T]he Court is disinclined to give much weight to KLX's argument about unidentified witnesses it may call . . . .").  Second, despite their lack of knowledge or experience designing these products, Micron reasons that each identified witness is still relevant because manufacturing processes eventually make the product's end-structure.  Reply at 2.  But this is too clever by half.  Micron's corporate representative destroyed this generic observation, testifying as to such witnesses: "They're definitely not designing the circuit structure."  *See* Ex. KK at 157:12–158:10.  None were involved in the transition from 2D to 3D NAND or the circuit designs that, contrary to Micron's claims, *are* squarely at issue here.[3]

Micron next attempts in a scattershot fashion to rebut witnesses identified by BeSang:

- Micron attacks the evidence BeSang identified as "unverified," "speculative" LinkedIn profiles.  There is no reason to think Micron employees would misstate their credentials, and the Federal Circuit has indicated that LinkedIn profiles are permissible.  *In re Apple Inc.*, No. 2023-135, 2023 WL 5274629, at *2 (Fed. Cir. Aug. 16, 2023).  Micron's attack also ignores that: (1) it is Micron's burden; and (2) BeSang relied on publicly available evidence only after Micron withheld its HR information despite BeSang propounding an interrogatory directly on point.  *See* Ex. LL (BeSang's Venue Interrogatory No. 1).

- Micron now provides never-produced HR data suggesting that certain individuals BeSang identified are no longer at Micron.  The majority are post-Complaint departures, rendering their departure irrelevant, *Longhorn HD LLC v. Juniper Networks, Inc.*, No. 2:21-CV-00099-JRG, 2021 WL 4243382, at *2 (E.D. Tex. Sept. 16, 2021), and any

---

error in the "categorical rejection" of witnesses based upon generalizations and "speculation that they would be 'unlikely to testify at trial.'" *Hulu*, 2021 WL 3278194, at *3.

[3] *See* Dkt. 1 ¶¶ 22–25 ("Dr. Sang-Yun Lee incorporated BeSang in 2003 to develop, in part, three- dimensional (3D) integrated circuit technologies to overcome the above-mentioned deficiencies of the 2D solutions"); Dkt. 32-2 at 16, 29, 47 (accusing particular "circuitry").

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

employees that departed prior to the Complaint should be considered under the subpoena-power factor.

- Micron rebuts four Allen employees because they do not *presently* "perform any work" on "the design or development of 3D NAND." *See* Reply Ex. 4. Evidence shows these witnesses have relevant, recent knowledge.[4] There is no relevancy test whether a witness currently works on certain projects at the company.

- Micron discounts ███████████, who states for the first time in Reply that he did not "actually use" a characterization platform he created. Reply Ex. 4 at 8. This is beside the point. Micron's development of a platform to characterize accused products is both material and relevant to this case.

- Micron suggests that █████████ is not relevant because Micron employs her on a contract basis, but fails to explain why that matters. Affiliation with Micron renders her a willing witness, falling squarely within this factor.

- Micron seeks to disregard ████████ because his work on 3D NAND was not "commercialized," Reply at 3, but the technical details regarding that work and Micron's decision not to commercialize it *is* relevant and material to this case.

The record shows at least 35 willing witnesses here with relevant, material information.[5]

Certainly Micron has not disproven their relevance. *See Seven Networks, LLC v. Google LLC*,

No. 2:17-CV-00441-JRG, 2018 WL 4026760, at *5 (E.D. Tex. Aug. 15, 2018) (crediting

plaintiff's identification of relevant evidence where movant had not proven it was irrelevant.).

### D. **Compulsory Process Weighs Against Transfer.**

As to compulsory process, Micron disregards SK hynix (a BeSang licensee) and

Samsung (a highly relevant third party and non-infringing alternative) because BeSang did not

identify specific individuals in the district. There is "no basis to discount these entities just

because individual employees were not identified." *In re HP Inc.*, 826 F. App'x 899, 903 (Fed.

---

[4] *Compare* Reply Ex. 4, *with* Resp. at 4. *See also* Resp. Ex. E at 4–5 (███ has experience in NAND); 8 (████ "documented, developed, and improved Enterprise SSD and DRAM process flows"); 19 (████ has "8 years of experience developing from end firmware for various SSD products for SanDisk"); 21–22 (████████ has NAND and NVM experience); 25 (███ "[c]orroborated characterization data with Product Device Engineering and NAND design team").
[5] BeSang accepts Micron's representation that █████ does not work at Micron despite her holding herself out to the public as an employee of the company. Ex. MM; McCarty Decl ¶ 7.

4

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

Cir. 2020); *In re Apple Inc.*, No. 2021-181, 2021 WL 5291804, at *3 (Fed. Cir. Nov. 15, 2021).

Micron downplays its own distribution-partners because not a *single one* is subject to compulsory process for trial in Idaho while *five* are subject to process here. Resp. at 11. But Micron points to no authority for its view that these distributors must be ignored unless BeSang can prove that the information they have cannot be "obtain[ed] through third-party discovery." Reply at 4. Indeed, Micron's argument appears to be directly inconsistent with *Volkswagen*, which weighed this factor in favor of the venue that enjoyed "absolute subpoena power for both depositions and trial." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 316 (5th Cir. 2008).

Next, Micron takes aim at ███████, seeking to dismiss him as pertaining to only DRAM.[6] But ███████ is a third-party witness with *direct dealings with BeSang regarding licensing and DRAM*. Micron fails to show why the Court should disregard these witnesses under this factor, which weighs against transfer.

### E. The Remaining Factors Weigh Against Transfer.

Micron's Allen facility likely houses relevant documents, Resp. at 7–9, and Micron itself acknowledges relevant documents in Austin. Reply at 3–4. Importantly, Micron completely failed to present evidence for where its cloud documents are *actually* located. Resp. at 9. As to local interest, Micron discounts its distributors, ignoring that it is *Micron* who is inducing that infringement. *Id.* at 11. And Micron has no answer for BeSang's engagement in the market, instead minting a new rule (with no authority) that the court-congestion factor does not matter when a patent will expire before the trial date. Each factor counsels against transfer.

---

[6] Micron also announces that four of its former employees have "no relevant ties to this case," but that is contrary to the record. *See* Resp. Ex. T (███████ worked on test programs for NAND and DRAM at Micron); Resp. Ex. HH at 5 (███████ was Corporate VP and General Manager for the relevant Storage Business Unit at Micron); 8–9 (███████, an "ex-Micron" engineer, was involved in "CMOS Reliability, 3D NAND reliability development" at Micron); 13 (███████, listing NAND and 3D XPoint as his specialties, has 3D XPoint experience at Micron).

5

XFILEDXUNDERXSEALXPURSUANTXTOXPROTECTIVEXORDERX

DATED: September 6, 2023                    Respectfully submitted,

                                           */s/ Warren J. McCarty, III*
                                           Bradley W. Caldwell
                                           Texas State Bar No. 24040630
                                           Email: bcaldwell@caldwellcc.com
                                           Jason D. Cassady
                                           Texas State Bar No. 24045625
                                           Email: jcassady@caldwellcc.com
                                           John Austin Curry
                                           Texas State Bar No. 24059636
                                           acurry@caldwellcc.com
                                           Warren J. McCarty, III
                                           Texas State Bar No. 24107857
                                           Email: wmccarty@caldwellcc.com
                                           R. Seth Reich Jr.
                                           Texas State Bar No. 24088283
                                           Email: sreich@caldwellcc.com
                                           Xu Zhou
                                           Texas State Bar No. 24121219
                                           xzhou@caldwellcc.com
                                           Bjorn A. Blomquist
                                           Texas State Bar No. 24125125
                                           bblomquist@caldwellcc.com
                                           James F. Smith
                                           Texas State Bar No. 24129800
                                           jsmith@caldwellcc.com
                                           Richard Cochrane
                                           Texas State Bar No. 24116209
                                           rcochrane@caldwellcc.com
                                           Aisha Mahmood Haley (admitted *pro hac vice*)
                                           District of Columbia Bar No. 1034110
                                           ahaley@caldwellcc.com
                                           John F. Summers
                                           Texas State Bar No. 24079417
                                           jsummers@caldwellcc.com
                                           **Caldwell Cassady & Curry P.C.**
                                           2121 N Pearl Street, Suite 1200
                                           Dallas, TX 75201
                                           Telephone: (214) 888-4848
                                           Facsimile: (214) 888-4849

                                           Deron R. Dacus
                                           State Bar No. 00790553
                                           **The Dacus Firm, P.C.**
                                           821 ESE Loop 323, Suite 430
                                           Tyler, TX 75701
                                           Phone: (903) 705-1117
                                           Fax: (903) 581-2543
                                           ddacus@dacusfirm.com

                                           *Attorneys for Plaintiff*

6

Appx137

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served on all counsel of

record via electronic mail on September 6, 2023.

/s/ Warren J. McCarty, III
Warren J. McCarty, III

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

The undersigned certifies that the foregoing document is authorized to be filed under seal

pursuant to the Protective Order submitted in this case.

/s/ Warren J. McCarty, III
Warren J. McCarty, III

7

Appx138

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| BESANG, INC., | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO. 2:23-CV-00028-JRG-RSP |
| MICRON TECHNOLOGY, INC., MICRON | § | |
| SEMICONDUCTOR PRODUCTS, INC., and | § | |
| MICRON TECHNOLOGY TEXAS, LLC, | § | |
| | § | |
| *Defendants.* | § | |

**<u>ORDER</u>**

Before the Court is the Unopposed Motion for Leave to File Supplemental Brief in Support

of Defendant's Motion to Transfer Venue to the District of Idaho Under 28 U.S.C. § 1404(a) filed

by Defendants Micron Technology, Inc., Micron Semiconductor Products, Inc., and Micron

Technology Texas, LLC. **Dkt. No. 77**. After consideration, and noting its unopposed nature, the

Motion is **GRANTED**. It is

   **ORDERED** that Defendants are granted leave to file supplemental briefing in support of

the Motion to Transfer, filed at Dkt. No. 30.

   **SIGNED this 30th day of October, 2023.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

BESANG, INC.,

        *Plaintiff*

      v.

MICRON TECHNOLOGY, INC.,
MICRON SEMICONDUCTOR
PRODUCTS, INC., and
MICRON TECHNOLOGY TEXAS, LLC,

        *Defendants*.

Case No. 2:23-cv-00028

**Jury Trial Demanded**

████████████████████

**PUBLIC VERSION**

**DEFENDANTS' SUPPLEMENTAL BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO TRANSFER VENUE TO DISTRICT OF IDAHO UNDER 28 U.S.C. § 1404(a) (D.I. 30)**

Micron files this Supplemental Brief in support of Micron's Motion to Transfer to the District of Idaho (D.I. 30) and to respond to new arguments presented in BeSang's Notice of Supplemental Facts (D.I. 74). Citing two exhibits, BeSang argues that Micron employee, ████, ████, has technical knowledge relevant to the Micron 3D NAND products accused of infringement in this case. BeSang's arguments fail for at least three reasons.

First, the exhibits attached to BeSang's Notice are not related to ████. ████ did not author these documents, and neither exhibit even mentions ████. *See* D.I. 74, Exs. A-B. Both documents are dated months after ████ had already transferred out of Micron's NAND design group: Exhibit A is dated July 2018 and Exhibit B is dated January 2018. ████ ████████████████████████████████ to work on non-accused DRAM products. D.I. 74-01; D.I. 74-02; D.I. 65-01, ¶7. Thus, presentations unrelated to ████ generated months after ████ left the NAND design group fail to undermine ████ testimony stating that he does not have any knowledge relevant to this case.

1

Appx140



Second, the exhibits attached to BeSang's Notice are unrelated to any work done by ██ while he was in the NAND design group.  ████████ work on the ████ test chip was ████████████████████████.  D.I. 67 at 3 (citing to D.I. 67-02 at 94:3-7; D.I. 67-11 at 61:10-25, 104:20-105:1; D.I. 61-01 at ¶14).  Micron's Corporate Designee explained that ████████ work on the ████ test chip pertained only to ████████████████ ████████████████████████ D.I. 67-01, 94:3-7.  In its Notice, BeSang argues that ████████ work on the ████ test chip is relevant to this case because ████████ ████████████████████████████████████████ D.I. 74 at 1.  But ████████████ refers to a type of memory cell architecture, not ████████████████████████ briefly worked.  ████████ testified that he was not aware of Micron ████████████████████████████████████ ████████████.  Ex. 21 at 65:1-4, 68:24-69:2.

Third, the exhibits attached to BeSang's Notice are unrelated to any product that BeSang accused of infringement in this case.  Micron did not commercialize the ████ test chip (to which ████████ 3D NAND-related work was limited) and BeSang does not accuse it of infringement.  D.I. 67, at 3.  Discovery in this case has confirmed that Micron never included the ████ test chip within any of its products.  *See* Ex. 22 (request from BeSang for product samples of all relevant 3D NAND chips, which does not identify ████).

In summary, the new arguments presented in BeSang's Notice do not alter the "cost of attendance for willing witnesses" analysis presented in Micron's earlier transfer briefing.  *See* D.I. 30 at 5; D.I. 67 at 2-3.  The information concerning the ████ test chip that Micron produced on October 13, 2023 (and that BeSang attached as Exhibits A and B to its Notice) in no way contradicts Micron's assertion that ████████ has no knowledge relevant to this case.

2

Dated:  October 27, 2023                    Respectfully submitted,

                                            */s/ John Kappos*
                                            _____

                                            GILLAM & SMITH, LLP
                                            Melissa R. Smith (TX #24001351)
                                            melissa@gillamsmithlaw.com
                                            303 South Washington Avenue
                                            Marshall, Texas 75670
                                            Telephone: (903) 934-8450
                                            Facsimile: (903) 934-9257

                                            O'MELVENY & MYERS LLP
                                            John Kappos (TX# 24130097)
                                            jkappos@omm.com
                                            Timothy S. Durst (TX #00786924)
                                            tdurst@omm.com
                                            Cason G. Cole (TX#24109741)
                                            ccole@omm.com
                                            Frances Mackay (TX#24109494)
                                            fmackay@omm.com
                                            2501 North Harwood Street, Suite 1700
                                            Dallas, TX 75201
                                            Telephone: (972) 360-1900
                                            Facsimile: (972) 360-1901

                                            Xin-Yi Zhou (TX# 24127916)
                                            vzhou@omm.com
                                            400 South Hope Street, 18th Floor
                                            Los Angeles, CA 90071
                                            Telephone: (213) 430-6000
                                            Facsimile: (213) 430-6407

                                            William M. Fink (admitted *pro hac vice*)\
                                            tfink@omm.com
                                            Patric Reinbold (admitted *pro hac vice*)
                                            preinbold@omm.com
                                            1625 Eye Street, NW
                                            Washington, DC 20006
                                            Telephone: (202) 383-5300
                                            Facsimile: (202) 383-5414

                                            *Attorneys for Defendants Micron Technology, Inc.,*
                                            *Micron Semiconductor Products, Inc., and*
                                            *Micron Technology Texas, LLC.*

Appx142

### <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on October 27, 2023. Any other counsel of record will be served by facsimile transmission, e-mail and/or first class mail.

*/s/ Melissa R. Smith*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

BESANG INC.,

          *Plaintiff*

   v.

MICRON TECHNOLOGY, INC.,
MICRON SEMICONDUCTOR
PRODUCTS, INC., and
MICRON TECHNOLOGY TEXAS, LLC,

          *Defendants*.

Case No. 2:23-CV-00028-JRG

**JURY TRIAL DEMANDED**

### NOTICE OF DISSOLUTION OF MICRON TECHNOLOGY TEXAS, LLC

Defendant Micron Technology, Inc. ("MTI") files this Notice of Dissolution ("Notice of Dissolution") of Micron Technology Texas, LLC ("Micron Texas") and would respectfully show the Court as follows:

On January 23, 2023, Plaintiff BeSang Inc. ("BeSang") filed its Complaint for Patent Infringement ("Complaint") (Dkt. 1) against Micron Texas.[1]  In its Complaint, BeSang alleged that "Micron Texas has a regular and established place of business at 950 W. Bethany Drive, Suite 120, Allen, Texas 75013." *See* Dkt. 1 at ¶ 4; *see also id.* at ¶ 10 ("Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1400(b), because [Micron Texas] … [has] a regular and established place of business in this District.").  BeSang's allegations were and are incorrect. During discovery, Micron Texas informed BeSang that it does not have any employees, conducts no business of any kind, and lacks any regular and established place of business in this District.

---

[1] As the Court is aware, BeSang filed its Complaint against Defendants Micron Technology, Inc. ("Micron Technology") and Micron Semiconductor Products, Inc. ("Micron Semiconductor"), as well. Micron Technology and Micron Semiconductor are not the subject of this Notice of Dissolution.

As of the date of dissolution, October 25, 2023, Micron Texas both lacked employees and a regular and established place of business anywhere because Micron Texas was, as of that date, no longer a company or legal entity. *See* Ex. A, Statement of Dissolution Limited Liability Company. On October 25, 2023, the State of Idaho approved the dissolution of Micron Texas. *Id*.

Dated:  November 2, 2023                 Respectfully submitted,

*/s/ Melissa R. Smith*
Melissa R. Smith
Texas Bar No. 24001351
**GILLAM & SMITH, LLP**
303 South Washington Avenue
Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile:  (903) 934-9257
Email: melissa@gillamsmithlaw.com

John Kappos
Texas Bar No. 24130097
Timothy S. Durst
Texas Bar No. 00786924
Cason G. Cole
Texas Bar No. 24109741
Frances Mackay
Texas Bar No. 24109494
**O'MELVENY & MYERS LLP**
2501 North Harwood Street, Suite 1700
Dallas, Texas 75201
Telephone: (972) 360-1900
Facsimile:  (972) 360-1901
Email: jkappos@omm.com
Email: tdurst@omm.com
Email: ccole@omm.com
Email: fmackay@omm.com

Xin-Yi Zhou
Texas Bar No. 24127916
**O'MELVENY & MYERS LLP**
400 South Hope Street, 18th Floor
Los Angeles, California 90071
Telephone: (213) 430-6000
Facsimile:  (213) 430-6407

Email: vzhou@omm.com

William M. Fink (*Pro Hac Vice*)
Patric Reinbold (P*ro Hac Vice*)
**O'MELVENY & MYERS LLP**
1625 Eye Street, NW
Washington, D.C. 20006
Telephone: (202) 383-5300
Facsimile:  (202) 383-5414
Emai: tfink@omm.com
Email: preinbold@omm.com

*Attorneys for Defendants Micron Technology, Inc.,*
*Micron Semiconductor Products, Inc., and*
*Micron Technology Texas, LLC.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on November 2, 2023.

/s/ Melissa R. Smith
Melissa R. Smith

# EXHIBIT A



# STATE OF IDAHO

*Phil McGrane | Secretary of State*
**Business Office**
450 North 4th Street
PO Box 83720
Boise, ID 83720

MICRON TECHNOLOGY TEXAS, LLC
STE 100
805 CENTRAL EXPY S
ALLEN, TX  75013-8010

October 25, 2023

## Filing Acknowledgment

Please review the filing information below and notify our office immediately of any discrepancies.

| | |
|---|---|
| **File # :** | **35557** |
| Filing Name: | MICRON TECHNOLOGY TEXAS, LLC |
| Filing Type: | Limited Liability Company (D) |
| Status: | Inactive-Dissolved |

Amendment Type:  Statement of Dissolution                    Image # : B0846-1636
Filed Date:          10/25/2023 12:45 PM

This will acknowledge the filing of the attached amendment to your business entity with an effective date as indicated above.  When corresponding with this office or submitting documents for filing, please refer to the file number given above.



Phil McGrane
**Idaho Secretary of State**
Processed By:  Business Division

| Field Name | Changed From | Changed To |
|---|---|---|
| Filing Status | Active-Existing | Inactive-Dissolved |
| Inactive Date | None | 10/25/2023 12:45:00 PM |

Phone: 208-334-2301  *  Email: business@sos.idaho.gov  *  Website:  sosbiz.idaho.gov

Appx149





## STATEMENT OF DISSOLUTION
## LIMITED LIABILITY COMPANY

Title 30, Chapters 21 and 25, Idaho Code
Filing fee: $20.00 for manual processing (form must be typed).

The limited liability company named herein has been dissolved pursuant to 30-25-702(b)(2)(A).

1.   The name of the dissolved limited liability company is:

Micron Technology Texas, LLC

2.   The date the certificate of organization was originally filed:   August 12, 1998

3.   Other information concerning the dissolution (optional):

4.   Name and address to return acknowledgement copy of this form to:

Leslie A. Brault, Transaction Manager    c/o DLA Piper LLP (US), 2525 E. Camelback Rd., Ste. 1000, Phoenix, AZ  85016
(Name)                                                     (Address)

5.   Signature of a manager, member, or authorized person.

Printed Name: Richard Mealey-Ozawa

Signature:   *Richard Mealey-Ozawa*

Printed Name: _____

Signature: _____

Revised 01/2019

Secretary of State use only

Appx150

B0046-1636  10/25/2023  12:45 PM  Received by Office of the Idaho Secretary of State

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| BESANG, INC.,<br><br>　　　　　*Plaintiff*<br><br>　　v.<br><br>MICRON TECHNOLOGY, INC.,<br>MICRON SEMICONDUCTOR<br>PRODUCTS, INC., and<br>MICRON TECHNOLOGY TEXAS, LLC,<br><br>　　　　　*Defendants*. | Case No. 2:23-CV-00028-JRG<br><br>**JURY TRIAL DEMANDED** |

**DEFENDANTS' UNOPPOSED MOTION FOR HEARING ON
DEFENDANTS' MOTION TO TRANSFER VENUE TO THE
DISTRICT OF IDAHO UNDER 28 U.S.C. § 1404 (DKT. 30)**

Defendants Micron Technology, Inc. and Micron Semiconductor Products, Inc., ("Defendants") respectfully move for a hearing, at the Court's earliest convenience, on Defendants' Motion to Transfer Venue to the District of Idaho Under 28 U.S.C. § 1404 ("Motion to Transfer") (Dkt. 30).

Plaintiff BeSang, Inc. ("Plaintiff") filed its Sur-Reply to Defendants' Motion to Transfer (Dkt. 71) on September 6, 2023 (Dkt. 71).  Accordingly, Defendants' Motion to Transfer is fully briefed and ripe for consideration.

Defendants' Motion to Transfer is important, a ruling on the Motion will expedite just resolution of the matter, and oral argument on the Motion to Transfer should aid the Court in resolving any legal or factual issues.  Counsel for Defendant conferred with counsel for Plaintiff, and counsel for Plaintiff indicated Plaintiff will not oppose this Motion.

Accordingly, Defendants respectfully request that the Court grant this Unopposed Motion

1

and enter an order setting the Motion to Transfer for hearing at the Court's earliest convenience.

Dated:  November 3, 2023                    Respectfully submitted,

/s/ Melissa R. Smith
Melissa R. Smith
Texas Bar No. 24001351
**GILLAM & SMITH, LLP**
303 South Washington Avenue
Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile:  (903) 934-9257
Email: melissa@gillamsmithlaw.com

John Kappos
Texas Bar No. 24130097
Timothy S. Durst
Texas Bar No. 00786924
Cason G. Cole
Texas Bar No. 24109741
Frances Mackay
Texas Bar No. 24109494
**O'MELVENY & MYERS LLP**
2501 North Harwood Street, Suite 1700
Dallas, Texas 75201
Telephone: (972) 360-1900
Facsimile:  (972) 360-1901
Email: jkappos@omm.com
Email: tdurst@omm.com
Email: ccole@omm.com
Email: fmackay@omm.com

Xin-Yi Zhou
Texas Bar No. 24127916
**O'MELVENY & MYERS LLP**
400 South Hope Street, 18th Floor
Los Angeles, California 90071
Telephone: (213) 430-6000
Facsimile:  (213) 430-6407
Email: vzhou@omm.com

William M. Fink (*Pro Hac Vice*)
Patric Reinbold (*Pro Hac Vice*)
**O'MELVENY & MYERS LLP**
1625 Eye Street, NW

2

Washington, D.C. 20006
Telephone: (202) 383-5300
Facsimile:  (202) 383-5414
Emai: tfink@omm.com
Email: preinbold@omm.com

***Attorneys for Defendants Micron Technology, Inc.,
Micron Semiconductor Products, Inc., and
Micron Technology Texas, LLC.***

3

Appx153

## **CERTIFICATE OF CONFERENCE**

The undersigned hereby certifies that counsel for Defendants met and conferred with counsel for Plaintiff to discuss the substantive issues addressed in this Motion pursuant to Local Rule CV-7(i).  Counsel for Plaintiff indicated that Plaintiff is unopposed to the relief sought in this Motion.

*/s/ Melissa R. Smith*
Melissa R. Smith

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on November 3, 2023.

*/s/ Melissa R. Smith*
Melissa R. Smith

4

Appx154

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| BESANG, INC.,<br><br>                    *Plaintiff*<br><br>v.<br><br>MICRON TECHNOLOGY, INC.,<br>MICRON SEMICONDUCTOR<br>PRODUCTS, INC., and<br>MICRON TECHNOLOGY TEXAS, LLC,<br><br>                    *Defendants.* | Case No. 2:23-CV-00028-JRG<br><br>**JURY TRIAL DEMANDED** |

**DEFENDANTS' NOTICE OF SUPPLEMENTAL AUTHORITY
IN SUPPORT OF THEIR MOTION TO TRANSFER VENUE
TO THE DISTRICT OF IDAHO UNDER 28 U.S.C. § 1404(a) (DKT. 30)**

Defendants Micron Technology, Inc. and Micron Semiconductor Products, Inc. ("Micron")
wish to advise the Court about the Fifth Circuit's recent decision in *In re TikTok, Inc.*,
85 F.4th 352 (5th Cir. Oct. 31, 2023), attached hereto as Exhibit 1, that addresses various issues
raised in Micron's pending Motion to Transfer Venue to the District of Idaho Under 28 U.S.C.
§ 1404(a) ("Motion to Transfer") (Dkt. 30).  The opinion is instructive and provides additional
guidance regarding (1) relative ease of access to sources of proof, including Boise-based design
files for the accused 3D NAND products, (2) convenience of willing witnesses, including
witnesses located at Micron's Singapore manufacturing site, which is closer to Boise, Idaho, and
(3) proper balancing of the convenience factors.

Accordingly, Micron respectfully submits the attached supplemental authority for the
Court's consideration in connection with Micron's pending Motion to Transfer and asks that the
Court take notice of the same.

1

Appx155

Dated: November 14, 2023

Respectfully submitted,

*/s/ Melissa R. Smith*

Melissa R. Smith
Texas Bar No. 24001351
**GILLAM & SMITH, LLP**
303 South Washington Avenue
Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile:  (903) 934-9257
Email: melissa@gillamsmithlaw.com

John Kappos
Texas Bar No. 24130097
Timothy S. Durst
Texas Bar No. 00786924
Cason G. Cole
Texas Bar No. 24109741
Frances Mackay
Texas Bar No. 24109494
**O'MELVENY & MYERS LLP**
2501 North Harwood Street, Suite 1700
Dallas, Texas 75201
Telephone: (972) 360-1900
Facsimile:  (972) 360-1901
Email: jkappos@omm.com
Email: tdurst@omm.com
Email: ccole@omm.com
Email: fmackay@omm.com

Xin-Yi Zhou
Texas Bar No. 24127916
**O'MELVENY & MYERS LLP**
400 South Hope Street, 18th Floor
Los Angeles, California 90071
Telephone: (213) 430-6000
Facsimile:  (213) 430-6407
Email: vzhou@omm.com

William M. Fink (*Pro Hac Vice*)
Patric Reinbold (*Pro Hac Vice*)
**O'MELVENY & MYERS LLP**
1625 Eye Street, NW
Washington, D.C. 20006
Telephone: (202) 383-5300
Facsimile:  (202) 383-5414

2

Appx156

Email: tfink@omm.com
Email: preinbold@omm.com

*Attorneys for Defendants Micron Technology, Inc.,*
*Micron Semiconductor Products, Inc., and*
*Micron Technology Texas, LLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on November 14, 2023.

*/s/ Melissa R. Smith*
Melissa R. Smith

3

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| BESANG, INC., | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO. 2:23-CV-00028-JRG-RSP |
| MICRON TECHNOLOGY, INC., MICRON | § | |
| SEMICONDUCTOR PRODUCTS, INC., and | § | |
| MICRON TECHNOLOGY TEXAS, LLC, | § | |
| | § | |
| *Defendants.* | § | |

## ORDER

Upon consideration of the parties' Stipulation and Joint Motion to Stay Pending *Inter Partes* Review, (**Dkt. No. 93**) and for good cause shown in view of the instituted IPR petitions for the Asserted Patent, it is hereby **ORDERED** that:

1. The above-captioned action is stayed.

2. The parties shall submit a joint status report and request for status conference within 7 days after the PTAB has issued final written decisions in both IPR2023-00900 and IPR2023-00991.

3. This stay will automatically expire (without prejudice to either party moving for a further stay pending appeal) if any Asserted Claims of the Asserted Patent are not found invalid by the PTAB in the final written decisions in both IPR2023-00900 and IPR2023-00991.

**SIGNED this 19th day of December, 2023.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE

1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| BESANG, INC., <br><br> Plaintiff, <br><br> v. <br><br> MICRON TECHNOLOGY, INC., MICRON SEMICONDUCTOR PRODUCTS, INC., AND MICRON TECHNOLOGY TEXAS, LLC, <br><br> Defendants. | CIVIL ACTION NO. 2:23-cv-00028 <br><br> JURY TRIAL DEMANDED |

### PLAINTIFF BESANG, INC.'S NOTICE OF SECOND FINAL WRITTEN DECISION

Plaintiff BeSang Inc. ("BeSang") respectfully submits this Notice of Second Final Written Decision.  On June 2, 2023, non-party Intel Corporation ("Intel") filed a petition seeking *inter partes* review of certain claims of U.S. Patent No. 7,378,702 ("the '702 Patent"), the asserted patent in this case.  Prior to that, Defendants Micron Technology, Inc., Micron Semiconductor Products, Inc., and Micron Technology Texas, LLC (collectively, "Micron") had also filed a petition seeking *inter partes* review of certain claims of the '702 Patent.  BeSang and Micron submitted a Stipulation and Joint Motion to Stay on December 15, 2023.  *See* Dkt. 93.  The Court ordered the case be stayed pending *inter partes* review on December 19, 2023.  *See* Dkt. 95.

BeSang recently provided notice to the Court that the Patent Trial and Appeal Board ("PTAB") issued a final written decision in Micron's IPR proceeding, determining no challenged claim of the '702 Patent unpatentable.  *See* Dkt. 96.  Today, the PTAB issued a final written decision in Intel's IPR proceeding, likewise determining no challenged claim of the '702 Patent

1

Appx159

unpatentable.  *See Intel Corp. v. BeSang Inc.*, IPR2023-00991, Paper 39 (P.T.A.B. Dec. 11, 2024).  A copy of the PTAB's final written decision in Intel's IPR proceeding is attached as Exhibit A to this notice.

Pursuant to the Court's Order staying the case, as of the issuance of the final written decision in the Intel IPR proceeding, the stay in this case has automatically expired.  Dkt. 95.  In addition, as set forth in the Court's Order, the parties shall submit a joint status report and request a status conference with the Court within seven days.  *Id.*

2

DATED: December 11, 2024                    Respectfully submitted,

/s/ Warren J. McCarty, III
Bradley W. Caldwell
Texas State Bar No. 24040630
Email: bcaldwell@caldwellcc.com
Jason D. Cassady
Texas State Bar No. 24045625
Email: jcassady@caldwellcc.com
John Austin Curry
Texas State Bar No. 24059636
acurry@caldwellcc.com
Warren J. McCarty, III
Texas State Bar No. 24107857
Email: wmccarty@caldwellcc.com
R. Seth Reich Jr.
Texas State Bar No. 24088283
Email: sreich@caldwellcc.com
Xu Zhou
Texas State Bar No. 24121219
xzhou@caldwellcc.com
Bjorn A. Blomquist
Texas State Bar No. 24125125
bblomquist@caldwellcc.com
James F. Smith
Texas State Bar No. 24129800
jsmith@caldwellcc.com
Richard Cochrane
Texas State Bar No. 24116209
rcochrane@caldwellcc.com
Aisha Mahmood Haley (admitted *pro hac vice*)
District of Columbia Bar No. 1034110
ahaley@caldwellcc.com
John F. Summers
Texas State Bar No. 24079417
jsummers@caldwellcc.com
**Caldwell Cassady & Curry P.C.**
2121 N Pearl Street, Suite 1200
Dallas, TX 75201
Telephone: (214) 888-4848
Facsimile: (214) 888-4849

Deron R. Dacus
State Bar No. 00790553
**The Dacus Firm, P.C.**
821 ESE Loop 323, Suite 430
Tyler, TX 75701
Phone: (903) 705-1117
Fax: (903) 581-2543
ddacus@dacusfirm.com

*Attorneys for Plaintiff BeSang, Inc.*

3

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on December 11, 2024, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Rule CV-5(a)(3).

*/s/ Warren J. McCarty, III*
Warren J. McCarty, III

Appx162

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| BESANG, INC., | |
| Plaintiff, | |
| v. | CIVIL ACTION NO. 2:23-cv-00028 |
| MICRON TECHNOLOGY, INC., MICRON SEMICONDUCTOR PRODUCTS, INC., AND MICRON TECHNOLOGY TEXAS, LLC, | JURY TRIAL DEMANDED |
| Defendants. | |

**JOINT STATUS REPORT AND REQUEST FOR STATUS CONFERENCE**

Pursuant to the Court's Order staying this case pending *inter partes* review, Dkt. 95, Plaintiff BeSang Inc. ("BeSang") and Defendants Micron Technology, Inc., Micron Semiconductor Products, Inc., and Micron Technology Texas, LLC (collectively, "Micron") file this Joint Status Report and respectfully request a status conference with the Court.

**BeSang's Position:**

On December 19, 2023, the Court stayed this case pending *inter partes* review (Dkt. 95) following submission of a Stipulation and Joint Motion to Stay by the parties. *See* Dkt. 93. The Patent Trial and Appeal Board ("PTAB") has now issued final written decisions in both IPR2023-00900 and IPR2023-00991. *See* Dkt. 96; Dkt. 97. In both decisions, the PTAB found that petitioner had failed to prove that any challenged claims of the '702 Patent were unpatentable. Pursuant to the Court's Order (Dkt. 95), the stay automatically lifted this on December 11, 2024.

Prior to the Court entering the stay, this case was set for both a pretrial conference and a

1

Appx163

claim construction hearing before Judge Payne.  *See* Dkt. 54 at 2, 4.  At the time of the stay, the parties were at the P.R. 4-1 exchange phase of the case.  BeSang respectfully requests a *Markman* schedule beginning with P.R. 4-1 exchanges and a subsequent pretrial schedule and trial date as quickly as possible.  BeSang believes this case is ripe for claim construction proceedings, in light of the status of the case when the stay was entered.  BeSang also believes that this case can be ready for trial relatively soon after claim construction because of the progress in discovery that was made prior to the stay being entered, and the IPR process having narrowed and/or resolved entirely issues previously in dispute (*e.g.*, IPR estoppel applying to Micron's invalidity case).

Therefore, BeSang respectfully seeks a scheduling conference at the Court's earliest convenience in order to schedule a claim construction hearing, as well as set dates for a pretrial conference and a jury trial, and to enter deadlines in a Second Amended Docket Control Order accordingly.

**Micron's Position:**

The PTAB has recently issued final written decisions in IPR2023-00900 (filed by Micron) and IPR2023-00991 (filed by Intel).  *See* Dkt. 96; Dkt. 97.  In both proceedings, the PTAB based its decisions on its constructions of the asserted claims.  Micron intends to appeal the PTAB's decision in IPR2023-00900.

Prior to the Court entering the stay in this case (Dkt. 95), the parties had completed venue discovery and fully briefed Micron's Motion to Transfer (Dkts. 30, 65, 67, 71, 74, 77-79, 85).  Consistent with Fifth Circuit and the Federal Circuit precedents, Micron respectfully requests a hearing and adjudication of its pending Motion to Transfer—which had been fully briefed for over three months at the time of the stay—before the Court addresses any substantive issues,

2

including *Markman*. *See, e.g., In re Tracfone Wireless, Inc.*, 848 F. App'x 899, 900 (Fed. Cir. 2021) ("Our decisions in Google and SK hynix rest on a principle well-established in Fifth Circuit law: That district courts must give promptly filed transfer motions 'top priority' before resolving the substantive issues in the case.").

Although the PTAB has construed the claims of the patent-in-suit, BeSang has indicated that it plans to disregard the PTAB's claim construction and re-litigate the claim construction disputes. Thus, Micron respectfully submits that this case should proceed on a normal claim construction schedule starting with the P.R. 4-1 exchanges to give the parties sufficient time to brief claim construction disputes and the Court sufficient time to consider claim construction in view of the PTAB's decisions.

Micron disagrees that this case "can be ready for trial relatively soon after claim construction." This case was stayed approximately one month before the parties' P.R. 4-1 exchange. Thus, there is still substantial fact discovery remaining and the case should proceed on a normal schedule.

Therefore, Micron respectfully seeks a hearing on its pending Motion to Stay and a scheduling conference at the Court's convenience in order to schedule the claim construction hearing, pretrial conference, and trial dates.


DATED: December 18, 2024                    Respectfully submitted,


                                            */s/ Warren J. McCarty, III*
                                            Bradley W. Caldwell
                                            Texas State Bar No. 24040630
                                            bcaldwell@caldwellcc.com
                                            Warren J. McCarty, III
                                            Texas State Bar No. 24107857
                                            wmccarty@caldwellcc.com
                                            R. Seth Reich Jr.
                                            Texas State Bar No. 24088283

Appx165

sreich@caldwellcc.com
John F. Summers
Texas State Bar No. 24079417
jsummers@caldwellcc.com
Aisha Mahmood Haley (admitted *pro hac vice*)
District of Columbia Bar No. 1034110
ahaley@caldwellcc.com
Bjorn A. Blomquist
Texas State Bar No. 24125125
bblomquist@caldwellcc.com
James F. Smith
Texas State Bar No. 24129800
jsmith@caldwellcc.com
Xu Zhou
Texas State Bar No. 24121219
xzhou@caldwellcc.com
Richard Cochrane
Texas State Bar No. 24116209
rcochrane@caldwellcc.com
**Caldwell Cassady & Curry P.C.**
2121 N Pearl Street, Suite 1200
Dallas, TX 75201
Telephone: (214) 888-4848
Facsimile: (214) 888-4849

Deron R. Dacus
State Bar No. 00790553
**The Dacus Firm, P.C.**
821 ESE Loop 323, Suite 430
Tyler, TX 75701
Phone: (903) 705-1117
Fax: (903) 581-2543
ddacus@dacusfirm.com

*Attorneys for Plaint.,f BeSang, Inc.*


/s/ John Kappos
**GILLAM & SMITH, LLP**
Melissa R. Smith (TX #24001351)
melissa@gillamsmithlaw.com
303 South Washington Avenue
Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257

**O'MELVENY & MYERS LLP**
John Kappos (TX# 24130097)
jkappos@omm.com
Timothy S. Durst (TX #00786924)
tdurst@omm.com
Cason G. Cole (TX#24109741)
ccole@omm.com
Frances Mackay (TX#24109494)

4

Appx166

fmackay@omm.com
2501 North Harwood Street, Suite 1700
Dallas, TX 75201
Telephone: (972) 360-1900
Facsimile: (972) 360-1901

Xin-Yi Zhou (TX# 24127916)
vzhou@omm.com
400 South Hope Street, 18th Floor
Los Angeles, CA 90071
Telephone: (213) 430-6000
Facsimile: (213) 430-6407

William M. Fink (admitted *pro hac vice*)\
tfink@omm.com
Patric Reinbold (admitted *pro hac vice*)
preinbold@omm.com
1625 Eye Street, NW
Washington, DC 20006
Telephone: (202) 383-5300
Facsimile: (202) 383-5414

*Attorneys for Defendants Micron
Technology, Inc. and Micron Semiconductor
Products, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on December 18, 2024, a true and correct copy of the foregoing document was filed electronically with the Clerk of Court using the CM/ECF system. As of this date, all counsel of record have consented to electronic service and are being served with a copy of this document through the Court's CM/ECF system.

*/s/Warren J. McCarty, III*
Warren J. McCarty, III

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| BESANG, INC., | |
| *Plaintiff* | |
| v. | Case No. 2:23-cv-00028-JRG-RSP |
| MICRON TECHNOLOGY, INC.,<br>MICRON SEMICONDUCTOR<br>PRODUCTS, INC., and<br>MICRON TECHNOLOGY TEXAS, LLC, | |
| *Defendants.* | |

### SECOND AMENDED DOCKET CONTROL ORDER

In accordance with the conference held in this case on February 20, 2025, it is hereby

**ORDERED** that the following schedule of deadlines is in effect until further order of this Court:

| Current Date | Amended Date | Event |
|---|---|---|
| January 26, 2026 | | *Jury Selection – 9:00 a.m. in **Marshall, Texas** |
| 7 days before Jury Selection | | *Defendant to disclose final invalidity theories, final prior art references/combinations, and final equitable defenses with notice of the same filed with the Court.[1] |
| 10 days before Jury Selection | | *Plaintiff to disclose final election of Asserted Claims with notice of the same filed with the Court.[2] |

---

[1] The proposed DCO shall include this specific deadline. The deadline shall read, "7 days before Jury Selection," and shall not include a specific date.

[2] Given the Court's past experiences with litigants dropping claims and defenses during or on the eve of trial, the Court is of the opinion that these additional deadlines are necessary. The proposed DCO shall include this specific deadline. The deadline shall read, "10 days before Jury Selection," and shall not include a specific date.

Appx168

| Current Date | Amended Date | Event |
|---|---|---|
| December 30, 2025 | | * If a juror questionnaire is to be used, an editable (in Microsoft Word format) questionnaire shall be jointly submitted to the Deputy Clerk in Charge by this date.[3] |
| | January 6, 2026. | *Pretrial Conference – in **Marshall, Texas** before Judge Roy Payne |
| | December 30, 2026 | *Notify Court of Agreements Reached During Meet and Confer<br><br>The parties are ordered to meet and confer on any outstanding objections or motions *in limine*. The parties shall advise the Court of any agreements reached no later than 1:00 p.m. three (3) business days before the pretrial conference. |
| | December 16, 2026 | *File Joint Pretrial Order, Joint Proposed Jury Instructions, Joint Proposed Verdict Form, Responses to Motions *in Limine*, Updated Exhibit Lists, Updated Witness Lists, and Updated Deposition Designations |
| December 9, 2025 | | *File Notice of Request for Daily Transcript or Real Time Reporting.<br><br>If a daily transcript or real time reporting of court proceedings is requested for trial, the party or parties making said request shall file a notice with the Court and e-mail the Court Reporter, Shawn McRoberts, at shawn_mcroberts@txed.uscourts.gov. |

---

[3] The Parties are referred to the Court's Standing Order Regarding Use of Juror Questionnaires in Advance of *Voir Dire.*

Appx169

| Current Date | Amended Date | Event |
|---|---|---|
| | December 2, 2025 | File Motions *in Limine*<br><br>The parties shall limit their motions *in limine* to issues that if improperly introduced at trial would be so prejudicial that the Court could not alleviate the prejudice by giving appropriate instructions to the jury. |
| | December 2, 2025 | Serve Objections Disclosures to Rebuttal Pretrial |
| | November 25, 2025 | Serve Objections to Pretrial Disclosures; and Serve Rebuttal Pretrial Disclosures |
| | November 11, 2025 | Serve Pretrial Disclosures (Witness List, Deposition Designations, and Exhibit List) by the Party with the Burden of Proof |
| November 4, 2025 | | *Response to Dispositive Motions (including *Daubert* Motions). Responses to dispositive motions that were filed <u>prior</u> to the dispositive motion deadline, including *Daubert* Motions, shall be due in accordance with Local Rule CV-7(e), not to exceed the deadline as set forth in this Docket Control Order.[4] Motions for Summary Judgment shall comply with Local Rule CV-56. |
| October 21, 2025 | | *File Motions to Strike Expert Testimony (including *Daubert* Motions)<br><br>No motion to strike expert testimony (including a *Daubert* motion) may be filed after this date without leave of the Court. |

---

[4] The parties are directed to Local Rule CV-7(d), which provides in part that "[a] party's failure to oppose a motion in the manner prescribed herein creates a presumption that the party does not controvert the facts set out by movant and has no evidence to offer in opposition to the motion." If the deadline under Local Rule CV 7(e) exceeds the deadline for Response to Dispositive Motions, the deadline for Response to Dispositive Motions controls.

Appx170

| Current Date | Amended Date | Event |
|---|---|---|
| October 21, 2025 | | *File Dispositive Motions<br><br>No dispositive motion may be filed after this date without leave of the Court.<br><br>Motions shall comply with Local Rule CV-56 and Local Rule CV-7. <u>Motions to extend page limits will only be granted in exceptional circumstances. Exceptional circumstances require more than agreement among the parties.</u> |
| October 14, 2025 | | Deadline to Complete Expert Discovery |
| October 3, 2025 | | Serve Disclosures for Rebuttal Expert Witnesses |
| August 26, 2025 | | Deadline to Complete Fact Discovery and File Motions to Compel Discovery |
| September 5, 2025 | | Serve Disclosures for Expert Witnesses by the Party with the Burden of Proof |
| August 12, 2025 | | Comply with P.R. 3-7 (Opinion of Counsel Defenses) |
| July 22, 2025 | | *Claim Construction Hearing – 9 a.m. in **Marshall, Texas** before Judge Roy Payne. |
| July 8, 2025 | | *Comply with P.R. 4-5(d) (Joint Claim Construction Chart) |
| July 1, 2025 | | *Comply with P.R. 4-5(c) (Reply Claim Construction Brief) |
| June 24, 2025 | | Comply with P.R. 4-5(b) (Responsive Claim Construction Brief) |

- 4 -

Appx171

| Current Date | Amended Date | Event |
|---|---|---|
| June 10, 2025 | | Comply with P.R. 4-5(a) (Opening Claim Construction Brief) and Submit Technical Tutorials (if any)<br><br>Good cause must be shown to submit technical tutorials after the deadline to comply with P.R. 4-5(a). |
| June 10, 2025 | | Deadline to Substantially Complete Document Production and Exchange Privilege Logs<br><br>Counsel are expected to make good faith efforts to produce all required documents as soon as they are available and not wait until the substantial completion deadline. |
| May 27, 2025 | | Comply with P.R. 4-4 (Deadline to Complete Claim Construction Discovery) |
| May 20, 2025 | | File Response to Amended Pleadings |
| May 6, 2025 | | *File Amended Pleadings<br><br>It is not necessary to seek leave of Court to amend pleadings prior to this deadline unless the amendment seeks to assert additional patents. |
| April 29, 2025 | | Comply with P.R. 4-3 (Joint Claim Construction Statement) |
| April 8, 2025 | | Comply with P.R. 4-2 (Exchange Preliminary Claim Constructions) |
| March 18, 2025 | | Comply with P.R. 4-1 (Exchange Proposed Claim Terms) |

- 5 -

Appx172

**(\*) indicates a deadline that cannot be changed without an acceptable showing of good cause. Good cause is not shown merely by indicating that the parties agree that the deadline should be changed.**

## ADDITIONAL REQUIREMENTS

**Mediation:** While certain cases may benefit from mediation, such may not be appropriate for every case. The Court finds that the Parties are best suited to evaluate whether mediation will benefit the case after the issuance of the Court's claim construction order. Accordingly, the Court **ORDERS** the Parties to file a Joint Notice indicating whether the case should be referred for mediation **within fourteen days of the issuance of the Court's claim construction order**. As a part of such Joint Notice, the Parties should indicate whether they have a mutually agreeable mediator for the Court to consider. If the Parties disagree about whether mediation is appropriate, the Parties should set forth a brief statement of their competing positions in the Joint Notice.

**Summary Judgment Motions, Motions to Strike Expert Testimony, and *Daubert* Motions:** For each motion, the moving party shall provide the Court with two (2) hard copies of the completed briefing (opening motion, response, reply, and if applicable, sur-reply), excluding exhibits, in D-three-ring binders, appropriately tabbed. All documents shall be single-sided and must include the CM/ECF header. These copies shall be delivered to the Court within three (3) business days after briefing has completed. For expert-related motions, complete digital copies of the relevant expert report(s) and accompanying exhibits shall be submitted on a single flash drive to the Court.  Complete digital copies of the expert report(s) shall be delivered to the Court no later than the dispositive motion deadline.

**Indefiniteness:** In lieu of early motions for summary judgment, the parties are directed to include any arguments related to the issue of indefiniteness in their *Markman* briefing, subject to the local rules' normal page limits.

**Lead Counsel:** The Parties are directed to Local Rule CV-11(a)(1), which provides that "[o]n the first appearance through counsel, each party shall designate a lead attorney on the pleadings or otherwise." Additionally, once designated, a party's lead attorney may only be changed by the filing of a Motion to Change Lead Counsel and thereafter obtaining from the Court an Order granting leave to designate different lead counsel. The true lead counsel should be designated early and should not expect to parachute in as lead once the case has been largely developed.

**Motions for Continuance:** The following will not warrant a continuance nor justify a failure to comply with the discovery deadline:

(a)     The fact that there are motions for summary judgment or motions to dismiss pending;

(b)     The fact that one or more of the attorneys is set for trial in another court on the same day, unless the other setting was made prior to the date of this order or was made as a special provision for the parties in the other case;

Appx173

(c)     The failure to complete discovery prior to trial, unless the parties can demonstrate that it was impossible to complete discovery despite their good faith effort to do so.

**Amendments to the Docket Control Order ("DCO"):** Any motion to alter any date on the DCO shall take the form of a motion to amend the DCO. The motion to amend the DCO shall include a proposed order that lists all of the remaining dates in one column (as above) and the proposed changes to each date in an additional adjacent column (if there is no change for a date the proposed date column should remain blank or indicate that it is unchanged). In other words, the DCO in the proposed order should be complete such that one can clearly see all the remaining deadlines and the changes, if any, to those deadlines, rather than needing to also refer to an earlier version of the DCO.

**Proposed DCO:** The Parties' Proposed DCO should also follow the format described above under "Amendments to the Docket Control Order ('DCO')."

**Joint Pretrial Order:** In the contentions of the Parties included in the Joint Pretrial Order, the Plaintiff shall specify all allegedly infringed claims that will be asserted at trial. The Plaintiff shall also specify the nature of each theory of infringement, including under which subsections of 35 U.S.C. § 271 it alleges infringement, and whether the Plaintiff alleges divided infringement or infringement under the doctrine of equivalents. Each Defendant shall indicate the nature of each theory of invalidity, including invalidity for anticipation, obviousness, subject-matter eligibility, written description, enablement, or any other basis for invalidity. The Defendant shall also specify each prior art reference or combination of references upon which the Defendant shall rely at trial, with respect to each theory of invalidity. Other than as set forth in the above deadlines, the contentions of the Parties may not be amended, supplemented, or dropped without leave of the Court based upon a showing of good cause. The Parties in a case which has been consolidated for pre-trial purposes and which is moving towards a separate trial on the merits (subsequent to pre-trial) shall file, as an exhibit to the parties' Joint Pretrial Order, a list identifying all docket entries from the lead case that relate to the applicable member case.

**Trial:** All parties must appear in person at trial. All non-individual (including but not limited to corporate) parties must appear at trial through the presence in person of a designated representative. Once they have appeared, any representative of a non-individual party shall not be replaced or substituted without express leave of Court.

**SIGNED this 7th day of March, 2025.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE

- 7 -

Appx174

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| BESANG, INC.,<br><br>*Plaintiff*<br><br>v.<br><br>MICRON TECHNOLOGY, INC.,<br>MICRON SEMICONDUCTOR<br>PRODUCTS, INC., and<br>MICRON TECHNOLOGY TEXAS, LLC,<br><br>*Defendants*. | Case No. 2:23-CV-00028-JRG<br><br>**JURY TRIAL DEMANDED** |

### DEFENDANTS' NOTICE OF SUPPLEMENTAL FACTS
### IN SUPPORT OF THEIR MOTION TO TRANSFER VENUE
### TO THE DISTRICT OF IDAHO UNDER 28 U.S.C. § 1404(a) (DKT. 30)

In support of their Motion to Transfer Venue, Defendants Micron Technology, Inc. and Micron Semiconductor Products, Inc. ("Micron") advise the Court that Mr. Lars Heineck has now left employment with Micron. Mr. Heineck remains in Boise, Idaho. Mr. Heineck is now therefore a third-party witness within the subpoena power of the transferee district, but outside the subpoena power of this Court.

Moreover, Micron's formerly Allen, Texas site has now relocated to 1500 N. Greenville Ave Suite 900, Richardson, Texas 75081. This site is in Dallas County and is outside of Collin County, and thus outside the Eastern District of Texas.

Accordingly, Micron respectfully requests that the Court take notice of the same.

1

Appx175

Dated: March 17, 2025                    Respectfully submitted,

                                         */s/ Melissa R. Smith*
                                         Melissa R. Smith (Texas Bar No. 24001351)
                                         **GILLAM & SMITH, LLP**
                                         303 South Washington Avenue
                                         Marshall, Texas 75670
                                         Telephone: (903) 934-8450
                                         Facsimile:  (903) 934-9257
                                         Email: melissa@gillamsmithlaw.com

                                         James Travis Underwood (Texas Bar No. 24102587)
                                         **GILLAM & SMITH, LLP**
                                         102 N. College, Suite 800
                                         Tyler, Texas 75702
                                         Telephone:  (903) 934-8450
                                         Facsimile (903) 934-9257
                                         Email:  travis@gillamsmithlaw.com

                                         John Kappos (Texas Bar No. 24130097)
                                         Timothy S. Durst (Texas Bar No. 00786924)
                                         Cason G. Cole (Texas Bar No. 24109741)
                                         Frances Mackay (Texas Bar No. 24109494)
                                         **O'MELVENY & MYERS LLP**
                                         2501 North Harwood Street, Suite 1700
                                         Dallas, Texas 75201
                                         Telephone: (972) 360-1900
                                         Facsimile:  (972) 360-1901
                                         Email: jkappos@omm.com
                                         Email: tdurst@omm.com
                                         Email: ccole@omm.com
                                         Email: fmackay@omm.com

                                         Xin-Yi Zhou (Texas Bar No. 24127916)
                                         **O'MELVENY & MYERS LLP**
                                         400 South Hope Street, 18th Floor
                                         Los Angeles, California 90071
                                         Telephone: (213) 430-6000
                                         Facsimile:  (213) 430-6407
                                         Email: vzhou@omm.com

2

Appx176

William M. Fink (*Pro Hac Vice*)
Patric Reinbold (P*ro Hac Vice*)
**O'MELVENY & MYERS LLP**
1625 Eye Street, NW
Washington, D.C. 20006
Telephone: (202) 383-5300
Facsimile:  (202) 383-5414
Emai: tfink@omm.com
Email: preinbold@omm.com

*Attorneys for Defendants Micron Technology, Inc.,*
*Micron Semiconductor Products, Inc., and*
*Micron Technology Texas, LLC*

3

Appx177

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on March 17, 2025.

*/s/ Melissa R. Smith*
Melissa R. Smith

4

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**

\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.

**U.S. District Court**

**Eastern District of TEXAS [LIVE]**

**Notice of Electronic Filing**

The following transaction was entered on 5/30/2025 at 3:01 PM CDT and filed on 5/30/2025

| | |
|---|---|
| **Case Name:** | BeSang Inc. v. Micron Technology Inc et al |
| **Case Number:** | 2:23-cv-00028-JRG-RSP |
| **Filer:** | |
| **Document Number:** | No document attached |

**Docket Text:**

NOTICE of Hearing on Motion [109] SEALED MOTION *to Compel Defendants' Responses to BeSang's Interrogatory Nos. 19, 20, 21, & 22* : Motion Hearing set for 6/25/2025 at 01:00 PM before Magistrate Judge Roy S. Payne. (wea)

**2:23-cv-00028-JRG-RSP Notice has been electronically mailed to:**

Deron R Dacus    ddacus@dacusfirm.com, dadams@dacusfirm.com

Timothy S Durst    tdurst@omm.com, karenevans@omm.com, timothy-durst-9363@ecf.pacerpro.com

Melissa Richards Smith    melissa@gillamsmithlaw.com, 4178541420@filings.docketbird.com, 4293145420@filings.docketbird.com, 6868477420@filings.docketbird.com, 7882699420@filings.docketbird.com, Tom@gillamsmithlaw.com, diana@gillamsmithlaw.com, ecfnotices.gsl@gmail.com, mckellar@gillamsmithlaw.com, olivia@gillamsmithlaw.com, rosa@gillamsmithlaw.com, sara@gillamsmithlaw.com, travis@gillamsmithlaw.com

John C Kappos    jkappos@omm.com, bmberg@omm.com, bmoon@omm.com, john-kappos-0789@ecf.pacerpro.com, kgodfrey@omm.com

Bradley Wayne Caldwell    bcaldwell@caldwellcc.com, 1612557420@filings.docketbird.com, paralegals@caldwellcc.com

Jason Dodd Cassady    jcassady@caldwellcc.com, 5198251420@filings.docketbird.com, paralegals@caldwellcc.com

Austin Curry    acurry@caldwellcc.com, 2213687420@filings.docketbird.com

Xin-Yi Zhou    vzhou@omm.com, btreggs@omm.com, mcross@omm.com, vincent-zhou-2315@ecf.pacerpro.com

William M Fink    tfink@omm.com

Warren Joseph McCarty, III    wmccarty@caldwellcc.com, paralegals@caldwellcc.com

Robert Seth Reich, Jr    sreich@caldwellcc.com, paralegals@caldwellcc.com

James Travis Underwood    travis@gillamsmithlaw.com, 4178541420@filings.docketbird.com, 4293145420@filings.docketbird.com, 6868477420@filings.docketbird.com, 7882699420@filings.docketbird.com, diana@gillamsmithlaw.com, ecfnotices.gsl@gmail.com, olivia@gillamsmithlaw.com, rosa@gillamsmithlaw.com, sara@gillamsmithlaw.com

Cason Garrett Cole    ccole@omm.com, cason-cole-8424@ecf.pacerpro.com, nalonso@omm.com

Frances Mackay    fmackay@omm.com, frances--mackay-4576@ecf.pacerpro.com

Bailey Alexandra Blaies    bblaies@caldwellcc.com, paralegals@caldwellcc.com

Richard Anthony Cochrane    rcochrane@caldwellcc.com, paralegals@caldwellcc.com

Xu Zhou    xzhou@caldwellcc.com, Paralegals@caldwellcc.com

Bjorn A Blomquist    bblomquist@caldwellcc.com, paralegals@caldwellcc.com

James F Smith    jsmith@caldwellcc.com, Paralegals@caldwellcc.com

Patric Reinbold    preinbold@omm.com, patric-reinbold-0276@ecf.pacerpro.com

John Franklin Summers    jsummers@caldwellcc.com, Paralegals@caldwellcc.com

Aisha Mahmood Haley    ahaley@caldwellcc.com, Paralegals@caldwellcc.com

Paul Ashton Duke    aduke@caldwellcc.com, paralegals@caldwellcc.com

**2:23-cv-00028-JRG-RSP Notice will not be electronically mailed to:**

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| BESANG, INC.,<br><br>           Plaintiff<br><br>v.<br><br>MICRON TECHNOLOGY, INC.,<br>MICRON SEMICONDUCTOR<br>PRODUCTS, INC., and<br>MICRON TECHNOLOGY TEXAS, LLC<br><br>        Defendant. | Case No. 2:23-CV-00028-JRG-RSP<br><br>**JURY TRIAL DEMANDED** |

**OPPOSED MOTION TO STAY CASE PENDING RESOLUTION OF
DEFENDANTS' MOTION TO TRANSFER VENUE TO THE
<u>DISTRICT OF IDAHO UNDER 28 U.S.C. § 1404(a) (DKT. NO. 30)</u>**

1

## I.    INTRODUCTION

Defendants Micron Technology, Inc., Micron Semiconductor Products, Inc., and Micron Technology Texas, LLC (together, "Micron") respectfully move to stay all case activity pending the resolution of Micron's Motion to Transfer Venue to the District of Idaho Under 28 U.S.C. § 1404(a) ("Motion to Transfer") (Dkt. No. 30).

Both the Fifth Circuit and the Federal Circuit have written on the importance of giving "top priority" to transfer motions before addressing the merits of the litigation. *In re Horseshoe Entm't*, 337 F.3d 429, 433 (5th Cir. 2003) ("[I]n our view disposition of that [transfer] motion should have taken a top priority in the handling of this case by the … District Court."); *In re Apple*, 979 F.3d 1332, 1337 (Fed. Cir. 2020) ("Although district courts have discretion as to how to handle their dockets, once a party files a transfer motion, disposing of that motion should unquestionably take top priority.").

The need to stay this case is strong given that the substantive matters are quickly approaching.  Micron's Motion to Transfer is fully briefed since October 27, 2023,[1] venue discovery is complete, claim construction briefing is set to begin on June 10, 2025, and the *Markman* hearing is scheduled for July 22, 2025. *See* Dkt. No. 102 at 4-5.[2]  Given the foregoing, Micron respectfully requests a stay.

---

[1] After the briefing closed, Micron filed a Notice of Supplemental Facts in Support of their Motion to Transfer Venue to the District of Idaho Under 28 U.S.C. § 1404(a) (Dkt. No. 103), and Plaintiff BeSang, Inc. ("BeSang") filed a Notice of Supplemental Authority in Support of its Opposition to Defendants' Motion to Transfer Venue (Dkt. No. 107).
[2] Micron notes that Micron's former Allen, Texas site has now relocated to 1500 N. Greenville Avenue, Suite 900, Richardson, Texas 75081 and, therefore, Micron is outside the Eastern District of Texas. Dkt. No. 103.

2

Appx182

## II.    ARGUMENT

### A.  All Relevant Factors Favor a Stay Pending a Decision on Transfer

The Court considers three factors in deciding whether to stay a case: "whether discovery is complete and whether a trial date has been set," "whether a stay will simplify the issues in question and trial of the case," and "whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party." *Glob. Equity Mgmt. (SA) Pty. Ltd. v. Ericsson, Inc.*, 2017 WL 365398, at *10 (E.D. Tex. Jan. 25, 2017) (citing *Datatreasury Corp. v. Wells Fargo & Co.*, 490 F. Supp. 2d 749, 754 (E.D. Tex. 2006)).  Given this litigation's relatively early stage, the potential to obviate duplicative discovery in the transferee forum, and the lack of prejudice to BeSang, a brief stay while the Court resolves Micron's Motion to Transfer is appropriate.

### 1.  The Relatively Early Stage of the Litigation Weighs in Favor of a Stay.

A stay is appropriate when "there remains a significant amount of work ahead for the parties and the court," although "[a] case need not be in its infancy to warrant a stay." *Norman IP Holdings, LLC v. TP-Link Techs., Co.*, No. 6:13-cv-00384-JDL, 2014 WL 5035718, at *3 (E.D. Tex. Oct. 8, 2014).  This case remains in the relatively early stages.  Following the conclusion of the PTAB proceedings, the Court held a scheduling conference on February 20, 2025, the Court entered the Court's Second Amended Docket Control Order on March 10, 2025, claim construction is set to begin on June 10, 2025, and the *Markman* hearing is scheduled on July 22, 2025. *Cf. Secure Axcess, LLC v. Nintendo of Am. Inc.*, No. 2:13-cv-00032-JRG, Dkt. No. 133 at 1 (E.D. Tex. Feb. 10, 2014) (finding in a case where claim construction briefing had just begun that "a short stay pending resolution of the severance and transfer issues" likely would simplify issues in the case).  Stay relief is particularly appropriate at this stage, where the parties have not yet incurred

the significant burdens associated with extensive discovery, claim construction, and trial preparation. See *Norman*, 2014 WL 5035718, at *3.

Under Fifth Circuit law, a motion to transfer must take "top priority" in a district court's handling of a case. *In re Horseshoe*, 337 F.3d at 433. Applying that rule, the Federal Circuit has held that a motion to transfer should be addressed before proceeding to "any substantive portion of the case." *In re Nintendo Co., Ltd.*, 544 F. App'x 934, 941 (Fed. Cir. 2013) ("[A] trial court must first address whether it is a proper and convenient venue before addressing any substantive portion of the case."); *see also In re SK hynix Inc.*, 835 F. App'x 600, 601 (Fed. Cir. 2021); *In re TracFone Wireless, Inc.*, No. 2021-118, 2021 WL 865353, at *2 (Fed. Cir. Mar. 8, 2021). While this case is now at a relatively early stage, key deadlines are quickly approaching. Claim construction briefing begins on June 10, 2025, the *Markman* hearing is set for July 22, 2025, and opening expert reports are due on September 5, 2025. Staying this case before these deadlines arrive, and before the parties begin litigating substantive issues, will ensure that the venue dispute at issue in this matter takes top priority.

**2. A Stay Will Simplify and Streamline the Issues for Consideration.**

A stay also will simplify the issues before this Court. There is nothing left for this Court to decide should it determine that this case must be transferred to the District of Idaho. Staying this case will streamline the issues for consideration by ensuring that threshold issues are determined first.

Without a stay, the parties will continue to engage in litigation that may prove unnecessary or duplicative. For example, as discussed above, deadlines relevant to claim construction and the *Markman* hearing are quickly approaching. However, any claim construction order issued prior to transfer could be subject to revision in the transferee district. *See, e.g., Rambus Inc. v. Hynix*

4

*Semiconductor Inc.*, 569 F. Supp. 2d 946, 968 (N.D. Cal. 2008) (declining to give preclusive effect to claim construction order absent a final judgment); *Jack Guttman, Inc. v. Kopykake Enters., Inc.*, 302 F.3d 1352, 1361 (Fed. Cir. 2002) (acknowledging that district courts may engage in "rolling" claim construction and "revisit[ ] and alter[ ] its interpretation" of the patentee's claims throughout the litigation).

### 3. A Stay Will Not Prejudice or Disadvantage Plaintiff.

Finally, a stay will not prejudice or impose any tactical disadvantage on BeSang. Micron's proposed stay is limited to the time necessary to resolve the pending Motion to Transfer, which is fully briefed. Any stay likely will be limited in duration. Proceeding to the merits while Micron's Motion to Transfer remains pending benefits neither party. A short stay will benefit BeSang as much as Micron by eliminating the need to spend time and resources litigating substantive issues prior to the Court's decision as to where the litigation should proceed.

Moreover, a stay will not impair BeSang's ability to secure effective relief in this case should it ultimately prevail. The patent-in-suit already expired in June 2024 and BeSang is a non-practicing entity that seeks only money damages for the alleged infringement. Thus, a stay pending resolution of Micron's Motion to Transfer "will not diminish the monetary damages to which [Plaintiff] will be entitled if it succeeds in its infringement suit—it only delays realization of those damages[.]" *VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1318 (Fed. Cir. 2014). Under these circumstances, BeSang's interest in avoiding delay in the vindication of its patent rights—an interest "present in every case in which a patentee resists a stay"—cannot alone defeat this stay motion. *NFC Tech. LLC v. HTC Am., Inc.*, No. 2:13-CV-1058-WCB, 2015 WL 1069111, at *2 (E.D. Tex. Mar. 11, 2015).

Appx185

### III.    CONCLUSION

For the foregoing reasons, Micron respectfully requests that the Court stay all case activity until there is a resolution of Micron's Motion to Transfer.

Dated: June 5, 2025                          Respectfully submitted,

                                             */s/ Melissa R. Smith*
                                             _____
                                             John Kappos
                                             Texas Bar No. 24130097
                                             Timothy S. Durst
                                             Texas Bar No. 00786924
                                             Cason G. Cole
                                             Texas Bar No. 24109741
                                             Frances Mackay
                                             Texas Bar No. 24109494
                                             **O'MELVENY & MYERS LLP**
                                             2501 North Harwood Street, Suite 1700
                                             Dallas, Texas 75201
                                             Telephone: (972) 360-1900
                                             Facsimile:  (972) 360-1901
                                             Email: jkappos@omm.com
                                             Email: tdurst@omm.com
                                             Email: ccole@omm.com
                                             Email: fmackay@omm.com

                                             Xin-Yi Zhou
                                             Texas Bar No. 24127916
                                             **O'MELVENY & MYERS LLP**
                                             400 South Hope Street, 18th Floor
                                             Los Angeles, California 90071
                                             Telephone: (213) 430-6000
                                             Facsimile:  (213) 430-6407
                                             Email: vzhou@omm.com

                                             William M. Fink (*Pro Hac Vice*)
                                             Patric Reinbold (*Pro Hac Vice*)
                                             **O'MELVENY & MYERS LLP**
                                             1625 Eye Street, NW
                                             Washington, D.C. 20006
                                             Telephone: (202) 383-5300
                                             Facsimile:  (202) 383-5414
                                             Email: tfink@omm.com
                                             Email: preinbold@omm.com

6

Appx186

Melissa R. Smith
Texas Bar No. 24001351
**GILLAM & SMITH, LLP**
303 South Washington Avenue
Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile:  (903) 934-9257
Email: melissa@gillamsmithlaw.com

J. Travis Underwood
Texas Bar No. 24102587
**GILLAM & SMITH, LLP**
102 North College Avenue, Suite 800
Tyler, Texas 75702
Telephone: (903) 934-8450
Facsimile:  (903) 934-9257
Email: travis@gillamsmithlaw.com

*Attorneys for Defendants*
*Micron Technology, Inc., Micron Semiconductor*
*Products, Inc., and Micron Technology Texas, LLC*

7

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that counsel for Micron met and conferred with counsel for BeSang to discuss the substantive relief sought in this Motion in accordance with Local Rule CV-7(h).  Counsel for BeSang indicated that BeSang is opposed to the relief sought in this Motion.

*/s/ Melissa R. Smith*

Melissa R. Smith

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a) on June 5, 2025.

*/s/ Melissa R. Smith*

Melissa R. Smith

8

Appx188

████████████████████

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | |
|---|---|
| BESANG INC., <br><br>         Plaintiff, <br><br>     v. <br><br> MICRON TECHNOLOGY, INC., MICRON SEMICONDUCTOR PRODUCTS, INC., AND MICRON TECHNOLOGY TEXAS, LLC, <br><br>         Defendants. | Case No. 2:23-cv-00028-JRG-RSP <br><br> JURY TRIAL DEMANDED |

**PLAINTIFF BESANG INC.'S MOTION TO COMPEL DEFENDANTS' RESPONSES TO BESANG'S INTERROGATORY NOS. 19, 20, 21, & 22**

# TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................................ 1

II.   BACKGROUND OF THE DISCOVERY DISPUTE .................................................. 1

III.  ARGUMENT .................................................................................................. 3

    A.   Micron's Objection That ▮▮▮▮▮ Are Not Accused Products Should Be
        Overruled. .......................................................................................... 4

    B.   The Requested Discovery Is Relevant for Evaluating NIAs. ........................... 4

    C.   The Requested Discovery Is Also Relevant to Damages, Validity, and Micron's
        Motivations for Infringement. .................................................................... 5

    D.   Micron Identifies No Burden with Producing This Information, and Internal
        Micron Documents Show That This Information Is Available. ......................... 7

IV.   CONCLUSION ................................................................................................ 7

i

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Abstrax, Inc. v. Hewlett-Packard Co.*
    No. 2:14-CV-158-JRG, 2015 WL 11197823 (E.D. Tex. Jan. 29, 2015) ................................... 4

*Aortic Innovations, LLC v. Edwards Lifesciences Corp.*
    No. 1:23-cv-00158-JPM (D. Del. Feb. 26, 2025) ....................................................................... 6

*Apple Inc. v. Samsung Elecs. Co.*
    839 F.3d 1034 (Fed. Cir. 2016) ................................................................................................. 6

*AstraZeneca AB v. Apotex Corp.*
    782 F.3d 1324 (Fed. Cir. 2015) ................................................................................................. 5

*Athalonz LLC v. Under Armour, Inc.*
    No. 2:23-CV-00193-JRG, 2024 WL 1744064 (E.D. Tex. Apr. 22, 2024) ................................ 4

*DataTreasury Corp. v. Wells Fargo & Co.*
    No. 2:06-CV-72 DF, 2010 WL 5140741 (E.D. Tex. Sept. 27, 2010) ....................................... 7

*FCX Solar, LLC. v. FTC Solar, Inc.*
    No. 1:21-cv-03556, 2022 WL 3584946 (S.D.N.Y. Aug. 22, 2022) ...................................... 4, 6

*Georgia–Pacific Corp. v. U.S. Plywood Corp.*
    318 F. Supp. 1116 (S.D.N.Y. 1970) ......................................................................................... 5

*Graham v. John Deere Co.*
    383 U.S. 1 (1966) ...................................................................................................................... 6

*Honeywell Int'l, Inc. v. Acer Am. Corp.*
    655 F. Supp. 2d 650 (E.D. Tex. 2009) ...................................................................................... 4

*LaserDynamics, Inc. v. Quanta Computer, Inc.*
    694 F.3d 51 (Fed. Cir. 2012) ..................................................................................................... 5

*Maxell Ltd. v. Apple Inc.*
    No. 5:19-CV-00036-RWS, 2019 WL 7905454 (E.D. Tex. Nov. 13, 2019) .............................. 4

*Prism Techs. LLC v. Sprint Spectrum L.P.*
    849 F.3d 1360 (Fed. Cir. 2017) ................................................................................................. 5

*R2 Sols. LLC v. Am. Airlines, Inc.*
    No. 4:22-CV-00353, 2023 WL 3938862 (E.D. Tex. June 9, 2023) ........................................... 4

Appx191

*Vermeer Mfg. Co. v. Toro Co.*
   No. CIV-19-855-D, 2020 WL 1236312 (W.D. Okla. Mar. 13, 2020) ........................................ 6

**Rules**

Fed. R. Civ. P. 26(b)(1)................................................................................................................ 3, 7

Appx192

## I.    INTRODUCTION

Micron is withholding information regarding discrete, specific metrics—which Micron does not dispute that it tracks—about two of its NAND product lines (████████████) on the basis that these products are not accused of infringement.  But according to Micron, products like ████████ are acceptable non-infringing alternatives.  The requested information is also highly relevant to damages, secondary considerations of non-obviousness, and Micron's motivations for infringing: ████████ are the products that Micron discontinued in favor of the infringing product lines.  The requested discovery is narrowly tailored to ascertain and evaluate the impact that adoption of the patented technology had on Micron's business and financials, and Micron has identified no burden associated with the requested discovery.  This is clearly discoverable information, and the Court should grant BeSang's motion.

## II.    BACKGROUND OF THE DISCOVERY DISPUTE

The patent-in-suit covers a memory chip architecture called "3D" or "vertical" memory.  The inventions improve over traditional prior art "lateral" or "horizontal" memory chips, also known as "2D" memory.  According to the '702 Patent, the problem with "lateral" memory chips were: (1) cost; and (2) the chips had reached a density limit.  *See* '702 Patent at 1:40–44.  The '702 Patent teaches and claims a 3D vertical memory solution that solves these cost and density problems.  Thus, a fundamental damages question in this case is how valuable that shift from horizontal (2D) to BeSang's vertical (3D) memory architecture was to Micron.



1

Appx193

BeSang has served discovery to learn more.

First, BeSang served a non-infringing alternative interrogatory.  In response to BeSang's non-infringing alternative interrogatory, Micron identified 2D memory as an acceptable alternative.  *See* Ex. A

(emphasis added). ████████████████████████████. *See* Ex. B.

On March 21, 2025, BeSang served additional interrogatories to ascertain the cost-per-bit, GB-per-wafer, and die size information for the accused products (3D) and ████████ ████████ to test the acceptability of this non-infringing alternative

:

2

███████████████████████████████████████████

**Interrogatory No. 19:** Describe what Micron did to calculate cost per bit, gigabit per wafer, and die size for each of the following NAND series: ██████████

**Interrogatory No. 20:** Describe the cost per bit, and the change in cost per bit relative to the preceding series, for each of the following NAND series: ██████

**Interrogatory No. 21:** Describe the gigabit per wafer, and the change in gigabit per wafer relative to the preceding series, for each of the following NAND series: ██████████

**Interrogatory No. 22:** Describe the die size, and the change in die size relative to the preceding series, for each of the following Micron NAND series: ██████

To ensure specificity and clarity, BeSang fashioned its Interrogatory Nos. 19-22 using the same nomenclature and metrics that Micron's own internal documentation uses ████████████.

In response to all four interrogatories, Micron refused to provide *any* information about ████

████. Instead, Micron objected to each interrogatory

and

provided partial responses                          [1] *See, e.g.*, Ex. C. BeSang

promptly wrote to Micron regarding this issue and requested supplementation.  After several

meet-and-confers and attempts at compromise, the parties arrived at an impasse.

## III.   ARGUMENT

Parties "may obtain discovery regarding any non-privileged matter that is relevant to any

party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  On

a motion to compel discovery, the movant bears an initial burden of "showing that the materials

---

[1] While Micron has also not provided fulsome answers to these interrogatories with respect to the ████████████, it has provided information for these product series that, if complete, would allow BeSang to perform the cost and density calculations with its expert.  Micron has also agreed to investigate and produce any documents relating to cost-per-bit information for these NAND series.  BeSang simply asks that Micron provide a comparable level of detail for ██████

3

█████████████████████████████████████

and information sought are relevant to the action," but then "the burden shifts to the party resisting discovery to show why the discovery is irrelevant, overly broad, unduly burdensome or oppressive, and thus should not be permitted." *R2 Sols. LLC v. Am. Airlines, Inc.*, No. 4:22-CV-00353, 2023 WL 3938862, at *2 (E.D. Tex. June 9, 2023).

### A. Micron's Objection That ██████████ Are Not Accused Products Should Be Overruled.

Micron's only objection to providing this information is that ██████████ are not accused products. This objection should be overruled. In this District, there is not a "bright-line" rule that information on unaccused products is immune from discovery. *See Athalonz LLC v. Under Armour, Inc.*, No. 2:23-CV-00193-JRG, 2024 WL 1744064, at *4 (E.D. Tex. Apr. 22, 2024); *Honeywell Int'l, Inc. v. Acer Am. Corp.*, 655 F. Supp. 2d 650, 655 (E.D. Tex. 2009) (finding discovery is not limited to "products specifically accused in a party's [contentions]").

### B. The Requested Discovery Is Relevant for Evaluating NIAs.

Micron has identified 2D memory as an acceptable NIA. ████████████████
████████████████████████████████ Courts routinely permit discovery into a defendant's noninfringing alternative to the patented technology as being relevant to a damages and to an assessment of a reasonable royalty. *See, e.g., Maxell Ltd. v. Apple Inc.*, No. 5:19-CV-00036-RWS, 2019 WL 7905454, at *5–6 (E.D. Tex. Nov. 13, 2019); *Abstrax, Inc. v. Hewlett-Packard Co.*, No. 2:14-CV-158-JRG, 2015 WL 11197823, at *6 (E.D. Tex. Jan. 29, 2015) (ordering production "related to the labor rates or other costs associated with implementing any alleged non-infringing alternative"); *FCX Solar, LLC. v. FTC Solar, Inc.*, No. 1:21-cv-03556, 2022 WL 3584946, at *4 (S.D.N.Y. Aug. 22, 2022) (collecting cases).

Discovery into NIAs is highly relevant. The costs and availability of non-infringing alternatives may show that the patented technology allowed the infringer "to avoid taking a

4

███████████████████████████████████████████████

different, more costly course of action," warranting a larger royalty. *Prism Techs. LLC v. Sprint Spectrum L.P.*, 849 F.3d 1360, 1376 (Fed. Cir. 2017). "If avoiding the patent would be difficult, expensive, and time-consuming, the amount the infringer would be willing to pay for a license is likely to be greater." *AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1335 (Fed. Cir. 2015).

Micron's responses are unavailing. Micron contends that it did not officially identify ████ ██████████████ as NIAs but instead identified 2D memory in the abstract. This is too clever by half. ██████████████████████████████████████████████

██████████████████████████████████████████

**C.    The Requested Discovery Is Also Relevant to Damages, Validity, and Micron's Motivations for Infringement.**

During the parties' meet-and-confers, Micron's counsel proposed withdrawing the relevant NIA from its interrogatory responses. But even if Micron were to withdraw its contention that 2D NAND products such as ████████████ are acceptable NIAs, the requested cost and density information is still highly relevant.

First, the requested discovery is relevant to damages. ██████████████████████ ████████████████████████████████████████████ ████████████ In determining a reasonable royalty, BeSang is homing in on "economic value of the patented technology in the marketplace." *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 79 (Fed. Cir. 2012). The cost and performance improvements between the prior non-infringing version and the newer infringing version is highly relevant to assessing that economic value. *See Georgia–Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970) (Factor 9: The utility and advantages of the patent property over the old modes or devices, if any, that had been used for working out similar results.); *see also Aortic Innovations, LLC v. Edwards Lifesciences Corp.*, No. 1:23-cv-00158-JPM (D. Del. Feb. 26,

5

Appx197

2025), ECF No. 280 at 3 (granting plaintiff's motion to compel the deposition of a person knowledgeable "about the transition from the non-accused [product] to the accused [product]" because "[t]his is relevant to what the market of Defendants' accused products would be").

Second, the requested discovery is relevant to the '702 Patent's validity. The Supreme Court has recognized "secondary considerations or objective indicia of non-obviousness," including factors such as "commercial success enjoyed by devices practicing the patented invention [and] industry praise for the patented invention." *Apple Inc. v. Samsung Elecs. Co.*, 839 F.3d 1034, 1052–53 (Fed. Cir. 2016) (citing *Graham v. John Deere Co.*, 383 U.S. 1, 36 (1966)). Here, the comparison of cost-per-bit, GB-per-wafer, and die size between Micron's 2D and 3D NAND products at least speaks to the commercial success and industry praise for the invention. In particular, the cost-per-bit data is directly related to commercial success, and Micron and its competitors frequently use these metrics to tout praise for their memory products, including infringing 3D NAND products.[2] Accordingly, the requested data is relevant to at least two objective indicia of non-obviousness and the '702 Patent's validity. *See FCX Solar*, 2022 WL 3584946, at *7 (granting motion to compel, noting "[w]hether Defendant's next-generation design is able to address the same need as Plaintiff's patent is thus relevant to an assessment of whether the patent was obvious at the time of invention"); *Vermeer Mfg. Co. v. Toro Co.*, No. CIV-19-855-D, 2020 WL 1236312, at *3-5 (W.D. Okla. Mar. 13, 2020) (granting motion to compel information on unaccused products because it was relevant to secondary considerations).

---

[2] *See NAND flash memory*, Micron (last visited May 27, 2025) (Micron touting improved "density" and "cost-per-bit" among its NAND products), https://www.micron.com/products/storage/nand-flash; *see also Micron to Bring EUV Technology to Japan, Advancing Next-Generation Memory Manufacturing*, Micron (May 17, 2023) (generally touting "increased memory density" and "lower cost per bit"), https://investors.micron.com/news-releases/news-release-details/micron-bring-euv-technology-japan-advancing-next-generation.

███████████████████████████████████████

Third, the requested discovery is relevant to Micron's willfulness.  Courts in this district have found that evidence of cost savings can be relevant to an accused infringer's motivation to infringe.  *See e.g.*, *DataTreasury Corp. v. Wells Fargo & Co.*, No. 2:06-CV-72 DF, 2010 WL 5140741, at *4 (E.D. Tex. Sept. 27, 2010) (denying JMOL of no willfulness in part where "the evidence at trial suggested that U.S. Bank infringed to achieve some significant cost savings").

In summary, the requested cost-per-bit, GB-per-wafer, and die size information is relevant to multiple issues in the case and should be produced.

### D.    Micron Identifies No Burden with Producing This Information, and Internal Micron Documents Show That This Information Is Available.

Micron's basis for withholding discovery has been only that ████████████████ are not accused.  Micron has not asserted that it does not have the relevant information, and it has not claimed that fully answering the interrogatories would be unduly burdensome.  Nor could it: Micron's internal and publicly available documents demonstrate that Micron tracks cost-per-bit, GB-per-wafer, and die size for its 2D and 3D NAND products.  *See supra* at 2, 6.  Thus, Micron has not identified any burden in providing the requested data, much less one that "outweighs [the] likely benefits" discussed above.  *See* Fed. R. Civ. P. 26(b)(1).  Moreover, BeSang's interrogatories only requested ████████████████████████ Accordingly, the requested cost and memory-density data for █████████████ are proportional to the needs of the case and fall squarely within the scope of discovery contemplated by Rule 26(a)(1).

## IV.    CONCLUSION

Therefore, BeSang requests that the Court overrule Micron's objections as to ███████ ████████ and order Micron to provide cost-per-bit, GB-per-wafer, and die size information corresponding to these products in response BeSang's interrogatory numbers 19, 20, 21, and 22.

Appx199

███████████████████████████████████

DATED: May 29, 2025

Respectfully submitted,

*/s/ Warren J. McCarty, III*
Bradley W. Caldwell
Texas State Bar No. 24040630
Email: bcaldwell@caldwellcc.com
Jason D. Cassady
Texas State Bar No. 24045625
Email: jcassady@caldwellcc.com
Austin Curry
Texas State Bar No. 24059636
acurry@caldwellcc.com
Warren J. McCarty, III
Texas State Bar No. 24107857
Email: wmccarty@caldwellcc.com
R. Seth Reich Jr.
Texas State Bar No. 24088283
Email: sreich@caldwellcc.com
John F. Summers
Texas State Bar No. 24079417
jsummers@caldwellcc.com
Aisha Mahmood Haley
Texas State Bar No. 24139895
ahaley@caldwellcc.com
Bailey A. Blaies
Texas State Bar No. 24109297
bblaies@caldwellcc.com
Bjorn A. Blomquist
Texas State Bar No. 24125125
bblomquist@caldwellcc.com
James F. Smith
Texas State Bar No. 24129800
jsmith@caldwellcc.com
Richard Cochrane
Texas State Bar No. 24116209
rcochrane@caldwellcc.com
Paul Ashton Duke
Texas State Bar No. 24140082
aduke@caldwellcc.com
Xu Zhou
Texas State Bar No. 24121219
xzhou@caldwellcc.com
**CALDWELL CASSADY & CURRY P.C.**
2121 N Pearl Street, Suite 1200
Dallas, TX 75201
Telephone: (214) 888-4848
Facsimile: (214) 888-4849

███████████████████████████████████

Deron R. Dacus
State Bar No. 00790553
**The Dacus Firm, P.C.**
821 ESE Loop 323, Suite 430
Tyler, TX 75701
Phone: (903) 705-1117
Fax: (903) 581-2543
ddacus@dacusfirm.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served on all counsel of record via electronic mail on May 29, 2025.

/s/ Warren J. McCarty, III
Warren J. McCarty, III

## CERTIFICTE OF CONFERENCE

The undersigned certifies counsel for BeSang Inc., including Warren J. McCarty, III, Deron Dacus, and others, conferred with counsel for the Micron Defendants, including John Kappos, Melissa Smith and others, by phone on May 27, 2025. No agreement could be reached, and discussions conclusively ended in an impasse, leaving an open issue for the Court to resolve.

/s/ Warren J. McCarty, III
Warren J. McCarty, III

/s/ Deron R. Dacus
Deron R. Dacus



Appx202

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| BESANG INC., | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:23-CV-00028-JRG-RSP |
| | § | |
| MICRON TECHNOLOGY INC. et al, | § | |
| | § | |
| *Defendants*. | § | |

## ORDER

The Court issues this Order *sua sponte*. It is **ORDERED** that Michael Paul is hereby appointed as the Court's technical advisor in the above-captioned case, with his fees and expenses to be assessed equally between Plaintiff and Defendants and timely paid as billed. Mr. Paul's contact information is as follows:

> Michael D. Paul
> Michael D. Paul, PLLC
> 26110 High Timber Pass St.
> San Antonio, TX 78260-8041
> Phone: (210) 473-8696
> Email: mdeanpaul@gmail.com

The parties are **ORDERED** to send courtesy copies of claim construction briefs, exhibits, and technology tutorials in PDF form to mdeanpaul@gmail.com. If the document was filed with the Court, the copy must include the CM/ECF header. For claim construction materials that have already been filed, the filing party is **ORDERED** to provide copies to Mr. Paul within two business days. Otherwise, the filing party is **ORDERED** to provide copies to Mr. Paul no later than one business day after filing future claim construction material.

**SIGNED this 13th day of June, 2025.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE

Appx203

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| BESANG INC., <br><br> *Plaintiff,* <br><br> v. <br><br> MICRON TECHNOLOGY, INC., MICRON SEMICONDUCTOR PRODUCTS, INC., AND MICRON TECHNOLOGY TEXAS, LLC, <br><br> *Defendants.* | Civil Action No.: 2:23-cv-00028-JRG-RSP <br><br> JURY TRIAL DEMANDED |

**<u>BESANG INC.'S OPENING CLAIM CONSTRUCTION BRIEF</u>**

███████████████████████

## **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................. 1

II.   LEGAL AUTHORITY ........................................................................................ 2

III.  PATENT BACKGROUND ................................................................................. 2

    A.   Overview of BeSang's Patented Technology ....................................... 2

    B.   Prosecution History of the '702 Patent ................................................. 5

IV.   DISPUTED TERMS ........................................................................................... 6

    A.   Stackable Add-On Layer .......................................................................... 6

        1. "Stackable Add-On Layer" Should Be Given Its Plain and Ordinary Meaning. ............................................................................... 7

            a.   The Intrinsic Record Supports a Plain-and-Ordinary Construction...... 7

            b.   No Lexicography or Disclaimer Applies to This Claim Term. ............. 9

            c.   The Extrinsic Record—Including Micron's Own Documents—Point to a Plain-and-Ordinary Meaning Construction. ........................ 9

        2. Micron's Proposed Construction for "Stackable Add-On Layer" Is Incorrect and Should Be Rejected ................................................... 13

            a.   Micron's Proposed Construction Includes a Negative Limitation That Micron Is Attempting to Conceal. ................................. 15

            b.   Micron's Proposed Construction Also Reads Out Embodiments. ...... 17

            c.   Micron's Proposal Introduces Method Steps into a Structure Claim. ......................................................................................... 19

            d.   Micron's Proposed Construction Is Also at Odds with the Extrinsic Evidence, Including Its Own Engineers and Documents. ................................................................................. 21

            e.   The Board's Incorrect Construction—With or Without the Negative Limitation—Is Simply Not Binding Here .......................... 22

    B.   SOI Pillar ................................................................................................... 24

V.    CONCLUSION ................................................................................................. 30

Appx205

**TABLE OF AUTHORITIES**

**Cases**

*ActiveVideo Networks, Inc. v. Verizon Commc'ns Inc.*
801 F. Supp. 2d 465 (E.D. Va. 2011) ....................................................... 20

*AGIS Software Dev. LLC v. Google LLC*
No. 2:19-CV-359-JRG, 2020 WL 7229753 (E.D. Tex. Dec. 8, 2020) ........................... 23

*Andersen Corp. v. Fiber Composites, LLC*
474 F.3d 1361 (Fed. Cir. 2007) ....................................................... 20

*Aylus Networks, Inc. v. Apple, Inc.*
856 F.3d 1353 (Fed. Cir. 2017) ....................................................... 23

*Bancorp Servs, L.L.C. v. Hartford Life Ins. Co.*
359 F.3d 1367 (Fed. Cir. 2004) ....................................................... 10

*Bristol-Myers Squibb Co. v. AstraZeneca Pharms. LP*
No. 22-cv-346, 2023 WL 3040664 (D. Del. Apr. 21, 2023) ........................... 28

*Continental Circuits LLC v. Intel Corp.*
915 F.3d 788 (Fed. Cir. 2019) ....................................................... 20

*DNA Genotek Inc. v. Spectrum Sols. LLC*
No. 2023-2017, 2025 WL 502040 (Fed. Cir. Feb. 14, 2025) ........................... 20

*Finjan LLC v. ESET, LLC*
51 F. 4th 1377 (Fed. Cir. 2022) ....................................................... 20

*Gillette Co. v. Energizer Holdings, Inc.*
405 F.3d 1367 (Fed. Cir. 2005) ....................................................... 10

*Hill-Rom Servs., Inc. v. Stryker Corp.*
755 F.3d 1367 (Fed. Cir. 2014) ....................................................... 17, 19

*Image Processing Techs., LLC v. LG Elecs., Inc.*
No. 2:22-CV-0077-JRG-RSP, 2023 WL 4447034 (E.D. Tex. May 19, 2023) ........................... 12

*Image Processing Techs., LLC v. Samsung Elecs. Co.*
No. 2:16-CV-505, 2017 WL 2672616 (E.D. Tex. June 21, 2017) ........................... 7, 22

*Kingspan Insulated Panels Inc. v. Centria GP*
No. 1:15-CV-1023, 2018 WL 1256559 (W.D. Mich. Mar. 12, 2018) ........................... 20

Appx206

*Linear Tech. Corp. v. ITC*
   566 F.3d 1049 (Fed. Cir. 2009) ................................................................. 16

*Markman v. Westview Instruments, Inc.*
   52 F.3d 967 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996) ........................ 2

*MPHJ Tech. Investments, LLC v. Ricoh Ams. Corp.*
   847 F.3d 1363 (Fed. Cir. 2017) ................................................................. 21

*Omega Eng'g, Inc. v. Raytek Corp.*
   334 F.3d 1314 (Fed. Cir. 2003) ................................................................. 16

*Penda Corp. v. United States*
   44 F.3d 967 (Fed. Cir. 1994) ..................................................................... 24

*PerdiemCo, LLC. v. IndusTrack LLC*
   No. 2:15-cv-00727-JRG-RSP, Dkt. No. 155 (E.D. Tex. July 7, 2016) ..................... 23

*Phillips v. AWH Corp.*
   415 F.3d 1303 (Fed. Cir. 2005) ......................................................... 2, 24, 26

*Realtime Data, LLC v. Iancu*
   912 F.3d 1368 (Fed. Cir. 2019) ................................................................. 14

*SkinMedica, Inc. v. Histogen Inc.*
   727 F.3d 1187 (Fed. Cir. 2013) ................................................................. 28

*SkyHawke Techs., LLC v. Deca Int'l Corp.*
   828 F.3d 1373 (Fed. Cir. 2016) ................................................................. 23

*Teva Pharms. USA, Inc. v. Sandoz, Inc.*
   574 U.S. 318 (2015) .................................................................................... 2

*Thorner v. Sony Comp. Ent. Am. LLC*
   669 F.3d 1362 (Fed. Cir. 2012) ............................................................. 9, 19

*U.S. Surgical Corp. v. Ethicon, Inc.*
   103 F.3d 1554 (Fed. Cir. 1997) ................................................................. 13

*Vanguard Prods. Corp. v. Parker Hann.fin Corp.*
   234 F.3d 1370 (Fed. Cir. 2000) ................................................................. 20

*XMTT, Inc. v. Intel Corp.*
   2022 WL 2904308 (D. Del. July 22, 2022).................................................. 23

iii

Appx207

**Rules**

P.R. 4-2 ................................................................................................................................ 15

P.R. 4-3 ................................................................................................................................ 15

iv

Appx208

████████████████████████████████

## I.    INTRODUCTION

This brief addresses a dispute over two structural terms in BeSang's '702 Patent—"stackable add-on layer" and "SOI pillar."  Both terms should be afforded their plain and ordinary meaning.  BeSang offers comprehensive intrinsic and extrinsic evidence of each term's plain and ordinary meaning to a POSITA and explains how the '702 Patent consistently uses these terms in that way.  Should the Court deem constructions are needed to resolve the parties' dispute, BeSang also proposes clear alternative articulations for how to accomplish that.

On the other hand, Micron seeks to limit the claimed structural terms to manufacturing process steps, presumably to generate non-infringement arguments tied to how the accused products are made rather than how they are structurally designed.  These litigation-inspired constructions are indefensible.  Micron's "stackable add-on layer" construction includes a disfavored negative limitation that has no hook in the claim language, and simultaneously reads *in* some embodiments while reading *out* others.  Its "SOI pillar" construction consists of a patchwork of discussions found in the specification, none of which are limiting or definitional on "SOI pillar."  And fundamentally, both of Micron's proposed constructions attempt to transform a claim that defines *structure* into one that would require a specific, ordered set of process steps.  Micron's verbose proposed constructions lack evidentiary support and should be rejected.

The credibility of Micron's positions is further undermined by the company's statements outside of this forum.  Micron's own internal documents and employee testimony demonstrate how the company actually uses these same words in the industry.  This evidence reveals that, for years, Micron has made use of the disputed terminology to refer to the structural components of the accused products—just like how the '702 Patent uses the terms.   Micron even initially conceded before the Patent Trial and Appeal Board ("PTAB") that both terms can simply be afforded their plain and ordinary meaning, a meaning that requires no particular process

1

limitations. Only now, in litigation, does Micron suggest that this ordinary structural terminology is instead process-based and deserving of long-winded definitions. This shift lacks credibility.

For the reasons set forth below, Micron's constructions should be rejected in favor of BeSang's proposals.

## II.    LEGAL AUTHORITY

Claim construction is a question of law for the Court, *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 391 (1996), although it may involve subsidiary factual questions, *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 326–27 (2015). "Claims must be read in view of the specification, of which they are a part." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996) (citations omitted). In construing the claims of a patent, the words comprising the claims "are generally given their ordinary and customary meaning" as understood by "a person of ordinary skill in the art in question at the time of the invention." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312–13 (Fed. Cir. 2005) (*en banc*). Moreover, "extrinsic evidence can shed useful light on the relevant art," although the Federal Circuit has explained that it is "less significant than the intrinsic record in determining the legally operative meaning of claim language." *Id.* at 1317 (quotations and citation omitted).

## III.    PATENT BACKGROUND

### A.    Overview of BeSang's Patented Technology

The Asserted Patent in this case is U.S. Patent No. 7,378,702 ("the '702 Patent"), titled "Vertical Memory Device Structures," which was filed on September 3, 2004, and issued on May 27, 2008. The '702 Patent focuses on high-density, three-dimensional ("3D") memory semiconductor structures. This foundational patent has been cited by more than 300 patents. This patent addresses critical limitations in conventional integrated circuit ("IC") memory

2

Appx210

architectures by proposing a novel approach to increase device density. Specifically, the '702 Patent describes increasing circuit density in ICs by using vertical memory cells that expand the memory array in a third dimension (that is, height). *See* '702 Patent at 3:51–61, fig. 1. It also teaches placing logic circuitry underneath the memory array, rather than beside the array, to further increase density and achieve faster performance. *Id*. at 5:60–63.

Historically, integrated circuits have relied on planar transistor architectures fabricated on a single surface of a semiconductor wafer, known as "2D" memory. *See* Ex. A, Declaration of Alexander D. Glew in Support of Plaintiff BeSang Inc.'s Opening Claim Construction Brief, dated Apr. 29, 2025 ("Glew Decl.") ¶ 25. In 2D devices, density was increased by scaling down—shrinking—these lateral features, an approach often referred to as "2D scaling." *Id.* However, this method encountered challenges as the demand for greater storage capacity increased. *Id.*; *see also* '702 Patent at 1:23–43.

The '702 Patent responds to this challenge by introducing a vertical dimension into memory design. It describes a semiconductor structure having a substrate with electrical devices, such as metal-oxide-semiconductor field-effect transistors ("MOSFETs"), and a stackable add-on layer which includes a plurality of vertically oriented memory cells. *See id.* at 1:47–2:9, 4:33–39, fig. 1.



3

'702 Patent, fig. 1 (annotated). As shown above, because these cells are vertically oriented in a stack above the substrate, they are located in a layer positioned above the substrate rather than built into the substrate, like in convention planar memory cells. *See id.* at 1:47–56.

The memory cells are ***vertically*** oriented, rather than horizontally, to allow "stacking" of the cells on top of one another. *See id.* at 6:41–42. For example, the patent explains that "[m]ultiple FLD layers [101] can be stacked, thereby increasing the effective device density." *Id.* "Multiple memory cells may be vertically stacked, either in a single stackable add-on layer, or in two or more stacked stackable add-on layers." *Id.* at 10:33–35. This concept can be seen in the following illustration:



The '702 Patent thus teaches and claims a 3D structure that combines a substrate having electrical devices beneath a vertical memory cell structure. Unlike 2D memory, the memory cells are physically separated from each other and not built into the substrate. *See id.* at 1:51–53. This inventive architecture enables increased circuit density by utilizing the three-dimensional space above the substrate. *See* Glew Decl. ¶ 27.

4

████████████████████████████████

### B.  <u>Prosecution History of the '702 Patent</u>

The '702 Patent claims priority to U.S. Application Ser. No. 10/873,969, which ultimately issued as U.S. Patent No. 7,052,941 ("'941 Patent").  *See* Ex. B, U.S. Patent No. 7,052,941.  The '941 Patent, titled "Method for Making a Three-Dimensional Integrated Circuit Structure," contained over 60 detailed figures and accompanying description describing various inventions of Dr. Sang-Yun Lee.  *See id*.  This disclosure included sections describing particular methods of manufacturing 3D semiconductor devices.  *See, e.g.*, *id*., figs. 4A–5B, 7A–7C, 8:53–13:14. During prosecution, the Examiner issued a restriction requirement, identifying at least two classes of patentable inventions disclosed: (i) semiconductor devices, and (ii) processes for making semiconductor devices, recognizing that the disclosed devices could be made by "materially different" methods than the particular ones disclosed.[1]  Ex. C, U.S. Patent Application No. 10/873,969 at 67.  In response, Dr. Lee elected to prosecute his method inventions in the '941 Patent application, *id.* at 64, while he was pursuing device claims in the application that ultimately issued as the '702 Patent.  The '941 Patent issued with ten method claims.  *See* '941 Patent at 22:10–52.

The '702 Patent was filed as a continuation-in-part of the '941 Patent with a new title, changed from "***Method*** for Making a Three-Dimensional Integrated Circuit Structure" to "Vertical Memory Device ***Structures***."  *Compare* '941 Patent, *with* '702 Patent (emphasis added).  While both patents share common high-level descriptions of the technology and related

---

[1] The Examiner also recognized that the '941 Patent disclosed multiple distinct methods, not just one species.  *See id.*

5

art,[2] the detailed description was significantly changed, both removing and adding new subject matter. Notably, ***all 60 figures*** of the '941 Patent (and their accompanying descriptions) were removed in place of 34 entirely new figures (with new descriptions). All detailed description of the fabrication methods disclosed in the '941 Patent was removed and replaced with detailed description and figures relating to the 3D architecture and memory cell structures disclosed. The '702 Patent issued with 17 apparatus claims, four of which are at issue in this case.

## IV.    DISPUTED TERMS[3]

### A.    Stackable Add-On Layer

| Term | BeSang's Proposed Construction | Micron's Proposed Construction |
|---|---|---|
| "stackable add-on layer"<br><br>'702 Patent, cl. 13 | Plain and ordinary meaning; no construction necessary.<br><br>Alternative: "a layer that can be arranged in a stack and positioned above the substrate" | "a layer formed separately from the substrate suitable to be bonded to the dielectric layer positioned above the substrate" |

There is no need to construe the term "stackable add-on layer" because it is a term that is readily understandable to a POSITA. *See* Glew Decl. ¶ 47. The term is comprised of ordinary words with a plain meaning in common parlance. This plain meaning is precisely how the patent uses the term. It simply does not need to be further defined to resolve the parties' dispute. To the extent the Court determines that this term requires an express definition, BeSang's alternative proposal reflects the plain and ordinary meaning of the term as understood by a POSITA. *Id.*

---

[2] The patents also share some definitional sections, though notably the definition for "3-D IC" was changed to not be limited to devices comprising SOI layers. *Compare* '941 Patent at 6:29–35 (". . . and at least one SOI layer . . ."), *with* '702 Patent at 5:11–17 (". . . and at least one stackable add-on layer . . .").

[3] A POSITA would have had a bachelor's degree in electrical engineering, computer engineering, or a related field, and at least two years of experience in the research, design, or development of semiconductor memory device structures, or the equivalent, with additional education substituting for experience and vice versa. Glew Decl. ¶ 20.

6

████████████████████████████████████████

1.    *"Stackable Add-On Layer" Should Be Given Its Plain and Ordinary Meaning.*

a.  The Intrinsic Record Supports a Plain-and-Ordinary Construction.

Every proper claim construction analysis starts with the claims.  Here, asserted claim 13 is a ***structure*** claim—it does not recite any method steps.  It does not require or forbid any particular fabrication techniques.  Rather, the claim simply recites the structural components of a finished 3D IC apparatus, including a "stackable add-on layer" component.  The stackable add-on layer is described by its relationship to the other claimed structures, such as its orientation to those components (bonded to the dielectric layer, which itself is above electrical devices in a substrate) and by what the layer must contain (a plurality of vertically oriented semiconductor memory cells).  *See* '702 Patent, cl. 13.  Based on these requirements, the claimed layer is sufficiently defined by its role in the context of the entire claim—a layer that is arranged in a stack and positioned above the substrate.  No further construction is necessary.  *See Image Processing Techs., LLC v. Samsung Elecs. Co.*, No. 2:16-CV-505, 2017 WL 2672616, at *9 (E.D. Tex. June 21, 2017) ("The terms have no meaning other than their plain and ordinary meaning and that the surrounding claim language provides sufficient meaning to the words in the claim terms. . . [T]he Court finds that the terms require no further construction.").

The next source to consult is the specification.  Here, the specification firmly supports a plain and ordinary meaning construction because it uses the terminology in the same plain and ordinary way as used in the claims.  The '702 Patent addresses density problems of 2D circuits by introducing a "vertically" stacked architecture, also known as a "3D IC."  It describes "3-D IC" as comprising (a) the semiconductor substrate with electrical devices (*e.g.*, MOSFETs or transistors) on the bottom and (b) at "least one stackable add-on layer . . . where the semiconductor substrate and the stackable add-on layer are stacked and bonded to each other."

7

Appx215

'702 Patent at 5:11–17; *see also* Glew Decl. ¶ 49. As annotated in the Overview of BeSang's Patented Technology section, above, an example of this 3D IC structure can be seen in Figure 1, where a stackable add-on layer (layer 101 also referred to as a FLD layer) is added on to or positioned above a substrate (103), along with other layers like dielectric layer 151. *See* '702 Patent, fig. 1; Glew Decl. ¶ 51. The terminology clearly denotes structure of the device.

The patent goes on to teach that, using this stacked structure over other structural choices, "[m]ultiple FLD layers [101] can be stacked, thereby increasing the effective device density." '702 Patent at 6:41–42; *see also* 10:33–35 ("Multiple memory cells may be vertically stacked, either in a single stackable add-on layer, or in two or more stacked stackable add-on layers."). In other words, 3D memory chips made up of a vertical stack of layers have more memory cells— and thus more memory density—than 2D memory chips taking up the same lateral area.

Various figures and descriptions throughout the patent reinforce the inventor's use of this terminology in this plain and ordinary way. For example, Figure 20 depicts how multiple memory cells in the stackable add-on layer are "stacked" higher in the "vertical" direction:



'702 Patent, fig. 20; *see also id.* at 9:10–18. As shown, one memory cell is located on top of the other, forming a stack. A POSITA knows this use of "stacked" to describe Figure 20 and other

8

Appx216

similar figures reinforces that "stacked" and "stackable" are being given their plain meaning in this patent.  Glew Decl. ¶ 53.  Again, the usage denotes structure, not process.[4]

In sum, the specification consistently reinforces that usage of "stackable add-on layer" is done using the term's plain and ordinary meaning in connection with the structure of a 3D IC.

### b.  No Lexicography or Disclaimer Applies to This Claim Term.

The only justification for departing from this plain and ordinary meaning would be if BeSang acted as its own lexicographer or disclaimed the full scope of the term.  *Thorner v. Sony Comp. Ent. Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012).  Neither exception is present in this case.  *See* Glew Decl. ¶ 55.  During conference, Micron never stated it believes its construction is correct due to disclaimer or lexicography.  Thus, because there is no lexicography or disclaimer at issue here, the plain and ordinary meaning of "stackable add-on layer" should apply.

### c.  The Extrinsic Record—Including Micron's Own Documents—Point to a Plain-and-Ordinary Meaning Construction.

The intrinsic record is dispositive.  But if the Court was to consider extrinsic evidence, it confirms "stackable add-on layer" would be (and actually was) understood by POSITAs to refer to the structural memory cell portion of 3D IC that can be arranged in a stack and positioned above the substrate.  The term should enjoy the full scope of this plain and ordinary meaning.

During the industry's transition from 2D to 3D, POSITAs routinely used same or similar

---

[4] As for the "add-on" component of the disputed phrase, both parties seemingly agree that this refers to the location of the layer—namely, that it is "positioned above the substrate."  *Compare* BeSang Alternative Construction, *with* Micron Proposed Construction, *supra*.  A POSITA understands that "add-on" indicates a physical location as being above other structures, such as the substrate.  Glew Decl. ¶ 47; *see also* '702 Patent at 5:5–7 ("[T]he stackable add-on layer may provide a plurality of memory cells suitable for connections to ***an underlying substrate***.") (emphasis added); Glew Decl. ¶ 50.  This accords with the '702 Patent's claimed advancement over prior art horizontal memory devices.  In prior art devices, such features were spread across a 2D plane, not on top of one another.  The concept of an "add-on" is consistent with the patent's described paradigm shift from a 2D lateral architecture to a 3D vertical one.

9

terminology to refer to the structure of a three-dimensional memory cell architecture. *See* Glew Decl. ¶ 83 (collecting presentations, technical papers, and patents showing the industry used the plain meaning of the terms "stackable" "stacked" "stacking" and "add-on" to refer to the structure of 3D vertical memory). For example, in a presentation given at an industry conference alongside BeSang, researchers concluded that "[t]he major merit of the . . . 3D stackable NAND Flash is that the bit cost can be scaled when more and more Z layers are fabricated" and used the term "stackable" to refer to the ability of arranging memory layers in a vertical stack. Ex. D. As another, the shift to 3D memory was described to "offer the potential of being stackable" because it uses "a deposited thin-film structure" in an array. *See* Ex. E. The list goes on.[5] In each instance, POSITAs around the time of the invention used the terminology consistent with BeSang: to describe 3D structure, not process. While not determinative, this extrinsic evidence bears on the ordinary meaning of stackable add-on layer.

Micron itself uses this terminology to refer to the structural components in the accused 3D memory products, too. Extrinsic evidence showing Micron's use of the disputed terminology in connection with the accused products can have particular relevance to the Court's claim construction analysis. *See, e.g.*, *Bancorp Servs, L.L.C. v. Hartford Life Ins. Co.*, 359 F.3d 1367, 1375–76 (Fed. Cir. 2004) (ruling that district court erred in refusing to consider a patent owner's extrinsic evidence of how the accused infringer made use of the disputed claim term); *Gillette Co. v. Energizer Holdings, Inc.*, 405 F.3d 1367, 1374 (Fed. Cir. 2005) (relying on extrinsic

---

[5] *See, e.g.*, Ex. F ("The ability to **vertically stack device layers** enables the current memory density record of ~200Mbyte/cm2, set by 90nm NAND, to be surpassed." (emphasis added)); Ex. G ("A **stackable**, field-programmable, read-only memory (ROM) cell using 0.15-μm technology is described . . . . By **stacking the cells on top of one another**, we achieve higher density than single-plane devices." (emphasis added)).

10

evidence of accused infringer's own patent application and its use of the same disputed claim term, calling it a "blatant admission" against the defendant's litigation-inspired position).

For instance, Micron's internal engineering documentation describes the sequential layers of vertical memory cells as "stackable," allowing for "higher density" solutions:



Ex. H at 8; *see also* Ex. I ("The new 3D NAND technology stacks flash cells vertically in 32 layers."); *accord* Ex. J (Intel document on same).  In one presentation, Micron described the development shift from 2D scaling to 3D stacking for NAND memory, explaining that "the implementation of 3D stacking technologies . . . allow[s] for figurative skyscrapers of storage to be layered one on top of another."  Ex. K.

Similarly, when releasing its 3D NAND products, Micron engineers and technical marketing employees generated descriptions of the accused products for public presentations that noted how the vertical cell structure involved "stackable" tiers of cells:



*See* Ex. L at 7.[6]  Again, the terminology is used to refer to the architecture of vertical memory
cells in 3D devices, not any particular processing steps for building those layers.  Notably, the
presenter of this document, Johnathan Shaw, was Micron's Senior Director of NAND Marketing
and Operations at the time.  He recently testified that the term "stackable" in this presentation
was "used to describe the appearance of a cross-section of a die," which "makes sense because
when we look . . . this is the skyscraper . . . this is how it's organized."  Ex. M, Shaw Dep. Tr.
(May 29, 2025) at 131:16–24.  Mr. Shaw further explained he used "stackable" here "in the
ordinary understanding in terms of the appearance of what this looks like that I'm showing to the
right [Micron's 3D NAND].  It looks like stacks.  ***People understand with their eyes a stack.
They understand what a layer is. . . . they understand what that is from an appearance
standpoint***."  *Id.* at 137:2–20 (emphasis added).  Well said.

\* \* \*

    As the intrinsic and extrinsic evidence make plain, no construction is necessary for this
term.  Claim construction is an exercise to "clarify and when necessary explain what the patentee
covered by the claims."  *Image Processing Techs., LLC v. LG Elecs., Inc.*, No. 2:22-CV-0077-

---

[6] BeSang notes that Ex. L was not included in its list of extrinsic evidence, although through no
fault of BeSang.  According to the custodian of the document, Mr. Shaw, he delivered this
presentation to Micron counsel earlier in this litigation, but Micron counsel failed to produce it to
BeSang in this litigation.  *See* Ex. M, Shaw Dep. Tr. (May 29, 2025) at 39:2–11, 126:13–127:4.

Appx220

JRG-RSP, 2023 WL 4447034, at *2 (E.D. Tex. May 19, 2023). *See also U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997) ("It is not an obligatory exercise in redundancy."). The terms "stackable," "add-on," and "layer" are not technical jargon; a jury can understand what those words mean in claim 13. Glew Decl. ¶ 47. But if the Court *is* inclined, to construe the claim, BeSang's alternative construction is correct and sufficient. *See id.*

### 2. *Micron's Proposed Construction for "Stackable Add-On Layer" Is Incorrect and Should Be Rejected.*

Micron's position on stackable add-on layer has been a moving target. The first time Micron took a position on this term was during *inter partes* review. In its petition, Micron initially agreed with BeSang—that "stackable add-on layer" requires no construction. *See* Ex. N, Micron's Petition for *Inter Partes* Review of the '702 Patent, IPR2023-00900, Paper 1 ("Micron's Petition") at 12 ("[Micron] does not believe that any term requires explicit construction[.]"). However, in a footnote to its petition, Micron "reserved all rights" to later argue in *this Court* for a different, narrow construction—presumably to generate non-infringement arguments for trial should Micron's PTAB validity arguments fail.[7]

---

[7] *See* Micron's Petition at 6 n.2, 13 n.3. Specifically, Micron's footnotes in its IPR Petition read as follows:

> Petitioner believes that the intrinsic record does not support any interpretation of Claim 13 that encompasses forming the "stackable add-on layer" *by sequential deposition directly on the substrate*. In its Complaint, however, PO appears to interpret "a stackable add-on layer" to cover sequential deposition.

*Id.* at 6 n.2 (emphasis added).

> Petitioner reserves all rights to raise claim construction and other arguments in district court. For example, Petitioner may demonstrate that "a stackable add-on layer having a plurality of vertically oriented semiconductor memory cells" and "the stackable add-on layer being bonded to the dielectric layer" require "vertically oriented semiconductor memory cells" to be formed in a separately fabricated "stackable add-on layer," which is then "bonded [to] the dielectric layer." Petitioner will request leave to submit the district court's claim construction when available.

*Id.* at 13 n.3.

13

██████████████████████████████████████████████████████

BeSang eventually identified this as problematic—an attempt to manipulate the claim scope like a nose of wax to engineer noninfringement in district court while enjoying a broader claim scope for invalidity.  *See* Ex. O, Patent Owner's Motion to Strike, IPR2023-00900, Paper 24 at 9 ("These constructions, and Micron's unpatentability theories based on them, should have been provided in the Petition.").  The PTAB declined to endorse Micron's gamesmanship; it held Micron to its footnoted reservation-of-rights interpretation rather than adopting Micron's actual "no construction necessary" proposal on which its IPR petition was based.[8]  *See* Ex. Q, Decision Granting Institution, IPR2023-00900, Paper 9 ("Institution Decision") at 9.

Today, Micron asks this Court to endorse a version of that narrow, footnoted interpretation.  The Court should reject this construction.  The construction appends to the claim a new, disfavored negative limitation that has no hook in the claim language.  It simultaneously reads *in* some embodiments while reading *out* others.  It transforms a claim that defines structure into one that requires a specific, ordered set of process steps.  What is Micron's justification for all of this?  A threadbare, recycled IPR expert declaration (from an expert who originally opined that no construction was necessary) and an argument that the PTAB's construction is either relevant or binding in some way on this Court.  At bottom, Micron's only material argument for adopting its narrow construction is that the PTAB forced it to do so.  But as the procedural history reveals, this is not a defensible position either.

---

[8] BeSang registered its disagreement with the Board's construction and again noted that construction was not necessary to uphold the claims.  *See* Ex. P, Patent Owner's Response, IPR2023-00900, Paper 18 at 13 ("BeSang respectfully disagrees with the Board's preliminary construction of 'stackable add-on layer' because it is incorrect. Although Micron must prove a construction of 'stackable add-on layer' and establish that the construction is met by the asserted art to prove invalidity, the Board may confirm the patentability of the Challenged Claims for reasons unrelated to 'stackable add-on layer.'" (citing *Realtime Data, LLC v. Iancu*, 912 F.3d 1368, 1375 (Fed. Cir. 2019))).

████████████████████████████████████

a.  <u>Micron's Proposed Construction Includes a Negative Limitation That Micron Is Attempting to Conceal.</u>

The PTAB arrived at its definition using the two footnotes in Micron's IPR petition.  *See* Institution Decision at 7–9.  The PTAB construed the term using language not found in the patent and added a negative limitation copied from Micron's footnote:

> [W]e understand that a "stackable add-on layer" is a layer that is formed separately from the substrate and then bonded as whole to the dielectric layer positioned above the substrate. We do not understand a "stackable add-on layer" to include memory cells that are formed by sequential deposition on or above a substrate without being added to a separately formed substrate.

Institution Decision at 9; *see also* Ex. R, Final Written Decision, IPR2023-00900, Paper 35 ("Final Decision") at 12.  The PTAB's construction above—largely adopted in its Final Written Decision and re-urged by Micron here—was originally entered without argument or analysis by either party.  *See* Institution Decision at 9 n.5 (Acknowledging that "[n]either party had directed it to 'portions of the claims, specification, or prosecution history that would assist in construing the disputed claim term.'").  As shown above, the Board's construction includes a negative limitation forbidding formation of the cells "by sequential deposition on or above a substrate."

In this Court, Micron's proposed construction appears to cleave this negative limitation. Dkt. No. 108-3 at 1.  Thus, following P.R. 4-2 disclosures, BeSang sought to confirm whether Micron's proposed construction in this Court did or did not encompass the PTAB's negative limitation.  *See* Ex. S at 4 ("Is it Micron's position that its proposed construction 'should not be read to include memory cells that are formed by sequential deposition on or above a substrate without being added to a separately formed substrate?'").  Micron declined to answer BeSang's question, instead stating that BeSang's "question asks Micron to take a position on infringement or validity relating to certain types of devices, which is beyond what P.R. 4-3 requires."  *Id.* at 1. Subsequently, Micron reaffirmed its refusal to provide a position as to the negative limitation.

15

Appx223

As Micron was obscuring its position about the negative limitation in this forum,
however, *it was simultaneously embracing that negative limitation at the Federal Circuit*. *See*
Ex. T, *Micron Technology, Inc. et al. v. BeSang Inc.*, No. 2025-1320, Dkt. No. 15 (Fed. Cir. Apr.
7, 2025) ("Micron's Appeal Brief") at 18 n.2 ("Micron agrees with the Board's claim
construction for 'stackable add-on layer'—that term does not encompass sequential
deposition."); *id.* at 31 (arguing that "[t]he Board construed 'stackable add-on layer' to not
'include memory cells that are formed by sequential deposition on or above a substrate without
being added to a separately formed substrate'"); *id.* at 17–18.  Thus, by all appearances, Micron
is attempting to launder the PTAB's improper construction by superficially removing its most
offensive components, hoping that it can later argue that adoption of this watered-down
construction still equates to an endorsement of those offensive components.  Besides being
misleading, the practical impact of this gamesmanship is a future *O2 Micro* dispute.  The Court
can and should resolve the parties' dispute now by rejecting Micron's flawed position.

Recent statements on appeal make clear that Micron does in fact contend that its
proposed construction contains the PTAB's negative limitation.  This is reason enough to reject
it.  There is simply no basis to import a negative limitation into this claim term, particularly here
where "sequential deposition" is not even a phrase found in the '702 Patent.  *See Linear Tech.
Corp. v. ITC*, 566 F.3d 1049, 1060 (Fed. Cir. 2009) (declining to add negative limitation to claim
where "there is no basis in the patent specification"); *Omega Eng'g, Inc. v. Raytek Corp.*, 334
F.3d 1314, 1322–23 (Fed. Cir. 2003) (reversing construction importing negative limitation with
no anchor in the claim language or an express disclaimer within the specification).

Appx224

b.   Micron's Proposed Construction Also Reads Out Embodiments.

A construction that excludes a disclosed embodiment "is rarely, if ever, correct and would require highly persuasive evidentiary support." *Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1379 (Fed. Cir. 2014). Micron's construction violates this rule not once, but thrice.

***First***, Micron's proposal improperly excludes sequential deposition processing techniques all together. Micron's proposed construction for stackable add-on layer "does not encompass sequential deposition." *See* Micron's Appeal Brief at 18 n.2. But the '702 Patent ***teaches*** using sequential deposition to build the stackable add-on layer. *See* Glew Decl. ¶ 68. It explains that the stackable add-on layer "may have a graded impurity distribution in the channel region" and that "[t]he graded impurity distribution can readily be formed by . . . ***an epitaxial process***." '702 Patent at 6:66–7:6. "[A]n epitaxial process" here refers to epitaxial growth, a well-known type of sequential deposition. Glew Decl. ¶ 68.[9]

***Second***, Micron's proposal excludes an embodiment for device fabrication and limits the claims to an alternative embodiment. Micron's proposed construction, through the negative limitation, excludes memory cells that are formed "on or above a substrate without being added to a separately formed substrate." Micron's Appeal Brief at 31. Micron's construction therefore limits claim 13 to only devices having memory cells formed on one substrate and subsequently transferred to another substrate. But this reads out an entire embodiment of the patent:

---

[9] Additional intrinsic evidence confirms the stackable add-on layer may be formed by sequential deposition. '702 Patent at 7:15–35 (discussing "Atomic Layer Deposition"); Ex. B, '941 Patent ("***[T]he doped layers may be formed by any suitable method*** including . . . impurity mixing during ***epitaxial layer growth.***") (emphasis added); *accord* Glew Decl. ¶ 68.



*See* Glew Decl. ¶ 71 (annotating '702 Patent, Abstract); *see also id.* ¶¶ 72–73. While manufacturing the stackable add-on layer and its memory cells before subsequently transferring this "completely fabricated" layer is an exemplary method of building the invention, it is only an alternative approach. The preceding embodiment—highlighted in yellow—entails adding semiconductor material to the substrate and processing the entire stackable add-on layer and its memory cells via traditional deposition and etch steps *on* the substrate itself. *Id.* ¶ 72.

**Third**, Micron's construction of stackable add-on layer as "a layer . . . suitable to be bonded to the dielectric layer" also excludes embodiments where a stackable add-on layer is not bonded to the dielectric layer but is instead bonded to an adjacent stackable add-on layer. *See, e.g.*, '702 Patent at 9:19–23 ("[I]f two stackable add-on layers having a Thyristor-type SRAM cell are vertically stacked as shown in FIG. 22, the problem of high aspect ratio can be decreased."); *id.* at 10:33–35 ("Multiple memory cells may be vertically stacked, either in a single stackable add-on layer, or in two or more stacked stackable add-on layers."); *accord* Glew Decl. ¶ 74. A definition that requires all stackable add-on layers be bonded to the dielectric layer would be incorrect.

18

██████████████████████████████████

Because Micron's proposed construction excludes three embodiments, it is highly likely to be wrong. *See Hill-Rom Servs.*, 755 F.3d at 1379. These problems with Micron's proposed construction are a direct consequence of grafting process-based limitations onto a structural patent claim. There is no wisdom in this approach—indeed, it is directly refuted by the '702 Patent itself: the "stackable add-on layer," "substrate," and "dielectric layer," "***may be combined in any suitable manner*** in one or more embodiments." '702 Patent at 4:1–4 (emphasis added). The Court should resist limiting claim 13's structure to any particular methods, especially where those new limitations would exclude disclosed embodiments.

          c.   <u>Micron's Proposal Introduces Method Steps into a Structure Claim.</u>

Claim 13 is facially and indisputably a structure claim. It covers a memory chip structure; claim 13 does not recite or require any processes of fabricating that chip. A POSITA would understand that the claimed device refers to a structural thing, not particular methods of manufacturing that thing. Glew Decl. ¶ 57. But by prohibiting formation "on or above a substrate," requiring that the claimed layer be formed separately from the substrate suitable to be bonded to the dielectric layer positioned above the substrate, and forbidding that said layer be formed by "sequential deposition" processes, Micron's proposal would effectively impose the following ordered series of method steps:

- First, the memory cells must be formed ***in their entirety***, but not by sequential deposition, on one substrate;
- Next, the completely fabricated layer of cells is then detached from the one substrate;
- Finally, the layer is then transferred to a separately formed, other substrate.

Of course, none of these steps are in claim 13. Rewriting the claim to include them through Micron's proposed construction would be plainly improper. *See Thorner*, 669 F.3d at 1366 ("We do not read limitations from the specification into claims; we do not redefine words.").

Even if there existed reasons to add limitations from the specification into the claims

Case: 25-135     Document: 2     Page: 263     Filed: 06/27/2025

Case 2:23-cv-00028-JRG-RSP     Document 119     Filed 06/17/25     Page 25 of 38 PageID #: 3943

(there is not), those limitations should not be method steps: "[t]he method of manufacture, even when cited as advantageous, does not of itself convert product claims into claims limited to a particular process." *Vanguard Prods. Corp. v. Parker Hann.fin Corp.*, 234 F.3d 1370, 1372 (Fed. Cir. 2000).  Instead, "process steps can be treated as part of a product claim [only] if the patentee has made clear that the process steps are an essential part of the claimed invention." *Andersen Corp. v. Fiber Composites, LLC*, 474 F.3d 1361, 1375 (Fed. Cir. 2007).  The '702 Patent does not do so, much less clearly and unmistakably, as the standard requires.  *See Continental Circuits LLC v. Intel Corp.*, 915 F.3d 788, 799 (Fed. Cir. 2019) (applying the clear and unmistakable disclaimer test to process-steps-to-product-claim arguments).

The file history further compels the conclusion that claim 13's structure should not be construed to require (or forbid) particular manufacturing steps.  Dr. Lee removed the detailed description of manufacturing methods to prosecute the '702 Patent's apparatus inventions.  As a continuation-in-part, the '702 Patent includes ***all*** new figures and descriptions that teach the various structural components of the inventions.  Whereas the parent patent focused on claiming manufacturing methods, the '702 Patent claimed the physical structures.  As such, the inventions of both patents are indeed different, and despite their relationship, "incorporation by reference does not convert the invention of the incorporated patent into the invention of the host patent." *Fir.jan LLC v. ESET, LLC*, 51 F. 4th 1377, 1382 (Fed. Cir. 2022).  The Court should not import the method limitations described and claimed in the parent '941 Patent into the '702 Patent's structural inventions.  *See Kingspan Insulated Panels Inc. v. Centria GP*, No. 1:15-CV-1023, 2018 WL 1256559, at *5 (W.D. Mich. Mar. 12, 2018) (declining to import limitation from incorporated patents when limitation was absent from at-issue patent); *ActiveVideo Networks, Inc. v. Verizon Commc'ns Inc.*, 801 F. Supp. 2d 465, 486 (E.D. Va. 2011) (same).

20

Recent case law makes relevant the distinguishing disclosures of the '702 Patent because it evidences an intent by Dr. Lee to **not** be limited by the method disclosures of the parent '941 Patent.  Dr. Lee changed the title from "Methods" to "Structures."  He removed the majority of the method-based descriptions and replaced them with teachings about the structural components.  And all figures in the parent application detailing process steps were deleted and replaced with figures blueprinting device structures.  *Compare* '941 Patent, *with* '702 Patent.  This "deletion" absolutely "contributes understanding of the intended scope of the final application."  *See MPHJ Tech. Investments, LLC v. Ricoh Ams. Corp.*, 847 F.3d 1363, 1369 (Fed. Cir. 2017); *DNA Genotek Inc. v. Spectrum Sols. LLC*, No. 2023-2017, 2025 WL 502040, at *3 (Fed. Cir. Feb. 14, 2025) (Gilstrap, J., sitting by designation).[10]  A POSITA would deem the change in title, descriptions, and figures significant evidence of the '702 Patent not being limited by prior-disclosed methods.  *See MPHJ Tech.*, 847 F.3d at 1369.  In its final form, the '702 Patent focuses on structures—not any particular methods of manufacturing those structures.  Micron's construction is blind to this intrinsic evidence.[11]

> d.  <u>Micron's Proposed Construction Is Also at Odds with the Extrinsic Evidence, Including Its Own Engineers and Documents.</u>

Micron's proposed construction for "stackable add-on layer" excludes structures manufactured via a sequential deposition process.  But as noted *supra* section IV.A.1.c, the

---

[10] While *MPHJ* and *DNA Genotek* deal specifically with incorporated provisional applications, the reasoning of those cases applies equally here.  The '702 Patent is not merely a continuation of the '941 Patent.  It is instead a continuation-in-part, with completely different figures and detailed description.  The '702 Patent was therefore not in its "final form" until it was itself filed, seeking a different scope of inventions than its predecessor.

[11] Micron may attempt to sidestep this caselaw by arguing for structural differences between layers formed by sequential deposition versus layers formed via other processes.  However, Dr. Glew has explained various reasons why any alleged structural differences are wrong.  *See* Glew Decl. ¶¶ 76–80.  It is unclear if Micron will maintain those arguments.  Regardless, Micron's proposed construction is fundamentally wrong for the reasons discussed here.

21

industry has consistently used terms such as "stackable," "stacking," "stacked," and "add-on

layer" to describe 3D memory structures manufactured via a sequential deposition process.  *See*

Glew Decl. ¶ 83 (collecting presentations, technical papers, and third-party patents).[12]  In other

words, Micron's proposal is at odds with how the industry uses the terminology.

    Of particular note, Micron's own engineers and materials use the same or similar

terminology to refer to Micron's 3D NAND structures produced by sequential deposition

processes.  As discussed above, Micron internally and externally labels the accused 3D NAND

product as "stackable" despite being manufactured with sequential deposition processes.  *See*

Exs. H, I, J, K, L.  And Micron's former Senior Director of NAND Marketing and Operations

recently disclaimed any notion that the ordinary understanding of the term "stackable" refers to

the process for "how [the device] is made."  Ex. M, Shaw Dep. Tr. at 137:11–20.

    This extrinsic evidence, both from Micron and relevant industry participants, reveal that a

POSITA would understand the plain meaning of this term is a structural description of 3D cell

architecture that can be and is routinely manufactured using sequential deposition processes.

> e.   <u>The Board's Incorrect Construction—With or Without the Negative
> Limitation—Is Simply Not Binding Here.</u>

    The only thing Micron has identified as supporting its proposed construction is a belief

that the construction should be adopted here because the PTAB did.  To elevate this position,

Micron argues that the IPR procedural history be afforded outsized credit because the extrinsic

---

[12] In an article proposing a 3D "***stackable*** field-programmable ROM," researchers provided a step-by-step description of ***sequentially depositing*** cells in a stack. Ex. G (emphasis added).  In a well-known IEEE conference article cited by more than 200 publications, the engineers described "a total of 8 layers of ***vertically-stacked*** memory cells" that "are fabricated using ***deposited*** materials only." Ex. U (emphasis added).  As another example, the term "add-on layer" has been used by people in the field to describe a layer that is sequentially deposited.  *See* Ex. V ("In contrast, PIID . . . is a coating process in which ions are accelerated at a much lower energy (0.5-5 keV) and then ***deposited*** on the surface to form an ***'add-on' layer***." (emphasis added)).

evidence it submitted to the Board has somehow been transformed into intrinsic evidence. Dkt.

No. 108-3 at 1 n.1 ("[T]he extrinsic evidence and expert testimony Micron submitted during

IPR2023-00900 should properly be considered intrinsic evidence.") (citing *Aylus Networks, Inc.*

*v. Apple, Inc.*, 856 F.3d 1353, 1360 (Fed. Cir. 2017)). But this is an unfounded premise. *Aylus*

does not hold that extrinsic evidence submitted during a Board proceeding becomes intrinsic.

Instead, *Aylus* simply states that the ***patentee's*** statements to the Board "can be considered during

claim construction and relied upon to support a finding of prosecution disclaimer." *Aylus*, 856

F.3d at 1361. Micron is not the patentee. Any extrinsic evidence that ***Micron*** submits to the

PTAB in its own IPR petition is not a BeSang statement to the PTAB.

 As this Court has recognized, a PTAB construction does not carry any particular weight

compared to other evidence and arguments. *See Image Processing Techs.*, 2023 WL 4447034, at

*5; *AGIS Software Dev. LLC v. Google LLC*, No. 2:19-CV-359-JRG, 2020 WL 7229753, at *22,

*27 (E.D. Tex. Dec. 8, 2020) ("The PTAB's [claim construction analysis] . . . is unpersuasive.");

*PerdiemCo, LLC. v. IndusTrack LLC*, No. 2:15-cv-00727-JRG-RSP, Dkt. No. 155 at 77 (E.D.

Tex. July 7, 2016). And for good reason. In this case, the origin of the PTAB's construction was

a self-serving footnote in Micron's IPR petition that contradicted Micron's official position as to

the meaning of the term. That neither party sought this construction to begin with—and the

construction's obvious flaws and negative limitation—is reason to scrutinize it, not adopt it.

 The Board's construction is also not binding through principles of preclusion.

Administrative decisions by the Board can ground issue preclusion in district court when the

elements of issue preclusion are met, but they have not been met here. *See SkyHawke Techs.,*

*LLC v. Deca Int'l Corp.*, 828 F.3d 1373, 1376–77 (Fed. Cir. 2016); *see also XMTT, Inc. v. Intel*

*Corp.*, 2022 WL 2904308, at *6 (D. Del. July 22, 2022) (applying *SkyHawke* and rejecting PTAB

construction).  Here, as the party that prevailed before the Board, BeSang has no opportunity to

appeal the judgment, depriving the judgment of any preclusive effect.  *See Penda Corp. v. United

States*, 44 F.3d 967, 972–73 (Fed. Cir. 1994) ("It is axiomatic that a judgment is without

preclusive effect against a party which lacks a right to appeal that judgment").

### B.  SOI Pillar

| Term | BeSang's Proposed Construction | Micron's Proposed Construction |
|---|---|---|
| "SOI pillar"<br><br>'702 Patent, cls. 14, 15, 16 | Plain and ordinary meaning; no construction necessary.<br><br>Alternative: "a silicon-on-insulator structure taller than it is wide." | "a doped stack structure formed from a single-crystal portion of a semiconductor wafer transferred from one wafer to another previously fabricated wafer or similar type of substrate" |

The term "SOI pillar" has an apparent plain and ordinary meaning to a person of skill in

the art.  The term itself is the combination of two familiar concepts in the semiconductor art, and

any construction thereof "involves little more than the application of widely accepted meaning of

commonly understood words."  *Phillips*, 415 F.3d at 1314.  Though it is not necessary, if the

Court wants to adopt a construction to resolve the parties' dispute, BeSang's proposed alternative

construction faithfully captures this ordinary meaning.  *See* Glew Decl. ¶ 84.

Micron, however, proposes a 27-word definition for these well-known terms that is

nowhere found in the intrinsic record.  In fact, it is a definition crafted from multiple, separate,

permissive specification excerpts, none of which purport to define (or even describe) an "SOI

pillar."  Nor is the proposed definition consistent with a POSITA's understanding of these general

concepts, as reflected in the extrinsic record.  No POSITA would equate the words "SOI pillar"

with Micron's Rube Goldberg definition, and it should be rejected.

Starting with the claim language itself, the term "SOI pillar" appears in three dependent

asserted claims: 14, 15, and 16.  '702 Patent at 12:35–47.  Each claim describes one or more of

the claimed vertically oriented memory cells either "on a SOI pillar" or "formed with a first SOI pillar." *Id.* None of the limitations in Micron's construction flow from the surrounding claim language.[13] Rather, a POSITA would recognize the words "SOI" and "pillar" based on their knowledge of the art, in which both terms carry ordinary meanings. *See* Glew Decl. ¶¶ 85–87.

The specification confirms that both "SOI" and "pillar" structures were generally known in the art. As the '702 Patent recognizes, "[t]he acronym 'SOI' generally refers to Silicon-on-Insulator." '702 Patent at 4:45–46. Silicon-on-Insulator, or SOI, technology was a known technology at the time of the '702 Patent, and a POSITA would recognize the term "Silicon-on-Insulator" as invoking this general technology. *See* Glew Decl. ¶¶ 85–86. SOI technology involves creating semiconductor devices that include a silicon layer placed on top of a dielectric (insulator) material. *Id.* ¶ 86. A POSITA would not need further construction to understand what Silicon-on-Insulator technology is, *see id.*, nor would a POSITA recognize this term as including the elements of Micron's proposed construction.

Furthermore, the specification confirms that pillar structures were known at the time of the patent, as the patent discusses "[c]onventional pillar type . . . structures" known in the art. '702 Patent at 6:43–48. As used in the art, the term "pillar" conventionally describes the shape of certain three-dimensional semiconductor structures with plain English: a structure that is relatively taller than it is wide. Glew Decl. ¶ 87; Ex. W (defining "pillar" as "an upright shaft or structure . . . relatively slender in proportion to its height"). This understanding is consistent with the '702 Patent's discussion of conventional pillar structures. A review of the '702 Patent's

---

[13] To the extent Micron argues that portions of its construction for "SOI pillar" are required by the fact the relationship between SOI pillar and the claimed "stackable add-on layer," this argument fails for the same reasons Micron's construction for "stackable add-on layer" fails. *See supra* Section IV.A. BeSang incorporates those arguments herein.

25

specification would confirm a POSITA's understanding of the terms "SOI" and "pillar,"

confident that the patentee had applied their readily apparent meanings as opposed to using them

idiosyncratically.  *See Phillips*, 415 F.3d at 1314.  As such, while no construction is necessary, if

the term "SOI pillar" needs a construction, it should be "a silicon-on-insulator structure taller

than it is wide."

To be sure, this ordinary construction is consistent with other intrinsic evidence of the

'702 Patent.  Exemplary SOI pillars are depicted in many figures of the patent, and in each

instance, the depicted structure is relatively taller than it is wide:



*See, e.g.*, '702 Patent, figs. 4, 20, 27 (purple annotation added by Dr. Glew (¶ 88) to identify

exemplary SOI pillar in each figure).  In some instances, the patent also describes the relative

dimensions of the depicted SOI pillars.  For example, Figure 20 represents the most extreme case

of a pillar-type structure in the patent, as it is the tallest (in proportion to its width) depicted

structure in the patent.  With respect to this example, the '702 Patent comments on a potential

downside of using such a relatively tall structure, stating that "[o]ne drawback of the structure in

26

FIG. 20 is its high aspect ratio, which may cause toppling during processing." *Id.* at 9:19–20.[14]

Apart from being consistent with all the exemplary figures of the '702 Patent, BeSang's proposed construction is not contradicted by the remaining intrinsic evidence.  Other than the patent's statement that "SOI" refers to "Silicon-on-Insulator" technology, the terms "SOI pillar" or "pillar" are nowhere defined in the '702 Patent.  This is true despite the patentee drafting a "Terminology" section of the patent, in which many terms (such as "vertical" or "devices") are defined. *See id.* at 4:6–5:17.  The patentee clearly knew how to define terms, and the absence of any definitions for "SOI pillar" or "pillar" (or any express disclaimers) signal an intention not to depart from the ordinary meanings of these terms.  *See* Glew Decl. ¶ 89.  Furthermore, to the extent BeSang's statements made in the IPR are treated as intrinsic evidence, BeSang advocated for the same plain and ordinary construction in that proceeding as it does here.  *See* Ex. X, Patent Owner's Preliminary Response, IPR2023-00900, Paper 6 at 13 ("BeSang submits the Board need not construe any terms of the challenged claims."); Ex. P, Patent Owner's Response at 14 ("If the Board deems construction necessary, 'SOI pillar' should be construed according to its ordinary and customary meaning as 'a silicon-on-insulator structure taller than it is wide.'").[15]  At bottom, the intrinsic evidence supports BeSang's construction, and the Court should adopt BeSang's proposal.

---

[14] Micron may argue that certain embodiments of the patent, described as having SOI pillars with "relatively small" aspect ratios, mandates that the SOI pillars claimed in the '702 Patent have an aspect ratio smaller than 1.  Such an interpretation is unfounded.  Apart from being inconsistent with every figure of the patent, there is simply no mooring for such a construction in the patent's written description, as nowhere in the patent is a "relatively small" aspect ratio identified as being less than 1.  Rather, these excerpts merely point back to the same potential drawback identified with Figure 20, suggesting ways to increase density of memory while not increasing an SOI pillar's height to a potentially disadvantageous degree. *E.g.*, '702 Patent at 8:5–10, 8:19–21.

[15] The PTAB ultimately did not construe the term SOI pillar in its Final Written Decision, finding that all claims were patentable regardless of the adopted construction.  Final Decision at 47.

████████████████████████████

In contrast, Micron's proposed construction pieces together language from three separate specification excerpts. Micron's proposal is not tethered to a POSITA's understanding of these terms. And Micron knows this, explaining in the IPR that this same proposal is simply "using the language from the '702 specification." Ex. Y, Petitioner's Reply, IPR2023-00900, Paper 20 at 10. Yet none of the three specification excerpts relied on by Micron purport to apply to the invention as a whole, let alone define or disclaim the term "SOI pillar."

Micron first points to the following excerpt as defining "pillar structures" as "doped stack structures": "In various embodiments of the present invention, a FLD can be directly contacted by metal electrodes at top, bottom, and intermediate regions of the individual doped stack structures (i.e., pillar structures)." '702 Patent at 6:26–29. First, this excerpt is expressly permissive and not definitional. *See id.* ("***In various embodiments***" and "a FLD ***can be***") (emphasis added). But even if it did apply as a broad definition, Micron defines in the wrong direction. As the Federal Circuit affirmed in *SkinMedica, Inc. v. Histogen Inc.*, the "natural interpretation of '*i.e.*'" is to define the word that ***precedes*** "*i.e.*" by the word or phrase that ***follows*** "*i.e.*" 727 F.3d 1187, 1201 (Fed. Cir. 2013); *see also Bristol-Myers Squibb Co. v. AstraZeneca Pharms. LP*, No. 22-cv-346, 2023 WL 3040664, at *3 (D. Del. Apr. 21, 2023) (same). Applied here, this sentence (at best) defines or restricts "doped stacked structures" (the term that precedes "*i.e.*"); not "pillar structures" (the term that follows "*i.e.*").

Beyond this, Micron cobbles language from two additional excerpts to round out its proposed construction. *See* '702 Patent at 4:47–53, 6:23–25. One of them is explicitly permissive, describing that "*[i]n various embodiments* of the present invention, . . . the SOI layer ***could be transferred*** along with a simply notch alignment. . . . The transferred, unpatterned, SOI layer has only a vertically oriented stack of layers." *Id.* at 6:13–25 (emphasis added). But

beyond this, both excerpts describe *a different term*, SOI <u>layer</u>, and ***not*** the claimed SOI pillar. *See id.* at 4:47–48 ("Unless otherwise noted, "***SOI layer***" is used herein to refer to . . .") (emphasis added); *id.* at 6:23–25 ("The transferred, unpatterned, ***SOI layer*** has only a vertically oriented stack of layers.") (emphasis added).  A POSITA has no reason to use these excerpts to alter the meaning of SOI pillar, since neither are even about SOI pillars.[16]  Glew Decl. ¶¶ 93–94.

Finally, the incorporated parent patent offers no further guidance for the claimed SOI pillar, as the term "SOI pillar" is nowhere used in the parent patent.  Rather, the described (and claimed) SOI pillars are part of the new matter added to the '702 Patent as a continuation-in-part of its parent.  And the parent patent's two excerpts regarding "pillar" structures are consistent with the general "pillar" structure discussions of the '702 Patent, as well as the ordinary meaning of "pillar."  *Compare* '702 Patent at 6:43–55, 9:19–23, *with* '941 Patent at 11:20–26, 15:50–57.

As a final blow, Micron's proposed construction is also inconsistent with extrinsic evidence.  *See* Glew Decl. ¶ 98.  For instance, "Silicon-on-Insulator" technology is not limited to single crystalline silicon applications, as Micron's proposal does.  Rather, a POSITA would know that SOI technology is commonly used with polycrystalline semiconductor material.  *See id.*  Further, the terms "SOI," "SOI pillars," and "pillars" are not limited to certain manufacturing methods, such as wafer bonding methods.  Rather, a POSITA would know that SOI technology and SOI devices can be manufactured through various methods, such as through deposition processes.  *Id.*  In short, neither the intrinsic nor extrinsic evidence supports Micron's proposed construction, and the Court should reject it in favor of BeSang's proposal.

---

[16] Nor would a POSITA be directed to use ***these*** particular descriptions of SOI layers (as opposed to other excerpts) in the particular way Micron has proposed (as opposed to other ways).  Having no expert opinion on this, Micron offers no reason why a POSITA would come to the particular 27-word combination for which it advocates here.

V.    **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court adopt its proposed constructions and reject Micron's.

30

███████████████████████████

DATED: June 10, 2025

Respectfully submitted,

*/s/ Bradley W. Caldwell*
Bradley W. Caldwell
Texas State Bar No. 24040630
Email: bcaldwell@caldwellcc.com
Jason D. Cassady
Texas State Bar No. 24045625
Email: jcassady@caldwellcc.com
Austin Curry
Texas State Bar No. 24059636
acurry@caldwellcc.com
R. Seth Reich Jr.
Texas State Bar No. 24088283
Email: sreich@caldwellcc.com
John F. Summers
Texas State Bar No. 24079417
jsummers@caldwellcc.com
Aisha Mahmood Haley
Texas State Bar No. 24139895
ahaley@caldwellcc.com
Bailey A. Blaies
Texas State Bar No. 24109297
bblaies@caldwellcc.com
Bjorn A. Blomquist
Texas State Bar No. 24125125
bblomquist@caldwellcc.com
James F. Smith
Texas State Bar No. 24129800
jsmith@caldwellcc.com
Richard Cochrane
Texas State Bar No. 24116209
rcochrane@caldwellcc.com
Paul Ashton Duke
Texas State Bar No. 24140082
aduke@caldwellcc.com
Xu Zhou
Texas State Bar No. 24121219
xzhou@caldwellcc.com
**CALDWELL CASSADY & CURRY P.C.**
2121 N Pearl Street, Suite 1200
Dallas, TX 75201
Telephone: (214) 888-4848
Facsimile: (214) 888-4849

Warren J. McCarty, III
Texas State Bar No. 24107857
Email: wmccarty@mccartyfirm.com
**THE MCCARTY FIRM**
100 Crescent Court, 7th Floor
Dallas, TX 75201
Telephone: (214) 459-3195

Deron R. Dacus
State Bar No. 00790553
**THE DACUS FIRM, P.C.**
821 ESE Loop 323, Suite 430
Tyler, TX 75701
Phone: (903) 705-1117
Fax: (903) 581-2543
ddacus@dacusfirm.com

*Attorneys for Plaintiff*

████████████████████████████

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served on all counsel of

record via electronic mail on June 10, 2025.

*/s/ Bradley W. Caldwell*
Bradley W. Caldwell

### CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

The undersigned certifies that the foregoing document is authorized to be filed under seal

pursuant to the Protective Order submitted in this case.

*/s/ Bradley W. Caldwell*
Bradley W. Caldwell

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| BESANG INC., | |
| Plaintiff, | |
| v. | Civil Action No.: 2:23-cv-00028-JRG-RSP |
| MICRON TECHNOLOGY, INC., MICRON SEMICONDUCTOR PRODUCTS, INC., AND MICRON TECHNOLOGY TEXAS, LLC, | **JURY TRIAL DEMANDED** |
| Defendants. | |

**PLAINTIFF BESANG INC.'S RESPONSE IN OPPOSITION TO MICRON**
**DEFENDANTS' MOTION TO STAY CASE PENDING RESOLUTION OF**
**DEFENDANTS' MOTION TO TRANSFER VENUE TO THE DISTRICT OF IDAHO**
<u>**UNDER 28 U.S.C. § 1404(a) (DKT. NO. 30)**</u>

## I.    INTRODUCTION

Plaintiff BeSang Inc. ("BeSang") respectfully opposes Defendants Micron Technology, Inc., Micron Semiconductor Products, Inc., and Micron Technology Texas, LLC's (collectively, "Micron") Motion to Stay Case Pending Resolution of Defendants' Motion to Transfer Venue to the District of Idaho (Dkt. 110) ("Stay Motion").  Micron has been attempting to derail the speedy resolution of this dispute for nearly three years.  The instant motion is Micron's *third* motion to stay this case.  The first two stay requests related to Micron's IPR petition challenging the validity of BeSang's '702 Patent.  (Micron lost that IPR and BeSang's patent was upheld as valid.)  Now, Micron's justification for a stay has shifted to resolution of its transfer motion.  But there is no reason to think that Micron's Motion to Transfer will be successful—BeSang demonstrated how the bases for that motion were fundamentally flawed, factually inaccurate, and that Micron had failed to meet its burden of showing that "the marginal gain in convenience will be *significant*" and that "those marginal gains will *actually materialize* in the transferee venue." *In re Clarke*, 94 F.4th 502, 508 (5th Cir. 2024) (emphasis added).  The Court should not disrupt a case schedule—a schedule that Micron largely *agreed* to just over three months ago—based on a poorly vetted Motion to Transfer that had little substantive merit to begin with.

Even setting aside the lack of merit in Micron's transfer motion, its requested stay relief here is simply futile: By the time this Stay Motion is briefed and ripe for the Court's consideration, the parties will basically be on the eve of the *Markman* hearing.  The Court has already confirmed with the parties that it will decide Micron's Motion to Transfer on or before that *Markman* hearing date.  Thus, there is no practical or legal rationale for a stay of proceedings that in all likelihood would go into effect just days before the Court decides Micron's underlying motion anyway.

Whatever marginal benefit a stay could theoretically offer to Micron is nothing compared

1

to the significant disruption it would cause BeSang and the Court.  Granting a stay would unduly prejudice BeSang, unnecessarily delay the resolution of this case, and disrupt the Court's schedule.  A stay at this juncture would serve only to benefit Micron tactically by delaying substantive proceedings, including by disrupting the *Markman* hearing scheduled for July 22, 2025.  If Micron truly believed that the case should be paused pending resolution of its transfer request, it should have made that belief known five months ago when the parties were negotiating a case schedule, three months ago when the Court entered a substantially agreed schedule, and before both sides engaged in lengthy, voluminous *Markman* disclosures and restarted significant fact discovery efforts.  Micron's silence during scheduling shows that its desire for a stay is far from urgent and that it does not believe that its Motion to Transfer has merit.  The relevant factors weigh heavily against a stay.  Micron's request should be denied.

BeSang respectfully submits that the simplest and correct course of action is for the Court to address Micron's Motion to Transfer in due course, which BeSang believes should be denied.  Doing so would resolve that dispute, moot this motion to stay, and facilitate a speedy resolution of the case on the schedule to which all parties agreed and which this Court already entered.

## II.    ARGUMENT

### A.    <u>The Stage of the Litigation Weighs Against a Stay.</u>

Contrary to Micron's assertion, this case is not in its "relatively early stages."  Stay Mot. at 3.  The litigation has progressed significantly since its filing.  In this forum, fact depositions have begun, the parties have served infringement and invalidity contentions, and the *Markman* process is well underway.  The parties filed their P.R. 4-3 Joint Claim Construction and Prehearing Statement back in April, *see* Dkt. 108, and BeSang submitted its opening claim construction brief and technology tutorial earlier this month, *see* Dkt. 113.  Micron's response brief is due next week.  The deadline for parties to have substantially completed document

2

production has now passed.  Dkt. 102 at 5.  The *Markman* hearing is set for July 22, 2025, and fact discovery closes in just over 60 days.  *Id.* at 4.  These milestones indicate that the case is well underway, and halting proceedings now would disrupt the Court's schedule and the parties' preparations.

If Micron believed that the case should be paused pending resolution of its Motion to Transfer, it should have made that belief known months ago when the parties were negotiating a case schedule that included a *Markman* disclosure schedule and a trial date.  Micron not only stayed silent, but it agreed to a number of substantive case deadlines and proposed its own trial date.  *See* Dkt. 101-1.  The parties proceeded through significant fact discovery and claim construction proceedings since that time.  Micron should not now be heard to argue that the case is in its early stages as a way to justify a belated stay request.

Moreover, Micron's reliance on *In re Horseshoe Ent.*, 337 F.3d 429 (5th Cir. 2003), and related cases is misplaced, and its emphasis on how its motion must take "top priority" and be resolved before "any substantive portion of the case" is misleading.  *See* Stay Mot. at 4.  Specifically, the Court has already prioritized the Motion to Transfer by allowing full briefing and supplemental submissions (Dkts. 103, 107), and it confirmed at the February 20, 2025 Status Conference that its order on the Motion to Transfer will issue on or before the date of the *Markman* hearing.  While Micron's Motion to Transfer was fully briefed around October 2023, weeks later the matter was stayed pending resolution of Micron's IPR petition.  Micron lost that IPR and the parties sought to re-commence district court proceedings in December 2024.  *See* Dkt. 98.  Only in March 2025 did the case restart in earnest with an amended case schedule. Dkt. 102.  Given these circumstances, it is clear that the Court has prioritized Micron's Motion to Transfer.

3

A stay is unnecessary to ensure the motion receives due consideration, especially given the advanced procedural posture of the case.

### B. A Stay Will Not Simplify the Issues

A stay will not simplify the issues in this case and will instead complicate the proceeding. The Motion to Transfer is fully briefed, and the Court is poised to rule on it promptly. Granting a stay would unnecessarily halt progress on substantive issues, such as claim construction, which are critical to resolving the case efficiently. If the Court denies the Motion to Transfer (which it should), a stay would have wasted valuable time and resources, forcing the parties to restart preparations and to negotiate and seek entry of new deadlines. Even if the case is transferred, claim construction work completed in this District is unlikely to be duplicative, as transferee courts often adopt prior claim constructions absent clear error. *Cf. WSOU Invs. LLC v. ZTE Corp.*, No. 6:20-CV-00487-ADA, 2022 WL 479131, at *2 (W.D. Tex. Feb. 16, 2022) (noting that defendant "fail[ed] to provide any authority compelling a court in the transferee forum to duplicate the [claim construction] work of this Court"); *Norman IP Holdings, LLC v. Lexmark Int'l, Inc.*, No. 6:11-CV-495, 2012 WL 3307942, at *4 & n.3 (E.D. Tex. Aug. 10, 2012) (consolidating for pre-trial purposes—including *Markman*—related cases, and expressing hope that the court's claim construction "will be of help" to the transferee court).

Furthermore, Micron's concern about "duplicative" litigation is speculative. The parties have already invested significant resources in this venue, and continuing with claim construction will streamline the case regardless of the ultimate venue for trial. A stay, by contrast, risks creating inefficiencies by delaying these critical steps.

Finally, if the benefits of a stay were as pronounced as Micron's Motion suggests, Micron had the occasion and incentive to raise this issue in February when the parties negotiated for and agreed on a case and *Markman* schedule at that time. As discussed above, the parties submitted

4

an **agreed** set of *Markman* dates that Micron now wishes to suspend.  See Dkt. 101-1.  Despite agreeing to this schedule, Micron waited until this process was nearly complete (when Micron was certain to obtain all claim construction disclosures from BeSang and BeSang's opening claim construction brief) to petition the Court with a stay request.  The Court should not endorse gamesmanship of this sort.

### C.  <u>A Stay Would Unduly Prejudice BeSang</u>

A stay would prejudice BeSang by delaying its ability to vindicate its patent rights.  Micron's Stay Motion improperly assigns no weight to the "right of patent owners to timely enforcement of their patent rights."  *See Trover Grp., Inc. v. Dedicated Micros USA*, No. 2:13-CV-1047-WCB, 2015 WL 1069179, at *2 (E.D. Tex. Mar. 11, 2015).  Here, the case has been pending since early 2023, and a stay would exacerbate the already lengthy litigation process, imposing a clear tactical disadvantage on BeSang.

Micron's only counterargument is that a stay would be brief—but that is precisely why no stay should be granted.  *See* Stay Mot. at 5.  Whatever marginal benefit a "brief" stay would offer—perhaps as short as just a couple of days or weeks—pales in comparison to the significant disruption a stay will cause.  It would likely disrupt the case schedule and require long-established case dates to be moved and re-set.  Fact discovery cutoff, expert reporting deadlines, and other significant case deadlines that the parties have begun preparing for and relying upon would likely need to be moved.  This would cause a domino effect for pretrial dates such as dispositive motion deadlines and the pretrial conference disclosures.  The end result is a likely change to the parties' trial date.  Besides prejudicing BeSang through delay, this would force it to incur additional costs attendant to upending a relied-upon case schedule.  Such prejudice

outweighs any minimal inconvenience to Micron, which has been actively litigating in this District for over two years.[1]

## III.     CONCLUSION

For the foregoing reasons, BeSang respectfully requests that the Court deny Micron's Motion to Stay.  The advanced stage of the litigation, the lack of simplification from a stay, and the prejudice to BeSang all weigh against halting this case.  The Court should allow the case to proceed according to the established schedule while it resolves Micron's Motion to Transfer.

---

[1] Additionally, Micron's relocation of its Texas office down the road to Richardson, Texas (Dkt. 103), does not justify a stay.  As BeSang previously noted in response to Micron's notice regarding this simple office move from one commercial tower to another, it occurred long after the case was filed.  "Motions to transfer venue are to be decided based on 'the situation which existed when suit was instituted.'"  *In re EMC Corp.*, 501 F. App'x 973, 976 (Fed. Cir. 2013).

Appx248

DATED: June 20, 2025

Respectfully submitted,

/s/ R. Seth Reich Jr.
Bradley W. Caldwell
Texas State Bar No. 24040630
Email: bcaldwell@caldwellcc.com
Jason D. Cassady
Texas State Bar No. 24045625
Email: jcassady@caldwellcc.com
Austin Curry
Texas State Bar No. 24059636
acurry@caldwellcc.com
R. Seth Reich Jr.
Texas State Bar No. 24088283
Email: sreich@caldwellcc.com
John F. Summers
Texas State Bar No. 24079417
jsummers@caldwellcc.com
Aisha Mahmood Haley
Texas State Bar No. 24139895
ahaley@caldwellcc.com
Bailey A. Blaies
Texas State Bar No. 24109297
bblaies@caldwellcc.com
Bjorn A. Blomquist
Texas State Bar No. 24125125
bblomquist@caldwellcc.com
James F. Smith
Texas State Bar No. 24129800
jsmith@caldwellcc.com
Richard Cochrane
Texas State Bar No. 24116209
rcochrane@caldwellcc.com
Paul Ashton Duke
Texas State Bar No. 24140082
aduke@caldwellcc.com
Xu Zhou
Texas State Bar No. 24121219
xzhou@caldwellcc.com
**CALDWELL CASSADY & CURRY P.C.**
2121 N Pearl Street, Suite 1200
Dallas, TX 75201
Telephone: (214) 888-4848
Facsimile: (214) 888-4849

Warren J. McCarty, III
Texas State Bar No. 24107857
Email: wmccarty@mccartyfirm.com
**THE MCCARTY FIRM**
100 Crescent Court, 7th Floor
Dallas, TX 75201
Telephone: (214) 459-3195

Deron R. Dacus
State Bar No. 00790553
**THE DACUS FIRM, P.C.**
821 ESE Loop 323, Suite 430
Tyler, TX 75701
Phone: (903) 705-1117
Fax: (903) 581-2543
ddacus@dacusfirm.com

*Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the above and foregoing

document has been served on June 20, 2025 to all counsel of record who are deemed to have

consented to electronic service via the Court's CM/ECF system per Local Rule CV-5(a)(3).

*/s/ R. Seth Reich Jr.*
R. Seth Reich Jr.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| BESANG, INC., <br><br>        Plaintiff, <br><br> v. <br><br> MICRON TECHNOLOGY, INC., <br> MICRON SEMICONDUCTOR <br> PRODUCTS, INC., and <br> MICRON TECHNOLOGY TEXAS, LLC <br><br>        Defendant. | Case No. 2:23-CV-00028-JRG-RSP <br><br> **JURY TRIAL DEMANDED** |

### NOTICE OF RIPENESS FOR RULING REGARDING MICRON'S OPPOSED MOTION TO STAY CASE PENDING RESOLUTION OF DEFENDANTS' MOTION TO TRANSFER VENUE TO THE DISTRICT OF IDAHO UNDER 28 U.S.C. § 1404(a) (DKT. NO. 30) [DKT. NO. 110]

Defendants Micron Technology, Inc., Micron Semiconductor Products, Inc., and Micron Technology Texas, LLC (together, "Micron") respectfully submit this Notice of Ripeness for Ruling Regarding Micron's Opposed Motion to Stay Case Pending Resolution of Defendants' Motion to Transfer Venue to the District of Idaho Under 28 U.S.C. § 1404(a) (Dkt. No. 30) [Dkt. No. 110] ("Notice of Ripeness").

On June 5, 2025, Micron filed its Opposed Motion to Stay Case Pending Resolution of Defendants' Motion to Transfer Venue to the District of Idaho Under 28 U.S.C. § 1404(a) (Dkt. No. 30) ("Motion to Stay") (Dkt. No. 110).  On June 20, 2025, Plaintiff BeSang, Inc. ("BeSang") filed its Response in Opposition to Micron's Motion to Stay (Dkt. No. 120).  Micron will not be filing a Reply in Support of Motion to Stay.

Accordingly, Micron files this Notice of Ripeness to notify the Court that the briefing on Micron's Motion to Stay is now complete and ripe for resolution.

Appx252

Dated: June 24, 2025

Respectfully submitted,

*/s/ Melissa R. Smith*
_____

John Kappos
Texas Bar No. 24130097
Timothy S. Durst
Texas Bar No. 00786924
Cason G. Cole
Texas Bar No. 24109741
Frances Mackay
Texas Bar No. 24109494
**O'MELVENY & MYERS LLP**
2501 North Harwood Street, Suite 1700
Dallas, Texas 75201
Telephone: (972) 360-1900
Facsimile:  (972) 360-1901
Email: jkappos@omm.com
Email: tdurst@omm.com
Email: ccole@omm.com
Email: fmackay@omm.com

Xin-Yi Zhou
Texas Bar No. 24127916
**O'MELVENY & MYERS LLP**
400 South Hope Street, 18th Floor
Los Angeles, California 90071
Telephone: (213) 430-6000
Facsimile:  (213) 430-6407
Email: vzhou@omm.com

William M. Fink (*Pro Hac Vice*)
Patric Reinbold (*Pro Hac Vice*)
**O'MELVENY & MYERS LLP**
1625 Eye Street, NW
Washington, D.C. 20006
Telephone: (202) 383-5300
Facsimile:  (202) 383-5414
Email: tfink@omm.com
Email: preinbold@omm.com

Melissa R. Smith
Texas Bar No. 24001351
**GILLAM & SMITH, LLP**
303 South Washington Avenue
Marshall, Texas 75670
Telephone: (903) 934-8450

2

Appx253

Facsimile:  (903) 934-9257
Email: melissa@gillamsmithlaw.com

J. Travis Underwood
Texas Bar No. 24102587
**GILLAM & SMITH, LLP**
102 North College Avenue, Suite 800
Tyler, Texas 75702
Telephone: (903) 934-8450
Facsimile:  (903) 934-9257
Email: travis@gillamsmithlaw.com

*Attorneys for Defendants*
*Micron Technology, Inc., Micron Semiconductor*
*Products, Inc., and Micron Technology Texas, LLC*

3

Appx254

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a) on June 24, 2025.

*/s/ Melissa R. Smith*
_____
Melissa R. Smith

4

Appx255

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| BESANG, INC., <br><br> *Plaintiff* <br><br> v. <br><br> MICRON TECHNOLOGY, INC., <br> MICRON SEMICONDUCTOR <br> PRODUCTS, INC., and <br> MICRON TECHNOLOGY TEXAS, LLC, <br><br> *Defendants*. | Case No. 2:23-cv-00028-JRG-RSP <br><br> JURY TRIAL DEMANDED |

## DEFENDANTS' RESPONSIVE CLAIM CONSTRUCTION BRIEF

Appx256

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.   FACTUAL BACKGROUND ............................................................................. 2

    A.    The '702 Patent ....................................................................................... 2

    B.    The '702 and '941 Patents' Discussion of the Prior Art ......................... 4

        1.    The '702 Patent Criticizes Prior Art 3D ICs Formed By Stacking Substrate-Coupled Memory Layers As Inflexible ............................... 4

        2.    The '702 Patent Criticizes Prior Art Methods for *In Situ* Memory Layer Formation As Incompatible With Low Temperature Processing ......... 6

III.  DISPUTED TERMS ........................................................................................... 7

    A.    "stackable add-on layer" ......................................................................... 7

        1.    The Intrinsic Record Supports Micron's Proposed Construction ......... 8

        2.    The Intrinsic Record Distinguishes "Stacked" and "Stackable" ........ 14

        3.    The Patent Trial and Appeals Board Rendered the Same Construction As Micron Proposes Here After Reviewing the Same Intrinsic Evidence ................................................................................................ 16

        4.    BeSang's Arguments Lack Merit ....................................................... 19

    B.    "SOI pillar" ............................................................................................ 27

        1.    Micron's Construction Is Based on Patentee's Lexicography and Is Supported by Intrinsic Record ........................................................... 27

        2.    BeSang's Proposal is Inconsistent with the Intrinsic Record ............. 29

IV.   CONCLUSION ................................................................................................. 30

i

# TABLE OF AUTHORITIES

**Page**

## Cases

*Andersen Corp. v. Fiber Composites, LLC,*
    474 F.3d 1361 (Fed. Cir. 2007).................................................................. 12, 23

*Bicon, Inc. v. Straumann Co.,*
    441 F.3d 945 (Fed. Cir. 2006)......................................................................... 20

*CommScope Techs. LLC v. Dali Wireless Inc.,*
    10 F.4th 1289 (Fed. Cir. 2021) ....................................................................... 19

*E.I. du Pont De Nemours & Co. v. Unifrax I LLC,*
    921 F.3d 1060 (Fed. Cir. 2019)....................................................................... 27

*Finjan LLC v. ESET, LLC,*
    51 F.4th 1377 (Fed. Cir. 2022) ....................................................................... 26

*GPNE v. Apple Inc.,*
    830 F.3d 1365 (Fed. Cir. 2016).......................................................................... 8

*Hockerson-Halberstadt v. Avia,*
    222 F.3d 951 (Fed. Cir. 2000)......................................................................... 29

*Indivior Inc. v. Dr. Reddy's Lab'ys, S.A.,*
    752 F. App'x 1024 (Fed. Cir. 2018) ............................................................... 23

*Intel Corp. v. BeSang Inc.,*
    IPR2023-00991, Paper 40 (PTAB, Dec. 26, 2024)........................................ 16

*Irdeto Access, Inc. v. Echostar Satellite Corp.,*
    383 F.3d 1295 (Fed. Cir. 2004)....................................................................... 15

*Krippelz v. Ford,*
    667 F.3d 1261 (Fed. Cir. 2012)....................................................................... 29

*Kyocera Senco Indus. Tools Inc. v. Int'l Trade Comm'n,*
    22 F.4th 1369 (Fed. Cir. 2022) ....................................................................... 28

*Leseman, LLC v. Stratasys, Inc.,*
    730 F. App'x 912 (Fed. Cir. 2018) ................................................................. 14

*Medicines Co. v. Mylan, Inc.,*
    853 F.3d 1296 (Fed. Cir. 2017)....................................................................... 22

*Merck & Co. v. Teva Pharms. USA, Inc.,*
    395 F.3d 1364 (Fed. Cir. 2005)....................................................................... 10

Appx258

## TABLE OF AUTHORITIES

**(continued)**

**Page**

*Micron Tech., Inc. v. BeSang Inc.*, IPR2023-00900,
    Paper 35 (PTAB, Nov. 13, 2024) ........................................................................... 16

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
    521 F.3d 1351 (Fed. Cir. 2008) ............................................................................... 2

*Oyster Optics, LLC v. Cisco Sys., Inc.*,
    No. 2:20-CV-211-JRG, 2021 WL 1784378 (E.D. Tex. May 4, 2021) .................... 18

*ParkerVision, Inc. v. Vidal*,
    88 F.4th 969 (Fed. Cir. 2023) ................................................................................ 28

*Poly-Am., L.P. v. API Indus., Inc.*,
    839 F.3d 1131 (Fed. Cir. 2016) ............................................................................. 10

*SandBox Logistics LLC v. Proppant Express Invs. LLC*,
    813 F. App'x 548 (Fed. Cir. 2020) ........................................................................ 11

*SkinMedica, Inc. v. Histogen Inc.*,
    727 F.3d 1187 (Fed. Cir. 2013) ............................................................................. 28

*SRI Int. v. Matsushita Elec. Corp.*,
    775 F.2d 1107 (Fed. Cir. 1985) ............................................................................. 15

*Verizon Servs. Corp. v. Vonage Holdings Corp.*,
    503 F.3d 1295 (Fed. Cir. 2007) ............................................................................. 11

*Virnetx, Inc. v. Cisco Sys., Inc.*,
    767 F.3d 1308 (Fed. Cir. 2014) ............................................................................. 12

*Vitronics Corp. v. Conceptronic, Inc.*,
    90 F.3d 1576 (Fed. Cir. 1996) ............................................................................... 15

*Wasica Fin. GmbH v. Cont'l Auto. Sys., Inc.*,
    853 F.3d 1272 (Fed. Cir. 2017) ............................................................................. 20

*X2Y Attenuators, LLC v. U.S. Int'l Trade Comm'n*,
    757 F.3d 1358 (Fed. Cir. 2014) ........................................................................ 2, 26

Appx259

## I.      INTRODUCTION

At issue in this case are two core claim terms—"stackable add-on layer" and "SOI pillar"—each of which the intrinsic record defines with clarity, consistency, and technical precision.  BeSang's proposed constructions for both terms disregard that record and seek to broaden the claims to cover subject matter the patentee never invented and expressly disavowed.

The '702 Patent makes clear that a "stackable add-on layer" is a separately formed memory layer, fabricated independently from the substrate to which it is later bonded.  Separate fabrication is a critical feature of the alleged invention—it allows high-temperature processing steps to be completed before the layer is bonded to the separately fabricated substrate stack.  By decoupling fabrication from integration, the alleged invention protects the already-fabricated layers of the substrate stack from exposure to damaging high temperatures.  In contrast, the patent argues that *in situ* formation methods—such as laser recrystallization or epitaxial growth—necessarily subject the entire substrate stack to high-temperature operations, which the patentee expressly criticizes as "incompatible with the low temperature processing required for many semiconductor devices."  Ex. 1, '941 Patent, 1:63–2:2; '702 Patent, 1:7–10.  Micron's construction captures these essential features—formation separate from the substrate, and suitability for bonding because the layer has already been processed separately on a donor wafer.  An impartial three-judge Patent Trial and Appeals Board (PTAB) panel saw it the same way.  BeSang's construction, by contrast, conflates "stackable add-on layer" with "stacked layer," contrary to the specification's usage of those terms, and renders other express claim limitations superfluous.

As for "SOI pillar," the intrinsic evidence again provides a clear answer.  The patent defines "SOI" as referring to a single crystal portion of a semiconductor wafer that can be cleaved and bonded to another previously fabricated wafer—not just any silicon-on-insulator structure taller than it is wide, as BeSang proposes.  And the term "pillar," as used in the specification, refers to a

1

doped stack structure formed from that transferred SOI layer.  BeSang's construction ignores this context, stretches the term beyond the boundaries drawn by the specification, and defines the term in a manner contradictory to the patent's teachings.

As evident from the briefing in this case and from the PTAB proceedings, the parties disagree about the scope of these two claim terms.  "When the parties present a fundamental dispute regarding the scope of a claim term, it is the court's duty to resolve it."  *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008).  BeSang's "plain meaning" constructions are improper.  The Court should resolve the dispute by adopting Micron's constructions, which reflect the scope of the claimed subject matter, as actually described.

## II.     FACTUAL BACKGROUND

### A.     The '702 Patent

The '702 Patent was filed September 3, 2004, as a continuation-in-part of Application No. 10/873,696, filed June 21, 2004, and later issued as U.S. Patent No. 7,052,941 ("the '941 Patent"). The '702 Patent incorporates by reference the entirety of the '941 Patent's disclosure.  Dkt. 1-1, '702 Patent, 1:7-10.[1]

The '702 Patent describes a semiconductor memory architecture in which "[v]ertically oriented semiconductor memory cells are added to a separately fabricated substrate that includes electrical devices and/or interconnect." *Id*., Abstract.  As described in the "Summary of the Invention" and as illustrated in Figure 1 (annotated below), these vertically oriented memory cells 124 (each including n+, p, and n+) are formed "in a stackable add-on layer" that is "stacked and bonded" to a separately fabricated substrate.  *See, e.g.*, *id*., Abstract, 2:4-9, 5:11-17.

---

[1] Through this incorporation by reference, the '941 Patent's specification is "effectively part of" the '702 Patent "as if [it] were explicitly contained therein." *X2Y Attenuators, LLC v. U.S. Int'l Trade Comm'n*, 757 F.3d 1358, 1362–63 (Fed. Cir. 2014).

2

Fig. 1



The '702 Patent describes two approaches for implementing the stackable add-on layer. *See, e.g.*, '702 Patent, 1:47-2:3; Ex. 1, '941 Patent, 2:6-21 (same). In the first approach, a layer with vertically oriented doped semiconductor regions is bonded to the separately fabricated substrate and then etched to define the vertical memory cells. *See, e.g.*, '702 Patent, 1:57-62 ("[T]he plurality of vertically oriented semiconductor memory devices" may be added "as a thin layer including several doped semiconductor regions which, subsequent to attachment to the substrate, are etched to produce individual doped stack structures"); '941 Patent, 2:13-18 (same). In the second approach, a layer of "vertically oriented semiconductor memory cells may be fabricated prior to attachment to the separately fabricated substrate" as a completed unit. '702 Patent, 1:67-2:3; '941 Patent, 2:18-21 (same). Micron's construction covers both approaches.

In both cases, the vertical memory cells are formed from "a relatively thin, single crystal portion of a semiconductor wafer"—referred to as an "SOI [Silicon-On-Insulator] layer." '702 Patent, 4:45-57. This SOI layer may be "cleaved [from a donor wafer] and bonded to another previously fabricated wafer, or similar type of substrate, such that a three dimensional stack is formed from the SOI layer and the previously fabricated wafer, or similar type of substrate." *Id*. The incorporated '941 Patent describes further details of this process using Figures 4A through 4D. *See, e.g.*, Ex. 1, '941 Patent, 8:53-10:56. As annotated below, these figures depict a doped

3

SOI layer (Figure 4B) that is inverted and bonded to separately fabricated substrate 180 (Figure 4A), cleaved from substrate 190 (Figure 4C), then patterned by etching to define layer 104 of memory devices (Figure 4D).



The patterning of the SOI layer results in an "FLD layer" (layer 104 in Fig. 4D, above; layer 101 in '702 Patent), and the vertical memory devices formed therein are called "floating devices (FLDs)." *See, e.g.*, '702 Patent, 5:18–30. The '702 and '941 Patents use the term "stackable add-on layer" to refer to this layer in both its pre-patterned (SOI layer) and patterned (FLD layer) forms. *See, e.g.*, '702 Patent, 4:45–57, 4:57–62, 10:8–9.

**B.    The '702 and '941 Patents' Discussion of the Prior Art**

**1.    The '702 Patent Criticizes Prior Art 3D ICs Formed By Stacking Substrate-Coupled Memory Layers As Inflexible**

The '702 Patent, through its incorporation of the '941 Patent, acknowledges that three-dimensional integrated circuits ("3D ICs") were known in the art. *See, e.g.*, '702 Patent, 1:7–10 Ex. 1, '941 Patent, 1:13–52, Fig. 1. Figure 1 of the '941 Patent, reproduced and annotated below

4

left, illustrates one such applicant admitted prior art 3D IC implementation.[2]



**Comparison Between Prior Art 3D IC ('941 Patent, Fig. 1) and
the Patents' Disclosed 3D IC ('702 Patent, Fig. 1)**

The '941 Patent explains that prior art 3D ICs were constructed by stacking fully fabricated

ICs, each having its own semiconductor substrate (e.g., 201, 203) and overlying dielectric layers

(e.g., 202, 204).  *E.g.*, '941 Patent, 1:13-29, 6:36-39.  In this prior art 3D IC, the transistor devices

(e.g., 211, 212) within each IC layer "share an electrically common substrate 241, 242, or well

243," or, at minimum, are built on "a physically common semiconductor substrate."  *Id.*, 1:40-50.

The patentee identified this characteristic as a significant limitation—because each memory layer

was physically, if not also electrically, tied to its own substrate, it was not possible to implement

"bottom electrodes" for the memory devices in each stacked IC layer, nor to place "dielectric

layers, interconnection lines, and vias" below them.  Ex. 1., '941 Patent, 1:29-31, 1:50-52.

The '702 Patent's alleged innovation eliminates this constraint—namely, each memory

---

[2] The '941 Patent also acknowledges that vertical memory cells were well known.  *See, e.g.*, Ex. 1, '941 Patent, 8:31-35 (discussing "conventional vertical MOSFETs"), 15:41-45 (discussing "vertical MOSFETs of the prior art," including "[v]ertical transistors shown in U.S. Pat. No. 5,414,288 and U.S. Pat. No. 6,027,975"), 15:50-51 (discussing "Pillar type Surrounding Gate Transistor (SGT), shown in U.S. Pat. No. 6,337.247 and U.S. Pat. No. 6,449,186").  Thus, there can be no dispute that 3D stacking using vertical memory cells was well known.  BeSang's attempts to characterize the '702 Patent as disclosing a "paradigm shift" from 2D to 3D memory fabrication (Opening Br. at 9, n.4) are belied by the applicant's admitted prior art.

5

layer's dependence on its own substrate. The patent proposes a new design built around a separately fabricated memory layer that can be bonded to a device stack by itself, without having its own substrate. *E.g.*, '702 Patent, 5:22-29 (distinguishing the "present invention" from both "a conventional bonded IC layer, which has a shared well 142 or substrate 143, wherein an electrically common region is located," and from "a conventional SOI IC substrate where all devices in one IC layer are supported by a substrate under a bottom oxide"); '941 Patent, 6:64-7:4 (same), 2:8-12 (describing the alleged invention as providing "vertically oriented semiconductor devices … [that] are not disposed within the same semiconductor body, or semiconductor substrate"). By detaching the memory layer from its original substrate, the '702 Patent claims to enable a more modular, flexible 3D architecture—one that supports bottom electrodes for the memory devices within each layer and thus a "flexible interconnection scheme for a 3-D IC [that] is not possible in conventional approaches to forming 3-D ICs." '941 Patent, 12:40–47; *see also* '702 Patent, 6:26–29.

### 2. The '702 Patent Criticizes Prior Art Methods for *In Situ* Memory Layer Formation As Incompatible With Low Temperature Processing

The '702 Patent, through its incorporation of the '941 Patent, also acknowledges another prior art approach for forming 3D memory layers without coupled substrates—forming a second memory layer *in situ*, such as through sequential depositions, directly on an existing memory layer. *See* Ex. 1. '941 Patent, 1:53–62. The fabrication methods for this approach include, for example: (1) "laser recrystallization," where "a single crystalline semiconductor layer is formed by melting polycrystalline or amorphous semiconductor layer disposed on a dielectric layer using, for example, a laser," followed by device formation "using the single crystalline semiconductor layer, which was formed from the polycrystalline or amorphous layer," and (2) "epitaxial processes," where "a single crystalline epitaxial layer is grown on a dielectric layer where the dielectric layer has partially exposed holes therethrough to an underlying single crystalline layer." *Id.*; *see also*

6

Appx265

Opening Br., Ex. A, ¶ 44 (BeSang's expert referring to an "epitaxial process" as "deposition"). Both methods require sequential depositions directly on an existing memory layer without adding a separately fabricated structure.  However, the patent criticizes these *in situ* techniques as having "drawbacks" for (1) "requiring high-temperature operations," which the patent deems "incompatible with the low temperature processing required for many semiconductor devices," and (2) resulting in semiconductor layers with "many defects."  Ex. 1, '941 Patent, 1:63–2:2.

In contrast, the '702 Patent emphasizes that, in "the present invention," integrating stackable add-on layers into an existing substrate stack "do[es] not require a high temperature process" and "may be produced at low temperature."  '702 Patent, 7:15–32, 7:50–53; *see also* '941 Patent, 11:59–65.  The incorporated '941 Patent attributes this advantage to the separately formed stackable add-on layer, which undergoes high temperature processing—such as "heat treatment" and "ion implantation"—on a donor substrate apart from and before transfer and bonding to the substrate stack.  *E.g.,* '941 Patent, 11:49–59 (noting high temperature steps performed "*before the transfer* to [the] dielectric layer").[3]  Once transferred and bonded to a separately fabricated substrate, there is no need for further high temperature processing of the substrate stack.  *See id.*

## III.    DISPUTED TERMS

### A.    "stackable add-on layer"

| Term | BeSang's Proposed Construction | Micron's Proposed Construction |
|---|---|---|
| "stackable add-on layer" '702 Patent, Cl. 13 | Plain and ordinary meaning; or "a layer that can be arranged in a stack and positioned above the substrate" | "a layer formed separately from the substrate suitable to be bonded to the dielectric layer positioned above the substrate" |

The parties' dispute centers on whether the claimed "stackable add-on layer" must be a

---

[3] All emphasis added unless otherwise noted.

7

Appx266

separately formed layer. BeSang says no, arguing that the term encompasses a layer formed *in situ* by sequential deposition directly above the substrate. But that interpretation reads out part of the claim language—the claim requires a "stack*able* *add-on* layer," not merely a "stack*ed* layer." Micron's construction gives meaning to all words in the claim term—the word "stackable" indicates that the claimed layer is suitable to be stacked with another structure, and the word "add-on" indicates that the claimed layer is formed separately and added on to another structure.[4] The specification consistently describes the term as referring to a layer that is formed separately from the substrate and added on to it, and the intrinsic record criticizes and distinguishes a layer formed *in situ* above the substrate. The Court should adopt Micron's proposed construction.

1.     **The Intrinsic Record Supports Micron's Proposed Construction**

   a)     ***The Specification Consistently Uses "Stackable Add-On Layer" to Describe a Layer Formed Separately From "the substrate"***

The '702 Patent's specification "repeatedly and consistently" characterizes a "stackable add-on layer" as a layer of doped semiconductor regions—before or after etching to form memory cells[5]—formed separately from the substrate and that is suitable to be bonded to the dielectric layer positioned above the substrate. *See GPNE v. Apple Inc.*, 830 F.3d 1365, 1370 (Fed. Cir. 2016).

For instance, the Summary of the Invention states, "non-volatile memory cells, and similar structures may be formed in a *stackable add-on layer* for use *in conjunction with* the *separately fabricated substrate*." '702 Patent, 2:4-9. The specification further explains, "the semiconductor substrate and the stackable add-on layer *are stacked and bonded to each other*," confirming that

---

[4] Contrary to BeSang's assertion, Micron does not agree that the term "add-on" simply "refers to the location of the layer" within the stack. *See* Opening Brief at 9, n.4.

[5] In the pre-etching context, the *single* stackable add-on layer actually contains *multiple sub-layers* of doped semiconductor regions. *See, e.g.*, '702 Patent, 6:23-25 (stating the "transferred, unpatterned, SOI layer has only a vertically oriented stack of layers"). Thus, a single "stackable add-on layer" can comprise several constituent sub-layers. *See* Ex. 2 (PTAB FWD) at 12-13.

8

the two structures are independently formed, and then brought together (*i.e.*, "stacked") and joined (*i.e.*, "bonded"). '702 Patent, 5:15-17. This sequence is further detailed in the patent's discussion of an "SOI layer," which provides a concrete example of a "stackable add-on structure":

> "SOI layer" is used herein to refer to a relatively thin, single crystal portion of a semiconductor wafer that can be *cleaved and bonded to another previously fabricated wafer*, or similar type of substrate, such that a three dimensional stack is formed from the SOI layer and the previously fabricated wafer or similar type of substrate. *In this context,* the SOI layer may be thought of as *an attachment layer, or stackable add-on structure which is suitable for bonding to a semiconductor substrate* already containing devices and/or interconnections.

'702 Patent, 4:47-57; *id.*, 4:57-58 (referring to the SOI layer as "a stackable add-on layer"). This passage equates a "stackable add-on structure" with "an attachment layer," confirming that "stackable add-on layer" refers to a structure detached (or "cleaved") from its donor substrate, and then attached to "another previously fabricated wafer." *Id.*, 4:47-57. This explanation confirms that the "stackable add-on layer" is formed separately from the substrate to which it is bonded.

Further, the specification explains that "the stackable add-on layer may provide a plurality of memory cells" suitable to be bonded to a separately fabricated substrate. '702 Patent, 4:57-5:7. And the patent consistently refers to the memory cell layers depicted in its figures—all of which are separately formed and bonded—as "stackable add-on layer[s]." *See, e.g.*, '702 Patent, 10:9 (referring to floating device (FLD) layer 101 as "stackable add-on layer 101"); Fig. 4, 8:5-7 (referring to Fig. 4 as depicting "stackable add-on layer"); *id.*, Fig. 12, 8:43-45 (same); *id.*, Fig. 14, 8:50-52 (same); *id.*, Fig. 16, 8:58-60 (same); *id.*, Fig. 18, 8:65-9:2 (same); *id.*, Fig. 20, 9:10-14 (same); *id.*, Fig. 23, 9:24-17 (same); *id.*, Fig. 25, 9:36-40 (same); *id.*, Fig. 27, 9:51-54 (same); *id.*, Fig. 29, 9:59-61 (same); *id.*, Fig. 31, 9:65-67 (same).

Micron's proposed construction is supported by the specification's consistent usage of the term "stackable add-on layer" to describe a separately fabricated layer of memory cells or doped regions. And it gives proper meaning to the claim language "add-on"—as a layer formed

9

separately and added on to the substrate. *See Merck & Co. v. Teva Pharms. USA, Inc.*, 395 F.3d 1364, 1372 (Fed. Cir. 2005) (prefer "construction that gives meaning to all the terms" in claim").

### b)   *A Separately Fabricated Memory Layer is a Feature of Every Disclosed Embodiment*

Not only does Micron's construction for "stackable add-on layer" reflect that term's consistent usage throughout the '702 specification, it also captures a feature that is in *every* disclosed embodiment—the formation of a doped semiconductor memory layer separate from the substrate to which it is then bonded. *See Poly-Am., L.P. v. API Indus., Inc.*, 839 F.3d 1131, 1137 (Fed. Cir. 2016) (construing claim based on disclosed embodiments, where "[e]very embodiment ... and every section of the specification" describes the invention one way).

Every embodiment involves a layer formed apart from, and then bonded to, a separately fabricated substrate.  The Abstract, for instance, highlights the requirement for "[v]ertically oriented semiconductor memory cells [that] are *added to a separately fabricated substrate*," and describes two methods by which this may be achieved.  '702 Abstract.  The '702's "Summary" reinforces this requirement, describing each "aspect" of the "present invention" as involving a memory layer—either doped but unpatterned, or fully fabricated—formed apart from and then bonded to the substrate.  *See* '702 Patent, 1:57-62 ("In one aspect of the *present invention*, the plurality of vertically oriented semiconductor memory devices, or cells, are *added to the separately fabricated substrate* as a thin layer including several doped semiconductor regions...."), 1:67-2:3 ("In other embodiments of the *present invention*, the plurality of vertically oriented semiconductor memory cells may be fabricated prior to *attachment to the separately fabricated substrate*."), 2:4-9 ("In another aspect of the *present invention*, ... non-volatile memory cells, and similar structures may be formed in *a stackable add-on layer* for use *in conjunction with the separately fabricated substrate*.").  The patentee's description of the "present invention" can limit claim scope.  *See*

10

*Verizon Servs. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1308 (Fed. Cir. 2007).  Here, the '702 Patent's description for every embodiment of the "present invention" requires adding a layer to a "separately fabricated substrate," which further supports Micron's construction.

This same feature pervades the embodiments described throughout the Detailed Description.  *See, e.g.*, '702 Patent, 4:47-60 ("[T]he SOI layer may be thought of as an attachment layer, or *stackable add-on structure* which is *suitable for bonding to a semiconductor substrate* already containing devices and/or interconnections."), 5:15-17 ("[T]he semiconductor substrate and the stackable add-on layer are *stacked and bonded* to each other."), 6:23-25 ("The *transferred*, unpatterned, SOI layer has [] a vertically oriented stack of layers.").

Nowhere does the '702 Patent describe an embodiment that does not rely on a separately fabricated memory layer.  BeSang's Opening Brief confirms as much.  BeSang cannot identify a single embodiment of a "stackable add-on layer" that is not formed separately from the substrate. *See* Opening Br. at 17.  Instead, BeSang relies on the patent's generic boilerplate statement that "various particular features, structures, operations, or characteristics may be combined in any suitable manner in one or more embodiments."  *Id.* at 19 (citing '702 Patent, 4:1-4).  But that language cannot override the specification's repeated characterization of the "present invention" as a separately fabricated, subsequently bonded memory layer.  *See, e.g.*, *SandBox Logistics LLC v. Proppant Express Invs. LLC*, 813 F. App'x 548, 553 n.8 (Fed. Cir. 2020) ("boilerplate language … not sufficient to overcome the explicit description of the 'present invention'").  BeSang also points to the Abstract's first approach as allegedly excluded by Micron's construction.  Opening Br. at 18 (citing Abstract).  BeSang's argument is refuted by the patent's explicit disclosure—the Abstract's first approach requires adding "a thin layer" of doped semiconductor regions "to the *separately fabricated* substrate" through an "*attachment*" process.  '702 Patent, Abstract.  The first

11

approach is therefore within the scope of Micron's proposed construction.

The '702 Patent makes unmistakably clear—by including the feature of a separately fabricated memory layer in every embodiment described across the Abstract, Summary, Detailed Description, and Figures—that the claimed subject matter requires a semiconductor memory layer formed separately from the substrate and then bonded to it.  This defining feature is not merely exemplary, but central to what the patent teaches.  As the Federal Circuit has recognized, where the specification "repeatedly and consistently" characterizes the alleged invention to include a particular feature, that characterization "strongly suggests" the feature must be read as part of the claim. *See Virnetx, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1318 (Fed. Cir. 2014) (quotations omitted).  That is the case here—and Micron's proposed construction reflects this core aspect.

### *c)   The Patent Disclaims In Situ Memory Layer Formation and Establishes that Separate Fabrication is Essential*

The three-judge PTAB panel noted, "we are directed to no embodiment of the '702 Patent wherein layers that are sequentially deposited on the substrate are identified as a "stackable add-on layer." Ex. 2 (IPR FWD) at 12.  In fact, the '702 Patent disclaims memory layers formed *in situ* through sequential depositions.  The incorporated '941 Patent makes clear that the advantages of the alleged invention are made possible *only* through use of the separately formed stackable add-on layer.  *See, e.g.*, *Andersen Corp. v. Fiber Composites, LLC*, 474 F.3d 1361, 1375 (Fed. Cir. 2007) (explaining that, where "the patentee has made clear that [] process steps are an essential part of the claimed invention," it is entirely appropriate to treat those process steps "as part of a product claim").  Micron's construction appropriately excludes the disclaimed *in situ* approach.

The '941 Patent explains that it sought to address a specific structural limitation of "prior art 3-D IC implementations"—namely, that each memory layer was tied to its own semiconductor substrate.  *See, e.g.*, Ex. 1, '941 Patent, 1:13-2:2.  The '941 Patent purports to eliminate this

12

requirement by detaching the memory layers from their respective substrates. *See, e.g., id.*, 2:8-12, 6:64-7:4 ("Embodiments of the present invention are different from a conventional bonded IC layer" because the memory layers do not have an electrically and/or physically shared substrate).



**Comparison Between Prior Art 3D IC ('941 Patent, Fig. 1) and
the Patents' Disclosed 3D IC ('702 Patent, Fig. 1)**

The '941 Patent acknowledged that there are two approaches to achieving this decoupling: (1) fabricating the semiconductor memory layer on a donor substrate, and then detaching that layer and bonding it to a separately fabricated substrate, *see, e.g.,* Ex. 1, '941 Patent, 6:7-17; '702 Patent, 4:48-57; or (2) forming the memory layer *in situ* through sequential depositions directly on top of an existing IC layer on a substrate, *see* Ex. 1, '941 Patent, 1:53-62. The '941 Patent denigrates and thus disclaims the second approach, explaining that *in situ* formation techniques—such as laser recrystallization and epitaxial growth—"have drawbacks" insofar as they "requir[e] high temperature operations," and thus are "*incompatible* with the low temperature processing *required* for many semiconductor devices." Ex. 1, '941 Patent, 1:63–2:2; *see also id.*, 15:41-48 (criticizing prior art "[v]ertical transistors" "formed by epitaxial growth at exposed single crystalline region" as "not good for low temperature semiconductor processing," "[b]ecause this technology requires difficult manufacturing technologies and high temperature operation for epitaxial growth").

In contrast, the '702 Patent explains that its stackable add-on layers do not suffer from the

13

temperature incompatibility issue that renders *in situ* layer formation inferior, and touts the benefits of low temperature processing. *See, e.g.*, '702 Patent, 7:23–32 ("FLD architecture does not require a high temperature process," enabling use of "high-k materials"), 7:50–53 ("the FLD may be produced at low temperature," enabling the use of "a metal gate"); *see also* '941 Patent, 11:59–65 ("embodiments of the invention do not require a high temperature process"). The '702 Patent claims to avoid temperature incompatibility because the high temperature processes needed to form the stackable add-on layers are performed before the layer is bonded to the separately fabricated substrate. *See* '941 Patent, 11:49–59 (high temperature processing steps occur "*before the transfer* to [the] dielectric layer"). No high-temperature steps are required after integration of the layer into the separately fabricated stack, avoiding damage to devices in underlying layers. *Id*.

In *Leseman, LLC v. Stratasys, Inc*., the Federal Circuit found that the scope of a claim term excludes an approach "that the specification criticizes." 730 F. App'x 912, 915 (Fed. Cir. 2018). Moreover, the Court found that the "specification's use of 'present invention' language to distinguish" the criticized approach further weighs in favor of excluding that approach from the claim scope. *Id*. The same rationale applies here—the '702 Patent criticizes using *in situ*, sequential depositions to form multiple memory layers, and it touts the benefits of a separately formed stackable add-on layer over this disparaged approach. Accordingly, the scope of "stackable add-on layer" cannot encompass this disclaimed approach. Micron's construction defines the term to reflect this disclaimer, while BeSang's overbroad construction incorrectly attempts to capture the disclaimed *in situ*, sequential deposition approach.

### 2. The Intrinsic Record Distinguishes "Stacked" and "Stackable"

The phrase "stackable add-on layer" is not a term of art—it is a coined term that does not have a plain meaning outside of the context of the '702 Patent, within which its meaning is clear. Absent an accepted meaning in the art, "we construe a claim term only as broadly as provided for

14

Appx273

by the patent itself." *Irdeto Access, Inc. v. Echostar Satellite Corp.*, 383 F.3d 1295, 1300 (Fed. Cir. 2004). There is no reason to consider extrinsic evidence—especially evidence tied to the accused products. *See Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996) (where intrinsic evidence renders meaning clear, "it is improper to rely on extrinsic evidence"); *SRI Int. v. Matsushita Elec. Corp.*, 775 F.2d 1107 (Fed. Cir. 1985) (claims to be "*construed without reference to the accused device*" (emphasis original)). Nevertheless, BeSang cites various extrinsic sources that use the words "stackable," "stacked," "stacking," and "add-on" in isolation, often in contexts different from the '702 Patent. Opening Br. at 10. But BeSang has not identified a single instance in the extrinsic evidence where the full phrase—"stackable add-on layer"—or even the truncated phrase "stackable add-on" was used. That void is telling—it underscores the inventor's choice to describe his memory layer using this precise, compound phrase.

The Court should reject BeSang's attempt to use extrinsic evidence to blur the lines between "stackable" and "stacked." The '702 Patent clearly differentiates "stackable" from "stacked" structures. For example, the patent states, "[m]ultiple memory cells may be vertically stacked, either in a single stackable add-on layer, or in two or more *stacked stackable add-on layers*." '702 Patent, 10:33–35. Thus, the specification uses "stackable" to denote a layer separately fabricated and suitable to be bonded to a stack, while using "stacked" to refer to structures placed on top of each other. The specification's language of "stacked stackable" makes no sense if "stackable" and "stacked" have the same meaning, as BeSang contends with its construction. The use of the phrase "stacked stackable layers" underscores the distinction between a layer's capability to be stacked and its incorporation into a stack, confirming the term "stackable add-on layer" refers to a separately formed component that is later bonded to the substrate.

If anything, the ambiguity BeSang attributes to industry usage only highlights the clarity

15

Appx274

of the patentee's chosen terminology.  Patentee's decision to claim a "stackable add-on layer," rather than simply a "stacked layer," reflects an intent to convey a more precise meaning.  And the inclusion of "add-on" reinforces that the layer is not merely one element within a stacked structure, but a separately fabricated layer suitable for addition to another structure.  Patentee's selected phrase "stackable add-on layer"—rather than terminology that suggests being part of a stack—signals an intent to confine the claims to separate fabrication and subsequent addition to a substrate.

> **3.    The Patent Trial and Appeals Board Rendered the Same Construction As Micron Proposes Here After Reviewing the Same Intrinsic Evidence**

In two separate PTAB proceedings—one filed by Micron and one by Intel—a three-judge PTAB panel construed the "stackable add-on layer" term of the '702 Patent as "a layer that is formed separately from the substrate and then bonded to the dielectric layer positioned above the substrate"—identical to Micron's proposed construction here.  *See Micron Tech., Inc. v. BeSang Inc.*, No. IPR2023-00900, Paper 35 at 12 (PTAB, Nov. 13, 2024) (Ex. 2); *Intel Corp. v. BeSang Inc.*, No. IPR2023-00991, Paper 39 at 13-14 (PTAB, Dec. 26, 2024) (Ex. 3).  PTAB rejected BeSang's broad interpretation of this term to cover layers formed entirely in place, on the substrate, explaining that "[w]e do not understand a 'stackable add-on layer' to include memory cells that are formed by sequential deposition on or above a substrate without being added to a separately formed substrate."  Ex. 2 at 12; Ex. 3 at 14.

PTAB provided detailed reasoning for its decision.  PTAB explained that: (1) its construction is supported by "the plain language of the claim," which "does not require merely a 'layer' having a plurality of vertically oriented semiconductor memory cells, but rather 'a stackable add-on layer'" having such memory cells; (2) in "both of [the two] methods" that the '702 Patent discloses for making a "stackable add-on layer," "the memory cells are added as a layer to a separately fabricated substrate"; (3) the specification's explanation that "the SOI layer may be

16

thought of as an attachment layer, or stackable add-on structure" by "cleav[ing] and bond[ing] [it] to another previously fabricated wafer" further supports construing the term "stackable add-on layer" as "a layer that is formed separately from the semiconductor substrate and then bonded to the substrate that already contains devices and/or interconnections"; and, (4) "we are directed to no embodiment of the '702 patent wherein layers that are sequentially deposited on the substrate are identified as a 'stackable add-on layer.'" *See* Ex. 2 (PTAB FWD) at 11-12.

PTAB then upheld the challenged claims based on its construction of a "stackable add-on layer." PTAB considered, but distinguished, prior art disclosing stacked, vertically oriented memory devices formed by sequential deposition on or above a substrate because that prior art failed to disclose or render obvious a "stackable add-on layer" formed separately from the substrate and then bonded to it. *See, e.g.*, *id.* at 18, 34-35. PTAB further concluded that a prior art reference in which vertical "memory devices are formed by sequential deposition"—i.e., an *in situ* manufacturing process directly on the substrate without separate fabrication—was outside the '702 claim scope and thus could not render the claims obvious. *Id.* at 18. PTAB also rejected another prior art reference because it "was not enabled for bonding" a layer that is formed separately from the substrate. *Id.* at 28-36. In short, the claims asserted in this case survived IPR only because of PTAB's construction of the "stackable add-on layer" term.

Moreover, PTAB's Final Written Decision in the Micron IPR relied upon an alleged benefit of the "stackable add-on layer"—its ability to avoid high-temperature processing, which BeSang relied upon extensively to distinguish the prior art. *See id.* at 35 (rejecting prior art ground that "relies upon a bonding temperature at or above 900° C," and explaining that "the '702 patent expressly states that its processing temperature must not exceed 650° C"). And BeSang repeatedly relied on this low-temperature feature of the alleged invention to distinguish prior art. *See, e.g.*,

17

Ex. 4 (IPR POR) at 1 ("The '702 Patent told the world how to build its architecture with low-temperature processing …"); 2 (distinguishing Grounds 5-6 for requiring "high temperature bonding"); 6 ("Compared to the high-temperature devices at the time, the '702 Patent recognized the benefits of manufacturing its 3D integrated circuits at low process temperatures …"); 21 (distinguishing prior art for using "high-temperature bonding"); 24–25 (same); 26–27 ("the '702 Patent expressly provides for low temperature processing to avoid this issue").

Having successfully distinguished the prior art by relying on the low-temperature benefit of the alleged invention, BeSang now attempts to walk back the positions it took during the IPRs and assert that the patent covers any 3D memory stack—including high temperature processing required for *in situ* formation.  But the '702 Patent makes clear that this low-temperature compatibility is a direct consequence of the separately formed nature of the stackable add-on layer. *See, e.g.*, Ex. 1, '941 Patent, 11:49–59 (explaining that high temperature steps are performed "*before the transfer* to [the] dielectric layer," thus avoiding such steps after stacking). Accordingly, this low-temperature feature is possible only if the "stackable add-on layer" is formed separately from the substrate to which it is bonded.  The incorporated patent specification criticizes *in situ*, sequential deposition techniques for "requiring high-temperature operations" and being "incompatible with the low temperature processing required for many semiconductor devices." '941 Patent, 1:63–2:2.  Thus, the Court should reject BeSang's attempt to capture the high-temperature *in situ* approach encompassed by BeSang's proposed construction.

PTAB applied well-established claim construction principles to the intrinsic record and reached the same conclusion that Micron urges here.  The Court should consider PTAB's reasoning in construing the term.  *See, e.g.*, *Oyster Optics, LLC v. Cisco Sys., Inc.*, No. 2:20-CV-211-JRG, 2021 WL 1784378, at *19 (E.D. Tex. May 4, 2021) (explaining that PTAB's claim interpretation

18

Appx277

"is persuasive when considered in light of the claim language and the … intrinsic evidence"). In contrast, BeSang's broad construction not only contradicts PTAB's holding, it would also allow BeSang to recapture prior art distinguished during the IPR and would produce inconsistent results. It is axiomatic that claims must be interpreted the same for infringement as they are for validity. *See, e.g., CommScope Techs. LLC v. Dali Wireless Inc.*, 10 F.4th 1289, 1299 (Fed. Cir. 2021).

### 4. BeSang's Arguments Lack Merit

#### a) BeSang's Proposal Reads "Stackable" and "Add-On" Out of the Claims

BeSang's proposed construction fails to give any meaning to "stackable add-on" and renders the claim language superfluous. Claim 13 recites a "semiconductor memory structure" comprising the following structural components:

- "a substrate having electrical devices formed therein";
- "a dielectric layer disposed above the electrical devices [of the substrate]"; and
- "a stackable add-on layer having a plurality of vertically oriented semiconductor memory cells."

The claim language describes the relative positioning of these components—the dielectric layer is located above the electrical devices formed in the substrate, and the "stackable add-on layer" is bonded to the dielectric layer—placing it structurally above the substrate. The annotated figure below illustrates how each structural component of Claim 13 maps to Figure 1 ('702 Patent):



13. A semiconductor memory structure, comprising:
    a substrate having electrical devices formed therein, and further having a dielectric layer disposed above the electrical devices;
    a stackable add-on layer having a plurality of vertically oriented semiconductor memory cells; and
    the stackable add-on layer being bonded to the dielectric layer; and
    wherein the memory cells are nonvolatile memory cells having at least one transistor.

19

BeSang's proposed construction—"a layer that can be arranged in a stack and positioned above a substrate"—simply restates what is already required by other claim language. For example, the claim language requires "the stackable add-on layer being bonded to the dielectric layer," which already requires "a layer that can be arranged in a stack and positioned above a substrate." BeSang's proposal adds nothing and renders the "stackable add-on" term redundant of other claim language—a disfavored result. *See, e.g.*, *Wasica Fin. GmbH v. Cont'l Auto. Sys., Inc.*, 853 F.3d 1272, 1288 n.10 (Fed. Cir. 2017) (disfavored to "construe terms in a way that renders them void, meaningless, or superfluous."); *Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 950 (Fed. Cir. 2006) (claims interpreted to give "effect to all terms in the claim." (citations omitted)).

### *b)    Micron's Position Has Remained Consistent*

BeSang's account of the IPR proceedings makes for a dramatic read. But the actual record is far less colorful.[6] Micron has maintained a consistent position while BeSang is advocating for a broad claim construction after having benefited from a narrow construction during the IPR.

Micron's IPR petition did not engage in "gamesmanship" nor has "Micron's position on stackable add-on layer [] been a moving target." Opening Br. at 13-14. During the IPR, Micron presented two invalidity grounds—one assuming a broader interpretation that encompassed *in situ* formation—based on the position BeSang took in its infringement contentions—and another ground applying the proper construction that the "stackable add-on layer" must be formed separately and later bonded. Because the prior art disclosed both approaches, Micron stated that

---

[6] As another example, BeSang accuses Micron's counsel of withholding evidence in an attempt to excuse BeSang's failure to identify on its extrinsic evidence disclosure a publicly-available presentation given by Micron employee Jonathan Shaw. Opening Br. at 12, n.6. In reality, Mr. Shaw showed the presentation to Micron's counsel only two days before Mr. Shaw's deposition, and Micron produced the document following the deposition. Notably, BeSang was well aware of this presentation before Mr. Shaw's deposition—BeSang used it as an exhibit. And, BeSang noticed Mr. Shaw's deposition only two days after submitting its extrinsic evidence list, but did not supplement its extrinsic evidence disclosure.

no claim construction was required for purposes of the IPR institution.  Ex. 5 (IPR Pet.) at 12-13.  But Micron also clearly stated its position that a "stackable add-on layer" must be separately fabricated, not formed by sequential deposition, and Micron reserved its rights to argue in district court that the claim term does not cover *in situ* formation.  *Id.* at 6, n.2, 13, n.3.  PTAB then explicitly requested the parties construe this term (Ex. 6 (Inst. Decision) at 9, n.5)—Micron did so (Ex. 7 (Pet. Reply) at 4-6).  PTAB agreed with Micron's position, concluding that a "stackable add-on layer" must be formed separately—not formed by sequential deposition on or above a single substrate.  That's not a tale of deception—it's a record of procedural integrity.

While BeSang is quick to accuse others of gamesmanship, BeSang ignored PTAB's request for an express construction.  BeSang apparently intended to rely on PTAB's construction to distinguish the *in-situ* prior art,[7] but now proposes a different, litigation-driven claim construction here.  Having survived IPR based on PTAB's construction, BeSang attempts to backtrack and advocates for a broader construction that encompasses the prior art it distinguished during the IPR, namely 3D vertical memory cells made *in situ*.  Micron's position has remained consistent, while BeSang hopes to rely on different claim constructions for purposes of invalidity and infringement.

c)   ***Micron's Construction Does Not Conceal a Negative Limitation***

BeSang's argument that Micron's construction is an attempt to conceal a "disfavored negative limitation" is baseless.  *See* Opening Br. at 14-16.  Any construction that defines the bounds of a claim term necessarily excludes scope outside of that definition.  For example, defining

---

[7] In the IPR, BeSang embraced Micron's expert's construction, ultimately adopted by PTAB and proposed by Micron here, in arguing that the prior art of Lee, U.S. Patent No. 6,881,994, does not satisfy Claim 13.  Ex. 4 (POR) at 49 ("Even Micron's expert Dr. Lee acknowledges that Lee does not satisfy Claim 13 (and thus its dependents) *based on the claim construction he advocates*.").  BeSang's footnote statement, "BeSang does not concur with, nor is it relying upon, the proposed claim construction put forth by Micron and its expert," is plainly doublespeak as BeSang relied on Micron's proposed construction to distinguish the Lee prior art.

21

a "prefabricated wall" as one constructed off-site and later installed necessarily excludes brick-by-brick construction on-site. But a construction that excludes walls built in place does not indicate a negative limitation—it's simply what the term means. Likewise, a "stackable add-on layer" is a layer formed separately from the substrate to which it is then bonded—it is not a layer formed directly on the substrate. Separate fabrication of the stackable add-on layer is the foundational concept the '702 Patent consistently describes and contrasts with conventional approaches. The intrinsic record makes this abundantly clear. *See* Section III.A.1. The scope of the asserted claims cannot encompass a layer formed on the substrate via sequential deposition, laser recrystallization, or any other *in situ* method, since those methods were disclaimed. *See, e.g.*, '941 Patent, 1:53–62.

### a) *Micron's Proposal Reflects Features that the Intrinsic Evidence Confirms Are Essential*

Contrary to BeSang's accusations (Opening Br. at 19-20), Micron is not improperly importing process requirements into a structural claim. Rather, Micron is construing the term based on the claim language and the intrinsic evidence.

First, the Federal Circuit has repeatedly held that it is appropriate to construe claim terms in a way that reflects process-based characteristics where the claim language itself invokes or is defined by such a process. For instance, in *Medicines Co. v. Mylan, Inc.*, the Court upheld a construction of the term "batches" that included a compounding process (specifically, "efficient mixing"), reasoning that the specification tied "batches" to the process used to make them. 853 F.3d 1296, 1304 (Fed. Cir. 2017). The Court emphasized that it was "not impermissibly add[ing] a process limitation to a product claim that does not require a process because the specification's definition of 'batches' by itself injects a compounding process as a limitation in the asserted claims." *Id.* Similarly, in *Indivior Inc. v. Dr. Reddy's Lab'ys, S.A.*, the Court explained that "we are not impermissibly adding a process limitation to a product claim that does not require a process

22

because here, the claim term 'continuously cast film' does require a process—the film is made through continuous casting." 752 F. App'x 1024, 1032–34 (Fed. Cir. 2018). For the same reason, the '702 Patent defines a "stackable add-on layer" by the method with which it is made, and the term uses "add-on" to indicate that the layer is formed separately and added on to a substrate.

Second, as explained in Section III.A.1, the separately fabricated nature of the "stackable add-on layer" is not simply a detail of preferred embodiments, but rather an essential feature of the alleged invention, given the patentee's criticism of *in situ* layer formation methods. *See* Ex. 1, '941 Patent, 1:63–2:2. Under similar circumstances, courts have consistently held that claims must be interpreted to reflect disavowal of the criticized approach. For instance, in *Andersen*, the Federal Circuit rejected the patentee's argument that the novelty of his inventions "lies in the physical properties of those inventions" because the patent specification "indicates that the claimed physical properties of the composite structural members are attributable to the process that is used to make them, a process that includes pelletization." 474 F.3d at 1371-1372. Accordingly, the Court limited "a composite structural member" to that "in which the preparation of the composite composition includes an intermediate step of pelletization or linear extrusion," as the specification explained was required. *Id*. at 1375. Similarly, the '702 Patent's intrinsic record indicates that a specific process is *essential* to the claimed memory device—the "stackable add-on layer" must be formed separately before it is integrated into the device through bonding.

Third, Micron's construction does not necessarily import a process limitation because there are physical differences between a "stackable add-on layer" separately fabricated and a stacked layer constructed using other processes. The intrinsic record confirms such physical distinctions. *See, e.g.*, Ex. 1, '941 Patent, 1:13-52 (explaining that stacked devices not using a "stackable add-on layer" share a substrate and lack "bottom electrodes"); 1:63–2:2 (explaining that stacked

23

devices not using a "stackable add-on layer" have "many defects"); *see also* Ex. 7 (Pet. Reply), 6-8.  BeSang's criticism of Micron's construction is legally unsupported and factually wrong.

### *ε)*    *Micron's Proposed Construction Does Not Exclude Any Disclosed Embodiments*

BeSang assets that Micron's proposed construction excludes several embodiments.  Opening Br. at 17-18.  BeSang's arguments misstate Micron's construction.

First, BeSang asserts that "Micron's proposal improperly excludes sequential deposition processing techniques all together," including techniques described in the '702 Patent for purposes other than *in situ* memory layer formation.  *Id.* at 17.  Not so.  Micron's construction allows the use of sequential deposition to form the doped semiconductor regions of the layer *before transfer* onto the substrate (*see* '702 Patent, 6:66-7:6; Ex. 1, '941 Patent, 9:19-24), and allows the use of sequential deposition to form any dielectric materials *after layer transfer* (*see* '702 Patent, 7:15-35).  Micron's construction simply requires a "stackable add-on layer" to be formed separately from the substrate—without restriction on how it is formed—such that it is suitable to be bonded to the dielectric layer positioned above the substrate.  Micron's proposed construction *does* exclude memory layers formed directly on the substrate, *in situ*, without being separately fabricated and bonded.  That approach is expressly disclaimed.  *See* Ex. 1, '941 Patent, 1:63–2:2; 15:41-48.

Second, BeSang asserts that Micron's proposal excludes one of the two main embodiments described in the specification, wherein "[t]he plurality of vertically oriented semiconductor memory cells [are] added to the separately fabricated substrate as a thin layer including several doped semiconductor regions which, subsequent to attachment, are etched to produce individual doped stack structures," rather than being completely fabricated before attachment.  Opening Br. at 17-18 (excerpting '702 Patent, Abstract).  Once again, BeSang misconstrues Micron's position as requiring a "stackable add-on layer" to be "completely fabricated" prior to transfer.  *Id.* at 18.

24

Micron's construction contains no such requirement—it only mandates that the stackable add-on layer be separately fabricated to the point where it is "suitable to be bonded to the dielectric." There is no restriction on further processing after bonding. As PTAB has already found, Micron's construction captures all embodiments of the '702 Patent. *See* Ex. 2 (FWD) at 11 ("In both of these methods, the memory cells are added as a layer to a separately fabricated substrate.")

Third, BeSang argues that "Micron's construction … excludes embodiments where a stackable add-on layer is not bonded to the dielectric layer but is instead bonded to an adjacent stackable add-on layer." Opening Br. at 18. Not so. Micron's construction merely requires that the stackable add-on layer be "suitable for bonding to the dielectric layer positioned above the substrate." That suitability does not preclude the layer from being bonded to a *different* dielectric layer—such as one above an intervening memory layer.[8] Thus, BeSang's arguments all lack merit.

### j)    *The File History Does Not Support BeSang's Proposal*

BeSang contends the '702 prosecution history "compels the conclusion that claim 13's structure should not be construed to require (or forbid) particular manufacturing steps." Opening Br. at 20. BeSang argues that differences in emphasis between the '702 Patent and its parent, the '941 Patent, demonstrate that "the inventions of both patents are indeed different." *Id.* at 20–21.

BeSang's argument misstates the intrinsic record. As a preliminary matter, the '941 Patent is not simply the '702 Patent's parent application—the '941 Patent's disclosures are part of the '702 Patent's specification. The '702 Patent expressly states that the application for the '941 Patent "is incorporated in its entirety herein by reference." '702 Patent, 1:7-10. Accordingly, the '941 Patent's specification is "effectively part of" the '702 Patent, "as if [it] were explicitly contained

---

[8] While Micron's construction of "stackable add-on layer" does not require the layer to be bonded to a specific dielectric layer, other claim language may require a specific dielectric layer. For example, the surrounding claim language of Claim 13 requires that "the stackable add-on layer being bonded to *the* dielectric layer [*i.e.*, above the electrical devices in the substrate]."

therein." *X2Y Attenuators*, 757 F.3d at 1362–63.[9]  Thus, the '941 Patent's teachings must be considered for claim construction, just like any other part of the '702 Patent's specification.

Nor does BeSang's argument find support in the intrinsic record.  The '702 Patent repeatedly refers to its stackable add-on layer as having been formed separately from the substrate, using language that matches the fabrication processes detailed in the '941 Patent.  *Compare* '702 Patent, Abstract, 1:47-2:9 (Summary), 4:47-5:7 ("SOI layer" as "stackable add-on layer") *with* '941 Patent, Abstract, 2:6-26 (Summary), 6:6-28 ("SOI layer" as "stackable add-on layer").  Nowhere does the '702 Patent disclaim the '941 Patent's teachings or suggest that the inventor intended to embrace the approaches criticized by the '941 Patent.  To the contrary, the '702 Patent extols the same "low temperature" processing benefits that the '941 Patent links to use of a separately formed memory layer.  *E.g.*, '941 Patent, 1:63–2:2; '702 Patent, 7:30-35, 7:50-53.

Far from indicating a departure from the manufacturing methods disclosed in the '941 Patent, the '702 Patent embraces them—building on that technical foundation to describe different architectural variations that can purportedly be achieved using the separately fabricated memory layer.  Thus, the incorporated '941 Patent is plainly relevant for construing the scope of "stackable add-on layer."  *See, e.g.*, *Finjan LLC v. ESET, LLC*, 51 F.4th 1377, 1382 (Fed. Cir. 2022) ("Claims

---

[9] In the background section of its brief, BeSang also points to a restriction requirement during prosecution of the '941 Patent, hoping to distance itself from its harmful admissions.  Opening Br. at 5.  That grossly over-reads the record.  First, the Examiner rejected the '702 claims for obviousness-type double patenting because the '702 claims were not patentably distinct from the '941.  *See* Ex. 8 ('702 File History, 3/1/2006 OA) at 3.  BeSang acquiesced and filed a terminal disclaimer.  *See* Ex. 9 ('702 File History, 7/27/2006 Term. Disclaimer).  Second, the Examiner issued the restriction requirement because the method of original claim 1 could be used to manufacture a materially different product than the one claimed.  *See* Opening Br., Ex. C at 67 (examiner explaining that claim 1 "can be used to fabricate a semiconductor device wherein the second doped region *is provided* with a direct electrical contact that is a materially different device from claim 20 with a second doped region that *is not provided* with a direct electrical contact").  This restriction requirement does not differentiate the alleged inventions in the two patents.

must be read in light of the specification.  That includes any patents incorporated by reference.") (internal citation omitted); *E.I. du Pont De Nemours & Co. v. Unifrax I LLC*, 921 F.3d 1060, 1070 (Fed. Cir. 2019) (statement in parent "involving 'common subject matter'…relevant to construction" of terms in child patent.).

**B.    "SOI pillar"**

| Term | BeSang's Proposed Construction | Micron's Proposed Construction |
|---|---|---|
| "SOI pillar" '702 Patent, Cls. 14, 15, 16 | Plain and ordinary meaning; or "a silicon-on-insulator structure taller than it is wide." | "a doped stack structure formed from a single-crystal portion of a semiconductor wafer transferred from one wafer to another previously fabricated wafer or similar type of substrate" |

The parties dispute whether the claimed "SOI pillar" need be formed from "a single-crystal portion of a semiconductor wafer" that is "transferred from one wafer to another previously fabricated wafer," as Micron contends, or can be met by any "silicon-on-insulator" structure that is taller than it is wide, as BeSang contends.  Micron's construction is based on the express definitions stated in the patent specification, whereas BeSang's construction improperly relies on the dimensions of the patent figures that are not drawn to scale.

**1.    Micron's Construction Is Based on Patentee's Lexicography and Is Supported by Intrinsic Record**

Micron's proposed construction of "SOI pillar" is firmly grounded in the intrinsic record, which attributes clear meanings to both "SOI" and "pillar," and from which Micron's proposed construction directly draws.

First, the '702 Patent defines "SOI" in the context of a related term: "'SOI layer' is *used herein to refer to* a relatively thin, single crystal portion of a semiconductor wafer that can be cleaved and bonded to another previously fabricated wafer, or similar type of substrate …." '702 Patent, 4:47–53.  This is clear lexicography—the Federal Circuit has repeatedly found that "[t]he

27

patentee's use of the phrases 'as used herein' and 'refer to' conveys an intent for [the statement] to be definitional." *ParkerVision, Inc. v. Vidal*, 88 F.4th 969, 976 (Fed. Cir. 2023); *see also Kyocera Senco Indus. Tools Inc. v. Int'l Trade Comm'n*, 22 F.4th 1369, 1378 (Fed. Cir. 2022) (finding lexicography where the patentee used the phrase "also sometimes referred to herein as"). Micron's construction incorporates this definition by construing "SOI" to be "a single-crystal portion of a semiconductor wafer transferred from one wafer to another previously fabricated wafer or similar type of substrate."

*Second*, the '702 Patent also defines "pillar." The specification explains that, "[a]s a stackable add-on layer, the single-crystal layer may have been doped so as to have one or more doped regions vertically adjacent each other," '702 Patent, 4:57-60, and it describes the transferred SOI layer, when unpatterned, as comprising "only a vertically oriented stack of layers," *id.*, 6:13–25. The patent further explains that "[i]ndividual semiconductor structures may be formed by etching through portions of the doped stack to electrically isolate those structures," *id.*, 4:62-64, and the resulting structure "can be directly contacted by metal electrodes at top, bottom, and intermediate regions of the individual *doped stack structures (i.e., pillar structures*)," *id.*, 6:26-29. "In a specification, a patentee's use of '*i.e.*' signals an intent to define the word to which it refers." *SkinMedica, Inc. v. Histogen Inc.*, 727 F.3d 1187, 1200 (Fed. Cir. 2013) (emphasis original) (citation and quotations omitted). Thus, by equating "doped stack structures" with "pillar structures" using "i.e.," the specification defines "pillar" as a doped stack structure.

*Third*, the incorporated '941 Patent confirms Micron's construction. The '941 Patent explains, in reference to the disclosed SOI layer, "[b]ecause single crystalline semiconductor layer 124 is formed by SOI technology, it is referred to herein simply as an SOI." Ex. 1, '941 Patent, 6:44-46. This disclosure confirms that "SOI" refers to a single-crystal portion of a

28

semiconductor wafer.  The '941 Patent also states that its "floating devices (FLD) … may alternatively be referred to as *doped stack structures*," and that such "FLD could be a form of circular *pillar* …, rectangular *pillar* …, or multi-angle *pillar*, or cylindrical *pillar*."  *Id.*, 6:61-63, 11:20-22.  Therefore, the '941 Patent uses "pillar" to describe a doped stack structure.  Micron's construction is supported by the patentee's lexicography and the intrinsic evidence.

### 2.    BeSang's Proposal is Inconsistent with the Intrinsic Record

BeSang's proposed construction contradicts the specification's disclosures.

First, BeSang's construction ignores the specification's teaching.  While the specification acknowledges that "[t]he acronym 'SOI' generally refers to Silicon-on-Insulator," it explains that "those skilled in th[e] field" would understand that "SOI layers can be formed in a variety of ways."  '702 Patent, 4:45-47.  As used in the '702 Patent, the specification defines an "SOI layer" to be a particular type of silicon-on-insulator structure: "a relatively thin, single crystal portion of a semiconductor wafer that can be cleaved and bonded to another previously fabricated wafer, or similar type of substrate."  *Id.*, 4:47-53.  BeSang's construction relies only on the specification's explanation of the acronym and ignores its actual teaching in the context of the alleged invention.

Second, there is nothing in the intrinsic record that restricts an "SOI pillar" to a structure that is "taller than it is wide."  While BeSang attempts to rely on proportions shown in the patent figures, "it is well established that patent drawings do not define the precise proportions of the elements…."  *Hockerson-Halberstadt v. Avia*, 222 F.3d 951, 956 (Fed. Cir. 2000).  The Federal Circuit "has repeatedly cautioned against overreliance on drawings that are neither expressly to scale nor linked to quantitative values in the specification."  *See, e.g., Krippelz v. Ford Motor Co.*, 667 F.3d 1261, 1268 (Fed. Cir. 2012).

The '702 Patent does not state that its figures are drawn to scale, and a POSITA would not have understood the figures to be drawn to scale.  The undisputed evidence presented before PTAB

confirms that a POSITA around the filing of the '702 Patent would have understood that processing constraints for semiconductor fabrication, at that time, imposed significantly greater limitations in the horizontal direction than in the vertical direction. *See* Ex. 7 (IPR Pet. Reply) at 12; Ex. 10 (IPR Ex. 1041) at ¶¶ 27-31. While the dimensions in the horizontal direction (e.g., the "length" of a structure) are typically measured in the tens of nanometers, the dimensions in the vertical direction (e.g., the "thickness" of a structure) are consistently below 10 nanometers and in some cases below 1 nanometer. *See* Ex. 11 (IPR Ex. 1047) at 0053 (Table 74a). With this context in mind, a POSITA reviewing the figures of the '702 Patent would not have understood its structures to be drawn to scale, and would not have interpreted the "pillars" to be taller than they are wide.

Third, the '702 Patent teaches to avoid "pillar" structures that are taller than they are wide. The '702 Patent explains that it is desirable to *decrease* "the effective aspect ratio of the SOI pillar" and avoid a "high aspect ratio, which may cause toppling during processing." *See, e.g.*, '702 Patent, 9:19-23, 10:35-38. Thus, the patent expresses a preferences for *shorter* and *wider* pillars. Similarly, the incorporated '941 Patent explains, "[i]f the width of FLD is getting narrow"—i.e., if a "pillar" is narrow and tall—the "aspect ratio of the pillar structure increases and could topple or be detached from the bonded dielectric layer." Ex. 1, '941 Patent, 11:22-24. BeSang's construction contradicts this teaching by requiring a "pillar" be taller than it is wide, making the pillar vulnerable to toppling. The '702 Patent discloses no reason for having such a structure and BeSang provides no explanation for why such a structure would be beneficial to the alleged invention.

## IV.   CONCLUSION

Because Micron's constructions are supported by the intrinsic record and BeSang's constructions directly contradict it, the Court should adopt Micron's proposed constructions.

Appx289

Dated: June 24, 2025

Respectfully submitted,

/s/ John Kappos

GILLAM & SMITH, LLP
Melissa R. Smith (TX #24001351)
melissa@gillamsmithlaw.com
303 South Washington Avenue
Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257

O'MELVENY & MYERS LLP
John Kappos (TX# 24130097)
jkappos@omm.com
Timothy S. Durst (TX #00786924)
tdurst@omm.com
Cason G. Cole (TX#24109741)
ccole@omm.com
Frances Mackay (TX#24109494)
fmackay@omm.com
2501 North Harwood Street, Suite 1700
Dallas, TX 75201
Telephone: (972) 360-1900
Facsimile: (972) 360-1901

Xin-Yi Zhou (TX# 24127916)
vzhou@omm.com
400 South Hope Street, 18th Floor
Los Angeles, CA 90071
Telephone: (213) 430-6000
Facsimile: (213) 430-6407

William M. Fink (admitted *pro hac vice*)\
tfink@omm.com
Patric Reinbold (admitted *pro hac vice*)
preinbold@omm.com
1625 Eye Street, NW
Washington, DC 20006
Telephone: (202) 383-5300
Facsimile: (202) 383-5414

*Attorneys for Defendants Micron Technology, Inc.,
and Micron Semiconductor Products, Inc.*

31

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on June 24, 2025.  Any other counsel of record will be served by facsimile transmission, e-mail and/or first class mail.

*/s/ John Kappos*

32

Appx291